**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN,
and JANE DOES 6-50,
    Plaintiff(s),

v.

UNITED STATES OLYMPIC COMMITTEE,
USA TAEKWONDO INC.,
STEVEN LOPEZ,
JEAN LOPEZ,
and JOHN DOES 1-5,
    Defendant(s).

---

**DEFENDANT UNITED STATES OLYMPIC COMMITTEE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

---

    This case stems from allegations of sexual and physical abuse perpetrated by Defendants Jean and Steven Lopez against Plaintiffs, four taekwondo athletes who formerly trained with Defendant USA Taekwondo ("USAT"). There is no debate that these allegations involve gravely serious conduct, and no debate of the urgent need to address the issue of sexual abuse in all contexts. The USOC applauds and supports these athletes for speaking out about what they have suffered. Moreover, as the leader of the Olympic community in the United States, the USOC is appropriately a subject of, and a participant in, discussions concerning moral and social responsibility for sexual

abuse in sport. To that end, the USOC has instituted and is building on structural and governance reforms in the field of amateur sports to increase awareness, reporting, and investigation of abuse, and has devoted new and increased resources to help athletes who have been the victim of abuse.

The operative complaint ("FAC") in this case, however, asks the Court to assign *legal* responsibility to the USOC for the alleged abuse, a different inquiry that must be decided under rules of law. Those rules mandate dismissal of this action against the USOC pursuant to Rule 12(b)(6), and that the putative nationwide class allegations be stricken pursuant to Rule 12(f).

*First*, the FAC fails to allege essential elements of each cause of action. The FAC's claims under Masha's Law allege forced labor, sex trafficking of children, and prostitution, among other salacious and wholly unsupported allegations. The FAC, however, neither adequately alleges that any defendant committed these horrific crimes, nor that the USOC acted with specific *intent* to aid and abet such criminal conduct. Further, each of the negligence claims fails to allege that the USOC (1) owed a duty to supervise and retain the Lopez brothers; (2) breached any such duty; or (3) caused harm to Plaintiffs. *Second*, the class allegations are facially overbroad and should be stricken. The Court should therefore dismiss or strike all of the claims against the USOC with prejudice.

## I. BACKGROUND

The USOC is a federally-chartered, non-profit organization that coordinates athletic activity in the United States relating to the Olympic, Paralympic, and Pan-

American Games.  It operates pursuant to the Ted Stevens Amateur Sports Act of 1978, which empowers the USOC to designate a single "National Governing Body" (NGB) for each sport, of which Defendant USAT is one of 50.  36 U.S.C. § 220521.  Congress specifically declined to give the USOC control over the day-to-day affairs of NGBs.  Instead, an NGB must "demonstrate[] that it is autonomous in the governance of its sport, in that it (A) independently decides and controls all matters central to [such] governance; (B) does not delegate [such] decision-making and control . . . ; and (C) is free from outside restraint."  36 U.S.C. § 220522(a)(5).  The USOC's statutory role with respect to NGBs is limited to choosing which organization to designate as an NGB, ensuring that NGBs meet eligibility criteria, and providing financial assistance to NGBs in support of sport and athlete programs.  36 U.S.C. § 220505.

Plaintiffs Mandy Meloon, Heidi Gilbert, Amber Means, and Gabriela Joslin formerly competed with USAT.  *See* FAC ¶¶ 302, 399, 458-64, 508.  Defendants Jean and Steven Lopez are brothers: Jean is a taekwondo coach and Steven is an athlete.  *See id.* ¶¶ 80, 86.  The FAC alleges that both Lopez brothers sexually abused Plaintiffs during their careers with USAT.  *See id.* ¶¶ 288-372, 399-542.  It further alleges that the USOC "reached for commercial success at all costs by ignoring, denying, obstructing, or covering up complaints of sexual abuse, deferring and diverting investigations, and continuing to commercially support [NGBs] . . . that tolerate and often facilitate sexual abuse by coaches and other adults."  *Id.* at 19 & ¶ 3.

Based on these allegations, the FAC asserts two categories of claims against the USOC:  (1) 25 federal claims including violations of Masha's Law, 18 U.S.C. § 2255,

3

alleging forced labor by means of threats of serious harm, sex trafficking of children, promotion of prostitution, transportation with the intent to engage in criminal sexual activity, and obstruction of justice; and (2) state-law claims for negligent supervision and retention of the Lopez brothers.

## II.     LEGAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss" under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint must contain more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "labels and conclusions." *Id.* at 678. Instead, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    ARGUMENT

### A.     All Causes of Action Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### 1.     The FAC Fails to State a Claim Under Federal Law.

Masha's Law, 18 U.S.C. § 2255, was enacted to prevent the sexual exploitation of children. It provides victims of certain sex-related crimes with a civil cause of action against the perpetrator and those who "criminally aid and abet" him. *Doe v. Liberatore*, 478 F. Supp. 2d 742, 754-56 (M.D. Pa. 2007). Here, the FAC does not adequately allege the specific criminal conduct underlying any of the Masha's Law claims. With respect to the USOC, the FAC alleges no facts to even suggest that the USOC acted with the specific intent to aid and abet such criminal conduct by others. These deficiencies are fatal.

       a)  The FAC Fails to Plausibly Allege Any of the Asserted Underlying Criminal Violations.

To fall within the purview of Masha's Law, the FAC tries to contort already serious allegations of sexual abuse into claims of forced labor by means of threats of serious harm, sex trafficking of children, promotion of prostitution, transportation with the intent to engage in criminal sexual activity, and obstruction of justice. *See* FAC ¶¶ 569-618, 631-648, 655-699, 719-723, 748-789, 800-842. The resulting causes of action are untenable.

First, the FAC does not adequately allege commission of the crimes of forced labor by means of threats of serious harm, sex trafficking of children, prostitution, etc.—by anyone. For example, the FAC appears to contend that the Lopez brothers' alleged abuse of Plaintiffs constituted "commercial sex acts" because the USOC "collect[ed] money through sponsorships, licensing, grants, publicity, and for medals achieved at competitions." FAC ¶¶ 599, 603. But nowhere does the FAC allege—nor could it credibly allege—that the USOC received sponsorships, licensing payments, grants, or the like *in exchange for* the Lopez brothers' alleged acts of sexual abuse. Similarly, although the FAC salaciously alleges that the USOC "knowingly transported" one of the Plaintiffs "with the intent that she engage in sexual activity" with the Lopez brothers, it alleges no facts to substantiate that allegation. *Id.* ¶ 646. Even incendiary allegations such as "[t]he USOC has long known of sexual assaults of female athletes at their training centers" are insufficient to allege any of the crimes at issue. *Id.* ¶ 208.

The FAC's allegations of obstruction of justice are similarly deficient. *See, e.g.*, FAC ¶¶ 592-96. Conclusory statements that the USOC "obstructed, attempted to

5

obstruct, interfered, and or [sic] prevented the enforcement of" laws criminalizing, for example, "[t]rafficking with respect to . . . slavery," are supported by no facts. The FAC does not allege—nor could it—any actual *law enforcement* effort that the USOC ostensibly obstructed or how it supposedly did so. *Id.* ¶ 721; 18 U.S.C. § 1590.

At most, the FAC alleges that the USOC did not conduct an adequate internal investigation of Plaintiffs' complaints of sexual abuse, *see* FAC ¶¶ 255-79, or that the USOC caused USAT to delay its internal investigation of those complaints, *see id.* ¶ 251. But those allegations neither relate to the enforcement of laws prohibiting involuntary servitude, peonage, slavery, or forced labor, nor indicate that the USOC took some steps or action to interfere with such enforcement efforts.[1] 18 U.S.C. § 1590; *cf. Martinez v. Calimlim*, 651 F. Supp. 2d 852, 864 (E.D. Wis. 2009) (complaint alleged defendant "lied to a federal agent in an attempt to obstruct [the agent's] effort" to find plaintiff, who was allegedly enslaved and kidnapped by the defendant).

      b)  The FAC Fails to Plead that the USOC Aided and Abetted the Alleged Abuse with Specific Intent.

Aiding and abetting is a specific intent crime that requires a "showing of intent to further the criminal venture." 18 U.S.C. § 2; *U.S. v. Delgado-Uribe*, 363 F.3d 1077, 1084 (10th Cir. 2004). More specifically, the crime requires proof that the defendant "associated himself with and participated in an unlawful venture in a way that shows he wished to bring it about, and that he acted to make the venture succeed." *M.A. ex rel.*

---

[1] Any allegation in the FAC that the USOC may be *directly* liable for any of the alleged criminal conduct underlying the Masha's Law claims fails for the same reasons described in this section. *See, e.g.*, FAC ¶¶ 675-79.

*P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1054 (E.D. Mo. 2011). The FAC does not (and cannot) allege that the USOC acted with any such intent. *See id.* (dismissing Masha's Law claim where complaint "d[id] not describe the specific intent required for aiding and abetting under § 2.").

Court decisions finding sufficient evidence of aiding and abetting sex offenses provide a useful counterpoint. For example, in *United States v. Pringer*, the court found sufficient evidence of aiding and abetting sex trafficking based on evidence that the defendant "took the money that [the victims] earned from their prostitution and used some of it to pay for hotel rooms," "bought the laptop [the victims] used to advertise their [prostitution] services," drove the victims to their appointments, and took photographs of them for use in advertisements. 765 F.3d 445, 450 (5th Cir. 2014). In *United States v. Tavares*, 705 F.3d 4, 20-21 (1st Cir. 2013), the court found sufficient evidence of aiding and abetting the transportation of a minor where the defendant "was a pimp," "worked as one with" the perpetrator, and "had more than a coincidental association with [the perpetrator's] criminal venture, and, indeed, had joined the illegal enterprise."

Here, the FAC alleges no remotely comparable conduct by the USOC. At most, the FAC alleges that the USOC should have known of the Lopez brothers' alleged sexual abuse. But that does not state a Masha's Law claim. Courts have rejected Masha's Law claims even where defendants "had reason to suspect" or "avoided learning of" the alleged offenses, if there was no evidence that the defendants "consciously shared [the perpetrator's] knowledge of the underlying substantive offenses, as well as the specific criminal intent to commit them." *Doe v. Liberatore*, 478

F. Supp. 2d 742, 756 (M.D. Pa. 2007) (granting summary judgment on Masha's Law claim). The FAC's repeated statements that the USOC sought "medals and money" also fall short of supporting a legitimate inference of criminal aiding and abetting intent. *See, e.g.*, FAC ¶¶ 14, 38, 41, 227, 594. Plaintiffs' Masha's Law claims should therefore be dismissed.

The FAC's federal claims fail based on the foregoing. Although the USOC strongly prefers to address these claims on their merits, it would be irresponsible not to acknowledge that Plaintiffs Gilbert's and Meloon's claims under Masha's Law are also time barred. Under the applicable statute of limitations, their claims expired in 2009 and 2011, respectively (six years after the most recent alleged abuse). *See* FAC ¶¶ 60, 63, 356-57, 431; Pub. L. No. 113-4, § 1212, Mar. 7, 2013, 127 Stat. 143; *see also Singleton v. Clash*, 951 F. Supp. 2d 578, 587 (S.D.N.Y. 2013). Amendments of the statute of limitations in 2013 and 2018 did not "revive" the expired claims. *Singleton*, 951 F. Supp. 2d at 591; *see also Hughes Aircraft Co. v. U.S. ex. rel. Schumer*, 520 U.S. 939, 946, 950 (1997) (amendment extending a statute of limitations "may not be applied retroactively to revive" an already-expired claim absent language evidencing a "clear intent" by Congress that the amendment apply retroactively).

      2.     The FAC Fails to State a Claim for Negligent Supervision or Retention.

The FAC fails to allege any of the essential elements of these causes of action, which are: (1) the existence of a legal duty; (2) breach of that duty; and (3) damages. *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005).

                    a)       The USOC Owed No Legal Duties to Plaintiffs with Respect to the Supervision and Retention of Jean and Steven Lopez.

The duty to supervise and retain creates an obligation "to prevent an unreasonable risk of harm to third persons to whom the employer kn[ew] or should have known that the employee [or agent] would cause harm." *Id.* at 448. It is "axiomatic" that such a duty requires the existence of "an employment or agency relationship." *Moses v. Diocese of Colo.*, 863 P.2d 310, 324 (Colo. 1993) (en banc). The existence of a duty "boils down" to whether "the employer kn[ew] that harm may result from the employee's conduct and . . . [was] given the opportunity to control such conduct." *Keller*, 111 P.3d at 448-49. Here, the FAC does not adequately allege either knowledge or control.

*First*, the FAC does not, because it cannot, sufficiently allege that the USOC had the requisite type of relationship with the Lopez brothers, or the right to control their conduct. The FAC alleges the relationship between the USOC and the Lopez brothers only in conclusory, boiler-plate terms. But allegations to the effect that the Lopez brothers were USOC "agents, servants, and/or employees . . . cloaked with actual and apparent authority," *see* FAC ¶¶ 34,187–88, are insufficient to meet the pleading standard and must be disregarded. *See Iqbal*, 556 U.S. at 678; *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (rejecting as conclusory plaintiffs' "general statement that Wal–Mart exercised control over their day-to-day employment").

No other allegations support the existence of agency, much less employment. *Moses* illustrates the type of allegation that is necessary but conspicuously absent from the FAC. There, the Colorado Supreme Court found an agency relationship between the Episcopal Diocese of Colorado and a priest because the Diocese controlled "the

9

manner of work performed by [the] priest as well as the hiring, compensation, counseling performed by the priest[,] and discipline of the priest." 863 P.2d at 325.

Here, by contrast, the FAC explains that "[e]ach NGB is charged with selecting the athletes, officials, and coaches for its sport at the Pan Am Games, World Championships, World Cups, and Olympic Games." FAC ¶ 107. The FAC describes the USOC's role as approving the rosters and "entering the [NGB-selected] athletes and coaches in the protected competitions." *Id.* ¶¶ 111, 247.[2] To the extent that the USOC exerts limited control, it is over the NGBs. For example, the USOC has "the power to enforce compliance *by the NGBs* with all requirements of the Sports Act" by "put[ting] NGBs on probation," "replac[ing] the entire board of any NGB," or "de-ceritfy[ing] an NGB." *Id.* ¶¶ 113–14. Further, the USOC can "force NGBs to adopt policies and procedures to ensure the physical safety of athletes." *Id.* ¶ 115.

The FAC includes no corresponding description of the USOC's control over individual athletes and coaches. *See Doe*, 572 F.3d at 683 (Wal-Mart's right to terminate suppliers did not give Wal-Mart control over suppliers' employees). The FAC alleges that Jean Lopez was a coach at Sports Act-protected competitions, FAC ¶ 86, and that Steven Lopez was an athlete who "represented the USOC" at such events, *id.* ¶ 180. It states that the USOC approved athletes' and coaches' entry into the events and provided them with credentials. *Id.* ¶¶ 111, 182. It also alleges agreements between the USOC and participants in Sports Act-protected competitions regarding

---

[2] Plaintiffs allege that the "USOC controls all aspects of every protected competition," but do not describe any form of control other than approving NGB-nominated athletes and coaches. *See* FAC ¶ 109.

10

advertising, sponsorship, and the use of logos during certain games. *See id.* ¶¶ 125–26. However, the FAC does not allege that the USOC controlled athletes' or coaches' "manner of work," such as training regimens, coaching techniques, schedules, or workplace interactions.

The FAC relies on the allegation that the USOC provided the Lopezes with "grants, stipends, and other forms of financial compensation." *Id.* ¶ 349. However, it also alleges these payments were for travel expenses, per diems, and performance bonuses and grants in connection with specific events. *See, e.g., id.* ¶¶ 174, 180, 183, 299. Given that part of the USOC's statutory role is to provide financial support to the NGBs and their athletes, 36 U.S.C. § 220505, the only reasonable inference is that the USOC's payments were to permit Jean and Steven Lopez to travel to competitions and to reward them for competitive success. The allegations do not support a reasonable inference that, by these alleged payments, the USOC controlled the Lopez brothers' "manner of work" such that they were USOC agents or employees.

*Second*, even if the FAC alleged facts showing that the USOC exercised control over the Lopezes—which it does not—the USOC's duty would have been to prevent an unreasonable risk of injury to those whom *it knew or should have known* they might harm. *See Keller*, 111 P.3d at 448. The FAC alleges that the USOC first had "notice" of Jean and Steven Lopez's alleged criminal propensities in 2006. FAC ¶¶ 821–22, 832–33. However, all of the alleged attacks against Plaintiffs Gilbert and Meloon occurred before that date. *See* FAC ¶¶ 406-32 (Gilbert); FAC ¶¶ 328-57 (Meloon). No entity has a duty to prevent attacks it had no reason to believe might occur, and the FAC does not

allege the USOC had any knowledge prior to or during the alleged incidents. *See Keller*, 111 P.3d at 448 (employer liable only if it "antecedently had reason to believe that an undue risk of harm would exist because of the employment").

*Third*, even if the USOC had the ability to control Jean and Steven Lopez, *and* was on notice of their alleged criminal propensities, its duty to supervise would not have extended to locations and situations outside of its control. A principal may be liable for acts done by agents "on their own account," but only if the acts "are closely enough connected with the employment in time and space" so as to give the principal "a special opportunity to control the [agent's] conduct." *Id.* at 449.

The *Keller* court held the owner of a business knew or should have known that his manager subjected "female employees and customers to lewd behavior and sexual conduct during business hours." *Id.* at 446–47. However, the case involved an incident of sexual assault by the manager at the business outside of business hours, which the court found to be insufficiently connected in time and space to the manager's employment. *Id.* The court held the employer had no duty to prevent this conduct. *Id.* at 446, 450.

The same is true here with respect to the allegations involving Plaintiffs Joslin and Means. The FAC alleges that Ms. Joslin and Steven Lopez had a sexual relationship throughout Ms. Joslin's career in taekwondo, most of which was unconnected with USOC-related events. *See* FAC ¶¶ 474–76. For example, one of the alleged assaults against Ms. Joslin occurred in 2006 while she and Steven Lopez were attending the German Open in Bonn, Germany. *Id.* ¶ 458. The FAC states that "this

2006 competition *was not* a Sports Act-protected competition" and that "the team was sent by USA TKD and not the USOC." *Id.* ¶ 464 n.64 (emphasis in original). Another alleged assault against Ms. Joslin occurred in 2011, after she had retired from taekwondo competition. *Id.* ¶¶ 477, 482. The FAC does not allege that this assault occurred in connection with a USOC-related event nor, in light of Ms. Joslin's retirement, could it plausibly have done so.

The times and places of the alleged assaults against Ms. Means were similarly unrelated to USOC events. The FAC seems to allege an ongoing sexual relationship between Ms. Means and Steven Lopez, to which their occasional participation in USOC events was incidental. For example, the FAC alleges that Steven Lopez and Ms. Means had a consistent sexual relationship during 2008, which had begun while Ms. Means was 17. *Id.* ¶¶ 518–520. It also alleges that Steven Lopez and Ms. Means had sex "while they both "attend[ed] USOC and USA TKD sponsored events in 2008," *id.* ¶ 523, but does not allege that any assaults occurred during those events or that Ms. Means remained a minor at those times. Assaults also allegedly occurred during Ms. Means' and Steven Lopez's lives outside of taekwondo. For example, one assault occurred in June 2008 after "Steven invited Amber to a party at a friend's condo in Houston, Texas," where they both lived at the time. *Id.* ¶¶ 497, 526. Another occurred "[a]t a party in February 2013," two years after Ms. Means had stopped competing in taekwondo. *Id.* ¶¶ 541–42. Neither was allegedly connected with a USOC event.

Because the alleged abuse against Plaintiffs Joslin and Means was not "connected . . . in time and space" to circumstances in which the USOC could have

13

exerted control over Jean and Steven Lopez, the USOC had no legal duty to prevent it.

b) The FAC Fails to Allege the USOC Caused Plaintiffs' Harm.

Largely for the reasons discussed above, the FAC fails to allege that the USOC caused Plaintiffs' alleged harms. Had the USOC excluded the Lopez brothers from competitions in 2006, when it allegedly learned of their criminal propensities, it would not have prevented the alleged assaults on Plaintiffs Meloon and Gilbert, which had already occurred, nor would it have prevented the assaults against Plaintiffs Joslin and Means, which were unconnected to USOC-related events.

Finally, the FAC alleges that the USOC "obstruct[ed] or interfere[d] with [Safe Sport] investigations of Jean Lopez's sexual assaults of Team USA's athletes" to permit the Lopezes to participate in the 2016 Olympic Games. FAC ¶¶ 489, 824. However, all of the assaults alleged in the FAC occurred before 2014. *See id.* ¶¶ 288–372, 399–542.

As with the FAC's federal claims, these state law claims fail on their merits and the USOC strongly prefers that they be dismissed on that basis. But here, too, it would be irresponsible not to note that the claims are clearly time-barred under Colorado's general two-year statute of limitations. *See* Colo. Rev. Stat. § 13-80-102(1)(a); *Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 602 (Colo. App. 2000) (Colorado's six-year limitations period for sexual assault on a child applies only to claims "brought against the perpetrator"). All of the Plaintiffs' alleged abuse occurred before 2014. *See* FAC ¶¶ 288–372, 399–542. The FAC alleges that the Lopez brothers' sexual abuse was "common knowledge" as of 2004, *id.* ¶¶ 498, 503, 521 & n.66, and that the USOC was aware of the sexual abuse allegations by 2007, *id.* ¶ 854 (citing Brian Gomez,

Cloud Over Taekwondo, The Gazette, Aug. 19, 2007 at A1). The state-law claims against the USOC therefore accrued years before the earliest date within the limitations period, April 25, 2016. *See* Colo Rev. Stat § 13-80-108 (claim accrues "on the date both the injury and its cause [we]re known or should have been known"); *Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152, 159 (Colo. App. 1995) (claim for negligent supervision of pastor who sexually assaulted plaintiff accrued when she "learned that at least one other woman had similar experiences with [the pastor] and that the church authorities . . . [were] so informed").

### B. The Court Should Strike the FAC's Overbroad Class Allegations.

If any cause of action survives the motion to dismiss, the Court should strike both putative nationwide classes because they are facially overbroad. *First*, though the allegations in the FAC concern only individual taekwondo athletes, the putative "[i]njunction" class encompasses "*[a]ll USOC-governed female athletes*," irrespective of their sport. FAC ¶ 548. *Second*, neither the injunction class nor the "[d]amage" class is limited to athletes who suffered an alleged injury—i.e., athletes who were allegedly abused by either of the Lopez brothers. *Id.* Courts in this District have stricken alleged putative classes that, as here, include class members "regardless of whether [those members were] ever injured" by the alleged conduct. *Edwards v. Zenimax Media Inc.*, 2012 WL 4378219, at *5 (D. Colo. Sept. 25, 2012). This Court should do the same.

### IV. CONCLUSION

For the foregoing reasons, all of the claims alleged against the USOC in Plaintiffs' First Amended Class Action Complaint should be dismissed with prejudice.

15

| | |
|---|---|
| Date: July 31, 2018 | */s/ Carolyn J. Kubota* |
| | Carolyn J. Kubota |
| | Mitchell A. Kamin |
| | Michael Fields |
| | COVINGTON & BURLING LLP |
| | 1999 Avenue of the Stars |
| | Los Angeles, CA 90067 |
| | Telephone: 424-332-4800 |
| | ckubota@cov.com; mkamin@cov.com; mfields@cov.com |
| | |
| | David M. Jolley |
| | COVINGTON & BURLING LLP |
| | One Front Street, 35th Floor |
| | San Francisco, CA 94111 |
| | Telephone: 415-591-6000 |
| | djolley@cov.com |
| | |
| | Lindsey Barnhart |
| | COVINGTON & BURLING LLP |
| | 333 Twin Dolphin Drive, Suite 700 |
| | Redwood Shores, CA 94065 |
| | Telephone: 650-632-4000 |
| | lbarnhart@cov.com |
| | |
| | John P. Craver |
| | WHITE & STEELE, P.C. |
| | 600 17th Street, Suite 600N |
| | Denver, CO 80202 |
| | Telephone: 303-296-2828 |
| | JCraver@wsteele.com |
| | |
| | *Attorneys for Defendant United States Olympic Committee* |

**Certification of Compliance with CMA Civil Practice Standard 7.1D(a):** During the Rule 26(f) conference, counsel for USOC notified Plaintiffs' counsel that USOC intended to file a Rule 12 motion. Counsel for USOC then informed Plaintiffs' counsel by e-mail of the deficiencies identified in this motion. Plaintiffs' counsel did not respond before this motion was filed.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed using the Court's CM/ECF filing system, which automatically sends notice of filing to all attorneys of record, on July 31, 2018.

                                              */s/ Carolyn J. Kubota*
                                              Carolyn J. Kubota