IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:18-CV-00981-CMA-MEH

Heidi Gilbert, Amber Means, Mandy Meloon,
Gabriela Joslin, Kay Poe, and and Does 6-50,

Plaintiffs,

v.

United States Olympic Committee, United States
Taekwondo Association, Steven Lopez, Jean Lopez, and
John Does 1-5,

Defendants.

---

**DEFENDANTS STEVEN LOPEZ AND JEAN LOPEZ'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT
[FED. R. CIV. P. 12(b)(6)]**

---

I.      INTRODUCTION

Steven and Jean Lopez are a world-class athlete and coach, respectively, in the sport of Taekwondo. Steven Lopez is a five-time Olympic champion. Steven's brother, Jean Lopez, has coached the men's and women's Olympic Taekwondo teams at the 2004, 2008, and 2012 Olympic Games. Jean Lopez has also coached his other two siblings, Mark and Diana Lopez, who are Olympic medalists as well.  Steven and Jean Lopez, and the entire Lopez family, have been highly respected for their success in Taekwondo throughout their careers. Jean Lopez started his own Taekwondo training club -  Elite Taekwondo, in Sugar Land, Texas - in 1997, where elite athletes from all over the nation, including the named Plaintiffs, would come to train with them. For the Lopez family, Taekwondo is their life's work.

The allegations in the Second Amended Complaint ("Complaint") are a broad range of ancient and unfounded accusations against Jean Lopez and Steven Lopez, dating back as far as *1997*.  In this Complaint, many of these allegations are repackaged in new and novel ways against the Lopez brothers as well as Defendants United States Olympic Committee ("USOC"),  USA Taekwondo ("USAT"), and the newly-added U.S. Center for SafeSport ("SafeSport").  However, none of these claims can withstand scrutiny; a substantial portion, if not all, all of Plaintiffs' claims are time-barred; and many of Plaintiffs' allegations fail to allege any facts outside of attention grabbing yet inadmissible block quotations from various newspaper articles and second-hand congressional testimony. Complaint at par. 117-225, 166-177, 216-248, and 253-284.

Plaintiffs' lawsuit appears more interested in garnering headlines than in pleading viable claims.  Faced with three separate Motions to Dismiss the First Amended Class

1

Action Complaint, the Plaintiffs' public bravado was quickly replaced with an acquiescence and an acknowledgement that the claims that were pled – while effective as a publicity-seeking machine – were hopelessly deficient.  Plaintiffs did not even try to defend the legitimacy of their claims, instead seeking permission of all Defendants to simply amend to "cure the defects."  However, while Plaintiffs have doubled down on the publicity-seeking aspects of their Complaint, they have ignored and failed to cure the deficiencies in their claims.  For these reasons (and as explained further below), Defendants Steven and Jean Lopez (hereinafter collectively referred to as "Defendants Lopez") file this Motion to Dismiss all claims with prejudice.

## II.    LEGAL STANDARDS

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Circ. 2008). Thus, "if [allegations] are so general that they encompass a wide swatch of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of

the claim against them." *Id*. at 1248. Therefore, "a plaintiff must include enough facts to 'nudge[] [his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Circ. 2011) (quotation omitted). Conclusory allegations are insufficient. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). Furthermore, a statute of limitations defense may be resolved by a 12(b) motion "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir.1980).

## III.   ARGUMENT

### A.   Plaintiffs' Federal Claims Against Defendants Lopez Must Be Dismissed

Plaintiffs have amended their Complaint, adding Kay Poe as an additional Plaintiff and SafeSport as an additional Defendant. Various statutory violations are alleged, including forced labor, sexual exploitation, transportation, illegal sexual activity, trafficking, and sex trafficking by force, fraud or coercion, obstruction, and racketeering under 18 U.S.C. §§ 1589(a)(b); 1590(a); 1591(a)(d); 2241(c); 2243, 2421; 2422; and 2423(a)-(c), and 1962.

#### 1.   Plaintiffs' Civil Claims Under  18 U.S.C. § 2255 [Counts 1, 2, 8, 10, 11, 13, and 14] Are Time-Barred

Plaintiffs assert claims against Defendants Lopez under 18 U.S.C. § 2255 arising out of alleged violations of 18 U.S.C. §§ 1589, 1590, 1591, 2421, and 2423 between the years 1997 and 2010. From the time § 2255 was enacted in October 1986 until its March 7, 2013 amendment, the statute provided that "[a]ny action commenced under this section shall be barred unless the complaint is filed within *six years* after the right of action first accrues or in the case of a person under a legal disability, not later than three years after

3

the disability" (emphasis added). The statute of limitations was amended on March 7, 2013 to expand the six-year limit to ten years. Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, Sec. 1212, 127 STAT. 54, 143 (March 7, 2013). The statute was amended again on February 14, 2018, to its current language. However, these amendments may not be applied retroactively to claims that arose *prior to* the amendment, unless the language of the amended statute explicitly provides for retroactive application. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).  There is no indication in the legislative history of § 2255 of an intent to apply these amendments retroactively, and Plaintiffs have not established any basis for doing so.

Plaintiffs' claims under § 2255 arise out of alleged misconduct by Defendants Lopez between 1997 and 2010. Therefore, under § 2255 as it existed at the time of each alleged incident, all claims expired as early as 2003 and as late as 2016. These claims should therefore be dismissed with prejudice.

Plaintiff Mandy Meloon alleges that during her consensual sexual relationship with Steven Lopez that began in 2000, he beat and raped her in 2002, 2004 and 2005. Complaint at par. 422, 427, 430-431. These claims expired in 2008, 2010, and 2011, respectively. Ms. Meloon also alleges that Defendant Jean Lopez sexually assaulted her at the 1997 World Cup competition in Cairo, Egypt in March 1997. Complaint at par. 402-408. That claim expired in March 2003.

Plaintiff Gaby Joslin alleges that defendant Steven Lopez had sex with her during the 2006 German Open competition in 2006 in Bonn, Germany, when she was 23 years old. Complaint at par. 610-621. That claim expired in 2012.

Plaintiff Amber Means alleges that, in June 2008 while she was in an open consensual sexual relationship with Steven Lopez, he raped her at a party at a friend's condominium, while Ms. Means was drunk. Ms. Means claims to only know of this alleged rape because the owner of the condo told her it happened. Complaint at par. 685, 691-695. That claim expired in June 2014.

Alternatively, if the court decides to retroactively apply the current version of 18 U.S.C. § 2255, which provides for a *ten-year* statute of limitations, Plaintiffs' claims are still time barred as further discussed below, and must be dismissed.

In its current form, 18 U.S.C. §2255(b) provides that "any action commenced under this section shall be barred unless the complaint is filed-

>   "(1) Not later than 10 years after the date on which the plaintiff reasonably discovers the later of-
>
>>   (A) The violation that forms the basis of the claim; or
>
>>   (B) The injury that forms the basis of the claim; or
>
>   (2) Not later than 10 years after the date on which the victim reaches 18 years of age."

All of these claims must be dismissed. Ms. Meloon's most recent claims against Steven Lopez arise from alleged acts in 2005, and thus expired in 2015. Her claim against Jean Lopez arises from an alleged act in 1997, and thus expired in 2007. Ms. Means' claim against Steven Lopez arises from an alleged act that occurred in March, 2008, and thus expired in March 2018, five months prior to the filing of this action.

Additionally, more than ten years have passed since Plaintiffs Meloon, Joslin and Means turned 18 (Ms. Meloon turned 18 on February 15, 1999; Ms. Joslin turned 18 on

March 14, 2001; and Ms. Means turned 18 on July 5, 2008)[1]. Whether applying the original 1986 language of § 2255, the amended language of 2013, or the current language of the 2018 version, this Court must dismiss these specific Counts, on a plain reading of the Complaint, because they are barred by the statute of limitations.

    2.  <u>Plaintiffs' Civil Claims Under 18 U.S.C. §1595 [Counts 1, 3, 5, 6, 8, 10, 11, and 14] Are Barred By The Statute Of Limitations As Well As The Plain Meaning Of The Statute</u>

Plaintiffs also assert claims against Defendants Lopez under 18 U.S.C. § 1595(a); alleging forced labor violations under 18 U.S.C. §§ 1589(a), 1590(a), and 1591(a)(1).

18 U.S.C. § 1595(c) states:

> (c) No action may be maintained under subsection (a) unless it is commenced not later than the later of--
>
>     (1) 10 years after the cause of action arose; or
>
>     (2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

    a.  <u>Mandy Meloon's Claims</u>

Plaintiff Meloon alleges that she had a sexual relationship with Steven Lopez that began in 2000, and she alleges that there were incidents of physical and sexual abuse in 2002, 2004, and 2005. Complaint at par. 422, 426, 427, 429-431.  The most recent instance alleged by Ms. Meloon took place in 2005. Under § 1595(c), her claims under § 1589(a) expired in 2015 and must be dismissed. Additionally, Ms. Meloon turned 18 years old on February 15, 1999, therefore Ms. Meloon was over 18 years of age at the time of the alleged acts by Steven Lopez.

    b.  <u>Gaby Joslin's Claims</u>

---

[1] See Request for Judicial Notice, filed concurrently herewith.

Plaintiff Joslin, who reached the age of 18 on March 14, 2001, alleges that she "allow[ed] Steven Lopez to have sexual intercourse with her" from 2006 until 2010, beginning with an alleged sexual incident at the 2006 German Open in Bonn, Germany. Complaint at par. 610, 619-622, 624. Ms. Joslin's claim that Steven Lopez violated 18 U.S.C. § 1589(a)(2) and (4) stems from these alleged "forced sexual services" beginning in 2006 in Bonn, Germany. Complaint at par. 758. However, any claims stemming from this alleged incident in 2006 expired in 2016 under § 1595; and any claims for alleged acts by Steven Lopez that occurred prior to August 24, 2008 are also time barred . While Ms. Joslin alleges that she "continued to allow Steven [Lopez] to have sex with her" until 2010, there are no specific allegations during that time period that could legally give rise to a civil claim.

For the reasons stated above, Ms. Joslin's claim that Steven Lopez violated 18 U.S.C. 1590(a) by "knowingly recruit[ing], harbor[ing], transport[ing], and/or obtain[ing] Gaby for labor or services" – which are based on alleged actions by Steven Lopez at the 2006 German Open in Bonn, Germany - expired in April 2016.

Any claims stemming from the events in Bonn, Germany in 2006 were time-barred as of April, 2016. Any additional acts that occurred after August 24, 2008 (ten years prior to the initiation of this lawsuit) are not alleged in Ms. Joslin's claim with any particularity. Aside from the alleged incident in 2006 in Bonn, Germany, Ms. Joslin does not allege any other incident that indicate that there were any acts of force, fraud or coercion on the part of Steven Lopez. Ms. Joslin's vague mention of "various tournaments and training centers between 2006 and 2010" does not sufficiently give rise to a claim under § 1591(a). *Id.*

c.  Amber Means' Claims

All of Ms. Means' claims brought against Defendants Lopez for violations of §§ 1589(a), 1590(a), 1591(a)(1), 2243, 2421, 2422, and 2423(a)-(c) are time-barred based on the statute of limitations under § 2255 as discussed in Section A above; and under § 1595 as discussed below.

Ms. Means alleges that she had an open sexual relationship with Steven Lopez that began in February or March, 2008; however there is no indication in the complaint when the relationship ended. Complaint at par. 683-685. All of Ms. Means' claims filed herein stem from the relationship that she had with Steven Lopez "while attending USOC an USAT sponsored events in 2008." Complaint at par. 688. No specific times, dates or places are alleged in the Complaint, therefore any claims stemming from the alleged sexual relationship before August 24, 2008 are time-barred as of the date of filing of this Complaint. If there were any incidents that took place after August 24, 2008, they have yet to be alleged.

3.  Plaintiffs Fail To Adequately Allege That They Were Forced To Provide Any Labor Or Services For Defendants Lopez [Counts 1, 3, and 8]

Plaintiffs Mandy Meloon, Gaby Joslin, and Amber Means[2] claim that Steven Lopez violated 18 U.S.C. §1589 by forcing them to provide sexual services to him. Plaintiff Amber Means also makes similar allegations against defendant Jean Lopez.

In order to succeed on a claim for forced labor in violation of 18 U.S.C. § 1589(a), a plaintiff must demonstrate that the defendants:

"knowingly provide[d] or obtained the labor or services of a person by any one of, or by any combination of the following means:

---

[2] Defendants Lopez are not addressing allegations made by Heidi Gilbert and Kay Poe because they have not filed claims under §§ 1589(a) or 1595 in any of the counts set forth in the Second Amended Complaint.

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

To determine whether the plaintiffs were forced to provide labor or services, the court must first consider what constitutes "labor" and "services." The term labor or services, which is not defined by the statute, is viewed in accord with its ordinary meaning." *U.S. v. Marcus,* 628 F.3d 36, 44 (2nd Cir. 2010). "Webster's dictionary defines "labor" as the expenditure of physical or mental effort especially when fatiguing, difficult, or compulsory. "Service" is defined as "the performance of work commanded or paid for by another."" *Id*. at *footnote* 10.  See also, *U.S. v. Kaufman*, 546 F.3d 1242, 1261 (10th Cir., 2008), referencing Oxford English Dictionary and Random House Dictionary definitions of "labor" and "services."

In *U.S. v. Marcus, supra,*  plaintiff's work on a "BDSM" website were considered "forced labor and services" under § 1589 after her consensual relationship with the defendant ended and plaintiff chose to continue with the website activities out of fear. *Id*. at 39, 40.

In this case, Plaintiffs fail to state a claim that would fall under the "ordinary meaning" of the statute. The "labor and services" the plaintiffs arguably provided were their contributions to defendants USOC and/or USAT, and nothing in the complaint

alleges that the plaintiffs felt forced or threatened to continue providing this labor or service. Rather, the plaintiffs voluntarily remained on the team.

In *Kaufman*, the Court held that directing mentally ill residents to perform sexually explicit acts and farm labor in the nude while claiming that these acts constituted legitimate psychotherapy for the residents' mental illnesses did not constitute "labor or services" within the meaning of 15 U.S.C. §1589 by limiting the statute  to "work in an economic sense." However, in that case, the victims were still forced to perform "labor" or "services" on behalf of the Kaufmanns, in whose care their residence had been placed. In contrast, plaintiffs in this case do not allege (nor could they) that they had been placed in the care of Defendants Lopez; or that Defendants Lopez were *responsible* for them. Rather, plaintiffs allege that they were placed in the care of defendants USAT and/or USOC, who were actually responsible for (i) sending the teams to the competitions at issue, and (ii) arranging for the housing on such trips.

The Complaint alleges that Defendants Lopez "obtained forced sexual services" in their capacity as agents of USOC and/or USAT.  However, by repeatedly alleging the agency capacity, and by alleging that defendants USAT and USOC were responsible for any alleged "forced labor or services," Plaintiffs cannot then also argue that the same alleged "forced labor or services" were for the benefit of Defendants Lopez.  Stated in another way, where Plaintiffs allege that Defendants Lopez were acting for defendants USOC and/or USAT, then the alleged "forced labor or services" would have been for their benefit, not for the benefit of Jean and Steven Lopez.

For these reasons, these Counts against Defendants Lopez must be dismissed.

**B.   Plaintiffs Mandy Meloon's and Amber Means' Claims of Sexual Exploitation, Transportation, And Illegal Sexual Activity In Violation of 18 U.S.C. §§ 2241(c), 2243, 2421, 2422, 2423(a)-(c), and 2255 [Counts 2 and 13] Must Be Dismissed As To Defendants Lopez**

1.   Ms. Meloon's and Ms. Means' Claims Under Section 2255 Are Time-Barred

The same statute of limitations under 18 U.S.C. § 2255 applies to these counts as to the count discussed in Section A.1 above. For the same reasons explained above, and incorporated herein by reference, this claim is barred by the statute of limitations.

2.   18 U.S.C. §§ 2241(c) and 2243 do not apply to Ms. Meloon Because She Was Sixteen At The Time of The Alleged Violation

18 U.S.C. §§ 2241(c) and 2243 apply to a person "who has attained the age of 12 years but has not attained the age of 16 years." Ms. Meloon alleges that Defendant Jean Lopez sexually assaulted her at the 1997 World Cup in Cairo, Egypt. Complaint at par. 402-409. Ms. Meloon's date of birth is February 15, 1981; and the 1997 World Cup took place from March 6-8, 1997, when Meloon was already 16 years old. Therefore, §§ 2241(c) and 2243 do not apply to this Plaintiff, and the claims against defendant Jean Lopez arising under those statutes must therefore be dismissed with prejudice.

3.   Ms. Means Is Not Subject To 18 U.S.C. § 2243 Because She Was Seventeen At The Time of The Alleged Violation

As with Ms. Meloon's claims, Ms. Means was seventeen years old when she started an open consensual relationship with Steven Lopez.  Because § 2243 applies only to a person who "has attained the age of 12 years but has not attained the age of 16 years," it does not apply to Ms. Means in this instance.

**C. Plaintiffs Gaby Joslin's And Amber Means' Claims For Trafficking With Respect to Forced Labor And Sex Trafficking By Force, Fraud Or Coercion In Violation of 18 U.S.C. §§ 1590(a) And 1591(a)(1) [Counts 5 and 6] Must Be Dismissed Against Defendants Lopez**

1.   Ms. Joslin's Claims Against Steven Lopez Are Time-Barred

The same statute of limitations under 18 U.S.C. §§ 1595(c) applies to these Counts as to the Counts discussed at Section A.2 above.  Ms. Joslin specifically alleges a single incident at the 2006 German Open tournament in Bonn, Germany in April 2006. Complaint at par. 606, 610, 616-621. At par. 770, Ms. Joslin alleges that Defendant Steven Lopez violated "recruited, enticed, harbored, transported, and/or obtained Gaby for labor or services" and "knowingly recruited and fraudulently enticed Gaby to come to Bonn, Germany, with the intention of forcing her into sexual labor and services for him." Because this claim is based on an alleged incident that occurred in 2006, it expired in 2016 and is time-barred under § 1595.

At par. 777, Ms. Joslin again alleges that the basis for her claims against Steven Lopez stem from the alleged 2006 Bonn, Germany incident, as well as "various tournaments and training centers between 2006-2010." Any alleged incidents prior to August 24, 2008 would still be time-barred under § 1595. Such intentionally vague pleading fails the most basic "notice pleading" requirements, and appears intended to avoid the statute of limitations.  These insufficient allegations cannot save the sixth count from dismissal based on the applicable statute of limitations.

2.   Ms. Means' Civil Claims Against Defendants Lopez Under Sections 1595 And 2255 Are Time-Barred

Ms. Means' claims under Counts 10 and 11 for alleged actions by Steven Lopez prior to August 24, 2008, are barred by the statute of limitations under both §§ 1595 and

12

2255. This includes the oral sex allegation at par. 683; the February 2008 vaginal sex allegation at par. 684; the March 2008 "open sexual relationship" allegation at par. 685; and the June 2008 rape allegation at par. 691-695.

As discussed in Section A above, because Ms. Means was a minor at the time of the alleged acts, the statute of limitations would expire no later than six years after the cause of action arose. Alternatively, if the court were to retroactively apply the current version of §§ 1595 and 2255 to these ancient allegations, the claims would still have had to be brought within ten years of the date that the cause of action arose, or ten years after plaintiff turned 18 years old (which for Ms. Means was July 5, 2008). In any of these scenarios, Ms. Means' claims against Steven Lopez were time-barred as of July 5, 2018.

Ms. Means also claims in Count 11 that, in addition to Steven Lopez, Jean Lopez violated § 1591(a)(1) (sex trafficking of a minor by force, fraud or coercion). Ms. Means specifically bases this allegation on her traveling to the 2008 Olympic Games in Beijing, despite not having been selected for the US Olympic Taekwondo team.  Complaint at par. 698. The Complaint does not explain (i) how Ms. Means' labor and services could have been benefitting the Lopez brothers if she was not even competing; (ii) how her travel to Beijing could constitute "trafficking" within the meaning of the statute (as outlined in Section C below) or (iii) how this travel to Beijing could qualify as "in or affecting interstate and/or foreign commerce." What is clear, however, is that Ms. Means turned 18 years old on July 5, 2008, and the 2008 Olympics took place from August 4-24, 2008, when Ms. Means was no longer a minor.  Ms. Means fails to allege any other events with particularity – again, likely in a hopeless attempt to avoid the statute of limitations.  For these reasons, Ms. Means' claims in Count 11 should be dismissed.

3.   Plaintiffs Fail To Adequately Plead Trafficking Against Defendants Lopez, Within the Meaning Of The Statute

To succeed on a claim of "trafficking with respect to forced labor in violation of 18 U.S.C. § 1590(a)," the plaintiff must successfully demonstrate that the defendant "knowingly recruit[ed], harbor[ed], transport[ed], provid[ed], or obtain[ed] by any means, any person for labor or services in violation of this chapter." In *Roe v. Howard,* 2018 WL 284977, the defendant recruited a housekeeper to work for him with the promise of providing a job, medical treatment, and a visa. Upon recruiting the plaintiff, the defendant told the plaintiff that it was her job to "make [the defendant's husband] happy." *Id*. After the plaintiff was hired, she was subjected to sexual abuse by the defendant's husband. *Id*.

In stark contrast, the Plaintiffs in this case were not recruited to join USAT to provide any labor or services in the form of sexual favors for the defendant with the promise of payment or benefits. Rather, they were recruited to train, improve their skill sets, and compete in Taekwondo tournaments with the understanding they would receive housing, travel, and stipend expenses from USOC/USAT like the other athletes on the team who are not alleged to have had a sexual relationship with the defendant.

For these reasons, Counts 5 and 10 should be dismissed.

4.   Plaintiffs Fail To Adequately Plead Sex Trafficking Against Defendants Lopez, Within the Meaning Of The Statute

A violation under 18 U.S.C. § 1591(a)(1) occurs when a person "knowingly- in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person."

Plaintiffs allege that Defendants Lopez violated this section because they benefitted from plaintiffs engaging in a "commercial sex act" across state lines. However, under 18 U.S.C. § 1591(e)(3), the term "commercial sex act" means "any sex act on account of which anything of value is given to or received by any person." *18 U.S.C. § 1591(e)(3)*. In *Roe*, the court concluded that a commercial sex act took place given that "the Howards paid Ms. Roe a monthly salary for her services and those services included being subjected to forced sex acts." Here, Plaintiffs' travel, housing, and stipends were all given to them because of their participation in Taekwondo, not because of any alleged sexual favors. This is evidenced by the fact that Plaintiffs received these benefits *before* any of the alleged sexual interactions with the defendants ever occurred, as well as well after the alleged sexual interactions. Furthermore, the Plaintiffs do not allege (nor could they) that Jean or Steven Lopez paid them anything – all payments were given to the athletes through defendants USOC and/or USAT.

Furthermore, the Complaint pleads these counts in the most conclusory terms possible, violating the most basic notice pleading requirements.  It fails to plead how Defendants Lopez  allegedly recruited, harbored, transported, provided, or obtained any of the named plaintiffs for labor or services.  Plaintiffs' reliance on this sex trafficking statute is utterly misplaced.

For these reasons, Counts 6 and 11 against Defendants Lopez must be dismissed.

**D. Plaintiffs' Claim for Obstruction, Attempted Obstruction, Interference With Enforcement In Violation of 18 U.S.C. §1590(B) AND 1591(D) [Count 14] Must Be Dismissed As To Defendants Lopez**

1. Plaintiffs' Claims Are Time-Barred

The same statute of limitations [18 U.S.C. §§ 1595(c) and 2255(b)] applies to Count 14 and the Counts discussed at Section A above.  For the same reasons, these claims are barred by the statute of limitations.

Alternatively, it is submitted that the Court must dismiss those specific Counts that– on a plain reading of the Complaint – are barred by the statute of limitations.

2. Plaintiffs Fail To Adequately Plead Obstruction or Interference Against Defendants Lopez, Within the Meaning Of The Statute

A violation under 18 U.S.C. § 1590(b) occurs when a defendant "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section." Here, Plaintiffs have failed to state a specific claim against Defendants Lopez, and instead only allege that Defendants *USOC, USAT and SafeSport* obstructed or attempted to obstruct, interfere, or prevent the enforcement of this section. This is made absolutely clear in Count 14 at par. 836,  "…Defendants USOC, USAT, and SafeSport obstructed, attempted to obstruct, interfered, and or prevented the enforcement of this section by …].  Furthermore, a close examination of the sub-allegations (a) through (s) reveals that all of the allegations are directed *solely* at defendants USOC, USAT, and SafeSport for their alleged obstruction and/or interference with the investigations of complaints made *against* Defendants Lopez.

For these reasons, Count 14 against Defendants Lopez must be dismissed.

**E. Plaintiffs' Claim For Violation of The Racketeer Influenced And Corrupt Organizations ("RICO") Act [Count 15] Must Be Dismissed as to Defendants Lopez**

"It is incumbent upon courts, especially in civil RICO actions where the restraint of prosecutorial discretion is not present, to scrutinize claims to ensure that the statute is not applied to contexts outside those intended by Congress." *Lopez v. Dean Witter Reynolds, Inc.*, 591 F.Supp. 581, 588 (N.D. Cal. 1984).  Under Fed.R.Civ.P. 9(b), allegations of fraudulent predicate acts supporting a claim under RICO must be pled with particularity.  See *Cohen v. S.A.C. Trading Corp*, 711 F3d 353, 359 (2nd Cir. 2013).  In the context of a Fed. R. Civ. P. 12 (b)(6) motion, a court "need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation."  See *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).  As explained below, Plaintiffs' effort to state a RICO violation fails miserably, "float[ing] on a sea of bombast," not "anchored in a bed of facts."  See *Id*.

To constitute a RICO violation, there must be a "pattern of racketeering activity" by an "enterprise."  18 U.S.C. § 1962.

1.   There Is No Rico "Enterprise"

An *Enterprise* for the purposes of asserting a RICO violation is defined as "any individual, partnership, corporation, associate, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  In the context of a civil RICO complaint, a defendant who is charged with violating 18 U.S.C. § 1962(c)[3] must be separate and distinct from the enterprise through which the defendant is alleged to have conducted a pattern of racketeering activity.  See, e.g., *Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 747 F.2d 384, 402 (7th Cir. 1984),

---

[3] See Complaint par. 841.

*aff'd on other grounds*, 473 U.S. 606 (1985).  Limiting the persons who can violate 18

U.S.C. § 1962(c) ensures that it will be properly used to pursue those individuals who are

"insiders" of an organization, and who use an organization and its resources to commit

racketeering activity.  See *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259

(1994).  An enterprise must have "at least three structural features: a purpose,

relationships among those associated with the enterprise, *and longevity sufficient to*

*permit these associates to pursue the enterprise's purpose*."  *Boyle v. United States*, 556

U.S. 938 (2009) [emphasis added]. Plaintiffs' choice to name the alleged "enterprise" the

"Lopez Obstruction Enterprise," guided by their insatiable need for media headlines, does

not meet the standards of a RICO enterprise, at last with respect to Jean and Steven

Lopez.  Specifically, the "purpose" of the "enterprise" is alleged at par. 846 as follows:

> "At all relevant times, the Defendants operated as an association-in-fact
> enterprise, which was formed for the purpose of stopping, hindering, and
> delaying all investigations of and enforcement actions against the Lopez
> brothers, as well as making false and corrupting statements that concealed the
> true nature of the sex abuse and exploitation committed by the Lopez brothers
> and facilitated and promoted by the USOC, USA Taekwondo, and SafeSport."

While the Court may be required to accept the *facts* pled as true, it is not required

to ignore the facts:  (i)USA  Taekwondo *did investigate* the allegations; (ii) even if the

allegation that defendants USOC, USA Taekwondo, and/or SafeSport stopped or delayed

an investigation were true, Defendants Lopez had no part in that conduct, and the claim

that they would have been a "co-conspirator" in such conduct would be nonsensical; and

(iii) the very media stories that *Plaintiffs generated* establish that it was the *Plaintiffs* who

have stopped, hindered and delayed the SafeSport investigations by their own refusal to cooperate.[4]

The Plaintiffs' refusal to participate in the SafeSport arbitration is hardly surprising:  having alleged that SafeSport is ineffective and was set up by the USOC to be ineffective, any cooperation by the Plaintiffs with SafeSport or the USOC (or even USAT for that matter) is against their own financial interests.  In this regard, it is the Plaintiffs who have made potential financial reward their paramount interest, and the hypocrisy of their allegations is clear to anyone who is paying attention.

    2.   <u>There Is No "Pattern of Racketeering Activity"</u>

Courts use the "pattern" requirement to determine whether a case *actually* merits use of the civil RICO statute.  See, e.g., *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000).  In order to sufficiently show a pattern of racketeering activity, a plaintiff must allege that predicate acts of racketeering pose a threat of *continued* criminal activity.  *H.J. Inc. v. Nw Bell Tel. Co.*, 492 U.S. 229, 239-242 (1989):

> "The legislative history, which we discussed in Sedima, supra, 473 U.S., at 496, n. 14, 105 S.Ct., at 3285, n. 14, shows that Congress indeed had a fairly flexible concept of a pattern in mind. A pattern is not formed by "sporadic activity," S.Rep. No. 91–617, supra, p. 158 (1969), and a person cannot "be subjected to the sanctions of title IX simply for committing two widely separated and isolated criminal offenses," 116 Cong. Rec., at 18940 (1970) (Sen. McClellan). Instead, "[t]he term 'pattern' itself requires the showing of a relationship" between the predicates, ibid., and of " 'the threat of continuing activity,' " ibid., quoting S.Rep. No. 91–617, at 158. "It is this factor of continuity plus relationship which combines to produce a pattern." Ibid. (emphasis added). RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity … "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat

---

[4] The Plaintiffs' refusal to cooperate with SafeSport was the direct cause SafeSport's unilateral stay of its case against Jean Lopez and resulting lifting of sanctions that it had imposed pending arbitration; the Plaintiffs' subsequent accusations against SafeSport in this lawsuit are the height of hypocrisy.

of repetition. See Barticheck v. Fidelity Union Bank/First National State, 832 F.2d 36, 39 (CA3 1987). It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. *A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.* Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated. See S.Rep. No. 91–617, at 158."  Emphasis added.

Isolated incidents of alleged criminal conduct are insufficient to establish a pattern of racketeering.  To successfully allege a pattern of racketeering activity under RICO, a plaintiff must allege that (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature.  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).  In other words, to prove a pattern of racketeering activity, it is not sufficient to simply establish two isolated predicate acts.  *Aeropower, Ltd. V. Matherly*,  511 F.Supp.2d 1139, 1151 (2007).   Here, as described further below, there is nothing alleged by the Plaintiffs to suggest that any behavior on the part of either Jean or Steven Lopez can be considered anything other than isolated allegations of criminal conduct.

   3. Plaintiffs' RICO Causes Of Action Not Related To Defendants Lopez Cannot Form A Basis Of A RICO Claim Against Them

Plaintiffs' RICO claim is woefully deficient as to Defendants Lopez. Plaintiffs fail to even allege the type of injury covered by the RICO statute.  Each Plaintiff has failed to plead long-term criminal activity, failed to plead a predicate act, failed to adequately plead intent, failed to adequately plead fraud, failed to adequately plead false pretenses,

failed to adequately plead the requisite pattern of activity, and failed to adequately plead a conspiracy within the meaning of the RICO statute.

In determining whether Plaintiffs have adequately pled a RICO claim *against Defendants Lopez*, the Court must disregard the allegations which do not involve them. See, e.g., *Capitol West Appraisals, LLC v. Countrywide Financial Corp.*, 759 F.Supp.2d 1267, 1271 (W.D. Wash. 2010) [if the complaint alleges that several defendants participated in a fraudulent scheme, "Rule 9(b) does not allow a complaint merely to lump multiple defendants together but require[s] plaintiffs to differentiate their allegations...and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  Therefore, in considering whether the RICO claim is adequately pled against Defendants Lopez, it is submitted that the Court should disregard the following allegations, which are not directed towards either Jean or Steven Lopez:

E.     Racketeering: Defendants Engage in Corrupting and False Testimony to Congress and Obstruct and Interfere with the Investigations of the Lopez Brothers to Prevent the Enforcement of Federal Laws Against Them

- All Paragraphs 171-202, and 209-255, inclusive.

843.     … "Defendants sought to obstruct and interfere with all investigations and attempts to suspend or prosecute the Lopez brothers so that they could compete at the 2016 Olympics and 2017 World Championships.  To this end, the USOC and USA Taekwondo presented false and corrupting testimony to Congressional hearings in 2018, which are official proceedings, to further derail all efforts to prosecute and suspend the Lopez brothers."

847.     The Lopez Obstruction Enterprise formed in 2014 or early 2015 as USA Taekwondo began to "investigate" the sex abuse of the Lopez brothers.

848.     The specific intent and scienter of the Lopez Obstruction Enterprise is confirmed and amplified by the earlier obstruction efforts against Plaintiffs Mandy and Heidi, which occurred during 2006-2009.  As set forth above, USAT made sure to actively discredit Mandy and threaten Heidi so that Jean Lopez and Steven Lopez could continue to deliver "medals and money" for Team USA.

21

Case 1:18-cv-00981-CMA-MEH   Document 106   Filed 09/24/18   USDC Colorado   Page 23 of 27

4.      Plaintiffs Lack Standing to Pursue a RICO Claim

Plaintiffs' injury must have resulted in "concrete" or "tangible financial loss."

*Oscar v. University Students Co-Op Ass'n*, 965 F.2d 780, 785 (9th Cir. 1992) (en banc),

*cert denied*, 506 U.S. 1020 (1992)) ["Without a harm to a specific business or property

interest – a categorical inquiry typically determined by reference to state law – there is no

injury to business or property within the meaning of RICO."]

Plaintiffs allege several tortious claims against Defendants Lopez, including

sexual misconduct.  However, all of the purported damages fall under the category of

"personal injuries," which are not compensable under RICO.  See *Oscar*, 965 F.2d at

785; *Allman v. Philip Morris, Inc.,* 865 F. Supp. 665, 668 (S.D. Cal. 1994) ("for the

purposes of bringing an action under RICO the courts have been clear that even the

economic consequences of personal injuries are not compensable under RICO.").

Nothing within Plaintiffs' 191 pages of their complaint direct this court to any injury

upon which relief can be granted based upon their RICO-specific claims.  As stated

above, Plaintiffs are unable to establish Defendants Lopez as part of a RICO enterprise;

however, even if they were able to do so, their damages would be speculative.

5.      Plaintiffs Fail to Allege Proximate Cause and Recoverable Damages

A claim made under RICO requires strict proximate cause from a RICO predicate

offense.  "To state a claim under civil RICO, the plaintiff is required to show that a RICO

predicate offense 'not only was a 'but for' cause of his injury, but was the proximate

cause as well."  *Hemi Group, LLC v. City of New York,* 559 U.S. 1, 9 (2010).  Therefore,

the injuries alleged throughout the Complaint must have been *directly related* to the

conduct alleged.  For this reason, the court must assess whether the alleged conduct by

Jean Lopez and Steven Lopez led directly to Plaintiffs' injuries.  See *Anza v. Idea Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  Here, as further discussed below, Plaintiffs seem to generally allege that Defendants Lopez were working *with* USAT, the USOC, *and now SafeSport* to determine the outcome of any investigation against them[5].

Here, the *only* RICO allegations made against Defendants Lopez relate to racketeering (Complaint at par. 170-255), and do not extend beyond Jean Lopez's alleged decision to select Steven Lopez to the Olympic Team (which was not solely made at his discretion), among many other athletes, long after the allegations made against Defendants Lopez allegedly took place, and which were determined not to be criminal misconduct.  See Complaint at Pars. 205-214. Plaintiffs fail to allege that the Defendants Lopez conspired to engage in any such racketeering (or any other RICO) predicate offense.  Plaintiffs have not even suggested that Defendants Lopez had any influence over either USAT or the USOC.

Provable damage to Plaintiffs' reputation and professional and business interests simply do not exist and have not been properly pled.   No further amendment can or will solve this problem, and as a result, these causes of action should be dismissed without leave to amend (at least as to Defendants Lopez).

**F. The Defamation Claim [Count 18] Must Be Dismissed As To Defendants Lopez**

To succeed on a claim of defamation in Colorado, a plaintiff must prove the following elements**:** (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages to the

---

[5] SafeSport, as it currently operates, was not in existence at the time of any of the alleged RICO conduct.

plaintiff caused by the publication." *Williams v. Dist. Court,* 866 P.2d 908, 911 n. 4 (Colo.1993).

Here, the sole basis of the alleged defamation is defendants' denial of the allegations *after they had already been made public.* The Lopez brothers' denials of Plaintiffs' allegations to USA Today in 2017 do not explicitly call the Plaintiffs liars, and even if they did, such statements are generally protected opinion, not potentially defamatory fact. Accusations of dishonesty are often treated as opinion. *Morningstar, Inc. v. Superior Court*, 23 Cal.App.4th 676, 691 (1994) (titling article "Lies, Damn Lies, and Fund Advertisements" not actionable as libel because it "cannot reasonably be read to imply a provably false factual assertion"). Moreover, courts are more likely to interpret statements as opinion when they are uttered in the context of a legal dispute, since "everyone expects the participants in such a dispute to bluster." *Information Control v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir.1980) (in context of legal dispute, "language which generally might be considered as statements of fact may well assume the character of statements of opinion.").

Additionally, Defendants Lopez are entitled to the qualified "privilege of self-defense" and they are within their rights to defend their reputation. If a statement is "privileged" under the law, it can't be the basis for a defamation claim. This common-law privilege grants those who are attacked with a limited right to reply. Under the common law, the publication of a defamatory attack constitutes an "occasion" triggering the conditional privilege of reply, but the protection of that privilege is lost if it is "abused." *Foretich v. Capital Cities/ABC*, 37 F.3d 1541, 1559 (4th Cir. 1994).

An individual is entitled to protect his reputation by publishing statements in response to or to refute injurious statements made by another. It has long been recognized that if someone is "attacked in a newspaper, [he] may write to that paper to rebut the charges, and [he] may at the same time retort upon [his] assailant." *Id.* (quoting William Blake Odgers, A Digest of the Law of Libel and Slander * 228 (1st Am. ed. Bigelow 1881)); *Conroy v. Fall River Herald News Publ'g Co.*, 28 N.E.2d 729, 730 (Mass. 1940) ("A libel may be privileged on the ground of self defence," because when an individual is attacked, he "has a right to defend himself" (quotation marks omitted)). The privilege of self-defense includes the right to "brand the accusations as false and calumnious" and to "comment upon the motives of the accuser." *Conroy*, 28 N.E.2d at 730. Without this privilege, individuals could be publicly accused of serious crimes without any ability to protect themselves that did not carry the risk of being embroiled in a defamation action.

Defendants Lopez were defending themselves when they denied the injurious allegations made against them by Plaintiffs, without making additional claims against the Plaintiffs for their false and egregious allegations, as was their right to do.

For these reasons, these Counts against Defendants Lopez must be dismissed.

## III.    CONCLUSION

For all the above reasons, Defendants Lopez respectfully requests that the instant Motion to Dismiss be granted without leave to amend.

Respectfully submitted this 24th day of September, 2018.

s/ Howard L. Jacobs
Law Offices of Howard L. Jacobs
31111 Agoura Rd., Suite 225
Westlake Village, California 91361
Telephone:  (805) 418-9892
Facsimile:  (805) 418-9899
Email:  howard.jacobs@athleteslawyer.com

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5 and the Court's Local Rules, the undersigned hereby certifies that on this day, September 24, 2018, a copy of the foregoing document entitled ***DEFENDANTS STEVEN LOPEZ AND JEAN LOPEZ'S MOTION TO DISMISS [FED. R. CIV. P. 12(b)(6)]*** was filed and served through the Court's electronic filing system (CM/ECF) upon all registered parties and their counsel.

s/ Howard L. Jacobs
Law Offices of Howard L. Jacobs
31111 Agoura Rd., Suite 225
Westlake Village, California 91361
Telephone:  (805) 418-9892
Facsimile:  (805) 418-9899
Email: howard.jacobs@athleteslawyer.com