**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN,
KAY POE,
and JANE DOES 6-50,
     Plaintiff(s),

v.

UNITED STATES OLYMPIC COMMITTEE,
UNITED STATES TAEKWONDO ASSOCIATION,
U.S. CENTER FOR SAFESPORT,
STEVEN LOPEZ,
JEAN LOPEZ,
and JOHN DOES 1-5,
     Defendant(s).

---

**DEFENDANT UNITED STATES OLYMPIC COMMITTEE'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

---

This case stems from allegations of sexual and physical abuse perpetrated by Defendants Jean and Steven Lopez against Plaintiffs, five taekwondo athletes who formerly trained with Defendant USA Taekwondo ("USAT"). There is no debate that these allegations involve gravely serious conduct or of the urgent need to address the issue of sexual abuse in all contexts. The USOC applauds and supports these athletes for speaking out about what they have suffered. Moreover, as the leader of the Olympic movement in the United States, the USOC is appropriately a subject of and a participant in discussions concerning moral and social responsibility for sexual abuse in sport. To

that end, the USOC has instituted and is building on vital reforms in the field of amateur sports to increase awareness, reporting, and investigation of abuse, and has devoted new and increased resources to help athletes who have been the victims of abuse.

The operative complaint ("SAC") in this case, however, asks the Court to assign *legal* responsibility to the USOC for the alleged abuse, a different inquiry that must be decided under the rules of law.  Those rules mandate that this action be dismissed and the putative nationwide class actions be stricken.

*First*, the SAC fails to allege essential elements of each cause of action:

● The SAC does not—and could not—allege that the USOC *committed* any of the horrific crimes Congress subsumed in Masha's Law and/or the Trafficking Victims Protection Act ("Sex Trafficking Act"), namely forced labor, sex trafficking of children, and obstruction of justice.  Nor does the SAC allege any facts to suggest USOC acted with *specific intent* to aid and abet such criminal conduct, or *knowingly benefited* from participation in a criminal venture.

● The SAC fails to allege facts to plausibly establish critical elements of Plaintiffs' Racketeer Influenced and Corrupt Organizations ("RICO") Act claims, such as standing.

● Each of the negligence claims fails to allege that the USOC owed the requisite duty, breached that duty, or caused harm to Plaintiffs.

● The outrageous conduct claim fails to allege any outrageous act committed by USOC with the intent to cause emotional distress.

*Second*, the class allegations are facially overbroad and should be stricken.

## I.    BACKGROUND

The USOC is a federally-chartered, non-profit organization that coordinates athletic activity in the United States relating to the Olympic, Paralympic, and Pan-American Games.  It operates pursuant to the Ted Stevens Amateur Sports Act of 1978,

which empowers the USOC to recognize a single "National Governing Body" (NGB) for each sport, of which Defendant USAT is one of 50.  36 U.S.C. § 220521.  Congress specifically declined to give the USOC control over the day-to-day affairs of NGBs.  Instead, an NGB must "demonstrate[] that it is autonomous in the governance of its sport, in that it (A) independently decides and controls all matters central to [such] governance; (B) does not delegate [such] decision-making and control . . . ; and (C) is free from outside restraint."  36 U.S.C. § 220522(a)(5).  The USOC's statutory role with respect to NGBs is limited to choosing which organization to recognize as an NGB, ensuring that NGBs meet eligibility criteria, and providing financial assistance to NGBs in support of sport and athlete programs.  36 U.S.C. § 220505.

Plaintiffs Mandy Meloon, Heidi Gilbert, Amber Means, Gabriela Joslin, and Kay Poe formerly competed with USAT.  *See* SAC ¶¶ 376, 487, 538, 610, 673.  Defendant Jean Lopez is a taekwondo coach and his brother Steven is an athlete.  *See id.* ¶¶ 76, 82.  The SAC alleges that both Lopez brothers sexually abused Plaintiffs during and after their careers with USAT.  *See id.* ¶¶ 362-722.  In an effort to link the USOC to the Lopezes' alleged conduct, the SAC dedicates over 30 pages to lengthy quotations of newspaper articles and opinion pieces that, in turn, frequently quote Plaintiffs' counsel or the previous version of Plaintiffs' complaint as source material.  *See, e.g.*, *id.* ¶ 33.

Based on these allegations, the SAC asserts four categories of claims against the USOC:  (1) four federal claims pursuant to Masha's Law, 18 U.S.C. § 2255, and/or 18 U.S.C. § 1595(a) ("Sex Trafficking Act"), for forced labor by means of threats of serious harm, sex trafficking of children, benefitting from a venture that engages in sex trafficking of children, and obstruction of sex trafficking enforcement; (2) one claim for violation of the RICO Act; (3) four state-law negligence-based claims; and (4) a state-law outrageous conduct claim.

## II.     LEGAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss" under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint must contain more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "labels and conclusions."  *Id.* at 678.  Instead, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel."  *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000).

## III.    ARGUMENT

### A.     All Causes of Action Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### 1.     The SAC Fails to State a Claim Under Masha's Law or the Sex Trafficking Act (Counts 9, 11, 12, 14).

Masha's Law and the Sex Trafficking Act are both federal statutes enacted to provide victims of certain slavery and sex-related crimes with civil causes of action against the perpetrators.  *See Doe v. Liberatore*, 478 F. Supp. 2d 742, 754-56 (M.D. Pa. 2007).  The Sex Trafficking Act also provides a cause of action against persons who knowingly benefit from participation in the criminal venture.  18 U.S.C. § 1595(a).

All Plaintiffs assert a claim against the USOC for obstruction of justice under both the Sex Trafficking Act and Masha's Law.  SAC ¶¶ 834-38.  In addition, Plaintiff Means alleges causes of action against the USOC for (1) forced labor under the Sex Trafficking Act, *id.* ¶¶ 794-805; (2) sex trafficking of children under both the Sex Trafficking Act and Masha's Law, *id.* ¶¶ 812-18; and (3) benefitting from a venture that engages in sex trafficking of children by force, fraud or coercion, under both the Sex Trafficking Act and

Masha's Law, *id.* ¶¶ 819-23.

a)   **The SAC Fails to Plausibly Allege the USOC Obstructed Enforcement of Slavery or Sex Trafficking Laws.**

Plaintiffs' claim (Count 14) that USOC obstructed slavery and sex trafficking laws is facially deficient. *See* SAC ¶¶ 834-38.  The SAC's conclusory statements that the USOC "obstructed, attempted to obstruct, interfered, and or [sic] prevented the enforcement of" laws criminalizing "[t]rafficking with respect to . . . slavery," are supported by no facts.  *Id.* ¶ 836; 18 U.S.C. § 1590.  The SAC does not identify any actual *law enforcement* effort that the USOC ostensibly obstructed or how it supposedly did so.  *Id.*  In fact, the SAC does not allege that the USOC *knew* of any law enforcement efforts against the Lopez brothers.  *See, e.g.*, SAC ¶ 231.

New to the SAC—in a transparent attempt to avoid statute of limitations problems—are allegations that the USOC engaged in obstruction through "false and deceptive testimony to Congress" in 2018 about the USOC's budget, accounting practices, and corporate structure.  *See* SAC ¶¶ 170-77.  But those allegations, even if true, must be disregarded because they are entirely unrelated to enforcement of human trafficking laws.  Nowhere does the SAC allege that the USOC provided false statements to officers, destroyed evidence, tampered with witnesses, or otherwise interfered with enforcement of criminal slavery or sex trafficking laws.  *Compare Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 287-88 (D. Conn. 2013) (allegations that defendants "manipulated" a private investigation of alleged sexual abuse by preventing questioning of witnesses, denying the accusations, and removing a computer "to prevent investigators from discovering that [the computer] contained pornographic material involving young boys" insufficient to allege that defendants "knowingly sought to obstruct enforcement of the federal statute criminalizing the commercial sex trafficking of children"), *with Martinez v. Calimlim*, 651 F. Supp. 2d 852, 864 (E.D. Wis.

5

2009) (allegations that defendant "lied to a federal agent in an attempt to obstruct [the agent's] effort" to find plaintiff whom defendant had allegedly enslaved and kidnapped were sufficient to state a claim); *U.S. v. Jacquemain*, 368 F. Supp. 2d 800, 803 (E.D. Mich. 2005) (obstruction of justice requires proof of "intent to hinder, delay, or prevent the communication of truthful information to a federal law enforcement officer or judge").

USAT's conduct, not the USOC's, is the focus of the SAC's obstruction allegations.[1]  The SAC's vague allegations that USAT "consult[ed] with" the USOC before the delay of USAT's investigation of the Lopez brothers and "worked in concert" with the USOC to permit the Lopez brothers to participate in the 2016 Olympics (SAC ¶¶ 222, 225) do nothing to establish that the *USOC* took any action to deliberately interfere with the enforcement of laws prohibiting involuntary servitude, peonage, slavery, or forced labor.  18 U.S.C. § 1590.   Plaintiffs' obstruction claims therefore fail.

Although the USOC strongly prefers to address the obstruction claims on their merits, it would be irresponsible not to acknowledge that, to the extent the claims are based on alleged obstruction prior to April 25, 2008, *see* SAC ¶¶ 178-216, they are time-barred.  Whether brought under the Sex Trafficking Act or Masha's Law, the applicable statute of limitations for Count 14 is the later of ten years after the cause of action arose or ten years after the plaintiff reached age 18 (which all Plaintiffs did in or before 2008).  *See* 18 U.S.C. § 1595(c); 18 U.S.C. § 2255(b).  This lawsuit was filed on April 25, 2018.  Alleged obstruction before April 25, 2008 is therefore time barred.

### b)  The SAC Fails to Plausibly Allege the USOC Violated Sex Trafficking Laws.

Plaintiff Means alone alleges serious and unsubstantiated violations of sex

---

[1] The SAC alleges (1) USAT conducted an inadequate internal investigation of Plaintiffs' complaints of sexual abuse, SAC ¶¶ 178-92; (2) USAT delayed its internal investigation of those complaints, *id.* ¶ 226; and (3) USAT did not give the FBI enough information about the allegations of abuse against the Lopez brothers, *id.* ¶¶ 229-30.

trafficking laws by the USOC.  She claims that the USOC committed direct violations, aided and abetted the violations of others, and knowingly benefitted from participation in a venture that engaged in child sex trafficking.  Black's Law Dictionary provides the following illustrative examples of human trafficking offenses: "forced prostitution, forced marriages, sweat-shop labor, slavery, and harvesting organs from unwilling donors." The SAC contains no allegations that even remotely suggest the USOC engaged in such abhorrent conduct.  Counts 9, 11, and 12 should therefore be dismissed outright.

_Direct Violations_.  The SAC alleges generally that the USOC "knowingly recruited, enticed, and transported [Plaintiff Means] to various tournaments and training centers."  SAC ¶ 816.  It also alleges that "Steven Lopez had sex with [Plaintiff Means] in several states and countries" "[w]hile attending USOC and USAT sponsored events in 2008."  _Id._ ¶ 688.  Absent from these allegations is any assertion that the USOC knew that "means of force, threats of force, fraud, [or] coercion" would be used to cause Ms. Means to engage in a commercial sex act.  18 U.S.C. § 1591(a).[2]  Further, the SAC does not allege that abuse occurred at any tournament or training center to which the USOC purportedly transported her.  Instead, the specific alleged abuse occurred in private settings.  _See_ SAC ¶¶ 684 (alleging abuse at "Houston area rental property owned by Steven Lopez"), 694 (alleging abuse at "a party at a friend's condo"), 707 (alleging abuse "[a]t a party"); _see also id._ ¶¶ 655-722.  These allegations fall far short of establishing _sex trafficking_ by the USOC.

_Aiding and Abetting_.  Counts 9, 11, and 12 allege that the USOC "aided and abetted" the Lopez brothers' violations of forced labor and child sex trafficking laws.

---

[2] To state a claim under the Sex Trafficking Act, 18 U.S.C. § 1591, the SAC must allege that the USOC "knowingly" "recruit[ed], entic[ed], harbor[ed], [or] transport[ed], . . . by any means a person" with knowledge that "means of force, threats of force, fraud, [or] coercion" would be used to "cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a).

SAC ¶¶ 802, 816, 821.  The Sex Trafficking Act, however, does not provide for aiding and abetting liability.  *Noble v. Weinstein*, 2018 WL 3863452, at *14 (S.D.N.Y. Aug. 14, 2018) ("*[T]here is no general presumption that the plaintiff may also sue aiders and abettors*" when statutory language does not explicitly so provide.).  *Noble's* reasoning applies equally to Masha's Law, which is also silent with respect to aiding and abetting liability, so Counts 9, 11, and 12 should be dismissed on this basis as well.  *Id.*; *see* 18 U.S.C. § 2255.

Even if aiding and abetting liability were available under Masha's Law, it would require specific intent, *i.e.*, a "showing of intent to further the criminal venture," *U.S. v. Delgado-Uribe*, 363 F.3d 1077, 1084 (10th Cir. 2004), or proof that the defendant "associated himself with and participated in an unlawful venture in a way that shows he wished to bring it about, and that he acted to make the venture succeed."  *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1054 (E.D. Mo. 2011) (dismissing Masha's Law claim for aiding and abetting child sex trafficking where complaint "d[id] not describe the specific intent required for aiding and abetting").

Cases upholding convictions for aiding and abetting sex trafficking involve explicit evidence of prostitution.  *See U.S. v. Pringle*, 765 F.3d 445, 450 (5th Cir. 2014) (sufficient evidence of aiding and abetting sex trafficking where defendant "took the money that [the victims] earned from their prostitution and used some of it to pay for hotel rooms," "bought the laptop [the victims] used to advertise their [prostitution] services," drove the victims to their appointments, and took photographs of them for use in advertisements); *U.S. v. Tavares*, 705 F.3d 4, 20-21 (1st Cir. 2013) (sufficient evidence of aiding and abetting transportation of a minor where defendant "was a pimp," "worked as one with" the perpetrator, and "had more than a coincidental association with [the perpetrator's] criminal venture, and, indeed, had joined the illegal enterprise").

The SAC alleges no remotely comparable conduct.  The SAC does not even allege facts to support the conclusory allegation that the USOC knew or should have known of the Lopez brothers' abuse of Ms. Means.  SAC ¶¶ 655-722, 821.  Courts have rejected similar allegations—even where defendants "had reason to suspect" or were deliberately ignorant of the alleged offenses—absent "consciously shared . . . knowledge of the underlying substantive offenses, as well as the specific criminal intent to commit them."  *Liberatore*, 478 F. Supp. 2d at 756.  The SAC's repeated statement that the USOC was motivated by "medals and money" does nothing to remedy this deficiency.  *See, e.g.*, SAC ¶¶ 14, 38, 41, 227, 594.  That allegation addresses the USOC's supposed motive rather than its state of mind.

*Knowing Benefit from Participation in a Child Sex Trafficking Venture.* The SAC contains no factual allegations supporting the claims that the USOC "knowingly benefited from participation in a venture" to obtain Plaintiff Means' labor by means of force or to transport her for commercial sex acts.  SAC ¶¶ 796, 821.

 "[P]articipation in a venture" requires allegations of "specific conduct that further[s] a sex trafficking or forced labor venture.  *Noble*, 2018 WL 3863452, at *13. "The defendant's mere membership in the venture is insufficient if he is ignorant of the venture's [criminal] activities (and the means and methods thereof)."  *U.S. v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016).  Even assuming the Lopez brothers were engaged in sex trafficking or forced labor, the SAC must—but does not—adequately allege the USOC's knowing participation in that venture.

Count 9 alleges that the USOC knew or recklessly disregarded "the fact that the [sex trafficking] venture was engaged in the providing or obtaining of Amber's labor or services by means of force," SAC ¶ 796, but the SAC provides no facts to support that contention.  Not only does the SAC fail to allege the USOC's knowledge, it fails to allege

any specific conduct by the USOC furthering the supposed venture.[3]  Similarly, the SAC alleges in conclusory terms that the USOC "knowingly benefitted from the exchange of the 'medals and money' delivered by the Lopez brothers and the 'First Family' of taekwondo at Olympic competitions," *id.* ¶ 133, but does not plausibly tie that purported benefit to the USOC's alleged knowing participation in forced labor or sex trafficking.

As noted above, the USOC strongly prefers to address the sex trafficking/forced labor claims on their merits.  But the USOC must direct the Court's attention to the fact that, to the extent Counts 9 and 12 rely on a "knowing benefit from participation in a criminal venture" theory, they are time-barred.  Congress amended the Sex Trafficking Act on December 23, 2008 to provide a cause of action against "whoever knowingly benefits" from participation in a criminal venture.  *See* Pub. L. No. 110-457, § 221, 122 Stat. 5044, 5067 (2008).  The expanded cause of action "cannot apply retroactively to conduct" before that date.  *Ditullio v. Boehm*, 662 F.3d 1091, 1100 (9th Cir. 2011).  The only post-2008 sexual abuse Ms. Means alleges occurred at a private party in 2013, after she retired from competitive taekwondo.  Those allegations alone are insufficient to support a claim that the USOC "knowingly benefited" from participation in a criminal venture with the Lopez brothers.  *See* SAC ¶¶ 706-07.

### 2.     The SAC Fails to State a Claim under the RICO Act (Count 15).

In another attempt to avoid statute of limitations deficiencies, the SAC adds a RICO claim against all defendants under 18 U.S.C. §§ 1962(c) and (d), based on conduct beginning in 2014.  It alleges that the defendants formed a "Lopez Obstruction Enterprise" around 2014 and conducted "racketeering activity" to interfere with

---

[3] The SAC does not assert, for example, that the USOC transported Ms. Means to a specific place where sex trafficking occurred, that she was housed in a USOC-controlled facility while engaged in forced labor, or that the USOC physically forced Ms. Means to participate in taekwondo.

investigations into the Lopezes.  SAC ¶¶ 839–72.  The federal RICO statute makes it unlawful for a "person" to participate, or conspire to participate, in a "pattern of racketeering activity" through an enterprise engaged in or affecting interstate commerce.  18 U.S.C. §§ 1962(c), (d).  The SAC fails to state a RICO claim because (1) the injuries alleged in the SAC have been held, repeatedly, to be insufficient to meet the statute's requirements for standing; and (2) the SAC fails to plausibly allege *any* of the substantive elements of a RICO claim.

**a)**      **The SAC Fails to Allege Standing to Bring a RICO Claim.**

A valid RICO claim requires that the plaintiff suffered injury to her "business or property by reason of [the RICO] violation."  18 U.S.C. § 1964(c); *see also Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002).  Neither a personal injury, such as "physical or emotional harm," nor "pecuniary losses flowing from [a] personal injur[y]," will support a claim. *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 918 (3d Cir. 1991); *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565–66 (6th Cir. 2013).

Here, the SAC alleges, in vague terms, two types of injuries from the alleged RICO violation: (1) emotional distress[4] and (2) "severe reputational injury and damage to [Plaintiffs'] professional and business interests," including Plaintiff Gilbert's coaching business.[5]  Emotional distress is a paradigmatic personal harm; so is reputational injury. The Tenth Circuit has expressly held that "injury to [one's] reputation" is a personal injury and therefore "not the type of injury[] . . . redressable by . . . RICO."  *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006).  Other courts have agreed, even where reputational injury "could result in a loss of income."  *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 619, 621, 623 (7th Cir. 2012) (defendants' alleged destruction of

---

[4] SAC ¶¶ 467, 484, 522, 654, 720.

[5] *Id.* ¶ 871; *see also id.* ¶¶ 482, 486, 516, 577, 585–86, 595–96, 643, 652–53, 722.

the plaintiff's "reputation" and, consequently, his "ability to make a living in Chicago" as a tax consultant, did not establish standing for a RICO claim); *see also Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) (alleged damage to plaintiffs' "business reputation" was insufficient to establish standing for RICO claim); *Kimm v. Lee*, 2005 WL 89386, *5 & n.7 (S.D.N.Y. Jan. 13, 2005).  Plaintiffs therefore lack standing to assert a RICO claim.[6]

### b) The SAC Fails to Allege Any of the Substantive Elements of a RICO Claim.

#### (1) The SAC Fails to Allege a RICO Enterprise.

The SAC fails to allege that the members of the alleged enterprise "joined together to create a distinct entity" for a common purpose as required to establish an association-in-fact enterprise.  *United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (RICO claim dismissed where the alleged activities "[were] entirely consistent with [the defendant companies] each going about [their] own business"); *see also Boyle v. United States*, 556 U.S. 938, 946 (2009).

The SAC alleges that "USAT and the USOC worked . . . as an enterprise" to obstruct investigations of the Lopez brothers.  SAC ¶¶ 222, 225–26.  The only factual support for that allegation—other than conclusory characterizations—is an article from *USA Today* stating that "USA Taekwondo consulted with the USOC on the Lopez investigations before the decision was made to allow [the Lopez Brothers] to go to [the Rio Olympics]."  *Id.* ¶ 226.  This fact, standing alone, is insufficient to support the

---

[6] The SAC also fails to establish that the alleged predicate acts were the "but for" cause of Plaintiffs' injuries.  Plaintiffs allege that the "Lopez Obstruction Enterprise" interfered with investigations of the Lopez brothers and led to false testimony before Congress. But the SAC does not plausibly allege the required "direct relationship" between the predicate acts and Plaintiffs' purported emotional or reputational injuries.  *See Hemi Grp., LLC v. N.Y.C.*, 559 U.S. 1, 9 (2010).

existence of a RICO enterprise.  The SAC itself explains that the USOC and USAT have a congressionally-created relationship with respect to the United States' participation in Olympic competition, *id.* ¶¶ 87–88, and that the USOC interacts regularly with NGBs like USAT regarding administrative issues.  *Id.* ¶¶ 98–102.

Further, the SAC fails to allege *any* facts establishing that Jean Lopez, Steven Lopez, and the U.S. Center for SafeSport "joined together" with USAT and the USOC to create a RICO enterprise.  The conclusory allegation that all of the defendants "functioned as a continuing unit  with the . . . common purposes [sic] of keeping the Lopez brothers involved in Olympic taekwondo" fails to meet the *Iqbal* pleading standard.  *See Iqbal*, 556 U.S. at 678.  Similarly, the SAC fails to allege any facts establishing that a defendant acted on behalf of the enterprise (rather than its or his own interest) or directed the enterprise's affairs.  *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *United Food & Commercial Workers Unions*, 719 F.3d at 854.

### (2)    The SAC Fails to Allege "Racketeering Activity."

The act of conducting an enterprise through a pattern of racketeering activity "must be established as to each individual defendant."  *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027–28 (8th Cir. 2008); *see also U.S. v. Persico*, 832 F.2d 705, 714 (2d Cir.1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise.").  The SAC alleges as predicate acts racketeering violations of: (1) 18 U.S.C. §§ 1589 (forced labor and services), (2) 1590(b) (obstructing and interfering with enforcement of the Sex Trafficking Act), (3) 1591 (sex trafficking), and (4) 1512(c)(2) (corruption of an official proceeding).[7]  SAC ¶ 861.  As discussed,

---

[7] The SAC incorrectly cites 18 U.S.C. § 1592(c)(2) as criminalizing "corruption of an official proceeding."  SAC ¶ 861. Plaintiffs appear to be referring to 18 U.S.C. § 1512(c)(2), to which the SAC refers in a different paragraph.  *See* SAC ¶ 864.

*supra* at 4-10, the SAC's allegations fail to plausibly support violations of §§ 1589, 1590, or 1591 by USOC.  In addition, the predicate violations of §§ 1589 (forced labor or services) and 1591 (sex trafficking) allegedly occurred years before the alleged formation of the "Lopez Obstruction Enterprise" in 2014.  SAC ¶ 847.

The SAC similarly fails to plausibly allege a violation of § 1512(c)(2), which criminalizes "corruptly . . . obstruct[ing], influenc[ing] or imped[ing] any official proceeding, or attempt[ing] to do so."  The SAC asserts that the USOC "engaged in corrupt testimony to Congress . . . to cover-up and interfere with the investigation of the Lopez Brothers."  SAC ¶ 170.  In support of this claim, the SAC first alleges that, in testimony to Congress, former CEO Scott Blackmun incorrectly compared the size of the USOC's budget to that of the NGBs' and misstated the percentage of the USOC's budget spent on administrative costs.  *Id.* ¶ 171.  Even if the cited figures were incorrect, it would be unreasonable to infer that Mr. Blackmun intended to "subvert, impede, or obstruct" Congress's investigation by misstating two ancillary financial figures that could be fact-checked against USOC's public financial disclosures.  *Cf. U.S. v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013).  *See* SAC ¶ 173.

Second, the SAC alleges that Mr. Blackmun and Susanne Lyons (the USOC's interim CEO) incorrectly characterized the USOC's authority to control NGBs and its "legal liability" for the conduct of NGB personnel.  *Id.* ¶¶ 151–52, 171.[8]  Stating one's understanding of a legal question, however, cannot constitute obstruction of an official proceeding.  *See United States v. Liew*, 856 F.3d 585, 603 (9th Cir. 2017) ("general denial of legal liability" to court cannot support conviction under § 1512(c)(2)).

Finally, the SAC alleges that Mr. Blackmun falsely testified that the USOC first

---

[8] The SAC concedes that, later in her testimony, Ms. Lyons corrected the alleged misstatements.  *See* SAC ¶ 166.

learned of sex abuse at NGBs in 2010.  SAC ¶ 284.  This claim rests on a misstatement of Mr. Blackmun's testimony.  Mr. Blackmun said only that, after he took over as CEO in 2010, he learned of sexual abuse allegations in *swimming*, and that information led to the creation of a USOC working group.  *Id.* ¶ 282.  Furthermore, alleged efforts to petition Congress for lenient oversight, *id.* ¶¶ 171, 221, cannot form the basis of RICO liability under the *Noerr-Pennington* doctrine, *see Int'l Bhd. of Teamsters v. Phillip Morris, Inc.*, 196 F.3d 818, 826 (7th Cir. 1999).  Under that First Amendment-based doctrine, those who petition the government for redress are "generally immune from statutory liability for their petitioning conduct," including RICO liability.  *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).

### (3)   The SAC Fails to Allege a "Pattern" of Racketeering Activity.

A RICO violation requires a "pattern" of racketeering activity comprised of "at least two acts of racketeering activity" within a ten-year period.  18 U.S.C. §§ 1961(5); 1962(c).  The acts must be *related* and *continuous*.  *Tal*, 453 F.3d at 1267–68; *Resolution Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993).  Here, the SAC alleges that the "Lopez Obstruction Enterprise [was] formed in late 2014 or early 2015" so that Jean and Steven Lopez "could compete and coach at the 2016 Olympics in Rio and at the National Championships in 2017."  SAC ¶¶ 222, 847, 849.  The acts allegedly taken to further this goal were "secret[] interfere[nce]" with Donald Alperstein's investigation of Jean and Steven Lopez from 2015 to 2017 (and other unspecified acts to delay the SafeSport investigation), *id.* ¶¶ 218, 225–26, 239, and offering "corrupt testimony to Congress" in 2018, *id.* ¶¶ 170–77.

The SAC itself establishes that the alleged predicate acts lacked the "same or similar purposes, results, participants, victims, or methods of commission,"  *H.J. Inc. v.*

*Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989), and therefore were not a pattern of activity. The goal of defendants' alleged obstruction was supposedly to allow Jean and Steven Lopez to coach and compete in Olympic and World Championship competitions. *See* SAC ¶ 222. In contrast, the goal of defendants' alleged "corrupt testimony" to Congress in 2018 was purportedly to "avoid[] restructuring of" or "reforms" on the USOC and USAT. *See id.* ¶¶ 171, 221. These acts also lack "continuity"—a "commonsense" determination based on factors such as "duration of the related predicate acts," "number of victims," "variety of racketeering acts," "whether the injuries caused were distinct," and "complexity and size of the scheme." *Resolution Tr. Corp.*, 998 F.2d at 1543–44.[9]

### 3. The SAC Fails to State Any of the Four Asserted Negligence Claims (Counts 16, 17, 19, 20).

#### a) The SAC Fails to State a Claim for Negligent Supervision or Negligent Retention.

The SAC fails to allege (1) the existence of a legal duty; (2) breach of that duty; and (3) damages, all of which are essential elements of these causes of action. *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005) (en banc).

##### (1) The USOC Owed No Legal Duties with Respect to the Supervision and Retention of the Lopezes.

The USOC owed no legal duty with respect to the Lopez brothers for at least three reasons.

*First,* the SAC does not (and cannot) sufficiently allege that the Lopez brothers were the USOC's employees or agents. It is "axiomatic" that the duty to supervise and properly retain requires the existence of "an employment or agency relationship." *Moses v. Diocese of Colo.*, 863 P.2d 310, 324, 327 (Colo. 1993) (en banc). The SAC's

---

[9] Because the SAC fails to state a claim under § 1962(c), it necessarily fails to state a § 1962(d) claim for conspiracy to commit a RICO violation. *See Tal*, 453 F.3d at 1270 ("If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law.").

conclusory, boilerplate allegations that the Lopez brothers were USOC "agents, servants, and/or employees . . . cloaked with actual and apparent authority," *see* SAC ¶¶ 147, 286–87, are insufficient to meet the *Iqbal* pleading standard and must be disregarded.  *See Iqbal*, 556 U.S. at 678; *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (rejecting as conclusory plaintiffs' "general statement that Wal–Mart exercised control over their day-to-day employment").  Moreover, agency does not depend "on what the relationship is called," and thus the labels the SAC attaches to the USOC/Lopez brothers relationship are wholly irrelevant.  *See Moses*, 863 P.2d at 324.

In *Moses* the Colorado Supreme Court found an agency relationship between the Episcopal Diocese of Colorado and a priest because the Diocese controlled "the manner of work performed by [the] priest as well as the hiring, compensation, . . . and discipline of the priest."  863 P.2d at 325.  Here, by contrast, "[e]ach NGB is charged with selecting the athletes, officials, and coaches for its sport at the Pan Am Games, World Championships, World Cups, and Olympic Games."  SAC ¶ 95.  The SAC alleges some relationship between USAT and the USOC (e.g., the USOC "approv[es] the submissions of the coaches, athletes, and officials by each NGB for participation in protected competitions," *id.* ¶ 97; has "the power to enforce compliance *by the NGBs* with all requirements of the Sports Act" by "put[ting] . . . NGB[s] on probation," "replac[ing] the entire board of directors of an NGB," "withdraw[ing] funding of an NGB," or "de-ceritfy[ing] an NGB," *id.* ¶¶ 157; and can "force NGBs to adopt policies and procedures to ensure the physical safety of athletes," *id.* ¶ 158).

The SAC, in fact, fails to allege that the USOC exercises any control over individual athletes and coaches.  *See Doe I*, 572 F.3d at 683 (Wal-Mart's right to terminate suppliers did not give Wal-Mart control over suppliers' employees).  That Jean Lopez was a coach at Sports Act-protected competitions, SAC ¶ 82, and that Steven

Lopez was an athlete who "represented the USOC" at such events, *id.* ¶ 350, does not demonstrate that the USOC selected USAT's coaches or athletes, determined their compensation, or controlled their "manner of work," such as training regimens, coaching techniques, schedules, or workplace interactions.  Nor does the claim that the USOC approved athletes' and coaches' entry into the events and provided them with credentials, *id.* ¶¶ 97, 400, or entered into agreements with athletes regarding advertising, sponsorship, and the use of logos during certain games, speak to the essential elements needed to establish an agency relationship.  *See id.* ¶¶ 105–06.

The SAC's reliance on the allegation that the USOC provided the Lopezes with "grants, stipends, and other forms of financial compensation" is similarly off point.  *Id.* ¶ 423.  The SAC makes clear that these payments were for travel expenses, per diems, and performance bonuses and grants in connection with specific events, *see, e.g., id.* ¶¶ 250, 343, 350, 373, which is entirely consistent with the USOC's statutory mandate to provide financial support to the NGBs and their athletes, 36 U.S.C. § 220505.  The fact that USOC may have reimbursed the Lopez brothers' travel to competitions or rewarded them for competitive success does not support a reasonable inference that, by these alleged payments, the USOC controlled the Lopez brothers' compensation or "manner of work" such that they were USOC agents or employees.

*Second*, even if the SAC alleged facts showing that the USOC exercised control over the Lopezes, its duty would have been to prevent an unreasonable risk of injury to those whom *it knew or should have known* they might harm.  *Keller*, 111 P.3d at 448-49 (existence of a duty "boils down" to whether "the employer kn[ew] that harm may result from the employee's conduct and . . . [was] given the opportunity to control such conduct")  The SAC alleges that the USOC first had "notice" of Jean and Steven Lopez's alleged criminal propensities in 2006.  SAC ¶¶ 876–77, 889–90.  However, all

of the alleged attacks against Plaintiffs Meloon, Poe, and Gilbert pre-dated the alleged notice. *See id.* ¶¶ 362–486 (Meloon), 487–522 (Poe), 523–601 (Gilbert); *see also Keller*, 111 P.3d at 448 (employer liable only if it "antecedently had reason to believe that an undue risk of harm would exist because of the employment").

*Third*, even if the USOC had the ability to control the Lopezes, *and* was on notice of their alleged criminal propensities, its duty to supervise would have extended only to acts "closely enough connected with the employment in time and space" so as to give the USOC "a special opportunity to control the [agents'] conduct." *Id.* at 449. In *Keller*, the court held that a business owner knew or should have known that his manager subjected "female employees and customers to lewd behavior and sexual contact during business hours." *Id.* at 446–47. However, the case involved a sexual assault by the manager on the business premises outside of business hours. The court found those circumstances to be insufficiently connected in time and space to the manager's employment and held the employer had no duty to prevent this conduct. *Id.* at 446, 450.

The same is true here with respect to the allegations involving Plaintiffs Joslin and Means. The SAC alleges that Ms. Joslin and Steven Lopez had a sexual relationship throughout Ms. Joslin's career in taekwondo, most of which was unconnected to USOC-related events. For example, one of the alleged assaults against Ms. Joslin occurred in 2006 while she and Steven Lopez were attending the German Open in Bonn, Germany. SAC ¶¶ 606–21. The German Open is not alleged to be a "protected competition[]" in which the USOC had involvement. *Id.* ¶¶ 96–97.[10] Another alleged assault against Ms. Joslin occurred in 2011, after she had retired from taekwondo competition and begun a relationship with Jean Lopez. *Id.* ¶¶ 625, 628, 630.

---

[10] The First Amended Complaint ("FAC") expressly stated that "this 2006 competition *was not* a Sports Act-protected competition" and that "the team was sent by USA TKD and not the USOC." FAC (ECF 6) ¶ 464 n.64. That statement was deleted in the SAC.

The times and places of the alleged assaults against Ms. Means were similarly unrelated to USOC events.  The SAC alleges ongoing relations between Ms. Means and Steven Lopez, to which their occasional participation in USOC events was incidental.  For example, the SAC alleges that Steven Lopez and Ms. Means met at a University of Houston camp in 2003, began dating in 2007 when Ms. Means was 17, and began a sexual relationship in 2008.  *Id.* ¶¶ 656, 682–85.  The SAC alleges that Steven Lopez and Ms. Means had sex while they both "attend[ed] USOC and USAT sponsored events in 2008."  *Id.* ¶ 688.  But the SAC does not allege that Ms. Means remained underage at the time, nor does it allege that the USOC played any role in bringing about those sexual encounters, other than sponsoring taekwondo competitions.  And Steven Lopez allegedly assaulted Ms. Means in settings unrelated to taekwondo: one assault occurred in June 2008 after "Steven invited Amber to a party at a friend's condo in Houston, Texas," where they both lived at the time, *id.* ¶¶ 662, 691, while another occurred "[a]t a party in February 2013," two years after Ms. Means retired from taekwondo, *id.* ¶¶ 706–07.  Neither was allegedly connected with a USOC event.

### (2)  The SAC Fails to Allege the USOC Caused Plaintiffs' Harm.

Largely for the reasons discussed above, the SAC fails to allege that the USOC caused Plaintiffs' alleged harms.  Had the USOC excluded the Lopez brothers from competitions in 2006 when it allegedly learned of their criminal propensities, it would not have prevented the assaults on Plaintiffs Meloon, Poe, and Gilbert, which had already occurred.  Nor would it have prevented the assaults against Plaintiffs Joslin and Means, which were unconnected to USOC-related events.

All four of the SAC's state-law negligence claims fail on their merits and the USOC strongly prefers that they be dismissed on that basis.  But, again, the Court should note that these claims are time-barred under Colorado's general two-year statute

of limitations. *See* Colo. Rev. Stat. § 13-80-102(1)(a); *Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 602 (Colo. App. 2000) (Colorado's six-year limitations period for sexual assault on a child applies only to claims "brought against the perpetrator"). All of the abuse alleged in the SAC occurred before 2014. *See* SAC ¶¶ 362–722. The SAC alleges that the Lopez brothers' sexual abuse was "common knowledge" as of 2004, *id.* ¶¶ 663, 668, 686 & n.147, and that the USOC was aware of allegations by 2007, *id.* ¶¶ 186 n. 85, 876–77, 911 (citing Brian Gomez, Cloud Over Taekwondo, The Gazette, Aug. 19, 2007 at A1). Given that a claim accrues "on the date both the injury and its cause [we]re known or should have been known," Colo. Rev. Stat § 13-80-108, the state-law claims against the USOC accrued long before April 25, 2016, the earliest date within the limitations period. *See Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152, 159 (Colo. App. 1995) (claim for negligent supervision of pastor who sexually assaulted plaintiff accrued when she "learned that at least one other woman had similar experiences with [the pastor] and that the church authorities . . . [were] so informed").

    **b)**  **The SAC Fails to State a Claim for Negligence or Gross Negligence.**

      **(1)**  **The SAC Fails to Plausibly Establish Negligence Based on USOC's Conduct During 2006-2008.**

    Count 19 alleges that the USOC was negligent because it "fail[ed] to take action or otherwise investigate Mandy[] [Meloon's] or Heidi[] [Gilbert's] 2006-2008 grievances regarding" Jean and Steven Lopez. SAC ¶ 943. However, as described above, the SAC does not plausibly allege that any such failure by the USOC to act during this time caused the abuse Plaintiffs suffered because the abuse had already occurred or took place in locations that the USOC did not control. *See supra* at 20. Further, any state-law claims based on plaintiffs' injuries from sexual abuse are time barred. *Id.*

This claim also fails to establish a duty of care.  "Generally, a person or entity has no duty to prevent a third party from harming another."  *Davenport v. Cmty. Corr. of Pikes Peak Region, Inc.*, 942 P.2d 1301, 1305 (Colo. App. 1997).  In *Ruegsegger v. Jefferson County School District R-1*, 187 F. Supp. 2d 1284 (D. Colo. 2001), the District of Colorado held that "Colorado's common law imposes *no duty* to protect others from harm by third parties."[11]  *Id.* at 1287 (emphasis added); *see also Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1166 (D. Colo. 2001).

### (2) The SAC Fails to Plausibly Establish Negligence or Gross Negligence Based on USOC's Alleged Interference with Investigations into the Lopezes.

Counts 19 and 20 allege that USOC was negligent and grossly negligent in causing the delay of other organizations' investigations of the Lopez brothers, and that these actions caused "emotional distress, physical injuries, and economic losses" to the plaintiffs.  SAC ¶ 944, 948, 954, 958.

As an initial matter, the SAC fails to identify an applicable legal duty.  The SAC points to duties of care that the USOC supposedly owed its "member athletes."  *Id.* ¶¶ 939, 940-41.  As described above, the USOC has no "member athletes."  The SAC alleges no other duty of care potentially running from the USOC to Plaintiffs, many of

---

[11] Though Colorado courts have stated that a special relationship "between the actor and the victim" may create such a duty, *Davenport*, 942 P.2d at 1305, the SAC does not plausibly allege a "special relationship" between Plaintiffs and the USOC.  The SAC acknowledges that the USOC's relationships are with the "forty-seven NGBs recognized by USOC under the [Sports] Act," SAC ¶ 98, which exercise complete control over their respective sports.  36 U.S.C. § 220522(a)(5); *see also JES Props., Inc. v. USA Equestrian, Inc.*, 458 F.3d 1224, 1231-32 (11th Cir. 2006).  The NGBs, not the USOC, directly interact with athletes.  The relationship between Plaintiffs and the USOC is therefore unlike those that may give rise to a duty to act: "common carrier/passenger, innkeeper/guest, possessor of land/invited entrant, employer/employee, parent/child, and hospital/patient."  *Univ. of Denver v. Whitlock*, 744 P.2d 54, 58–60 (Colo. 1987) (en banc) (university has no duty to protect student from dangerous conditions in university-owned housing because it does not stand in loco parentis); *id.* at 60-61.

whom had retired from taekwondo at the time of the alleged conduct.

In the absence of any legal duty, there can be no breach.  In any event, the SAC relies on a collection of conclusory allegations of recent conduct, plainly intended to avoid the statutes of limitations.  Nevertheless, these conclusory allegations (e.g., USAT in 2015 hired an outside lawyer to investigate Jean and Steven Lopez, SAC ¶ 217) do not state that the USOC was directly involved in initiating or supervising the investigation.  Instead, the SAC resorts to further speculative, conclusory and fantastical claims that the USAT "secretly" consulted with the USOC and then delayed the investigation, *id.* ¶ 226; underfunded the U.S. Center for SafeSport ("the Center") to slow down its launch, *id.* ¶ 944(g); and gave false testimony to Congress.  *Id.* ¶¶ 171, 221, 944(f).  Even if the SAC established some duty owed by USOC, these farfetched allegations establish no breach and fail to show any plausible connection to the misconduct attributed to the Lopezes.

Moreover, the SAC fails to plausibly allege that the USOC's purportedly negligent actions, even if true, caused any legally cognizable damages.  The SAC alleges without explanation that the USOC's actions in 2014-2018 caused "physical injuries" to the Plaintiffs, but it does not allege that Plaintiffs had any contact with the Lopezes after 2013.  Colorado has "never recognized a cause of action for emotional distress grounded in negligence without proof that the plaintiff sustained physical injury or was in the 'zone of danger.'"  *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 880 n.3 (Colo. 1994) (en banc).  The SAC also fails to include any allegations of reputational or economic harm that could meet the *Iqbal* pleading standard.  *See Iqbal*, 556 U.S. at 678.  It contains only conclusory allegations that the delay of the investigations hurt the Plaintiffs' reputations and, in turn, their professional interests and business.  *See* SAC

¶¶ 482, 486, 516, 577, 585–86, 595–96, 643, 652–53, 722.[12]

### 4. The SAC Fails to State a Claim for Outrageous Conduct (Count 21).

The SAC grounds this claim in allegations that the Center reinstated Jean Lopez in August 2018.  Before it can proceed, the Court "must initially rule on the threshold issue of whether the plaintiff's allegations of outrageous conduct are sufficiently outrageous as a matter of law."  *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999) (en banc).  Conduct is outrageous if it "go[e]s beyond all possible bounds of decency" and is "utterly intolerable in a civilized community."  *Id.* at 666.  If the allegations meet this bar, then they must plausibly show that the defendant "intentionally or recklessly cause[d] severe emotional distress" by undertaking such conduct.  *Id.*

This claim fails to meet the bar for outrageous conduct.  The SAC acknowledges that, according to the Center's website, Mr. Lopez has not been fully reinstated and is still under an interim "restriction."  *See* SAC ¶ 20.  Moreover, the alleged outrageousness of the conduct is belied by the Center's explanation for its action—the inability to present the evidence needed to litigate the appeal of Jean Lopez's ban.  *Id.* ¶¶ 18–19.  A reasoned decision with which one party disagrees is not outrageous conduct.  Moreover, there are absolutely no allegations in the SAC from which to infer that the USOC intended to cause emotional distress to the plaintiffs or did so recklessly.

Furthermore, the SAC fails to allege that the USOC played any role in the reinstatement of Jean Lopez.  *See* SAC ¶¶ 18 ("*SafeSport* abruptly decided to abandon its suspension of Jean Lopez[.]"), 19 ("By insisting that live testimony of rape victims was needed during an appeal . . . *SafeSport* violated its own policies[.]"), 20 ("A search

---

[12] Because the SAC fails to allege facts that plausibly establish a claim for negligence, it necessarily fails to allege a claim under the higher standard of gross negligence: "action committed recklessly, with conscious disregard for the safety of others," *Hamill*, 262 P.3d at 954; *see* SAC ¶¶ 954(i)–(n).

of *SafeSport's* Suspension list . . . reflected that *its* decision to reinstate Jean Lopez was reckless and haphazard.") (emphasis added).  Though the SAC asserts that "SafeSport is not independent from USOC," *id.* ¶ 71, it fails to allege that any USOC personnel were involved in the Center's investigation of the Lopez brothers or its decisions regarding his status.

**B.     The Court Should Strike the SAC's Overbroad Class Allegations.**

If any cause of action survives the Rule 12(b)(6) motion to dismiss, the Court should strike both putative nationwide classes as facially overbroad.  *First*, although the allegations in the SAC concern only individual taekwondo athletes, the putative "[i]njunction" class encompasses "[a]ll USOC-governed female athletes," irrespective of their sport.  SAC ¶ 723.  *Second*, the putative "[d]amages" class encompasses all "USOC-governed female athlete[s]" who "participated in taekwondo from 2003 to present."  *Id.*  On its face, the "damages" class allegation would sweep in untimely claims against the USOC.  *See supra* at 6, 10, 20-21.  *Third*, neither the injunction class nor the "[d]amages" class is limited to athletes who suffered an alleged injury—i.e., athletes who were allegedly abused by the Lopez brothers.  Courts in this District have stricken alleged putative classes that, as here, include class members "regardless of whether [they were] ever injured" by the alleged conduct.  *Edwards v. Zenimax Media Inc.*, 2012 WL 4378219, at *5 (D. Colo. Sept. 25, 2012); *see also Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146-47 (N.D. Cal. 2010) (striking alleged putative class that "include[d] members who have not experienced any" injury); *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1046 (N.D. Cal. 2014) (same).  This Court should do the same.

**IV.     CONCLUSION**

For the foregoing reasons, all of the claims alleged against the USOC in Plaintiffs' Second Amended Class Action Complaint should be dismissed with prejudice.

25

Date: September 24, 2018

*/s/ Carolyn J. Kubota*

Carolyn J. Kubota
Mitchell A. Kamin
Michael Fields
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424-332-4800
ckubota@cov.com; mkamin@cov.com;
mfields@cov.com

David M. Jolley
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: 415-591-6000
djolley@cov.com

Lindsey Barnhart
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: 650-632-4000
lbarnhart@cov.com

John P. Craver
WHITE & STEELE, P.C.
600 17th Street, Suite 600N
Denver, CO 80202
Telephone: 303-296-2828
JCraver@wsteele.com

*Attorneys for Defendant United States Olympic Committee*

**Certification of Compliance with CMA Civil Practice Standard 7.1D(a):** At the Scheduling Conference, counsel for the USOC notified Plaintiffs' counsel that the USOC intended to file a Rule 12 motion.  Counsel for the USOC then informed Plaintiffs' counsel by e-mail of the deficiencies identified in this motion. Plaintiffs' counsel indicated they did not wish to confer about the deficiencies.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed using the Court's CM/ECF filing system, which automatically sends notice of filing to all attorneys of record, on September 24, 2018.

                                        */s/ Carolyn J. Kubota*
                                        Carolyn J. Kubota