**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00981-CMA-MEH

HEIDI GILBERT, AMBER MEANS, MANDY MELOON, GABRIELA JOSLIN,
JANE DOES 6-50, on behalf of themselves and all others similarly situated

Plaintiffs,

v.

UNITED STATES OLYMPIC COMMITTEE, USA TAEKWONDO, INC.,
STEVEN LOPEZ, JEAN LOPEZ, JOHN DOES 1-5

Defendants.

---

**DEFENDANT USA TAEKWONDO, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT**

---

Defendant USA Taekwondo, Inc. ("USAT"), by and through its attorneys, moves

pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Second Amended Class Action

Complaint [D.E. 68] for failure to state a claim on which relief can be granted.

USAT certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(a), undersigned counsel

communicated with counsel for Plaintiffs on multiple occasions prior to filing its Motion

to Dismiss Plaintiffs' First Amended Complaint [D.E. 50]. Instead of briefing the

sufficiency of the First Amended Complaint [D.E. 6], Plaintiffs chose to file their Second

Amended Complaint [D.E. 68]. The Parties stipulated that Defendants would file any

motions to dismiss the Second Amended Complaint by September 24, 2018, and that

each defendant's motion would be limited to 25 pages. D.E. 64. The Court approved the

stipulation in a Minute Order dated August 27, 2018. [D.E. 72].

## I.     INTRODUCTION

USAT moves to dismiss each count of Plaintiffs' Second Amended Complaint with prejudice.[1] Plaintiffs' federal claims against USAT may exist only through operation of 18 U.S.C. §§ 1595 and 2255. Earlier versions of those statutes bar Plaintiffs' claims against USAT, not commenced until May 2018 (at least 12 years after their claims accrued), including based on expiration of the statutes of limitation. Plaintiffs lack standing to obtain relief under 18 U.S.C. §§ 1590(b), 1591(d), 1595(a), 2255 for Obstruction, Attempted Obstruction, Interference with Enforcement. They also lack standing to obtain relief under the Racketeer Influenced and Corrupt Organizations ("RICO") Act. All of Plaintiffs' claims against USAT must be dismissed with prejudice. Plaintiffs' state law claims for defamation, negligence, gross negligence, negligent supervision, and negligent retention are barred by one and two-year statutes of limitations and/or for failure to state a claim.

## II.     PLAINTIFFS' CLAIMS

Plaintiff Heidi Gilbert filed this action against a single defendant, Jean Lopez, alleging a single cause of action for negligence, on April 25, 2018. *See generally* Original Complaint [D.E. 1]. The Complaint was amended on May 4, 2018, to add Mandy Meloon, Gabriela Joslin, and Amber Means as additional plaintiffs. *See generally* First Amended Complaint ("FAC") [D.E. 6].[2] USAT, the United States Olympic Committee ("USOC"), and Steven Lopez (Jean Lopez's brother) were added as

---

[1] USAT also incorporates by reference and adopts the arguments set forth in USOC's Motion to Dismiss the Second Amended Complaint [D.E. 108].
[2] The FAC included allegations pertaining to Kay Poe, FAC at ¶¶ 373-398, but did not indicate that she was a party.

defendants. *Id.* Plaintiffs are athletes who participated in USOC and USAT programs. *Id.* at ¶¶ 288-372, 399-547. The FAC, for the first time, asserted civil claims against USAT for alleged violations of various federal criminal forced labor and sex trafficking statutes pursuant to 18 U.S.C. §§ 1595 and 2255, along with claims for negligent supervision, negligent retention, and defamation. *Id.* at Counts 2- 7, 9-10, 12-17, 19- 24, 26- 31, 33- 37. All four defendants – Steven Lopez and Jean Lopez (the "Lopez Brothers"), USAT, and USOC – filed motions to dismiss Plaintiffs' FAC on July 31, 2018. *See* D.E. 50, 58, and 59. Defendants' motions were based on expiration of the statutes of limitation applicable to their claims, as well as Plaintiffs' failure to adequately plead key elements of the causes of action asserted in their FAC. *See generally id.* Plaintiffs filed their Second Amended Complaint ("SAC") on August 24, 2018 [D.E. 68] and, in light of that filing and a stipulation between the parties [D.E. 64], this Court denied Defendants' motions to dismiss without prejudice that same day [D.E. 70].

The SAC adds Kay Poe as a plaintiff and the U.S. Center for SafeSport ("SafeSport") as an additional defendant. *See generally* SAC [D.E. 68]. The SAC repeats many of the claims asserted in the FAC, including Plaintiffs' assertion that USAT is liable for alleged violations of various federal criminal forced labor and sex trafficking statutes pursuant to 18 U.S.C. §§ 1595 and 2255 because it knowingly benefitted from such violations. *See* SAC [D.E. 68] at ¶¶ 736-37. More specifically, Plaintiffs Gabriela Joslin and Amber Means assert a right to recover against USAT under §§ 1595 and/or 2255 on the grounds that USAT benefited from the Lopez Brothers' Forced Labor in violation of 18 U.S.C. §§ 1589(a) and (b); Trafficking with

Respect to Forced Labor in violation of 18 U.S.C. § 1590(a); Sex Trafficking of Children, or by Force, Fraud, or Coercion in violation of 18 U.S.C. § 1591(a)(1); and Benefitting from a Venture that Sex Trafficks Children, or by Force, Fraud, or Coercion in violation of 18 U.S.C. § 1591(a)(2). *See id.* at Counts 4-7, 9, 11-12. All five Plaintiffs assert a claim pursuant to §§ 1595 and 2255 for Obstruction, Attempted Obstruction, Interference with Enforcement in violation of 18 U.S.C. §§ 1590(b) and 1591(d). *See id.* at Count 14. All Plaintiffs also assert claims against USAT for negligent supervision, negligent retention, defamation, and negligence, while adding a new claim against USAT for gross negligence. *See id.* at Counts 16-20. Finally, the SAC adds a claim by all Plaintiffs for Violation of The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. *See id.* at Count 15.

The crux of Plaintiffs' claims against USAT is that it possessed knowledge that former taekwondo athletes and coaches "Jean Lopez and Steven Lopez were routinely sexually exploiting, assaulting, and raping multiple female athletes that were entrusted into the protection" of USAT and USOC, but did not take appropriate action in response. *See* SAC [D.E. 68] at ¶ 285. USAT allegedly "participated in a venture to transport and traffic Plaintiffs…around the globe to be used for the sexual benefit of Defendants Jean and Steven Lopez…." *Id.* at ¶ 130. In doing so, USAT purportedly acted "as the travel agent and commercial funder for the Lopez brothers…." *Id.* at ¶ 131. Each Plaintiff makes similar allegations against the Lopez brothers, claiming that they were subject to inappropriate and/or illegal sexual misconduct related to their participation in Taekwondo between 1994 and 2006. *Id.* at ¶¶ 362-722. Plaintiffs' negligent supervision

and negligent retention claims are based on USAT's alleged failure to protect them from the Lopez brothers' sexual abuse. *Id.* at Counts 16-17. Their defamation claim is based on statements allegedly made by former USAT CEO David Askinas in August 2007 and June 2017. *Id.* at Count 18.

Plaintiff Mandy Meloon is a citizen of Texas who was born in 1981. SAC [D.E. 68] at ¶¶ 48-49, 362. She alleges – among other things -- that while participating in USAT and Olympic training programs beginning in 1994: (1) Jean Lopez insisted that she give him massages and referred to her as his "girlfriend" during the Fall of 1994, *id.* at ¶ 374; (2) another team member, Danny Kim, vaginally raped her in 1996, *id.* at ¶ 391; (3) Jean Lopez digitally penetrated her while she was sleeping during the 1997 World Cup in Egypt, *id.* at ¶¶ 402-08; (4) Steven Lopez punched her in the face in January 2002, while they were in an apparently consensual relationship, *id.* at ¶¶ 421-27; (5) Steven Lopez beat and raped her multiple times in 2004 and 2005, *id.* at ¶¶ 430-31; and (6) Steven Lopez broke into her home in May 2006, *id.* at ¶ 435. It appears that Ms. Meloon was approximately 13 years old when the alleged misconduct began in 1994 and that she was approximately 24 years old in 2005, when Steven Lopez allegedly raped her (based on a birth year of 1981 and other allegations in the Complaint).

Plaintiff Kay Poe is a citizen of Texas who was born in 1982. SAC [D.E. 68] at ¶¶ 60, 487 (alleging that Ms. Poe was 14 years old in 1996). She alleges – among other things – that (1) a 22 year old teammate began having sexual relations with her in 1997, while training in Colorado for the World Championships, *id.* at ¶¶ 488-491; (2) Jean Lopez began sexually exploiting and having sexual intercourse with her in 1999, id. at

¶¶ 497-98; (3) shortly after the 2000 Sydney Olympics, she was able to stop Jean Lopez from forcing sexual intercourse with her, *id.* at ¶ 508; and (4) Jean Lopez forced himself into her room during a 2002 trip to Florida and "dry humped" her, *id.* at ¶¶ 509-11.

Plaintiff Heidi Gilbert is a citizen of California who was born in 1982. SAC [D.E. 68] at ¶¶ 51-52. She alleges that: (1) Jean Lopez "dry humped" her against her will during the 2002 Pan-Am Championships, *id.* at ¶¶ 529-34; (2) Jean Lopez sexually assaulted her digitally and orally – after drugging her, during a 2003 competition in Germany, *id.* at ¶¶ 535-52; and (3) Steven Lopez forced her to perform oral sex in April 2003 in exchange for a ride home from the airport, *id.* at ¶¶ 555-57. It appears that Ms. Gilbert was approximately 20 years old when the alleged misconduct began in 2002 and that she was approximately 21 years old in 2003, when Steven Lopez allegedly forced her to perform oral sex (based on a birth year of 1982 and other allegations in the Complaint).

Plaintiff Gabriela Joslin is a citizen of Texas who was born in 1983. SAC [D.E. 68] at ¶¶ 54-55. She alleges that: (1) Steven Lopez pinned her against a wall with his hands on her hips, *id.* at ¶¶ 610-15; (2) turned on a pornographic movie in her hotel room, *id.* at 616-17; and (3) pulled down her pants and had sex with her, *id.* at 618-21, all while at a competition in Bonn, Germany in April 2006. It appears that Ms. Joslin was approximately 23 years old when the misconduct allegedly occurred in 2006 (based on a birth year of 1983 and other allegations in the Complaint). Ms. Joslin further alleges that she allowed Steven Lopez to have sexual intercourse with her until 2010, *id.* at ¶¶

622-24, that she began a sexual relationship with Jean Lopez sometime thereafter, at which time she believed Jean Lopez was "her exclusive boyfriend," *id.* at ¶¶ 625-28, and that she became pregnant as a result of Jean Lopez's rape of her in late 2011, *id.* at ¶¶ 630-31. The 2011 rape was Ms. Joslin's last sexual contact with Jean Lopez. *Id.* at ¶ 632.

Plaintiff Amber Means is a citizen of California who was born in 1990. SAC [D.E. 68 at ¶¶ 57-58. She alleges that: (1) Steven Lopez took her on "dates" sometime in 2007, when she was 17 years old, and kissed her after taking her to a movie, *id.* at ¶¶ 675-76; (2) She allegedly performed oral sex on Steven Lopez while on "date" when she was 17 years old, *id.* at ¶ 682-83; (3) Steven Lopez had vaginal sex with her in February 2008, when she was 17 years old, *id.* at ¶ 684; and (4) Steven Lopez raped her during a party at a friend's Texas condominium in June 2008, *id.* at ¶¶ 691-95. Ms. Means last competed as a Taekwondo athlete in April 2011, but also alleges that Steven Lopez drugged her, pinned her to a wall, and attempted to kiss her during a party in February 2013, but that she evaded him. *Id.* at ¶ 706-07.

Plaintiffs tie some of the Lopez Brothers' sexual misconduct to their participation in USAT-related events between 1997 and 2006. *See*, *e.g.*, SAC [D.E. 68] at ¶¶ 402-08 (Ms. Meloon alleging sexual assault by Jean Lopez during the 1997 World Cup in Egypt); 509-11 (Ms. Poe alleging sexual assault by Jean Lopez during the 2002 U.S. Open in Florida); ¶¶ 529-52 (Ms. Gilbert alleging sexual assault by Jean Lopez during 2002 and 2003 competitions); ¶¶ 610-21 (Ms. Joslin alleging that Steven Lopez sexually assaulted her during a competition in Germany); and ¶ 673-74 (Ms. Means alleging that

Steven Lopez engaged in "grooming behaviors" during a 2006 competition in Ohio). Plaintiffs, however, make no discernable attempt to connect post-2006 misconduct by the Lopez Brothers to USAT. For example, Ms. Joslin alleges that she "continued to allow" Steven Lopez to have sexual intercourse with her until 2010, *id.* at ¶¶ 622-24, and that Jean Lopez raped her in late 2011, when she viewed him as "her exclusive boyfriend," *id.* at ¶¶ 625-32, but makes no attempt to tie this post-2006 misconduct to USAT or to her participation in any USAT event. Similarly, Ms. Means alleges that Steven Lopez took her on dates, kissed her, engaged in oral sex with her, had vaginal sex with her in 2007, and that the two "began having an open sexual relationship in March 2008," when she was 17 years old, *id.* at ¶¶ 675-76, 682-83, 684, but does not tie this misconduct to USAT or even state explicitly that she was training with Steven Lopez at that time. Nor does Ms. Means tie to USAT her alleged rape by Steven Lopez during a June 2008 party or his drugging and attempt to kiss her during a February 2013 party, approximately 2 years after she last competed in Taekwondo. *Id.* at ¶¶ 691-95, 706-07.[3] Thus, the most recent relevant misconduct by the Lopez Brothers occurred in 2006, at the latest.

### III.   LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To

---

[3] Similarly, Ms. Meloon does not tie some of the pre-2006 misconduct by Steven Lopez to USAT, including physical and sexual abuse that occurred while Ms. Meloon and Steven Lopez were in a consensual relationship between 2002 and 2006. *See* SAC [D.E. 68] at ¶¶ 421-27, 430-31, 435.

survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *National Ass'n. of Investors Corp. v. Bivio, Inc.*, No. 11–cv– 02435–WJM, 2012 WL 1695042, at *1 (D. Colo. May 15, 2012) (quoting *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007)); *Twombly*, 550 U.S. at 555.

## IV.    ARGUMENT

### A.    Plaintiffs' Federal Claims Must Be Dismissed.

Plaintiffs' claims for violations of various criminal statutes related to forced labor and sex trafficking, including 18 U.S.C. §§ 1589(a) and (b); 1590(a) and (b); 1591(a)(1)-(2); and 1591(d) are brought pursuant to 18 U.S.C. §§ 1595 and 2255, which authorize persons to bring civil claims for violations of federal law under certain circumstances. SAC [D.E. 68] at Counts 4-7, 9, 11-12, 14. Their claims fail because it is not possible for Plaintiffs to recover under the statutes as they existed at the time the causes of action accrued. The obstruction and RICO claims asserted by all Plaintiffs against USAT fail because of lack of standing and Plaintiffs' failure to plead with particularity.

### 1.    Plaintiffs' claims under 18 U.S.C. § 1595 fail because the statute cannot be applied retroactively to support a civil cause of action for misconduct that allegedly occurred prior to December 23, 2008.

Plaintiffs assert claims against USAT for violations of 18 U.S.C. §§ 1589(a) and (b), 1590(a) and (b), and 1591(a)(1)-(2), and 1591(d) under 18 U.S.C. § 1595. *See* SAC [D.E. 68] at Counts 4-7, 9, 11-12, 14. These claims arise out of violations of the statutes allegedly perpetrated by Jean Lopez and Steven Lopez between 1994 and 2006, *id.* at ¶¶ 362-722, and from Plaintiffs' assertion that USAT benefited from those violations, *id.*

at ¶¶ 763, 772, 778, 784-85, 796-97, 816, and 821.[4]

However, 18 U.S.C. § 1595 did not come into effect until December 2003. *See* Trafficking Victims Protection Reauthorization Act of 2003 ("TVPA"), Pub. L. No. 108-193, 117 Stat. 2875, 2875-2887 (Dec. 19, 2003). Crucially, when § 1595 was enacted on December 19, 2003, it provided only that "[a]n individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the <u>perpetrator</u> in an appropriate district court of the United States…." Pub. L. No. 108-193, § 1595, 117 STAT. 2875, 2878 (emphasis added). Section 1595 was not amended until December 23, 2008, to provide a civil cause of action against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation of this chapter," in addition to the "perpetrator." *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, Sec. 221, 122 STAT. 5044, 5067 (Dec. 23, 2008).[5]

All of Plaintiffs' claims under § 1595 fail because they are based on the allegation that USAT knowingly benefited from participation in a venture in violation of §§ 1589, 1590, and 1591, and are premised on misconduct that allegedly took place between 1994 and 2006 (at the latest), prior to enactment of the law providing a civil remedy

---

[4] Plaintiffs also seek to recover for violations of §§ 1590(b), 1591(a)(1)-(2), and 1591(d) pursuant to 18 U.S.C. § 2255. *See* SAC [D.E. 68] at Counts 11-12, 14. Those claims are addressed in Section IV.A.2.
[5] The reference to §§ 1589, 1590, and 1591 was also stricken at that time in favor of language referring to "this chapter." P.L. 110-457, 122 STAT. 5067 (Dec. 23, 2008).

under such circumstances. Compl. at ¶¶ 362-722.[6] In other words, all of the Lopez Brothers' relevant alleged misconduct directed towards Plaintiffs occurred prior to authorization of civil claims against not only those who perpetrate the offense, but also against those who benefit from participation in a venture in violation of the chapter. The December 2008 amendment cannot be applied retroactively to USAT's alleged conduct.

It is axiomatic that "retroactivity is not favored in the law" and that "congressional enactments…will not be construed to have retroactive effect unless their language requires this result." *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 264 (1994) (internal quotations and citations omitted); *see also United States v. 51 Pieces of Real Prop.*, 17 F.3d 1306, 1312 (10th Cir. 2012) (same). When the statute at issue does not expressly address the issue of retroactivity, "the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would … increase a party's liability for past conduct …." *Landgraf*, 511 U.S. at 280.[7] The Ninth Circuit, in *Ditullio v. Boehm*, 662

---

[6] Plaintiffs cannot identify any compelling support for the notion that USAT is liable under federal law for – or benefitted from – the conduct of the Lopez Brothers after 2006, including with respect to (1) Ms. Joslin's allegations that she allowed Steven Lopez to have sexual intercourse with her until 2010 and that she was raped by Jean Lopez in 2011 after they had been dating for approximately 2 years, SAC [D.E. 68] at ¶¶ 622-632; or (2) Ms. Means' allegation that Steven Lopez drugged and attempted to kiss her during a party in 2013 (approximately 2 years after she last competed in 2011), *id.* at ¶¶ 706-07.

[7] *See also United States ex rel. Anderson v. Northern Telecom, Inc.*, 52 F.3d 810, 814 (9th Cir. 1995) (stating that absent legislative intent to the contrary, statutes do not operate retroactively); *James Cable Partners, L.P. v. City of Jamestown*, 43 F.3d 277, 279-80 (6th Cir. 1995) (holding that the 1992 Cable Act applies prospectively because the statute lacks strong and imperative language requiring retroactive application); *United States v. AM Gen. Corp.*, 34 F.3d 472, 474-75 (7th Cir. 1994) (holding that the EPA cannot collaterally attack a permit granted years earlier by bringing a civil enforcement action absent any indication that Congress meant to authorize retroactive application of the Clean Air Act); *Powell v. New York*, 869 F. Supp. 106, 112-13

F.3d 1091 (9th Cir. 2011), considered whether the civil action authorized by § 1595 for the first time in 2003 could retroactively apply to support a cause of action arising out of conduct that occurred prior to its enactment. The Ninth Circuit concluded that § 1595 "cannot apply retroactively to conduct that occurred before its effective date" and therefore "does not apply to pre-December 19, 2003 conduct," because the law "changed substantive law and attached new legal burdens to violations of the TVPA." *Id.* at 1100, 1102.[8]

The same reasoning applies here. The December 23, 2008 amendment of § 1595, which for the first time authorized a civil claim against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation of this chapter," cannot be applied retroactively to conduct that occurred prior to the amendment. *See* Pub. L. No. 110-457, 122 STAT. 5044, 5067 (Dec. 23, 2008). There is no doubt that this amendment "changed substantive law and attached new legal burdens" to conduct associated with violations of the TVPA. Neither the statutory language nor its legislative history demonstrates a clear legislative intent to apply the

---

(N.D.N.Y. 1994) (holding that the Americans with Disabilities Act of 1990 does not apply retroactively to claims accruing before its effective date); *Roark v. Crabtree*, 893 P.2d 1058, 1061-62 (Utah 1995) (holding that legislative extension of a civil statute of limitations cannot be applied retroactively in the absence of legislative intent).

[8] The Second Circuit also declined to apply § 1595 retroactively. *See Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012). For this reason, it is also clear that—even if all of Plaintiffs' claims under § 1595 are not barred—they cannot pursue a civil action under § 1595 for conduct that allegedly occurred prior to December 19, 2003. Notably, a substantial portion of the allegations levied by Ms. Meloon, Ms. Gilbert, and Ms. Poe involve pre-December 2003 conduct. *See* SAC [D.E. 68] at ¶¶ 374, 391, 402-08, 421-27, 488-91, 497-98, 508-11, 529-52, 555-57.

amendment retroactively. As a result, Plaintiffs' claims under §§ 1589, 1590, and 1591, which are asserted pursuant to § 1595 and involve conduct prior to December 23, 2008, must be dismissed with prejudice. *See* SAC [D.E. 68] at Counts 4-7, 9, 11-12, 14.

### 2. Plaintiffs' claims under 18 U.S.C. § 2255 fail because claims arising prior to 2013 were subject to a six year statute of limitations.

Plaintiffs also assert civil claims against USAT that they allege are authorized by 18 U.S.C. § 2255. These claims involve alleged violations of 18 U.S.C. §§ 1590(b), 1591(a)(1)-(2), and 1591(d). SAC [D.E. 68] at Counts 11-12, 14. The claims Plaintiffs allege pursuant to 18 U.S.C. § 2255, like their § 1595 claims, arise out of violations allegedly perpetrated by Jean Lopez and Steven Lopez between 1994 and 2006, *id.* at ¶¶ 362-722.

18 U.S.C. § 2255 was enacted on October 30, 1986, and provided that "[a]ny minor who is a victim of a violation of section 2251 or 2252 of this title and who suffers personal injury as a result of such violation may sue in any appropriate United States District Court…." Child Abuse Victims' Rights Act of 1986, Pub. L. No. 99-591, § 2255(a), 100 STAT. 3341-75 (Oct. 30, 1986). It also provided that "[a]ny action commenced under this section shall be barred unless the complaint is filed within six years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability." *Id.* at § 2255(b) (emphasis added). This provision has been interpreted to mean that "the cause of action expires after six (6) years, if at the end of that six (6) year period, a plaintiff is over eighteen (18). However, if a plaintiff is still a minor after the six (6) years have passed, the cause of action expires when plaintiff turns twenty-one." *Doe v. Schneider*, 667 F.Supp.2d 524,

530 (E.D. Pa. 2009).

As noted above, Plaintiffs' claims under 18 U.S.C. § 2255 arise out of alleged misconduct by Jean Lopez and Steven Lopez between 1994 and 2006. SAC [D.E. 68] at ¶¶ 362-722. All of Plaintiffs' claims under § 2255 therefore expired no later than 2010, approximately eight years before Plaintiffs commenced their claims against USAT on May 4, 2018.

More specifically, the most recent of Ms. Meloon's relevant allegations is that Jean Lopez sexually assaulted her while she was sleeping during the 1997 World Cup in Egypt. SAC [D.E. 68] at ¶¶ 402-08. Assuming such actions can legally give rise to a claim against USAT (which USAT disputes), the deadline for Ms. Meloon's claims under § 2255 was sometime in 2003. The most recent of Ms. Poe's relevant allegations is that Jean Lopez forced himself into her room during a 2002 trip to Florida and "dry humped" her. *Id.* at ¶¶ 509-11. Thus, the deadline for Ms. Poe's claims under § 2255 was sometime in 2008. The most recent of Ms. Gilbert's relevant allegations is that Jean Lopez sexually assaulted her digitally and orally – after drugging her -- during a 2003 competition in Germany. *Id.* at ¶¶ 535-52. The deadline for Ms. Meloon's claims therefore expired under § 2255 expired no later than 2009. The most recent of Ms. Joslin's relevant allegations is that Steven Lopez had sex with her during a competition in Bonn, Germany in April 2006, when she was approximately 23 years old. *Id.* at ¶¶ 610-21. Assuming this misconduct is actionable against USAT, Ms. Joslin's claims under § 2255 expired in 2012. Finally, the most recent of Ms. Means' relevant allegations is that Steven Lopez engaged in "grooming behaviors" during a 2006

competition in Ohio. *Id.* at ¶¶ 673-74. If such conduct can give rise to claim against USAT, Ms. Means' claims under § 2255 expired no later than 2012 (when Ms. Means was approximately 21 years old). *See Schneider*, 667 F.Supp.2d at 530 (cause of action expires after six years if at the end of that six year period a plaintiff is over eighteen).

Though Plaintiffs likely will argue that the six year statute of limitations enacted in 1986 should not apply, the statute of limitations applicable to claims under § 2255 was not amended until March 7, 2013, when the reference to "six years" was replaced with "ten years." Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, Sec. 1212, 127 STAT. 54, 143 (March 7, 2013). The statute of limitations for such claims was amended again on February 14, 2018, to further expand the statute of limitations. Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, Pub. L. No. 115-126, Sec. 102, 132 Stat. 318 (Feb. 14, 2018). However, even the earlier of these two amendments was enacted nearly five years after the most recent misconduct giving rise to Plaintiffs' claims, which was Steven Lopez's alleged grooming of Ms. Means in 2006.[9]

Such amendments may not be applied retroactively to conduct that occurred prior to the amendment unless the language of the enactment requires that result. *See Landgraf*, 511 U.S. at 264, 280; *see also supra* at 8-9. Neither the statutory language nor legislative history indicate that the March 2013 and February 2018 amendments to §

---

[9] Indeed, the statute of limitations applicable to § 2255 was not extended from six years to ten years until after even the most recent allegation of misconduct by the Lopez Brothers (not tied to USAT), which is Ms. Means' allegation that Steven Lopez drugged and attempted to kiss her during a February 2013 party, approximately two years after she stopped competing in Taekwondo. SAC [D.E. 68] at ¶¶ 706-07.

2255 were intended to apply retroactively and Plaintiffs do not set forth a basis for retroactive application in the SAC. All of Plaintiffs' claims against USAT under § 2255 therefore are time-barred under the 6 year statute of limitations that existed until March 2013 and must be dismissed with prejudice. *See* SAC [D.E. 68] at Counts 11-12, 14.

### 3. Plaintiffs Fail to Plead Obstruction With Particularity.

Plaintiffs allege Obstruction, Attempted Obstruction, Interference with Enforcement in Violation of 18 U.S.C. § 1590(b), 1591(d), 1595(a), and 2255 against USAT. While 18 U.S.C. §§ 1595 and 2255 affords civil remedies for violations of 18 U.S.C. §§ 1590 and 1591, the language of the respective subparts of those statutes makes it clear that the prohibited obstruction is confined to a government actor or government investigation. Both 18 U.S.C. § 1590(b) and 1591(d) articulate an obstruction violation if someone "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section."  Where other federal obstruction statutes are concerned, this type of language is meant to prohibit the obstruction of an investigation or proceeding by a government actor. *See e.g.* 18 U.S.C. §§ 1512 (prohibiting witness tampering in connection with an "official proceeding"); 1503 (Obstructing federal courts or interfering with jurors or judicial officials); 1505 (Obstructing congressional or administrative proceedings); 18 U.S.C. § 1513 (prohibiting witness retaliation in connection with an official proceeding). *See also The Victim and Witness Protection Act of 1982*, Pub. L. No. 97-291, 96 Stat. 1248 (1982) (declaring that the purpose of the act is, in relevant part, "to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process").

Plaintiffs attempt to shoehorn interactions between private actors going back decades into their obstruction claims  by citing to allegedly false testimony given to Congress in May 2018. However, simply calling the testimony false without setting forth a breach of legal duty by USAT does not suffice to meet Plaintiffs' burden to plead with particularity. *See e.g. Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cty. Justice Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007) (explaining that "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."); *Melton v. City of Oklahoma City*, 879 F.2d 706, 732 (10th Cir. 1989), on reh'g, 928 F.2d 920 (10th Cir. 1991) (holding that to establish a claim for obstruction of justice under 18 U.S.C. § 1503, the plaintiff must prove that each defendant had a specific intent to impede the administration of justice); *United States v. Carleo*, 576 F.2d 846 (10th Cir.), cert. denied, 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978); *Kaplan v. Archer*, No. 11-CV-02094-PAB-CBS, 2012 WL 3277170, at *11 (D. Colo. July 3, 2012), report and recommendation adopted, No. 11-CV-02094-PAB-CBS, 2012 WL 3277140 (D. Colo. Aug. 9, 2012) (concluding that the plaintiff failed to plead with particularity the RICO predicate act of obstruction of justice in violation of 18 U.S.C. § 1503 because there was "no allegation regarding any officer or juror of a court of the United States and no identification of the individual role of any of the Defendants"). Accordingly, Plaintiffs' obstruction claim should be dismissed for failure to plead with particularity.

### 4.  Plaintiffs Lack Standing to Maintain Their RICO Claim.

Plaintiff's RICO claim against USAT is based on its alleged participation in an enterprise designed to interfere with all investigations of the Lopez Brothers so that they could compete at the 2016 Olympics and the 2017 World Championships. *See* SAC [D.E. 68] at Count 15. As discussed above, Plaintiffs' RICO claim fails because they allege obstruction as a predicate act, but have failed to plead obstruction with particularity. Accordingly, the RICO claim fails. Additionally, Plaintiffs lack standing to assert a RICO claim. Indeed, RICO standing is a more rigorous matter than standing under Article III, because it requires plaintiffs show they were injured in "business or property by reason of prohibited racketeering activities.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).

Plaintiffs lack standing because they have not suffered an injury to business or property. It is well established that the "business or property" requirement "has a restrictive significance which helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08 Civ. 6150, 2010 WL 3026510, at *12 (S.D.N.Y. Aug. 2, 2010). [P]hysical, emotional or reputational harm" thus cannot be a cognizable RICO injury. *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 458 (S.D.N.Y. 2004); *see also Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006) ("injury to…reputation, dignity and emotional damages are not the type of injuries redressable by…RICO").

Plaintiffs attempt to circumvent this clear limitation by recasting their alleged harm as an injury to "their property and business", including "severe reputational injury and damage to their professional and business interests," misses the mark. SAC at ¶ 871. This conclusory allegation does not identify a single contractual or employment opportunity plaintiffs lost and is insufficient to plead a RICO injury. *See Doe v. Schneider*, 667 F. Supp. 2d 524, 534 (E.D. Pa. 2009) (ballerina who suffered sexual abuse lacked RICO standing for alleged loss of professional opportunities because injury was not to "business or property," but rather was "based upon the mental distress and physical injuries that negatively affected his future ballet career"); *see also Apollon Waterproofing & Restoration, Inc. v. Bergassi*, 87 F. App'x 757, 759-60 (2d Cir. 2004) (affirming dismissal of RICO claim when complaint included conclusory allegations of lost contracts and failed to identify a single contract loss during statute-of-limitations period); *Amaya v. Bregman*, 149 F. Supp. 3d 1312, 1320–21 (D.N.M. 2015) (defendant lacked standing to bring RICO claims against third-party defendants because he made no allegation of harm to business or property and only made vague, conclusory allegations of injury to his reputation). Plaintiffs' RICO claims should be dismissed for lack of standing, as they have not sustained a RICO injury.

**B.      Plaintiffs' State Law Claims Must Be Dismissed.**

Plaintiffs do not specify the state laws under which they assert their claims for negligent supervision, negligent retention, and defamation against USAT. *See* SAC [D.E. 68] at Counts 16-20. It is reasonable, however, to assume that Plaintiffs will contend their claims against USAT arise under the laws of either Colorado, California,

or Texas. *See id.* at ¶¶ 66 (alleging that USAT is a Colorado corporation with its principal place of business in Colorado Springs); 48 (alleging that Ms. Meloon is a citizen of Texas); 51 (alleging that Ms. Gilbert is a citizen of California); 54 (alleging that Ms. Joslin is a citizen of Texas); 57 (alleging that Ms. Means is a citizen of California); 60 (alleging that Ms. Poe is a citizen of California). Plaintiffs' state law claims must be dismissed for failure to state a claim and based on expiration of the relevant statutes of limitation.

### 1. Plaintiffs' Negligence Claims Are Time-Barred to the Extent Such Claims Are Based on Sexual Misconduct by the Lopez Brothers.

Plaintiffs' negligence claims against USAT are set forth in Counts 16-17 and 19-20 of the Complaint (including for negligence, negligent supervision, negligent retention, and gross negligence). Plaintiffs allege in support of their negligent supervision claim that USAT, at least as early as 2006, had notice of the Lopez brothers' sexual abuse, SAC [D.E. 68] at ¶ 876, but improperly failed to monitor their actions, improperly appointed Jean Lopez to coach Team USA, and willingly allowed the sexual assaults to continue, *id.* at ¶¶ 879-81. In doing so, USAT allegedly breached its duty to protect Plaintiffs from the Lopez Brothers' sexual abuse. *Id.* at ¶ 874. Plaintiffs' negligent retention claim is substantively identical, alleging that USAT had notice of the Lopez Brothers' misconduct at least as early as 2006, *id.* at ¶ 889, but breached its duty to protect Plaintiffs from the Lopez Brothers' sexual abuse, *id.* at ¶¶ 885-87. Plaintiffs' negligence and gross negligence claims are similarly based – in part – on USAT's alleged failure to protect Plaintiffs from sexual abuse. *See id.* at ¶¶ 939-40, 951-52.

However, as explained *supra* at 4-9, the most recent sexual misconduct relevant to Plaintiffs' claims occurred in 2006, at the latest.

Though Plaintiffs' negligence claims arising out of sexual misconduct by the Lopez Brothers arose no later than 2006, they waited approximately 12 years, until May 2018, to commence this action against USAT. Colorado, California, and Texas all apply a two year statute of limitations to personal injury claims based on negligence. *See* Colo. Rev. Stat. § 13-80-102 (2018) (all tort actions, including actions for negligence, must be commenced within two years after the cause of action accrues); Cal. Code. Civ. Proc. § 335.1 (2018) (applying two year statute of limitations in actions for personal injury caused by the wrongful act or neglect of another); Tex. Civ. Prac. & Rem. Code § 16.003(a) (2018) (applying two year statute of limitations to claims for personal injury). The statute of limitations on Plaintiffs' claims for negligence – including negligent supervision, negligent retention, negligence, and gross negligence – expired no later than 2008 to the extent they are based on sexual misconduct by the Lopez Brothers, because the latest relevant misconduct directed towards Plaintiffs took place in 2006.

**2. Plaintiffs' Negligence Claims Must Be Dismissed for Lack of Duty to the Extent Based on Conduct Since Plaintiffs' Left Taekwondo.**

In an apparent attempt to avoid obvious statutes of limitation problems associated with the FAC, the SAC adds claims for negligence and gross negligence that focus not only on sexual misconduct directed towards them by the Lopez Brothers from 1997 to 2006, but also on USAT's investigation and treatment of the Lopez Brothers since that time, including through 2018. *See* SAC at Counts 19-20. These claims fail because a plaintiff pleading negligence must establish both the existence and breach of

a legal duty. *N.M. by and through Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017). The existence of a duty is "a question of law to be determined by the court."  *Id.* With respect to USAT's post-2006 conduct, Plaintiffs allege that USAT had a "duty to exercise reasonable care in investigating and pursuing complaints of criminal conduct, sexual misconduct, and violations of federal law against their member ***athletes***, including Plaintiffs."  SAC [D.E. 68] at ¶¶ 941, 953 (emphasis added).

Notably, Plaintiffs do not specifically allege that USAT owes a duty to investigate and pursue these claims to *former* athletes, who stopped competing long ago and who claim sexual misconduct directed to them during USAT events more than a decade ago. Based on the allegations of the SAC, it is clear that all five Plaintiffs are *former* athletes, as none have competed through USAT since 2011. More specifically, Ms. Meloon allegedly was expelled from USAT in 2008. SAC [D.E. 68] at ¶ 444. Ms. Poe "left the sport of Taekwondo" after failing to make the 2008 Olympic team. *Id.* at ¶ 512. It appears that Ms. Gilbert last participated in USAT events in 2003. *Id.* at ¶ 562. Ms. Joslin apparently retired from fighting sometime in 2010 or 2011. *Id.* at ¶¶ 624-26. Ms. Means "last competed in April 2011 at the Collegiate National Championships…."  *Id.* at ¶ 706. Because these timeframes are too remote to even arguably allow a negligence claim to survive against USAT based on the statute of limitations, Plaintiffs attempt to construct a legal duty on the part of USAT to keep investigating and pursuing alleged sexual misconduct claims brought by individuals who ceased participating in USAT events at least 7 years ago. Any legal duty has a limit. Assuming, without conceding,

that this duty existed between USAT and Plaintiffs, USAT submits that at a minimum it ended at the time that Plaintiffs departed the sport of taekwondo.

### 3. Plaintiffs' Defamation Claim Against USAT Does Not State a Claim for Defamation and Is Time-Barred.

Plaintiffs' defamation claim against USAT is set forth in Count 18 of the Complaint. It is based on allegedly defamatory oral statements made by USAT's former CEO, David Askinas. SAC [D.E. 68] at ¶¶ 902-04. The first offending statement by Mr. Askinas is 11 years old and allegedly consisted of him telling the *Colorado Gazette* on August 19, 2007, that a three-month investigation into allegations made by Ms. Meloon had concluded that her allegations "weren't credible." *Id.* at ¶¶ 911-12. Plaintiffs argue that USAT is responsible for Mr. Askinas' August 2007 statement because he was CEO of USAT at that time. *Id.* at ¶ 915. Their defamation claims, however, apparently are also based on statements allegedly made by Mr. Askinas in June 2017, including a reiteration of his 2007 comments to *USA Today*, *id.* at ¶¶ 916-17, along with statements that he never asked Ms. Gilbert to keep quiet about anything and that he never told Ms. Meloon that he knew she was lying, *id.* at ¶¶ 924-26. Plaintiffs' defamation claim against USAT must be dismissed.

First, the statements at issue are not defamatory. Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him or her to incur injury or damage.[10] *Zueger v. Goss*, 343 P.3d 1028, 1033 (Colo. App. 2014). In

---

[10] The United States Supreme Court, in order to insure "uninhibited, robust, and wide-open" debate on matters of public concern, has held that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation," or which "cannot 'reasonably [be] interpreted as stating actual facts' about

determining whether a statement is defamatory, Colorado courts "employ a two-part test: '[A] court must determine whether the statement contains or implies a verifiable fact about the plaintiff and second, whether the statement reasonably is susceptible to being understood as an assertion of actual fact.'" *Id.* at 1034. A cause of action for defamation requires, at a minimum, publication of a false statement of defamatory fact. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1341 (Colo. 1988). The first alleged statement by Askinas was his 2007 statement that "a three-month investigation in 2006 concluded that [Ms. Meloon's] allegations 'weren't credible.'"  SAC [D.E. 68] at ¶ 912. This is not a statement of fact about Ms. Meloon and cannot be defamatory. It is, instead, a statement about the *results of an investigation*. And though Plaintiffs may disagree with the results of the investigation, they have not alleged that the investigation did not conclude Ms. Meloon's allegations "weren't credible."  Mr. Askinas' 2017 statements that he never asked Ms. Gilbert to keep quiet about anything and that he never told Ms. Meloon that he knew she was lying also are not defamatory, as they are not statements about either Ms. Gilbert or Ms. Meloon. Individuals cannot be liable for defamation simply because they deny allegations made by another.

Second, Mr. Askinas' 2017 statements cannot be attributed to USAT. In contrast with their allegations regarding the 2007 statement, Plaintiffs do not allege that Mr. Askinas was acting as USAT's CEO and agent at the time of his alleged statements in 2017. This is because Plaintiffs are aware that Mr. Askinas was no longer USAT CEO in

---

an individual," receives full constitutional protection. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). *NBC Subsidiary (KCNC-TV) v. Living Will Ctr.*, 879 P.2d 6, 10 (Colo. 1994)

2017. *See* SAC [D.E. 68] at ¶ 902. Plaintiffs cannot possibly recover against USAT for the allegedly wrongful conduct of an individual who was not even employed by USAT at the time of the conduct.[11] *See Moses v. Diocese of Colorado*, 863 P.2d 310, 329 (Co. 1993) (employer vicariously liable only when tort is committed within the course of employment).

Third, because the 2017 statement by Mr. Askinas cannot be attributed to USAT, the only statement at issue is the one he allegedly made 11 years ago, in August 2007.[12] Colorado, California, and Texas all apply a one year statute of limitations to personal injury claims based on defamation. *See* Colo. Rev. Stat. § 13-80-103(a) (2018) (applying one year statute of limitations to claims for libel and slander); Cal. Code. Civ. Proc. § 340(c) (2018) (same); Tex. Civ. Prac. & Rem. Code § 16.002(a) (same). The statute of limitations on Plaintiffs' defamation claim against USAT expired 10 years ago, in August 2008, because their claims accrued no later than the time of publication in August 2007. Plaintiffs' defamation claim must therefore be dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, USAT respectfully requests that this Court dismiss all of Plaintiffs' claims against it with prejudice.

---

[11] It also is important to note that Mr. Askinas' 2007 statements were re-published in 2017 by USA Today, not by USAT.

[12] All Plaintiffs purportedly seek to recover for defamation, even though the 2007 statement only related to Ms. Meloon. This should not be permitted.

Dated this 24th day of September, 2018.

GORDON & REES SCULLY
MANSUKHANI

*/s/ Thomas B. Quinn*
Thomas B. Quinn, Reg. No. 17955
Nathan A. Huey, Reg. No. 51271
Lillian L. Alves, Reg. No. 37083
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Phone: (303) 534-5160
Fax: (303) 534-5161
tquinn@grsm.com
nhuey@grsm.com
lalves@grsm.com

*Attorneys for Defendant USA
Taekwondo, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 24th day of September, 2018, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such to the following:

Rex A. Sharp
Larkin E. Walsh
Ryan C. Hudson
Rex A. Sharp, P.A.
5301 West 75th Street
Prairie Village, KS 66208
913-901-0505; Fax: 913-901-0419
rsharp@midwest-law.com
lwalsh@midwest-law.com
rhudson@midwest-law.com
***Attorneys for Plaintiff***

Stephen John Estey
Estey & Bomberger, LLP
2869 India Street
San Diego, CA 92103
619-295-0035; Fax: 619-295-0172
steve@estey-bomberger.com
***Attorneys for Plaintiff***

Daniel A. Lipman
Parker Lipman LLP
3200 Cherry Creek South Dr., Suite 520
Denver, CO 80209
720-638-9424; Fax: 720-638-9423
dan@parkerlipman.com
***Attorneys for Plaintiff***

Jonathan C. Little
Saeed & Little LLP
1433 N. Meridian St., Suite 202
Indianapolis, IN 46202
317-721-9214; Fax: 888-422-3151
jon@sllawfirm.com
***Attorneys for Plaintiff***

John P. Craver
Joseph W. Mark
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Ste. 600N
Denver, CO 80202-5406
303-296-2828; Fax: 303-296-3131
jcraver@wsteele.com
jmark@wsteele.com
***Attorneys for Defendant United States Olympic Committee***

Howard L. Jacobs
Law Offices of Howard L. Jacobs
31111 Agoura Road, Ste. 225
Westlake Village, CA 91361
805-418-9892; Fax: 805-418-9899
howard.jacobs@athleteslawyer.com
***Attorneys for Defendant Steven Lopez***

Sean Connelly
Connelly Law, LLC
3200 Cherry Creek So. Dr., Suite 720
Denver, CO 80209
303-302-7849
sean@sconnellylaw.com
***Attorneys for U.S. Center for SafeSport***


                              */s/ Fran Aragon Eaves*