IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN,
KAY POE, and
JANE DOES 6–50,

    Plaintiffs,

v.

UNITED STATES OLYMPIC COMMITTEE,
USA TAEKWONDO, INC.,
U.S. CENTER FOR SAFESPORT,
STEVEN LOPEZ,
JEAN LOPEZ, and
JOHN DOES 1–5,

    Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court are two Motions to Stay Discovery filed by Defendants United States Olympic Committee ("USOC") and USA Taekwondo, Inc. ("USAT") [filed September 10, 2018; ECF Nos. 76 & 79].  Defendants Steven and Jean Lopez have also joined the motions.  ECF No. 89. These Defendants seek a stay of all discovery pending the resolution of four Motions to Dismiss Defendants have already filed in this case.  Alternatively, Defendants propose a tailored stay that would limit the most burdensome discovery until the Court has identified the claims that survive the Motions to Dismiss.  For the reasons that follow, I **deny** the Motions to Stay Discovery.

## BACKGROUND

Plaintiff Heidi Gilbert initiated this action against Jean Lopez on April 25, 2018. ECF No. 1. She then amended her Complaint as a matter of course on May 4, 2018. ECF No. 6. The First Amended Complaint ("FAC") added Plaintiffs Amber Means, Mandy Meloon, Gabriela Joslin, and Jane Does 6-50 and brought the suit as a putative class action. *See id.* The FAC also added USOC, USAT, Steven Lopez, and John Does 1-5 as Defendants. All four named Defendants filed a Motion to Dismiss the FAC on July 31, 2018. ECF Nos. 50, 58–59. On August 8, 2018, the parties entered into a stipulation whereby the Defendants would withdraw their Motions to Dismiss and permit Plaintiffs time to file a second amended complaint. ECF No. 64. On August 24, 2018, Plaintiffs filed the operative Second Amended Complaint ("SAC"). ECF No. 68. The SAC added Kay Poe as a Plaintiff and U.S. Center for SafeSport[1] ("SafeSport") as a Defendant. *See id.* The SAC brings a total of twenty-one claims, enumerated as follows:

**Claims by Mandy Meloon (2 claims)**

- Forced Labor in violation of 18 U.S.C. §§ 1589(a), 1595(a), 2255 against Steven Lopez.

- Sexual Exploitation, Transportation, and Illegal Sexual Activity in violation of 18 U.S.C. §§ 2241(c), 2243, 2421, 2422, 2423(a), 2423(b), 2423(c), 2255 against Jean Lopez.

**Claims by Gabriela Joslin (5 claims)**

- Forced Labor in violation of 18 U.S.C. §§ 1589(a), 1595(a) against Steven Lopez.

- Forced Labor in violation of 18 U.S.C. §§ 1589(b), 1595(a) against USAT.

- Trafficking with Respect to Forced Labor in violation of 18 U.S.C. §§ 1590(a), 1595(a) against Steven Lopez and USAT.

- Sex Trafficking of Children, or by Force Fraud or Coercion in violation of 18 U.S.C. §§ 1591(a)(1), 1595(a) against Steven Lopez and USAT.

- Benefitting from a Venture that Sex Traffics Children, or by Force Fraud or Coercion in

---

[1] SafeSport has not joined the Motions to Stay.

violation of 18 U.S.C. §§ 1591(a)(2), 1595(a) against USAT.

**Claims by Amber Means (6 claims)**

- Forced Labor in violation of 18 U.S.C. §§ 1589(a), 1595(a), 2255 against Steven Lopez and Jean Lopez.

- Forced Labor in violation of 18 U.S.C. §§ 1589(b), 1595(a) against USOC and USAT.

- Trafficking with Respect to Forced Labor in violation of 18 U.S.C. §§ 1590(a), 1595(a), 2255 against Steven Lopez.

- Sex Trafficking of Children, or by Force Fraud or Coercion in violation of 18 U.S.C. §§ 1591(a)(1), 1595(a), 2255 against Steven Lopez, Jean Lopez, USOC, and USAT.

- Benefitting from a Venture that Sex Trafficks Children, or by Force Fraud or Coercion in violation of 18 U.S.C. §§ 1591(a)(2), 1595(a), 2255 against USOC and USAT.

- Sexual Exploitation, Transportation, and Illegal Sexual Activity in violation of 18 U.S.C. §§ 2242, 2243, 2421, 2422, 2423(a), 2423(b), 2423(c), 2255 against Steven Lopez.

**Claims by all Plaintiffs for violation of federal law (2 claims)**

- Obstruction, Attempted Obstruction, Interference with Enforcement in violation of 18 U.S.C. §§ 1590(b), 1591(d), 1595(a), 2255 against Steven Lopez, Jean Lopez, USOC, USAT, and SafeSport.

- Violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 against all Defendants.

**Claims by all Plaintiffs for violation of state law (6 claims)**

- Negligent Supervision against USOC and USAT.

- Negligent Retention against USOC and USAT.

- Defamation against Steven Lopez, Jean Lopez, and USAT.

- Negligence against USOC, USAT, and SafeSport.

- Gross Negligence against USOC, USAT, and Safesport.

- Outrageous Conduct against USOC and SafeSport.

Defendants Steven Lopez, Jean Lopez, USOC, and USAT now seek a stay of discovery pending the resolution of Defendants' Motions to Dismiss. Defendants point out that many of the

allegations pertaining to the underlying conduct that gave rise to Plaintiffs' claims occurred as many as twenty-two years ago. Reply 4, ECF No. 111. Given this significant lapse of time, Defendants argue that many, if not all, of Plaintiffs' claims will be subject to dismissal due to the statute of limitations or because of some other defect in the claims. USOC's Mot. 2–3, ECF No. 79; USAT's Mot. 4, ECF No. 76. Each Defendant has already filed their or its Motion to Dismiss. *See* ECF No. 105 (SafeSport); ECF No. 106 (Steven Lopez and Jean Lopez); ECF No. 108 (USOC); ECF No. 109 (USAT). Defendants argue that imposing a stay on discovery until the Motions to Dismiss are resolved will allow the Court to determine "what claims are and are not viable," which will "significantly narrow the issues subject to discovery." Reply 3. Defendants argue that without a stay, "Defendants [will be forced to] incur significant expenses in order to obtain and review voluminous electronic and hardcopy records going back several years, track down and interview scores of former employees and volunteers, and engage in costly and resource intensive litigation involving such issues as discovery disputes where Plaintiffs are seeking privileged material." *Id.*

## DISCUSSION

"The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings" during the pendency of a motion to dismiss. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). However, Rule 26(c)(1) permits a court, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

The decision to issue a protective order and thereby stay discovery rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). "A stay of all discovery is generally disfavored in this District." *Alexander v. Foegen*, No. 10-cv-01993-LTB-MEH, 2011 WL 683813, at *1 (D. Colo. Feb. 17, 2011); *Wason Ranch Corp. v. Hecla Mining Co.*, No. 07-cv-00267-EWN-MEH, 2007 WL 1655362, at *1 (D. Colo. June 6, 2007). At the same time,

4

"[c]ourts have routinely held that discovery should be stayed while the issues related to jurisdiction are being resolved." *Alexander*, 2011 WL 683813, at *1; *String Cheese Incident*, 2006 WL 894955, at *2. Ultimately, a court's decision is guided by five factors:

> (1) the interests of the plaintiff in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Young v. Kiewit Corp.*, No. 17-cv-01251-WYD-MEH, 2017 WL 7342318, at *1 (D. Colo. July 13, 2017); *String Cheese Incident*, 2006 WL 894955, at *2. In this case, the first four factors apply with the weight that is ordinary to nearly every lawsuit. However, I find the fifth factor—considering the public interest—dwarfs the others combined.

Regarding the first factor, Plaintiffs have a typical interest in expeditiously proceeding with their suit. Further, Plaintiffs' case could be prejudiced by delay. Resp. 5-6, ECF No. 101. Plaintiffs point out that employees at USOC routinely leave their positions and may become unavailable for later discovery (or that discovery will be less reliable or more burdensome) if it is delayed by a matter of months. *Id.* at 5. Additionally, Plaintiffs point out that the two-judge structure to this case creates the potential for substantial delays, because at least one party is nearly certain to object to my recommendation on the Motions to Dismiss, and those motions may not reach a final disposition for as much as a year. *Id.* at 2. I agree Plaintiffs have an interest in the expeditious resolution of this case.

Addressing the second factor, I note Defendants will be substantially burdened without a stay. Defendants point out that many of Plaintiffs' allegations pertaining to the underlying conduct that led to this suit occurred more than two decades ago. Reply 2, ECF No. 111. Defendants argue that permitting discovery "will require [them] to incur significant expenses in order to obtain and review voluminous electronic and hardcopy records going back several years [and to] track down and

5

interview scores of former employees and volunteers . . . ." *Id.* There is no question that Defendants (particularly the organizational Defendants) will be heavily burdened without a stay.

The third factor is the convenience to the court. Courts frequently recognize that imposing a stay while a dispositive motion is pending conserves judicial resources. *See, e.g.*, *Lieblein ex rel. W. Union Co. v. Ersek*, No. 14-cv-00144-MSK-KLM, 2015 WL 1840548, at *2 (D. Colo. Apr. 20, 2015). Here, like in nearly every case, it would be more convenient for the Court to stay discovery and postpone potential discovery disputes until after the resolution of pending motions to dismiss, because those motions might reduce or eliminate the need for any discovery. *Hay v. Family Tree, Inc.*, No. 16-cv-03143-CMA-KLM, 2017 WL 2459777, at *1 (D. Colo. June 6, 2017) ("A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." (quoting *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2005)).

The fourth factor is the interest of nonparties to the suit. Neither party suggests a nonparty has a significant interest in this litigation.

The final factor instructs the court to consider the public interest. This factor may be significant when "compelling . . . public interests [are] triggered by the facts at issue." *See St. Paul Fire & Marine Ins. Co. v. Apartment Inv. & Mgmt. Co.*, No. 09-cv-02353-WDM-KMT, 2010 WL 148264, at *1 (D. Colo. Jan. 12, 2010). Indeed, this is a case with compelling public interests.

Plaintiffs here are athletes who sought to (and often did) compete on the USA national taekwondo team. The heart of their allegations in the SAC are two-fold. First, Plaintiffs allege they were victims of sexual assaults and physical violence that were perpetrated by Defendants Jean Lopez (a competitor and coach of the national team) and Steven Lopez (a star competitor on the national team), as well as other members of the team who are not defendants in this suit. The sexual

assault alleged in the SAC includes both sexual relationships between minor girls and adult men and instances of violent rape achieved by physical force; these allegations span more than a decade. Second, Plaintiffs allege the federally charted institutions responsible for organizing that team were indifferent, or even resistant, to addressing reports or known instances of this abuse.

Specifically, Plaintiffs allege the following non-exhaustive list of sexual and physical abuse in the SAC:

**Plaintiff Mandy Meloon**

- At age 15, while living at a USOC training center, Ms. Mellon was raped by an adult member of the USAT national team who is not a defendant in this suit. Second Am. Compl. ¶ 391.

- From ages 15 through 17, Ms. Mellon had an ongoing sexual relationship with the same national team member. *See id.* ¶¶ 392–97.

- In 1997, when Ms. Meloon was 15, Jean Lopez entered her hotel room late at night and digitally penetrated her. Ms. Meloon pretended she was asleep during this assault. *Id.* ¶¶ 402–08.

- In January 2002, Steven Lopez punched Ms. Meloon in the face. *Id.* ¶ 427.

- In 2004, Steven Lopez broke into Ms. Meloon's house and beat and raped her. *Id.* ¶ 429.

- In 2005, Steven Lopez beat and raped Ms. Meloon. *Id.* ¶ 430.

- In 2005, while competing in Madrid, Spain, Steven Lopez physically assaulted Ms. Meloon, breaking her ribs. *Id.* ¶ 431.

**Plaintiff Kay Poe**

- At age 15, while living at a USOC training center, Ms. Poe had a sexual relationship with a 22-year-old member of the team who is not a defendant in this suit. *Id.* ¶ 491.

- Jean Lopez "forced" a sexual relationship with Ms. Poe while she was still a minor. *Id.* ¶¶ 497–99.

**Plaintiff Heidi Gilbert**

- In 2002, Jean Lopez forcefully wrestled Ms. Gilbert onto a bed in his hotel room and "dry humped" her until he ejaculated in his pants. *Id.* ¶¶ 529–34.

- In 2003, Jean Lopez gave Ms. Gilbert a drink that had been drugged. He then isolated Ms.

Gilbert in a taxi where he gropped her over her clothing. When they reached their hotel, he dragged Ms. Gilbert into an area in the back of the lobby and sexually assaulted her. *Id.* ¶¶ 543–51.

**Plaintiff Gabriela Joslin**

- Ms. Joslin had a sexual relationship with Steven Lopez during her taekwondo career because Jean Lopez "made it clear" she was to "cater to Steven." *Id.* ¶ 622.

- Jean Lopez violently raped Ms. Joslin in 2011. *Id.* ¶ 630.

**Plaintiff Amber Means**

- Ms. Means and Steven Lopez had an open sexual relationship while she was 17. *Id.* ¶¶ 683–85.

- Steven Lopez drugged and raped Ms. Means in 2008. *Id.* ¶¶ 692–95.

Plaintiffs then allege that USOC and USAT had knowledge of both the illegal sexual activity involving minor children at the USOC training centers and many of the specific allegations against Steven Lopez and Jean Lopez. *See, e.g.*, *id.* ¶¶ 292–312, 320, 387–90, 410, 418–19, 432, 436, 454, 493, 499, 563, 572, 574, 582–83, 636. Plaintiffs allege that USOC, USAT, and SafeSport repeatedly failed to take steps to stop the alleged abuse. *See, e.g.*, *id.* ¶¶ 292–312, 321, 388, 390, 411, 418–19, 437, 439, 475, 494, 496, 563, 573, 636, 640, 647, 712.

While the allegations in the SAC are alarming, I do not need to assume their truth to understand that sexual abuse of athletes by adults in positions of trust in the United States Olympic community is a cause of national concern. This matter is of such grave national importance that the United States House of Representatives Subcommittee on Oversight and Investigations held a hearing on the issue in May of this year. *Examining the Olympic Community's Ability to Protect Athletes from Sexual Abuse: Hearing Before the H. Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 115th Cong. (2018) (unofficial transcript). Representative Gregg Harper opened the hearing by identifying the problems in a manner that encompasses similar issues presented in this suit:

> We are here because recent events have highlighted a very troubling and concerning pattern of sexual misconduct within the U.S. Olympic community. There's been a systemic failure in the system to protect athletes, including in how allegations of sexual misconduct have been handled—or should I say not handled—by the national governing bodies, the groups that run individual sports, and the U.S. Olympic Committee.

*Id.* at 4 (statement of Rep. Gregg Harper, Chairman, H. Subcomm. on Oversight and Investigations). Further, the hearing indicated that the allegations of sexual misconduct are not limited to a specific sport, but essentially span the athletic spectrum. Rep. Harper continued,

> While such focus has been on USA Gymnastics team doctor Larry Nassar, gymnastics is not the only [National Governing Body ("NGB")] that has had its challenges. Recent public reports also include the Lopez brothers in Taekwondo, Rick Butler in Volleyball, and the multiple accusations that have come from the swimming community, as well as reports in many other NGBs not before us today.

*Id.* at 5. Further, the Acting Chief Executive Officer of the USOC admitted before Congress in July of this year that "[t]he Olympic community failed the people it was supposed to protect . . . ." *Strengthening and Empowering U.S. Amateur Athletes: Moving Forward with Solutions: Hearing Before Subcomm. on Consumer Prot., Prod. Safety, Ins., & Data Sec. of the S. Comm. on Commerce, Sci., & Transp.*, 115th Cong. 1 (2018) (statement of Susanne Lyons, Acting Chief Executive Officer of the USOC).

The alleged failure of USOC was so significant that Congress felt compelled to act. It recently passed the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, Pub. L. No. 115-126, 132 Stat. 318. The Act provides a civil remedy for victims of sexual assault as a minor. § 102, 132 Stat. 319.

Congress has publicly brought the issue of sexual abuse of American Olympic athletes to the forefront and addressed it as a national priority. Moreover, it found the existing civil remedies insufficient to address the problem, so it provided stronger mechanisms for those assaulted to begin to address their injuries. I have scoured the caselaw in search of a case that found the public interest

so significant that it alone defeated a request for a stay of discovery. That search has not produced a single result. Nevertheless, if this is not that case, I doubt that one exists. I find that the American public has a "compelling" interest in the allegations presented in the SAC. *St. Paul Fire & Marine Ins. Co.*, 2010 WL 148264, at *1. Therefore, I find a stay of discovery is not warranted. The parties may proceed with discovery pending the resolution of the Motions to Dismiss.

## **CONCLUSION**

Because the public's interest outweighs any other consideration that might warrant a stay of discovery, Defendants' Motions to Stay Discovery [filed September 10, 2018; ECF Nos. 76 & 79] are **denied**.

Dated at Denver, Colorado, this 5th day of October, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge