**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 1: 18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN,
KAY POE, and
JANE DOES 6-50,

      Plaintiff(s),

v.

UNITED STATES OLYMPIC COMMITTEE,
USA TAEKWONDO INC.,
U.S. CENTER FOR SAFESPORT,
STEVEN LOPEZ,
JEAN LOPEZ, and
JOHN DOES 1-5,

      Defendant(s).

_____

**STIPULATED ORDER OF PROTOCOL FOR ELECTRONIC DISCOVERY**

      Plaintiffs and Defendants United States Olympic Committee, USA Taekwondo, Inc,

Steven Lopez and Jean Lopez (collectively, the "Parties") stipulate and move the Court for

an Order concerning the protocol for all electronic discovery in this case. In order to

simplify and facilitate the production of electronic documents and e-mails, the Parties

agree to follow the following protocol for electronic discovery. The Parties are aware of the

importance the Court places on cooperation and proportionality, and the Parties commit to

cooperate in good faith throughout the Litigation consistent with the expectations of the

Federal Rules of Civil Procedure and the Court's Local Rules.

**A.**   **Definitions.**

      1.     "Litigation" means the case captioned *Gilbert, et al. v. USOC, et al.*, Case

No. 1:18-cv-00981 (D. Colo.).

      2.     "Electronically Stored Information" or "ESI" means all computer-generated

information, data, or files of any kind, stored in or on any Media, including Email.

3.     "Document" means any Paper Discovery or ESI stored in any medium from which information can obtained.

4.     "Paper Discovery" means any Document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34(a)(1)(A) that is not ESI.

5.     "Email" or "electronic mail" means an electronic means for communicating written information through structured data applications (e.g., email client software) that can send, store, process, and receive information, regardless of whether such email is stored within the email client software, or within a hard drive or network location.

6.     "Format" means the internal structure of an electronic file which defines the way it is stored and accessed.

7.     "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, hard drive, flash drive, server, cloud-based storage, virtual machine, or other device on which data is or was stored.

8.     "Metrics" means hit counts, document hit counts, and unique document hit counts based on a test set of custodians and search terms, and "sampling" means a review of a limited number of documents based on a test set of search terms for responsiveness and other indicators that may assist in formulating a final search protocol.

9.     "Native Format" means the Format of ESI in the application in which such ESI was originally created.

10.     "Party" or "Parties" means Plaintiffs and Defendants.

11.     "Producing Party" means a Party that produces Documents or ESI.

12.     "Receiving Party" means a Party to whom Documents or ESI are produced.

13.     "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

14.     "Production Bates Number" means the unique serial number attached to every page of a document produced.

**B.     Collection Protocol and Methodology (Custodians and Search Terms).**

1.     For any source of potentially responsive ESI to be searched by the Parties, the Parties shall work cooperatively and in good faith to mutually agree upon search methodologies and search strings reasonably tailored to return documents responsive to the discovery request(s) at issue, and to identify a reasonable number of sources and custodians. The development of search strings should be a collaborative and iterative process by the Parties. If the Parties are unable to reach agreement after meeting and conferring in good faith, the Parties shall submit any dispute to the Court. This protocol is not intended to alter the rights of the parties to seek a protective order, seek cost-sharing for the production of any Email or Non-Email ESI, or to seek additional searches if warranted by subsequently discovered information, and the Parties hereby reserve such rights.

2.     *Non-Email ESI searches:*  If the Producing Party elects to use search queries (single terms or Boolean strings) to locate potentially responsive non-email ESI, it shall disclose to the Receiving Party the information sources to be searched, the custodians who will be searched, and the search terms. Upon receiving the information sources, custodians, and search terms proposed to be employed by the Producing Party, the Receiving Party may request alternative or additional information sources, custodians, or search terms reasonably tailored to locate potentially responsive ESI. The Parties shall meet and confer and attempt in good faith to reach agreement regarding the search methodology to be used for non-email ESI.

3.     *Email ESI:*  If the Producing Party elects to use search queries (single terms or Boolean strings) to locate potentially responsive email ESI, the Parties agree to the following procedure:

(a) *Custodians*: The Producing Party shall provide to the Receiving Party a list identifying custodians who are likely to have responsive information to the discovery requests(s) at issue. The Receiving Party may propose additional custodians within 10 days of receipt of the initial list of custodians. Any Party can object to the inclusion or exclusion of custodians, and a meet and confer will be held before presenting any disagreement to the Court. If discovery shows additional custodians need to be added, the Receiving Party can request additional custodians, and the Parties shall meet and confer in good faith in an attempt to reach agreement regarding any additional custodians before presenting any disagreement to the Court.

*(b) Search Terms*:   Ten (10) days after the Receiving Party receives the initial proposed custodian list under (a) above, the Receiving Party shall send the Producing Party a list of proposed search terms for the custodians, including the date ranges for such searches. The Parties shall then meet and confer to see if they can reach agreement on search terms and date ranges before presenting any disagreement to the Court. The Parties agree that "metrics" searches, in which test searches are run on the email accounts of potential custodians, may help the parties refine the searches. The Producing Party may use Technology Assisted Review to identify responsive documents if it deems that it is appropriate. If discovery shows additional search terms need to be added, the Receiving Party may request additional search terms, objections or substitutions can be suggested by the Producing Party, followed by a meet and confer before presenting any disagreement to the Court.

*(c) Parent/Child Searches:* The Producing Party shall run the agreed-upon search terms against both the "Parent" document and any "Child" attachment. Documents and any related attachments returned as a result of the search queries will be

collected and reviewed to identify responsive discoverable information, subject to redaction or withholding for privilege. Non-privileged portions of both the Parent document and any Child-related attachment shall be produced, irrespective of whether the responsive information appears in the Parent document, the Child attachment, or both.

**C.**     **Clawback and Presumptively Privileged Protocol Stipulation**

1.     The parties hereby stipulate to protect certain privileged and otherwise protected ESI against claims of waiver in the event they are produced during the course of this litigation whether pursuant to a Court Order, a discovery request, or informal production. The parties hereby stipulate, pursuant to Federal Rules of Civil Procedure 502(d) and (e), as follows:

a)  The inadvertent production of any document in this action shall be without prejudice to any claim that such material is protected by any legally cognizable privilege or evidentiary protection including, but not limited to the attorney-client privilege, or the work product doctrine, and no party shall be held to have waived any rights by such inadvertent production.

b)  If any document produced by another party is on its face subject to a legally recognizable privilege or evidentiary protection, the Receiving Party shall: (a) refrain from reading the document any more closely than is necessary to ascertain that it is privileged; (b) immediately notify the producing party in writing that it has discovered documents believed to be privileged or protected; (c) specifically identify the documents by Bates number range or hash value range, and, (d) where possible, return, sequester, or destroy all copies of such documents, along with any notes, abstracts or compilations of the content thereof, within five (5) days of discovery by the Receiving Party. Where such documents cannot be

destroyed or separated it shall not be reviewed, disclosed, or otherwise used by the Receiving Party. Notwithstanding, the Receiving Party is under no obligation to search or review the producing party's documents to identify potentially privileged or work product protected documents.

c) Upon written notice of an unintentional production by the Producing Party or oral notice if notice is delivered on the record at a deposition, the Receiving Party must promptly return, sequester or destroy the specified document and any hard copies the Receiving Party has and may not use or disclose the information until the privilege claim has been resolved. The Producing Party shall also provide an updated privilege log for such documents setting forth the author, recipient(s), subject matter of the document, along with the basis for the claim of privilege or evidentiary protection, as well as any portion of the document that does not contain privileged or protected information.

d) To the extent that the information contained in a document subject to a claim has already been used in or described in other documents generated or maintained by the Receiving Party, then the Receiving Party will sequester such documents until the claim has been resolved. If the Receiving Party disclosed the specified documents before being notified of its inadvertent production, it must take reasonable steps to retrieve it (unless the document has already been filed in the court record such that the Producing Party shall then take appropriate action, if any). The Producing Party shall preserve the specified documents until the claim is resolved.

e) The Receiving Party shall have five (5) days from receipt of notification of the inadvertent production to determine in good faith whether to contest

such claim and to notify the Producing Party in writing of an objection to the claim of privilege and the grounds for that objection.

f)   The Receiving Party's return, sequestering or destruction of such privileged or protected documents as provided herein will not act as a waiver of the Requesting Party's right to move for the production of the returned, sequestered or destroyed documents on the grounds that the documents are not in fact subject to a viable claim of privilege or protection. However, the Receiving Party is prohibited and estopped from arguing that the production of the documents in this matter acts as a waiver of an applicable privilege or evidentiary protection

g)   Either party may submit the specified documents to the Court under seal for a determination of the claim and will provide the Court with the grounds for the asserted privilege or protection. The Receiving Party may not use the documents for any purpose absent this Court's Order. Any party may request expedited treatment of any request for the Court's determination of the claim.

h)   Upon a determination by the Court that the specified documents are protected by the applicable privilege or evidentiary protection, and if the specified documents have been sequestered rather than returned or destroyed, the specified documents shall be returned or destroyed.

D.      **Production Format**.

1.      **ESI Production Format:** The Parties shall produce each document in single-page TIFF format. All images, paper documents scanned to images, or rendered ESI, should be produced as 300 dpi single-page, Group IV Tiff files or 300 dpi single page JPGs (Color).  Documents should be uniquely and sequentially Bates numbered with an endorsement stamped onto each image. Images should be accompanied by an Opticon .opt load file that associates each Bates number with its corresponding single-page tiff or jpeg image. The parties agree to produce the load files in Concordance-delimited .dat files.

2.      **Production of Paper Discovery:**  Paper Discovery will be produced in electronic form. Paper Discovery produced in electronic form shall be rendered text searchable via Optical Character Recognition ("OCR") or other means by the Producing Party, to the extent practicable.  A Party need not produce a non-electronic duplicate of any Paper Discovery produced in electronic form, except that upon a reasonable request by the Receiving Party and a showing of good cause (for example, problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format at a mutually agreeable time and place. Paper Discovery shall be scanned as 300 dpi single-page, Group IV Tiff files. The Parties have the right to specifically request documents in color, higher resolution, or without compression if needed. OCR text files shall be encoded in UTF-8. Paper Discovery will be produced as kept in the normal course of business, including file folders with writing or labelling.

3.      **Appearance and Content:**  Subject to any necessary redaction, to the extent possible, each Document's image file shall contain the same information and same physical representation as the Document did in its original format, whether paper or electronic.

4.      **Document Unitization:**  If a Document is more than one page, to the

extent practicable, the unitization of the Document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party. If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked to the extent practicable.

5.      **Document Numbering:**  Each page of a document produced (whether in paper or image format) shall have a sequential, legible, unique alphanumeric identifier ("Document Number") not less than six (6) digits electronically endorsed onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document. The Document Number for each Document shall be unique and created so as to identify the Producing Party and the Document Number (for example, "USOC0000000").

6.      **Production of ESI in Native Format:**  Files not easily converted to image format, such as Excel, Access, Google Sheets, and PowerPoint files, shall be produced in Native Format with a corresponding single-page Bates labeled TIFF placeholder. When possible, extracted text should be provided for any documents produced in native file format. Documents should be produced with natural document breaks so that it is apparent where each document begins and ends. Separate documents should not be produced as one contained image file. Documents that are locked by a password or encrypted as they are kept in the ordinary course of business shall be produced in a form that is unlocked or decrypted or with passwords under separate cover. The Producing Party shall collect and produce Documents in Native Format in a manner that preserves the integrity of the files.  In all other instances, after initial production of ESI in TIFF, a party wanting to receive a Native Format copy of a Document may make a reasonable request. No Document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the Document before its collection, except that the Producing Party may take steps to remove privileged information from the native file

prior to production by redaction, and indicate why such information has been redacted. Native files shall be named with the corresponding Production Bates Number. A link to the native files shall be provided in a Native Path field within the load file. For the sake of clarity, this provision does not require the production of all ESI in Native Format. Audio and video files shall also be produced in Native Format.

7.      **Production Media:**   The Producing Party shall produce images of Documents on external hard drives, CDs, DVDs, secure electronic transmission (e.g., FTP site), or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party and the Document Number ranges of the Documents in that production (for example, "USOC Production, USOC0000123 - USOC0000456").

8.      **Original Documents:**   Nothing in this Protocol shall eliminate or alter any Party's obligation to retain Native Format copies of all ESI produced in the Litigation and original paper copies for all Paper Discovery produced in the Litigation.

9.      **Third-Party Software:**   To the extent that information produced pursuant to this Protocol cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such information in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

10.      **Removal of Duplicates:**   The Producing Party must take reasonable steps to remove exact duplicate Documents prior to production. ESI shall be de-duplicated either by custodian or globally by the Producing Party. Any de-duplication method used shall not eliminate individual documents from families. To "de-duplicate" across custodians means that exact duplicates of documents held and produced by a particular custodian, as identified by MD5 hash value, but also residing with another custodian, will

not be produced twice. Where a document has been de-duplicated across multiple custodians, those additional custodians will be identified in the Additional Custodian meta-data field described below. Additionally, the Producing Party shall produce threaded email chains (*i.e.*, producing the last, most-inclusive email in every unique email chain), in lieu of producing each email separately, as part of de-duplication.

11.   **Parent/Child.**   Parent-child relationships should be preserved for all production documents. For each produced document, all associated parent or child documents (including embedded documents) containing responsive information should also be produced as separate documents. Bates numbering of a parent document and any child documents shall be sequential such that a parent document has the lowest value Bates number when compared to its children.

12.   **ESI of Limited Accessibility:**   If a Producing Party contends that any discoverable responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), such as offline, backup or archival data, that Party shall timely identify such ESI with reasonable particularity and shall identify the basis for the ESI not being reasonably accessible. The Parties shall meet and confer in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties may submit any dispute to the Court.

13.   **Compressed files**. Compressed files shall be decompressed with the family maintained.

14.   **Metadata fields:**   The parties agree to produce the following metadata fields, where applicable:

| FIELD NAME | DESCRIPTION |
|---|---|
| **BEGDOC** | The starting Bates number of the document |
| **ENDDOC** | The ending Bates number of the document |
| **BEGATTACH** | If the document is an attachment, this is the starting Bates number of the parent document (i.e.-the document it is attached to) |

| FIELD NAME | DESCRIPTION |
|---|---|
| ENDATTACH | If the document is an attachment, this is the ending Bates number of the parent document |
| TO | The name of the recipient(s) |
| FROM | The name of the sender(s) |
| CC | The document is electronic mail or correspondence, the identity of the person or entity who received a copy |
| BCC | If the document is electronic mail or correspondence, the identity of the person or entity who received a blind copy |
| DATESENT | If the document is electronic mail or correspondence, the date the document was sent |
| DATERECEIVED | If the document is electronic mail or correspondence, the date the document was received |
| SUBJECT | The subject of the document, typically included with correspondence and memoranda |
| FILENAME | The original name of the native file |
| EXTENSION | The application extension of the native file, for example: .doc, .xls, .docx, .xlsx, .mdb, .txt |
| CREATEDATE | The date the document was created |
| LASTMODIFIED | The date the document was last modified |
| PAGECOUNT | The number of pages in the document |
| CUSTODIAN | The name of the custodian from whom the document was obtained |
| ADDITIONAL CUSTODIANS | The name of additional custodians from whom de-duplicated instances of the document were obtained. |
| MD5HASH | The unique numerical identifier of the document |
| NATIVEPATH | The path within the load file structure to the native file, if a native file produced |
| CONFIDENTIAL | Whether or not the document is labeled designated as confidential pursuant to a protective order |
| EMAIL SUBJECT | Subject line for email |
| ATTACH | The file name(s) of the attached documents |

**E.**     **Service and Delivery of Documents.**

The parties agree that email or secure file transfer to all counsel of record as of 11:59 p.m. Mountain Time shall constitute service that calendar day. Discovery requests shall be served in .PDF and Word, and written responses to discovery shall be served in searchable .PDF format by electronic service. Any party who subpoenas documents, ESI, or other tangible things from a third party shall provide notice to the other parties to the litigation before service of the subpoena on the third party in accordance with Federal Rule

of Civil Procedure 45(a)(4) and make reasonable provision for prompt access to any documents produced.

**F.**     **Privilege Logs.**

1.     The parties agree that it is unnecessary to include on any privilege log documents created after the Litigation was filed.

2.     **Redaction Privilege Log.**  A Party redacting any responsive information on the grounds of privilege, work product protection, or any similar claim shall provide to the Receiving Party a "redaction privilege log" (a) listing the Bates numbers of redacted documents that have the reason for the redaction stated or embedded in the redaction itself, or (b) if the reason is not stated or embedded in the redacted document, a listing of the Bates numbers of redacted documents with the reason stated for the redaction. The Producing Party shall produce any required redaction privilege log within 10 days from the date of the production in which the redacted document was included.

**G.**     **Additional Issues.**

1.     **English Language:** If any Document exists in more than one language, the Document shall be produced in English, if available.

2.     **Protective Order:** The terms of any Protective Order filed with the Court also govern all productions made pursuant to this Protocol.

3.     **Meet and Confer:**   In the event of any dispute arising out of the implementation of this Protocol, the Parties shall meet and confer upon written request via electronic mail to all counsel of record. Absent good cause, a Party shall respond to such written request to meet and confer within 2 business days of the request, setting a date for the actual meet and confer within 5 days of the original request. Due to the number of counsel in this case, the meet and confer shall be done by email or by conference call including all involved in the dispute.

4.     **Rolling Production:** A Producing Party will estimate at the beginning of a

rolling production of ESI when it will be completed and provide periodic updates to establish a completion date.

**IT IS SO ORDERED.**

Dated this 15th day of October, 2018.

_Michael E. Hegarty_

Michael E. Hegarty
United States Magistrate Judge

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated:  October 12, 2018

**For Plaintiffs:**

*/s/ Rex A. Sharp*
Rex A. Sharp
Ryan C. Hudson
Larkin E. Walsh
Sarah Bradshaw
Rex Sharp P.A.
5301 W 75th Street
Prairie Village, KS 66208
913-901-0505
913-901-0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com


Robert Allard
Lauren Cerri
Corsiglia McMahon & Allard
96 North Third Street
Suite 620
San Jose, CA 95112
408-289-1417
Fax: 408-289-8127
rallard@cmalaw.net
lcerri@cmalaw.net

Jonathan Little
Saeed and Little, LLP
1433 N. Meridian St.
Indianapolis, IN 46202
317-721-9214
jon@sllawfirm.com

**For Defendants Lopez:**

*/s/  Kathleen Alt*
Howard L. Jacobs
Law Offices of Howard L. Jacobs
31111 Agoura Rd, Ste. 225
Westlake Village, CA 91361
(805) 418-9892
howard.jacobs@athleteslawyer.com

Kathleen Alt
Berg Hill Greenleaf Ruscitti, LLC
1712 Pearl Street
Boulder, CO 80302
(303) 402-1600
kta@bhgrlaw.com

*Attorneys for Defendants*
*Steven Lopez and Jean Lopez*

Stephen Estey
Estey & Bomberger LLP
2869 India Street San Diego, CA
92103
619-295-0035
619-295-0172 (fax)
steve@estey-bomberger.com

Daniel A. Lipman, #35046
Parker Lipman LLP
3200 Cherry Creek S. Drive, Ste. 520
Denver, CO 80209
(720) 638-9424
dan@parkerlipman.com

*Attorneys for Plaintiffs*

**For Defendant USAT:**

/s/ Thomas B. Quinn
Thomas Baker Quinn
Lillian L. Alves
Nathan Andrew Huey
Gordon Rees Scully Mansukhani, LLP
555 17th Street, Ste. 3400
Denver, CO 80202
(303) 534-5154
tquinn@grsm.com
lalves@grsm.com
nhuey@grsm.com

*Attorneys for Defendant USA*
*Taekwondo, Inc.*

**For Defendant USOC:**

/s/ David M. Jolley
Mitchell A. Kamin
Carolyn J. Kubota
Michael D. Fields
Covington & Burling LLP
1999 Avenue of the Stars, Ste. 3500
Los Angeles, CA 90067-4643
(424) 332-4800
mkamin@cov.com
ckubota@cov.com
mfields@cov.com

David M. Jolley
Covington & Burling LLP
One Front Street, 35th Floor
San Francisco, CA 94111
(415) 591-6000
djolley@cov.com

Lindsey C. Barnhart
Covington & Burling LLP
333 Twin Dolphin Drive, Ste. 700
Redwood Shores, CA 94065

(650) 632-4700
lbarnhart@cov.com

John P. Craver
Joseph W. Mark
White & Steele, P.C.
600 17th Street,
Dominion Towers, Ste. 600N
Denver, CO
(303) 296-2828
jcraver@wsteele.com
jmark@wsteele.com

*Attorneys for Defendant United States Olympic Committee*