IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN,
KAY POE, and
JANE DOES 6-50,

       Plaintiff(s),

v.

UNITED STATES OLYMPIC COMMITTEE,
USA TAEKWONDO INC.,
U.S. CENTER FOR SAFESPORT,
STEVEN LOPEZ,
JEAN LOPEZ, and
JOHN DOES 1-5,

       Defendant(s).

---

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO U.S. CENTER FOR SAFESPORT MOTION TO DISMISS (Doc. 105)**

---

       SafeSport's Motion to Dismiss is so troubling, it is difficult to know where to begin. Setting aside, for the moment, the vitriolic, merits-focused "background" section comprising the first half of SafeSport's brief,[1] and setting aside the substantive exhibits SafeSport attaches,[2] Plaintiffs can identify three grounds SafeSport offers to support its Rule 12(b) Motion: lack of standing, absolute

---

[1] Doc. 105, 1-7.

[2] Docs. 105-1, 105-2, and 105-3.

immunity, and failure to state a claim.[3] Plaintiffs first address the Motion on the "merits" of these arguments: the Court should reject SafeSport's argument on standing because it fails to pass the straight-face test; the immunity argument is completely unsupported by law or fact and is contradicted by Congressional fiat; and Plaintiffs' factual allegations, taken as true as they must be at this stage, state plausible claims of obstruction, negligence, gross negligence, and outrage against SafeSport.

### Relevant Procedural and Factual History

Although the abuse alleged in the Second Amended Complaint ("SAC") began as early as 1994 when Jean began grooming then-13-year-old Mandy Meloon,[4] continuing through 1997 when Jean assaulted her,[5] and in 1999 when he began having sex with then-17-year-old Kay Poe,[6] in 2003 when he drugged and raped Heidi Gilbert,[7] and continuing nearly a decade later when his brutal rape of Gaby Joslin resulted in pregnancy,[8] the USOC and NGBs "officially" recognized the need to address rampant sexual abuse in 2010, and the SafeSport concept was birthed then.[9] USOC started a task force and applied for a trademark on the SafeSport name.[10] USOC hired Malia Arrington as Director of Ethics in charge of the SafeSport program, a USOC attorney who had

---

[3] Doc. 105, at 1, 7, and 12.

[4] Doc. 68, ¶¶ 369-70, 374.

[5] Doc. 68, ¶¶ 405-409.

[6] Doc. 68, ¶¶ 497-98

[7] Doc. 68, ¶¶ 543-53.

[8] Doc. 68, ¶¶ 630-31.

[9] Doc. 68, ¶¶ 69-70.

[10] Doc. 68, ¶ 128, 282, Diana Moskovitz, *SafeSport, the USOC's Attempt to Stop Child Abuse, Is Set Up to Fail—Just like It was Supposed To* (July 24, 2018) https://deadspin.com/safesport-the-usocs-attempt-to-stop-child-abuse-is-se-1826279217.

previously testified in a deposition that she had no authority to make USA Taekwondo ban a coach despite evidence of sexual abuse.[11] Arrington continued on USOC's payroll as SafeSport's acting CEO for most of 2016, the key person leading the board through questions about how the center would work and what its priorities would be. And she remains at the "independent" U.S. Center for SafeSport, as its COO and registered agent.[12]

It wasn't until the story of abuse in USA Gymnastics broke in mid-2016 and the USOC faced a groundswell of public outrage and Congressional questioning—and ultimately legislative amendment—that SafeSport actually got off the ground.[13] In 2017, Congress enacted the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act, which designated the United States Center for SafeSport to serve as the independent national safe sport organization, overseeing complaints of sexual abuse or harassment within the National Governing Bodies ("NGBs") and Olympic community.[14]

Plaintiffs, like many other members of the Olympic community, desire to see SafeSport succeed.[15] God knows (as does Congress) that there is a huge need for it. Indeed, shortly after

---

[11] Doc. 68, ¶¶ 72, 128 & n.57, 304-305; Diana Moskovitz, *SafeSport, the USOC's Attempt to Stop Child Abuse, Is Set Up to Fail—Just like It was Supposed To* (July 24, 2018) https://deadspin.com/safesport-the-usocs-attempt-to-stop-child-abuse-is-se-1826279217.

[12] *Id.*

[13] Doc. 68, ¶¶ 280-282.

[14] Doc. 68 ¶¶ 38-44, 273, 354-361.

[15] Doc. 68, ¶ 187; U.S. Senate Commerce, Science and Transportation, Committee, Subcommittee on Consumer Protection, Product Safety, Insurance, and Data Security, Hearing on Protecting Amateur Athletes, CQ-ROLLCALL, 2018 WLNR 22755090 (July 26, 2018) (testimony of Han Xiao)

SafeSport issued its original decision resolving the Jean Lopez investigation—just over one year after opening its doors—SafeSport received its 1000th complaint.[16]

But indicators suggest that SafeSport could still fail in its mission to protect athletes. For example, and as highlighted in recent Congressional testimony, SafeSport efforts could be derailed by "the stories we're hearing suggesting that the rights of the accused are not being appropriately protected," and that "SafeSport complaints are being used by staff against athletes, as yet another way to exercise power over them."[17] Although SafeSport's budget was recently doubled, no party seriously contests that it remains woefully underfunded.[18] Not only does it lack the resources to adequately fulfill its mission, its current reliance on funding from the USOC and NGBs precludes it from truly being independent.[19] Rather than having subject matter experts that include prosecutors, academics, abuse survivors, victims' advocates, and parties interested in protecting the due process rights of all the parties involved, SafeSport still has USOC cronies in executive positions and focuses its hiring on those with marketing backgrounds.[20]

Plaintiffs and SafeSport should be on the same side of this lawsuit. Unfortunately, however, SafeSport has proven to be little more than a nominally outsourced HR department, facilitating USOC's corporate greed by covering up sexual abuse and harassment complaints and providing

---

[16] Doc. 68, ¶ 223; Diana Moskovitz, *SafeSport, the USOC's Attempt to Stop Child Abuse, Is Set Up to Fail—Just like It was Supposed To* (July 24, 2018) https://deadspin.com/safesport-the-usocs-attempt-to-stop-child-abuse-is-se-1826279217.

[17] Hearing, *supra* note 15.

[18] Doc. 68, ¶¶ 36, 275, 328.

[19] Doc. 68, ¶¶ 71, 256-259.

[20] Moskovitz, *supra* note 16.

plausible deniability for NGBs and the USOC while predators continue to deliver money and medals for their sport.

By way of a Second Amended Complaint filed August 24, 2018 (Doc. 68), all Plaintiffs, individually and on behalf of a class of those similarly situated, assert several causes of action against SafeSport including obstruction in violation of 18 U.S.C. §§ 1590(b), 1595(a) (Count 14); violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 (Count 15); negligence (Count 19), gross negligence (Count 20) and outrageous conduct (Count 21).[21]

**Plaintiffs have Standing**

Because Article III of the Constitution limits federal judicial power to "Cases" and "Controversies," any question as to Plaintiffs' standing goes to this Court's jurisdiction.[22] A 12(b)(1) motion takes two forms: (1) a facial attack on the allegations as to subject matter, questioning the sufficiency of the complaint; or (2) an attack on the facts upon which jurisdiction depends.[23] In the former circumstance, the Court accepts the complaint's allegations as true; in a

---

[21] As noted in Plaintiffs' contemporaneously filed Omnibus Response to the Motions to Dismiss Filed by Defendants USOC, USAT, and Lopez Brothers, Doc. 128, Plaintiffs have winnowed down the 21 counts in their SAC to 14. All Counts originally pled against Defendant SafeSport survive this motion. With the Court's permission, Plaintiffs would incorporate by reference all substantive arguments contained in that brief as if they were fully set forth herein.

[22] *Roselle v. Berger & Montague, P.C.*, No. 17-1328, 2018 WL 4929867, at *3 (10th Cir. Oct. 11, 2018); Fed. R. Civ. P. 12(b)(1)(vehicle for presenting defense of lack of subject matter jurisdiction).

[23] *See Chrisco v. Raemisch,* No. 17-CV-01036-PAB-MEH, 2018 WL 949319, at *4 (D. Colo. Feb. 20, 2018) (Hegarty, J.), report and recommendation adopted, 2018 WL 1517023 (D. Colo. Mar. 27, 2018), reconsideration denied, 2018 WL 2938316 (D. Colo. June 12, 2018).

factual attack, however, the Court may refer to evidence outside the pleadings to resolve disputed jurisdictional facts, and may do so without converting the motion to one for summary judgment.[24]

Here, SafeSport challenges Plaintiffs' standing, as "private citizen[s]" to contest "the prosecution or nonprosecution of another."[25] Although SafeSport attaches some materials to its motion, it does not offer this material in support of its standing argument, which comprises all of five paragraphs. Nor does SafeSport clearly challenge any fact set forth in the SAC that would justify looking outside the pleadings.

Rather, SafeSport analogizes itself to a bar association to argue, conclusively, that Plaintiffs "lack standing to make the Center legally responsible for not acting as their private counsel wished in sanctioning third parties."[26] But Plaintiffs' claims against SafeSport do not seek to hold SafeSport responsible for "psychic" injuries stemming from its eligibility decision regarding Jean Lopez.[27] Plaintiffs seek to hold SafeSport responsible for their concrete and particularized damages resulting from SafeSport's obstructive, negligent, grossly negligent, and outrageous conduct.

Article III standing requires (1) an injury in fact (i.e., a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (i.e., a "fairly . . . trace [able]" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is "likely" and not "merely 'speculative' " that the plaintiff's injury will be remedied by the

---

[24] *Id.*

[25] Doc. 105, at 8.

[26] Doc. 105, at 9.

[27] *Id.*

relief plaintiff seeks in bringing suit).[28] Plaintiffs, who are athlete members of the U.S. Olympic community who were sexually abused by their coaches and teammates, have standing to bring claims against SafeSport for its role in obstructing or interfering with attempts to bring the Lopezes' crimes to light, and against SafeSport for its negligent mishandling of the investigation, prosecution, resolution and appeal of Plaintiffs' abusers. Plaintiffs' injuries are "concrete and particularized" as described throughout the Second Amended complaint, and are amenable to actual (not speculative) redress through the compensatory, punitive, injunctive, and other relief sought.[29] The statutes under which Plaintiffs seek redress all explicitly establish Plaintiffs' standing, as victims of forced labor, trafficking, and sexual exploitation, to seek a civil remedy for SafeSport's role in obstructing the same, and participating in a venture that engaged in trafficking these athletes to provide sexual services.[30] And Plaintiffs are proper parties to assert their state tort claims, as parties to whom SafeSport owed—but breached—a duty of care, and which breach has caused actual damages.[31]

---

[28] *Sprint Commc'ns Co., L.P.* v. *APCC Servs., Inc*., 554 U.S. 269 (2008) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560--61 (1992)) (internal quotation marks omitted).

[29] *Spokeo, Inc* v. *Robins*, 136 S. Ct. 1540, 1548 (2016); Doc. 68, ¶¶ 448, 482, 486, 516, 521, 522, 564, 565, 566, 585, 595-599, 601, 636, 643, 648, 652-654, 709-710, 714, 720, 722.

[30] 18 U.S.C. § 1595 ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter"); 18 U.S.C. § 1964 (Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court").

[31] *See* Doc. 68, ¶¶ 256-353.

**SafeSport is not Immune from Suit**

SafeSport suggests that because it exercised a judicial "function," it enjoys absolute immunity from suit as a "judicial officer acting in a quasi-judicial fashion."[32] As a threshold matter, absolute immunity is the exception, not the rule.[33] And "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."[34] Aside from its conclusory claim to immunity and citation to inapposite case law,[35] SafeSport makes no such showing of entitlement here.

Determining whether immunity exists, the courts look to "the nature of the function performed, not the identity of the actor who performed it."[36] SafeSport's functions are set forth in detail by Congressional fiat, and none of these functions are judicial or prosecutorial. The Sports Act designates the United States Center for SafeSport for five purposes: (1) to "serve" as an independent national safe Sport organization; (2) to "exercise jurisdiction over" the USOC and NGBS with regard to safeguarding amateur athletes against abuse; (3) to "maintain an office for education and outreach" to "develop training, oversight practices, policies and procedures"; (4)

---

[32] Doc. 105 at 9 (citing *Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006)).

[33] *Gagan v. Norton,* 35 F.3d 1473, 1476 (10th Cir. 1994) (heeding the Supreme Court's admonition in *Burns* that absolute immunity is the exception and not the rule, holding "We have been quite sparing in our recognition of absolute immunity and have refused to extend it any further than its justification would warrant.").

[34] *Burns* v. *Reed*, 500 U.S. 478, 486 (1991) (citation to four U.S. Supreme Court cases omitted).

[35] In the inapposite case of *Guttman*, cited by SafeSport in support of its claim to immunity, the Tenth Circuit confirmed that that the defendant—an administrative prosecutor—was entitled to absolute immunity from a physician's §1983 suit for damages because, as the circuit court had previously held, prosecutorial immunity, *see Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), extended to attorneys appearing before the state board of medical examiners, *see Pfeiffer av. Hartford Fire Ins., Co*., 929 F.2d 1484,1489 (10th Cir. 1991).

[36] *Forrester* v. *White*, 484 U.S. 219, 229 (1988).

(relevant here) to "maintain an office for response and resolution" that shall "establish mechanisms that allow for the reporting, investigation, and resolution … of alleged sexual abuse"; and (5) (also relevant) to "ensure" that these mechanisms "provide fair notice and an opportunity to be heard and protect the privacy and safety of complainants."[37]

Subsection (c)(1) states that SafeSport "may, in its discretion, utilize a neutral arbitration body" to resolve allegations of sexual abuse and "to determine the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official, who is the subject of such an allegation, to participate in amateur athletic competition." Congress does vest with SafeSport the ability to utilize a neutral arbitration body to make determinations regarding claims of sexual abuse, but it does not empower the Center as an arbitrator.[38] Many federal courts have addressed arbitral immunity and its application for these decisionmakers, however SafeSport is not akin to the National Association of Securities Dealers,[39] or arbitrators appointed by private agreement of the parties and empowered by the parties to resolve disputes between them,[40] and Plaintiffs are not arguing the appointment of the SafeSport arbitrators or their merits.[41] Accordingly, none of the case law SafeSport offers is binding or persuasive.

Congress also spoke to this issue in the statute authorizing SafeSport. First, when it wanted to limit liability and effectively provide immunity, it did so expressly:

---

[37] 36 U.S.C. § 220541(a)(1)-(5).

[38] 36 U.S.C. § 220541(c)(1).

[39] *Pfannenstiel* v. *Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155 (10th Cir. 2007).

[40] *Corey* v. *New York Stock Exch.*, 691 F.2d 1205, 1209 (6th Cir. 1982).

[41] *Olson* v. *Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 383 (8th Cir. 1996).

(d) Limitation on liability.--

(1) In general.--Except as provided in paragraph (2), an applicable entity shall not be liable for damages in any civil action for defamation, libel, slander, or damage to reputation arising out of any action or communication, if the action arises from the execution of the responsibilities or functions described in this section, section 220542, or section 220543.[42]

Second, and as if contemplating this lawsuit, Congress specifically stated that:

Nothing in this section shall be construed as altering, superseding, or otherwise affecting the right of an individual within the Center's jurisdiction to pursue civil remedies through the courts for personal injuries arising from abuse in violation of the Center's policies and procedures, nor shall the Center condition the participation of any such individual in a proceeding described in paragraph (1) upon an agreement not to pursue such civil remedies.[43]

SafeSport improperly asks the Court to graft new language into the statute—language that is inconsistent with the existing text. Congress considered and drafted the scope of liability for SafeSport, and although it limited liability for certain claims, it declined to provide immunity to the claims alleged here. SafeSport can petition Congress to change the law, but it should not be permitted to change the law via Motion to Dismiss briefing, especially on an issue as liminal and significant as absolute immunity.

SafeSport's arguments rest on a mischaracterization of Plaintiffs' claims against it. Contrary to SafeSport's distorted view of Plaintiffs' suit, Plaintiffs' SAC frames the suit, and the SAC is clear that Plaintiffs are not attempting to "litigate [the Lopez brothers'] eligibility in court"[44] or "suing the Center because they disagree with its [eligibility] decisions."[45]  Plaintiffs'

---

[42] 36 U.S.C.A. § 220541

[43] 36 U.S.C.A. § 220541(c)(2).

[44] Doc. 105, at 11.

[45] Doc. 105, at 10.

claims for RICO violations, obstruction, negligence, gross negligence and outrage arise out of SafeSport's failure to properly investigate and to ensure that mechanisms for "reporting, investigat[ing], and resol[ving …] alleged sexual abuse" are reasonable.[46] SafeSport's attempted analogies to prosecutorial, judicial, and arbitral immunity are inapposite. Although federally chartered, SafeSport is a private actor.[47] SafeSport's function, as a matter of fact and Congressional fiat, is not judicial and this action falls outside the narrow Congressional limits on its liability, as contained in 36 U.S.C. § 220541(d).

**Plaintiffs' Allegations Against SafeSport State Plausible Claims for Relief**

In misguided arguments regarding sufficiency of the SAC, SafeSport's motion seeks to dismiss claims against it that Plaintiffs have not asserted ("federal sex trafficking" and "forced labor crimes"), and faults the SAC for failing to plead facts that are not relevant to any element of any of Plaintiffs' causes of action ("criminal intent"). To be clear, the claims newly asserted by Plaintiffs in the SAC against SafeSport are: Obstruction (Count 14); RICO (Count 15); Negligence (Count 19); Gross Negligence (Count 20) and Outrage (Count 21).

Instead of focusing on what is missing from the pleadings, SafeSport's motion argues the merits of the claims, and in doing so, repeatedly misstates their elements ("The Center was neither the 'perpetrator' … nor did it benefit *financially*").[48]

---

[46] *See* 36 U.S.C. § 220541.

[47] *See, e.g., DeFrantz* v. *U.S. Olympic Comm.*, 492 F. Supp. 1181, 1192 (D.D.C.), *aff'd*, 701 F.2d 221 (D.C. Cir. 1980).

[48] Doc. 105, at 12 (emphasis added).

Rather than engage in a tit for tat, Plaintiffs simply incorporate by reference the substantive arguments contained in their Omnibus Response to Defendants USOC, USAT, and the Lopez Brothers' Motions to Dismiss, this day filed, and highlight the following:

RICO claim against SafeSport is sufficiently pled.

The RICO claim in the SAC alleges a much broader picture of obstruction by all named Defendants, who caused the injury to Plaintiffs at various intervals throughout the period of obstruction. Simply because SafeSport did not exist at the inception of this ongoing RICO conspiracy does not mean SafeSport did not participate in the RICO enterprise or, at a minimum, become a co-conspirator under § 1962(d). RICO depends on whether a defendant participates, even indirectly, in the affairs of the enterprise. SafeSport is not required to commit two predicate acts on its own to be liable. Safe Sport makes the same cursory arguments as the other Defendants, and Plaintiffs therefore incorporate their briefing on RICO from their Omnibus Response to the other three Motions to Dismiss.[49]

State Tort Claims are sufficiently pled.

SafeSport makes the assertion, wholly unsupported by any citation to authority, that it "owes no legal duty of care, enforceable in a tort law suit for damages, to individuals (whether reporting or responding parties) whose claims and defenses it is adjudicating."[50] SafeSport cannot credibly argue that it owes no duty to Plaintiffs: it is obligated, implicitly and explicitly by statute, and under the common law, to establish fair and effective processes for investigating and resolving

---

[49] Omnibus Response, Doc. 128, at Sec. III.B.

[50] Doc. 105, at 15.

allegations of sexual abuse, and for ensuring that these processes "protect the privacy and safety of [Plaintiffs]."[51] Plaintiffs plausibly allege that SafeSport breached this duty.[52]

Persisting in arguing merits rather than sufficiency of the allegations, SafeSport asserts that its decisions were "not a proximate cause of any *of the abuse* suffered by Plaintiffs."[53] SafeSport misunderstands Plaintiffs' claims. Of course SafeSport could not have "caused (or prevented)" the sexual abuse described in the SAC.[54] Plaintiffs' negligence-based claims in Counts 19, 20, and 21 are based on SafeSport's negligent breach of a duty to act with reasonable care toward Plaintiffs, the victim-witness-complainants it was charged with protecting through investigation and resolution of claims against their alleged abusers, the Lopez brothers. SafeSport mentions a lack of causation, but proximate cause is a fact question, and Plaintiffs' SAC sufficiently links SafeSport's conduct to Plaintiffs' harm.[55]

SafeSport argues its conduct was reasonable and thus not outrageous, but Plaintiffs' allegations, taken as true as they must be at this stage, similarly state a plausible claim of outrage. Rather than walk through the allegations, Plaintiffs incorporate by reference their substantive defense of the sufficiency of their allegations in the Omnibus Response, filed this day.[56]

Again in the style of a Rule 56 motion, SafeSport argues that it acted reasonably in imposing a lifetime ban of the Lopezes and in postponing Jean Lopez's arbitration. But again

---

[51] 36 U.S.C. § 220541(a)(4)&(5); *see* Doc. 68, ¶¶ 42, 354-361

[52] Doc. 68, ¶¶ 277, 475, 477, 481, 485, 520, 522, 596, 597, 600-601, 652-653, 719.

[53] Doc. 105, at 15 (emphasis omitted).

[54] *Id.*

[55] *See* Doc. 68, ¶¶ 236, 238, 245-255, 945-949, 954-958, 961-964; *see also* Doc. 128, at III.C.

[56] *See* Doc 68, ¶¶ 459, 574, 635, 637, 711, 715, 716, 960-66; *see also* Doc. 128, at III.E.

SafeSport misses the mark entirely. Plaintiffs assert that SafeSport acted negligently in failing to protect them and was grossly negligent in protecting their rapists.[57] These assertions are supported by well pleaded facts and SafeSport's Motion should be denied.

**Tone of SafeSport's Motion = Tone Deaf**

Finally, it cannot be left unsaid that the tone of the instant motion is unfortunate and ill-advised. Not only is it rife with merits arguments, unsupported conclusions, faulty analogies, and inapposite case law, it reflects precisely the reason why SafeSport has become a defendant in this case. This motion is itself evidence that SafeSport is a sham, incapable and unwilling to fulfill its statutory duties in a professional and independent manner.

Notwithstanding the tone of this brief, SafeSport is not a victim – it has the autonomy, authority, and presumably the ability to set procedures in place that are fair, that are reasonable, and that produce results aimed at fulfilling its Congressional directive of protecting athletes and preventing abuse. In this case, it failed to do so. And rather than address the sufficiency of Plaintiffs' allegations on their terms, SafeSport runs from its challenged behavior like a desperate, wounded animal and blames Plaintiffs' counsel for its conduct.

It is the height of arrogance and condescension for SafeSport, the entity whose only mission is purportedly to ferret out and address sexual abuse and misconduct in amateur sports, to call this lawsuit "frivolous."[58] This lawsuit is brought to shine light on and hold accountable the institutions that have obstructed and covered up for individuals in power who for decades have abused the Team USA hopefuls in their care. SafeSport was not originally a party to this suit in

---

[57] Doc. 68, at ¶¶ 236, 238, 245-255, 256, 258, 273-83, 938-959; *see also* Doc. 128, at Sec. III.C.

[58] Doc. 105, at 7.

part because it presumably had the same goal. But SafeSport's conduct has shown otherwise. And this motion is no exception. SafeSport mercilessly mocks Plaintiffs, referring dismissively to their "'feelings' of 'institutional abandonment' and 'distress'" as though these injuries are not legally cognizable (which is inaccurate) or worse, are fabricated.[59] In addition to victim-blaming, and accusing Plaintiffs of hypocrisy for bringing a suit that would "deplete the Center's resources while exposing it to trebled damages enriching private attorneys," the Motion contains repeated and unnecessary ad hominem attacks on counsel, accusing Plaintiffs' counsel of "undercut[ing]" and "kneecapping" and "block[ing]" the Center from presenting "its strongest case against Jean Lopez."[60]

"A reasoned decision which one party disagrees with is not outrageous conduct."[61] But Plaintiffs' do not disagree with SafeSport's reasoned decision finding Jean Lopez permanently ineligible to participate in sport. Plaintiffs only that the ruling had been made decades earlier. To be clear, Plaintiffs are not challenging the eligibility decision. They challenge the arbitrary, capricious, malicious, and tone-deaf procedures employed by SafeSport that resulted in this reasoned decision – to ban a serial rapist from sport – being "suspended" or "lifted" or "rescinded" because the victims of his abuse proffered alternatives to appearing in person to create a new factual record on his appeal.

The entire factual/investigative record SafeSport relied on in reaching its April 3, 2018 decision banning Jean Lopez from participation in sport was contained in its 125-page report. This

---

[59] Doc. 105, at 9.

[60] Doc. 105, at 7, 18.

[61] Doc. 108, at 24.

report included multiple written statements and interview notes from Plaintiffs Kay, Heidi, and Mandy, as well as many other witnesses. This investigation led SafeSport to impose a permanent ban based on a finding of "decades-long pattern of sexual misconduct."[62] Why then, on "appeal," would *more* be necessary to present a stronger case against Jean? And even if more was necessary, why would the interim decision be to *rescind* the ban?[63]

### The Court Should Exclude Attachments or Permit Summary Judgment Discovery

This brings Plaintiffs full circle to address the three attachments SafeSport offers with its Motion to Dismiss. Normally, in deciding a motion to dismiss under Rule 12(b)(6), a court should consider only the contents of the complaint.[64] If the court considers materials attached to a defendant's motion to dismiss, the Court should convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence. Exceptions to this general rule include documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and "matters of which a court may take judicial notice."[65]

---

[62] Doc. 68, ¶ 12.

[63] It is a fundamental tenet of any civilized justice system that, absent extraordinary circumstances, a final outcome is given effect pending reversal on an appeal. *See, e.g., Nken v. Holder,* 556 U.S. 418, 427 (2009) (citing *Virginian R. Co. v. United States,* 272 U.S. 658, 672 (1926). Indeed, the appeal divests the decisionmaker of jurisdiction to alter its result. *Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982).Like the doctrine of stare decisis, preserving the status quo serves to protect the settled expectations of the parties and legitimizes the process. *See, e.g., O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 1015 (10th Cir. 2004) (McConnell, J., concurring), aff'd and remanded 546 U.S. 418 (2006).

[64] *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010).

[65] *Troudt v. Oracle Corp*., No. 116CV00175REBCBS, 2017 WL 663060, at *3 (D. Colo. Feb. 16, 2017), report and recommendation adopted, No. 116CV00175REBCBS, 2017 WL 1100876

Turning to the documents attached to SafeSport's motion, Exhibit 1[66] is a printed version of the SafeSport Code for the U.S. Olympic and Paralympic Movement, which Plaintiffs do reference in their SAC[67] and the authenticity of which Plaintiffs do not dispute.

However, the Exhibit 2[68] is Defendant SafeSport's email notice of the decision to "stay the arbitration of [Jean Lopez's] permanent ineligibility" – a decision that appears to have been sent via email only to counsel for Jean Lopez. Neither Plaintiffs nor Plaintiffs' counsel received a copy of this notice, and only learned about the "stay" on their abuser's ban through media coverage.[69] Indeed, this is the first time Plaintiffs, or their counsel, have seen this notice. Plaintiffs are not prepared to concede the authenticity of this document. Nor do Plaintiffs admit that it has central relevance to the Complaint, particularly in light of the fact that this is the first time Plaintiffs have laid eyes on it. Plaintiffs agree that this document has relevance to the claims, however, and its consideration converts the instant motion to one for summary judgment.

Similarly, Plaintiffs challenge SafeSport's inclusion of Exhibit 3.[70] As a participant in them, counsel has seen the email exchanges regarding SafeSport's late-July, 2018 position that live testimony of Plaintiffs was required at the arbitration/appeal, that Jean Lopez, the Responding Party, would need to "confront the testimony" of Plaintiffs and "test their credibility," and its threat that Plaintiffs' failure to cooperate would require the Center to "rescind its permanent ineligibility

---

(D. Colo. Mar. 22, 2017); *see Gee*, 627 F.3d at 1186 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[66] Doc. 105-1.

[67] *See* Doc. 68 ¶ 19.

[68] Doc. 105-2.

[69] Doc. 68, ¶¶ 19-20.

[70] Doc. 105-3.

finding" as to Jean Lopez. Although the content of these emails militates strongly *against* dismissal of Plaintiffs' substantive claims, they are not central to or referenced in the SAC. Nor is there any authenticating declaration accompanying them. Among other things, this particular communication thread is an incomplete excerpt of communications between counsel for Plaintiffs and counsel for SafeSport. Plaintiffs strenuously oppose SafeSport's attempt to inject these out-of-context attorney-to-attorney communications into the case at the motion to dismiss stage.

SafeSport invites the Court to reversible error by asking it to consider Exhibits 105-2 and 105-3 in ruling on the Motion to Dismiss.[71] If the Court is inclined to R.S.V.P. "yes," Plaintiffs propose that the Court stay a decision on the motion while Plaintiffs conduct discovery on their claims against SafeSport and prepare a substantive response with supporting documentation. Such documentation will balance SafeSport's Exhibit 105-2 by including SafeSport's original April 3, 2018 Notice of Director's Decision and Report banning Jean Lopez from participation in sport; and will balance SafeSport's Exhibit 105-3 by offering the full exchange of counsel emails relating to Jean Lopez's appeal of the decision.

However the Court has "broad discretion in determining whether or not to accept materials beyond the pleadings,"[72] and that discretion extends to "deciding whether to convert a motion to

---

[71] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215–16 (10th Cir. 2007) ("The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error *unless the dismissal can be justified without considering the outside materials.*) (Emphasis original).

[72] *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998),

dismiss into a motion for summary judgment."[73] Plaintiffs urge the Court to decline SafeSport's

invitation to error and deny the Motion based on the pleading and the responsive arguments herein.

Respectfully Submitted,

*/s/ Larkin E. Walsh*
Rex A. Sharp
Ryan C. Hudson
Larkin E. Walsh
Sarah T. Bradshaw
REX A. SHARP, P.A.
5301 West 75th Street
Prairie Village, KS  66208
913-901-0505
913-901-0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com

Robert Allard
CORSIGLIA MCMAHON & ALLARD
96 North Third Street, Suite 620
San Jose, CA 95112
408-289-1417
408-289-8127 (fax)
rallard@cmalaw.net

Daniel A. Lipman
PARKER LIPMAN LLP
3200 Cherry Creek S. Drive, Ste. 520
Denver, CO 80209
dan@parkerlipman.com
(720) 638-9424

Jonathan Little
SAEED AND LITTLE, LLP
133 W. Market St. #189
Indianapolis, IN 46204

---

[73] *Osei v. Brooks*, No. 11–cv–01135–PAB–KMT, 2012 WL 1079465, at *2 (D. Colo. Mar. 5, 2012) (quoting *JP Morgan Trust Co. Nat. Ass'n v. Mid–America Pipeline Co.*, 413 F. Supp. 2d 1244, 1256–57 (D. Kan. 2006)).

317-721-9214
jon@sllawfirm.com

Stephen John Estey
ESTEY & BOMBERGER, LLP
2869 India Street
San Diego, CA  92103
619-295-0035
steve@estey-bomberger.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing document was filed and served, via the CM/ECF system on October 24, 2018, on all counsel of record.

*(A duly signed original is available at the office of Rex A. Sharp, PA)*

By:     <u>*Larkin E. Walsh*</u>
Attorney for Plaintiffs