**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN,
KAY POE,
and JANE DOES 6-50,
      Plaintiff(s),

v.

UNITED STATES OLYMPIC COMMITTEE,
USA TAEKWONDO INC.,
U.S. CENTER FOR SAFESPORT,
STEVEN LOPEZ,
JEAN LOPEZ,
and JOHN DOES 1-5,
      Defendant(s).

---

**DEFENDANT UNITED STATES OLYMPIC COMMITTEE'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION
COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) AND MOTION TO STRIKE CLASS
ACTION ALLEGATIONS UNDER FED. R. CIV. P. 12(f)**

---

Plaintiffs have dropped the baseless sex trafficking claims alleged against the USOC, Dkt. 139 ("Resp.") 3, and the Amended Response to the USOC's Motion (the "Response") confirms that the remaining claims against the USOC should be dismissed as well.

The Response repeatedly trumpets the 966 paragraphs in the "nearly 200-page SAC" as if the volume of the SAC's allegations alone were evidence of its sufficiency under Rule 12(b)(6) *See, e.g.*, *id.* 2.  But the *Iqbal* standard addresses quality, not quantity.  The SAC's allegations—while numerous—fail to state plausible claims against the USOC or justify the facially overbroad putative classes.

I.    ARGUMENT

A.    **The Masha's Law and TVPA Claims Must Be Dismissed.**

The SAC alleged four claims against the USOC under the TVPA, 18 U.S.C. § 1595, and/or Masha's Law, 18 U.S.C. § 2255.  *See* SAC (Dkt. 68) Counts 9, 11-12, 14.  The Response dismisses Counts 11 (child sex trafficking) and 12 (benefitting from a child sex trafficking venture), and fails to address (and thereby concedes) the USOC's argument that Count 14 (obstruction) cannot be asserted under Masha's Law.  *See* Resp. 3, 31.  Thus, only the TVPA claims of Counts 9 and 14 remain, and the Response saves neither of them.

1.    **Count 9 fails to state a TVPA claim by Plaintiff Means.**

Count 9 asserts two theories of liability under the TVPA: (1) aiding and abetting, SAC ¶ 802; and (2) knowingly benefiting from participation in a forced labor venture, *id.* ¶ 796.  The Response does not dispute that aiding and abetting liability does not exist under the TVPA.  *See* Mot. (Dkt. 108) 8; Resp. 23-31.  Count 9 should therefore be dismissed to the extent it is based on aiding and abetting liability.  *Tran v. Trs. of State Colls.*, 355 F.3d 1263, 1266 (10th Cir. 2004) (issues not briefed deemed abandoned).

The theory of knowingly benefiting from participation in a forced labor venture also fails.  *First*, the SAC does not allege the element of knowledge required for a TVPA claim.  *See* Mot. 9-10.  In fact, the cases cited in the Response highlight the SAC's deficiencies.  *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (defendants spoke openly about forced labor venture and personally witnessed use of physical force against victim); *see also Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1131-32 (D. Colo. 2015) (defendant had personal knowledge of alleged forced labor); *Owino v. CoreCivic, Inc.*, 2018 WL 2193644, at *11 (S.D. Cal. May 14, 2018) (same); *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 680-81 (S.D. Tex. 2009) (same); *Nunag-*

*Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1144 (C.D. Cal. 2011) (same).  The SAC, by contrast, fails to allege any knowledge by the USOC, and provides no basis to infer the USOC knew or recklessly disregarded any force or threats allegedly used to obtain Plaintiff Means' labor.

*Second*, the Response ignores the element of "participation," which requires allegations of "specific conduct that further[s]" the purported forced labor venture.  Mot. 9.  The SAC's mere allegation that the USOC "associated" with the Lopez brothers—by, *e.g.*, permitting them to coach or compete at the Olympics—does not plausibly establish that the USOC itself subjected Plaintiff Means to forced labor.[1]  By contrast, the cases cited in the Response involved defendants who *personally* participated in obtaining the plaintiffs' labor or services by force or threat of force.  *Menocal*, for example, involved defendants who ran a for-profit immigration detention facility and required detainees to perform labor on threat of solitary confinement.  113 F. Supp. 3d at 1131-32; *see also Owino*, 2018 WL 2193644, at *11 (same); *Adhikari*, 697 F. Supp. 2d at 680 (defendant told plaintiff "he could not leave" until forced labor was completed); *Nunag-Tanedo*, 790 F. Supp. 2d at 1144 (defendants threatened to deport and/or sue plaintiffs if they did not complete forced labor).  The SAC includes no comparable allegations as to the USOC.

*Third*, the Response fails to explain how the USOC *benefited* from Plaintiff Means' alleged forced labor.  The Response is replete with claims that the USOC prioritized "money," "sponsorships," "publicity," and "medals," but the SAC lacks *any* allegations tying those purported "benefits" to any alleged forced labor.  Mot. 10.

*Finally*, the Response concedes that Count 9 cannot be based on conduct prior to December 23, 2008, *see* Resp. 7 n.29.  The only allegations post-dating 2008 (that

---

[1] The Court should disregard the Response's stray references to purported "trafficking" by the USOC, *see* Resp. 26-29, since Plaintiffs voluntarily dismissed all claims against the USOC premised on alleged trafficking activities.  *See id.* 3, 25.

Jean Lopez disqualified Plaintiff Means from a non-USOC tournament in 2010 and Steven Lopez assaulted her at a private party in 2013) in no way involve the USOC. *See* SAC ¶¶ 704-07.  Count 9 is therefore time-barred.

### 2.    Count 14 does not plausibly allege obstruction by the USOC.

Section 1590(b) requires facts establishing the obstruction of *law enforcement*. *See* Mot. 5-6.  The Response fails to point to any such allegations in the SAC (because none exist) and instead relies on group pleading and innuendo.  Resp. 33-36.

First, the Response concedes that only purported obstruction after April 25, 2008 is actionable.  *See* Resp. 13.  The Court should therefore disregard the first four allegations identified on pages 33-34 of the Response.[2]

Second, the Response improperly conflates alleged conduct by *USAT* with alleged conduct by *the USOC*.  The SAC includes only three allegations of alleged obstruction by USOC: (1) "submitt[ing] Jean Lopez's name to the International Olympic Committee as the head coach of Team USA's 2008 Taekwondo team," SAC ¶ 211; (2) "work[ing] in concert" with USAT to delay USAT's private investigation of the Lopez brothers during the 2016 Olympics, *id.* ¶¶ 222, 225-27; and (3) continuing the private investigation after the Olympics ended, *id.* ¶ 234.  These allegations show no obstruction of law enforcement.  Any purported failure to facilitate a speedy private investigation by *USAT* simply does not constitute obstruction of justice.  *See* Mot. 6-7; *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 287-88 (D. Conn. 2013) (allegations that defendants "manipulated" private investigation insufficient to allege obstruction of the enforcement of child sex trafficking laws).

---

[2] Specifically, the Court should disregard the allegations regarding the handling of Plaintiffs Meloon's and Gilbert's 2006 and 2007 reports.  In any event, any "obstruction" related to those reports is alleged only against *USAT*, not the USOC.  *See* Resp. 34 (USAT "actively discredited" the reports, "discouraged [Plaintiff Meloon] from filing a police report," and "intimidated [Plaintiff Gilbert] into not reporting her rape").

Finally, the Response contends that the obstruction cases cited in the USOC's motion "do not support the result USOC seeks," Resp. 33, but does not cite any contrary authority or explain the basis for its contention that the cases are inapposite.

**B.      Count 15 Fails to State a RICO Act Claim Against the USOC.**

The Response falsely suggests that a court must always allow a RICO claim to proceed past a motion to dismiss. *See* Resp. 37-41. The District of Colorado regularly dismisses RICO claims for failure to allege the necessary elements—including at least three times this year—and should do so here. *See, e.g.*, *Pinon Sun Condo. Ass'n v. Atain Specialty Ins. Co.*, 2018 WL 3209116, at \*8 (D. Colo. June 29, 2018), *aff'd and adopted*, 2018 WL 3459427 (July 18, 2018) (Judge Arguello (Dkt 174)); *List Interactive, Ltd. v. Knights of Columbus*, 303 F. Supp. 3d 1065, 1071-72, 1074 (D. Colo. 2018); *Tso v. Murray*, 2018 WL 1082239, at \*8–10 (D. Colo. Feb. 28, 2018). Likewise, the Tenth Circuit and the Supreme Court have affirmed dismissal of RICO claims for failure to allege key elements. *See, e.g.*, *Hemi Grp., LLC v. N.Y.C.*, 559 U.S. 1, 4-5, 17-18 (2010); *Tal v. Hogan*, 453 F.3d 1244, 1249-50 (10th Cir. 2006); *Pagel v. Wash. Mut. Bank, Inc.*, 153 F. App'x 498, 502 (10th Cir. 2005); *Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 678 (10th Cir. 2005).[3]

**a)      The SAC Fails to Allege RICO Standing.**

The Response incorrectly argues that the "business or property" requirement for RICO standing applies only to claims for monetary damages under 18 U.S.C. § 1964(c), and falsely claims that the SAC seeks only *injunctive* relief under 1964(a). Resp. 39– 40. However, the SAC expressly states that Plaintiffs are seeking "three times their actual *damages*" and "*equitable*" relief under 18 U.S.C. § 1964(c). SAC ¶ 872

---

[3] The Response vaguely accuses the USOC of citing other circuits' case law in an effort to "dodge Tenth Circuit law," Resp. 39, but does not identify any specific examples.

(emphasis added); *see also* SAC, Prayer for Relief ¶ c (seeking "damages and treble damages under the RICO Act").  The SAC nowhere mentions § 1964(a).  "It is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss."  *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004).

In any event, equitable relief is available to a private plaintiff, if at all, only if the plaintiff has *first made out a claim under § 1964(c), including adequately pleading damage to business or property.*  *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2111 n.13 (2016); *see also Chevron Corp. v. Donziger*, 833 F.3d 74, 137 (2d Cir. 2016).  Thus, even if Plaintiffs were seeking equitable relief under § 1964(a), they still must prove an injury to their business or property to pursue that claim.

Here, the SAC has not alleged any injury to business or property.  The alleged predicate act for the RICO claim is that, beginning in 2015, Defendants allegedly obstructed investigations into the Lopez brothers.  *See* Resp. Ex. 1 at 4; SAC ¶¶ 217–55, 847.  There are absolutely no allegations that the Defendants took action against Plaintiffs' taekwondo careers in that relevant time, nor could there be since Plaintiffs had by then retired from taekwondo.  *See* SAC ¶¶ 444, 512, 523–601, 625-32, 706.[4]  Recognizing the weakness of the SAC's injury allegations, the Response asks the Court to permit the RICO claim to proceed based on a "commonsense pleading-stage

---

[4] In *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017), cited in the Response, the Tenth Circuit held that "noxious odors" from a marijuana enterprise damaged the plaintiffs' property rights for purposes of RICO standing.  *Id.* at 885.  That case supports *the USOC's* position, because the court dismissed the claims to the extent they were based on personal injuries.  *Id.* at 888-89.  The Response also asks the Court to look at Colorado law to determine what constitutes an injury to business or property.  Resp. 42–43.  What constitutes an injury for RICO standing is clearly defined in this Circuit, and the Court need not analogize to Colorado's statute of limitations for this analysis.

inference." Resp. 40. Neither fairness nor *Iqbal* permits "inferences" to be drawn in the absence of alleged facts.

Further, as explained in the Motion at 11-12, allegations of emotional distress or reputational harm are not injuries to business or property. The Response fails to cite a single case to the contrary. *See* Resp. 41; SAC ¶¶ 595-96 (Plaintiffs' businesses depend upon their "reputation[s] in the taekwondo community," and Defendants' actions harmed those reputations); Mot. 11–12.[5]

### 2.     The SAC Fails to Allege Required Elements of a RICO Claim.

**No Participation in RICO Enterprise:** The SAC fails to allege threshold facts establishing that Defendants joined together to create a distinct enterprise for a common purpose and that USOC *operated* or *managed* the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *see also Boyle v. United States*, 556 U.S. 938, 946 (2009). Instead, the SAC alleges limited communications between USOC and USAT that are completely consistent with their congressionally-created relationship, which requires them to consult about administrative issues. SAC ¶¶ 87–88, 98–102. These communications do not establish a RICO enterprise, which requires that a member "do more than simply provide, through its regular course of business, goods and services that ultimately benefit the enterprise." *Safe Streets*, 859 F.3d at 883.

**No "Racketeering Activity":** Each of the potential violations identified in the Response as the predicate "racketeering" acts of a RICO claim are unsuccessful.

For the reasons explained above *(supra* at 4-5), the alleged violations of 18 U.S.C. § 1590(b)—obstruction and interference with enforcement of the TVPA—are insufficiently pleaded and thus cannot constitute a RICO predicate act. *See also* Mot.

---

[5] The Response suggests that the Court should ignore the Tenth Circuit's clear holding on this question in *Tal,* 453 F.3d at 1254, as a "passing reference," but cites no contrary authority. Resp. 40.

4–10.  The same is true of the SAC's allegations based on § 1512(c)(2)—corruption of an official proceeding.  The Response claims that the SAC alleges "numerous, specific false statements made under oath to Congress" and that the SAC "provides the who, what, where and when" for those allegations.  Resp. 43–44.  But the Response cites to conclusory allegations such as that "the USOC and USAT made false and corrupting statements to Congress during official proceedings in 2018," SAC ¶ 15, and "the USOC and USAT tried to deny their liability, cover up their crimes, lie to Congress, and obstruct and interfere with several investigations," *id.* ¶ 32.  *See also* Resp. 43 n.269. The Response fails to respond to the USOC's argument that all of the alleged "false . . . statements" to Congress addressed ancillary matters, like USOC's budget, that have nothing to do with any of the alleged "racketeering" activity.[6]  Mot. 14–15.

Finally, the Response fails to address the USOC's arguments that each of the alleged predicate acts had different "purposes, results, participants, victims, or methods of commission," rendering them unrelated and discontinuous—and therefore insufficient to state a claim.  Mot. 15–16.  While the Response states that the SAC demonstrates a "pattern" of racketeering activity because it alleges "scores of predicate acts that have occurred for years—hence, the multiple Congressional hearings," Resp. 45, it does not cite a single paragraph in the SAC in support of this contention.

**No Causation:**  The Response fails to identify any allegations tying the alleged predicate acts of obstruction of law enforcement and false testimony to Congress to any harm to Plaintiffs' business or property.[7]  *See* Mot. 12 n.6.  Indeed, Plaintiffs were no

---

[6] Moreover, these alleged misstatements cannot form the basis for RICO liability under the *Noerr-Pennington* doctrine.  Mot. 15.  That First Amendment-based doctrine shields a defendant from liability for specific misstatements "designed to influence Congress." *Int'l Bhd. of Teamsters v. Phillip Morris, Inc.,* 196 F.3 818, 826 (7th Cir. 1999).

[7] The Response also fails to identify any allegations that support a RICO conspiracy and mentions § 1962(d) only in passing.  *See* Resp. 37 n.228, 47 & n.296; Mot. 16 n.9.

longer competing in taekwondo in 2015.  Accordingly, the SAC fails to meet the *Iqbal*

pleading standards and must be dismissed.  *See Hemi Grp., LLC*, 559 U.S. at 4–5, 9.

> **C.      The SAC Fails to Plead Any Negligence Claims (Counts 16-17, 19-20).**
>
> > **1.      Counts 16-17 Fail to State Claims for Negligent Supervision or Negligent Retention.**
> >
> > > **a)      The USOC Owed No Legal Duties with Respect to the Supervision and Retention of the Lopez Brothers.**

*First*, the Response admits that the USOC owed no duty of supervision and

retention at the time of the alleged assaults on Plaintiffs Meloon, Poe, and Gilbert.  All of

those assaults predated 2006 (s*ee* SAC ¶¶ 362–601), and the Response states that

USOC did not become aware of the Lopez brothers' misconduct until 2006, Resp. 57.

The Response further concedes that a party has a duty to mitigate only those risks that

it had an "*antecedent* ability to recognize."  *Id.* 56 (emphasis added).

*Second*, the Response fails to identify facts to support its conclusory allegation

that the Lopez brothers were somehow "employees" of USOC.  *See Iqbal*, 556 U.S. at

678; *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (rejecting as

conclusory plaintiffs' "general statement that Wal–Mart exercised control over their day-

to-day employment").

Likewise, the Response fails to identify any facts to support its agency theory.

Under settled Colorado law, agency turns on the principal's ability to *control* the alleged

agent.  *Moses v. Diocese of Colo.*, 863 P.2d 310, 324 (Colo. 1993) (en banc).  The bare

allegations that the Lopezes wore Team USA apparel and appeared in marketing, or

that USOC exercised influence over *USAT* do not come close to showing that the

USOC *controlled* the Lopezes' "manner of work" and their "hiring, compensation, . . .

and discipline."  Mot. 17–18 (quoting *Moses*, 863 P.2d at 325).

As a fallback, the Response resorts again to blurring the alleged conduct of

different Defendants, and states that the USOC "*appointed* Jean as Team USA's head coach for Taekwondo for several Olympics." Resp. 54 (emphasis added). But the SAC truthfully alleges that USAT, not the USOC, "select[ed] the athletes, officials, and coaches for . . . [the] Olympic Games," SAC ¶ 95, and that the USOC's only role was to "approve[] the[se] submissions," *id.* ¶ 97. The Response also contends that the USOC had the authority to "discipline and/or ban the Lopezes from participation in USAT," but the cited paragraphs of the SAC contain no such allegation. Resp. 54 & n.329. Instead, the SAC alleges that the USOC had influence over *USAT*—e.g., the power to put USAT on probation, replace its board of directors, or withdraw funding and decertify it. SAC ¶¶ 97, 157–58. The Response's misleading citations to the SAC underscore the absence of any plausible allegations establishing agency.

   *Third*, the argument that "the actual dates and times and locations" of the alleged assaults against Plaintiffs are irrelevant to the existence of a duty, Resp. 58, is contrary to law. *Keller v. Koca*, 111 P.3d 445, 448–49 (Colo. 2005) (employer's duty to supervise extends only to acts that are "so connected with the employment in time and place" that the employer has the opportunity to control the employee's conduct). The USOC had no opportunity to control the Lopez brothers' conduct in assaults against Plaintiffs Joslin and Means because they occurred at times and places unconnected to USOC events. Mot. 19–20.

   Finally, the Response argues that the USOC *always* owed a duty of supervision and retention because the Lopez brothers continuously acted under "the guise of USOC-sanctioned leadership." Resp. 57–58. The Response cites no authority in support of this novel pronouncement, which would stretch negligence law beyond recognition and hold the USOC liable for the conduct of any NGB-affiliated coach, athlete, or staff member participating in competitions or training events to which the

USOC has no connection at all.  For example, the German Open at which Steven Lopez allegedly assaulted Plaintiff Joslin had nothing to do with the USOC.[8]  SAC ¶¶ 606–21. Nor were the Lopez brothers acting under the USOC's authority when they were in "private homes, cars, hotels, and gyms," Resp. 57, or when they interacted with athletes at "Elite Taekwondo," the Lopezes' private training center, SAC ¶¶ 421, 602, 664, 668.

### b)      The USOC Did Not Cause Plaintiffs' Injuries, and the Supervision and Retention Claims Are Untimely.

The SAC fails to allege the requisite element of causation because the USOC could not have prevented assaults that occurred before the USOC allegedly had notice of the Lopezes' misconduct, or at locations and events completely outside of USOC's control.  Mot. 20.  The Response fails to address this critical point, or to identify allegations in the SAC that establish otherwise.

Finally, the Response does not dispute that a two-year statute of limitations applies to these claims, all of the sexual abuse alleged in the SAC occurred before 2014, and Plaintiffs had full knowledge of the facts underlying their claims before 2015. Resp. 13; Mot. 21.  Accordingly, Plaintiffs' claims are time-barred.  *See Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152, 159 (Colo. App. 1995) (claims for negligent supervision accrue on the date a plaintiff has full knowledge of the facts underlying his or her claim).  The Response argues that the statute of limitations did not begin to run until the "most negligent conduct to-date," which purportedly "occurred in the past two years," but it does not provide any authority for that position.  Resp. 13.[9]

---

[8] As noted in the Motion at 19 n.10, the First Amended Complaint alleged the German Open "was *not* a Sports Act–protected competition" and "the team was sent by USA TKD and not the USOC."  Dkt. 6 ¶ 464 n.64.  That statement was deleted in the SAC.

[9] In addition, any claims for negligent supervision and retention based on conduct within the past two years clearly fail on their merits, for the reasons described *infra* at 12-14.

Nor can the Response's speculation that the USOC "remain[s] liable to . . . other class members" save the *individual* claims by Plaintiffs.  Resp. 14.  No claims by "class members" are currently at issue, because no class has been certified.  *See Kohen v. Pac. Inv. Management Co., LLC*, 571 F.3d 672, 676 (7th Cir. 2009) (before class certification, only named plaintiff has "legally protected interest in maintaining the suit").

Finally, Plaintiffs fail to meet their steep burden of establishing that equitable tolling applies in this case.  *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo. App. 1991); Resp. 15.  Equitable tolling applies only when "the defendant's wrongful conduct *prevented* the plaintiff from asserting his or her claims in a timely manner." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996) (en banc) (emphasis added).  As described above, Plaintiffs *knew all of the facts to bring their claims before 2014*, and allege no information withheld or wrongful conduct that prevented them from doing so.

### 2.    Counts 19-20 Fail to Plead Negligence or Gross Negligence.

The Response concedes that any negligence claim based on alleged obstruction of investigations from 2006-2008 is time barred, and that the negligence claims here are based only on events occurring from 2014 to 2018.  Resp. 50 & Ex. 1 at 4.  To the extent the negligence or gross negligence claims are based on any other events that occurred more than two years before the suit was filed, they are time-barred.  *See supra* at 11–12.

### a)    The Response Fails to Identify a Legal Duty.

The Response does not contend that the USOC had a duty to *act* as an initial matter and investigate allegations against the Lopez brothers.[10]  Rather, it argues that

---

[10] The Response briefly suggests that the USOC "assumed a duty" to the Plaintiffs. Resp. 50–51.  But the one case it cites, *P.W. v. Children's Hosp. Colo.*, 364 P.3d 891 (Colo. 2016) is far afield.  There, a hospital assumed the duty to prevent a patient from

the USOC owed a general duty "to use reasonable care" not to *create* a "foreseeable and unreasonable risk of harm to others." *United Blood Servs., Inc. v. Quintana*, 827 P.2d 509, 519 (Colo. 1992) (en banc). The SAC, however, fails to demonstrate such a general duty of care—*i.e.*, that the USOC created a foreseeable and unreasonable risk of harm *to Plaintiffs*. *See id.* at 519.

Plaintiffs' negligence causes of action rely entirely on allegations that, between 2014 and 2018, the USOC contributed to the delay of USAT's and Safesport's investigations into the Lopez brothers. SAC ¶ 944; Resp. Exh. 1 at 5. But, as the Response apparently concedes, none of the Plaintiffs were active USAT athletes and none of alleged abuse occurred during that time. Resp. 48–49; *see also* SAC ¶¶ 444, 512, 523–601, 625-32, 706.[11] The Court should reject any attempt to shoehorn into *Plaintiffs'* negligence claims purely speculative charges that *other* athletes may have been injured during that time. Moreover, even if the allegations were true, there is no plausible argument that the USOC created a foreseeable and unreasonable risk for other taekwondo athletes when it testified to Congress about the size of its budget, its ability to control NGBs, and when it first learned about sexual abuse in USA Swimming. SAC ¶¶ 171, 173, 282, 284.

### b) The SAC Fails to Allege Breach or Damages.

The Response does not challenge the USOC's arguments that the conclusory allegations in the SAC fail to show that the USOC breached any legal duty or caused

---

acting on suicidal impulses when it admitted him to a psychiatric unit. *Id.* at 896. That differs from the facts here—the USOC undertook no remotely analogous action, and especially not during this time period, when Plaintiffs were no longer competing.

[11] The Response argues that, if a court considers whether an athlete is still competing when it determines the existence of duty, then the USOC and NGBs will try to "expel" athletes in order to evade liability. Resp. 48–49. This is a red herring; the USOC cannot extinguish existing liability by "expelling" an athlete.

any legally cognizable damages to Plaintiffs, Mot. 23-24, other than to state that the USOC asked the Court to "discredit" factual allegations simply because they are "devastating."  Resp. 52.  To the contrary, the SAC's allegations fail to meet the *Iqbal* standard because they fail to plausibly allege that the USOC breached any alleged duty to the Plaintiffs.  Mot. 23.

As for damages, the Response does not dispute that Colorado law prohibits negligence claims based on emotional distress alone.  Resp. 52–53; *see Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 880 n.3 (Colo. 1994) (en banc).  Instead, it argues that the SAC includes allegations of physical injuries related to Plaintiffs' negligence claim.  But the cited paragraphs in the SAC (Resp. 52 n.317), do not describe any physical injuries suffered by Plaintiffs from 2014 to 2018.  Instead, they allege physical injuries from pre-2014 assaults.[12]

Finally, the SAC's gross negligence claim fails for the same reasons as the claim for negligence.  Both claims are based upon the same nucleus of facts, and the gross negligence claim is subject to a higher pleading standard.  *See* Mot. 24 n.12.

**D.     The SAC Fails to State a Claim for Outrageous Conduct (Count 21).**

Lacking any specific allegations to support a claim of outrageous conduct, the Response again retreats to generalized allegations that the USOC is a bad actor. Resp. 60–61.  The single alleged event underlying Plaintiffs' claim for outrageous conduct—the U.S. Center for SafeSport's decision to change its disciplinary action against Jean Lopez from a finding of permanent ineligibility to an interim restriction, SAC ¶¶ 960-66—is directed at the Center, not USOC.  Moreover, a decision regarding athlete discipline does not approach the high threshold needed to establish this tort.

---

[12] Any implication that the USOC suggested that rape victims do not suffer physical and emotional injuries is false.  The Motion stated that there is no allegation in the SAC that the USOC's alleged actions during 2014-2018 caused physical injuries.  Mot. 23–24.

Mot. 24 n.12; *see Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (en banc) (requiring conduct that "go[e]s beyond all possible bounds of decency" and is "utterly intolerable in a civilized community").

> ### E.      The Court Should Strike the SAC's Overbroad Class Allegations.

The Response does not dispute that the alleged putative classes include athletes who did not compete in the sport of taekwondo, do not have timely claims, and never interacted with the Lopezes, let alone suffered sexual abuse.  Instead, the Response argues—without citation—that Tenth Circuit case law permits Plaintiffs to allege such facially overbroad classes.  However, the Response mischaracterizes *Edwards v. Zenimax Media, Inc.* as a case decided at the class certification stage, Resp. 62, when in fact *Edwards* is on all fours procedurally and substantively.  There, the court granted a motion to strike class action allegations (as requested here) because the alleged class (like those alleged in the SAC) included members "regardless of whether [they were] ever injured" by the alleged conduct.  2012 WL 4378219, at *5 (D. Colo. Sept. 25, 2012); *see* Mot. 25.  Moreover, *In re: Syngenta AG MIR 162 Corn Litigation*, 2016 WL 5371856, at *4 (D. Kan. Sept. 26, 2016), cited in the Response, relied on a Seventh Circuit case holding that, if the alleged class on its face "is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad." *Id.* (*citing Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009)); *see* Resp. 62 n.365.  The putative classes in the SAC also are far too broad on their face, and the case law—which the Response either mischaracterizes or ignores—requires that they be stricken.

## II.      CONCLUSION

For the foregoing reasons, all of the claims alleged against the USOC in the SAC should be dismissed with prejudice or stricken.

Date: November 15, 2018

*/s/ Carolyn J. Kubota*

Carolyn J. Kubota
Mitchell A. Kamin
Michael Fields
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424-332-4800
ckubota@cov.com; mkamin@cov.com;
mfields@cov.com

David M. Jolley
David S. Denuyl
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: 415-591-6000
djolley@cov.com; ddenuyl@cov.com

Lindsey Barnhart
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, Suite 1000
Palo Alto, CA 94306-2112
Telephone: 650-632-4700
lbarnhart@cov.com

John P. Craver
Joseph W. Mark
WHITE & STEELE, P.C.
600 17th Street, Suite 600N
Denver, CO 80202
Telephone: 303-296-2828
JCraver@wsteele.com;
jmark@wsteele.com

*Attorneys for Defendant United States
Olympic Committee*

16

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed using the Court's CM/ECF

filing system, which automatically sends notice of filing to all attorneys of record, on

November 15, 2018.

/s/ Carolyn J. Kubota
Carolyn J. Kubota