**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN,
KAY POE, and
JANE DOES 6-50,
on behalf of themselves
and others similarly situated,

      Plaintiffs,

v.

UNITED STATES OLYMPIC COMMITTEE,
USA TAEKWONDO INC.,
U.S. CENTER FOR SAFESPORT,
STEVEN LOPEZ,
JEAN LOPEZ, and
JOHN DOES 1-5,

      Defendants.

---

**PLAINTIFFS' OBJECTIONS TO THE RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE [Doc. 218]**

---

Although the Recommendation of the U.S. Magistrate Judge is mostly correct,

Plaintiffs object to four recommended rulings: USAT's dismissal from Count 5; USOC's

dismissal from Count 14; USAT's dismissal from Counts 19 and 20; and the

recommendation of striking rather than permitting revision to cure any overbreadth of the

proposed damages class. Pursuant to Fed. R. Civ. P. 72(b)(2), Plaintiffs offer the following

specific written objections.

I.   **INTRODUCTION**

The five named Plaintiffs filed this case in April 2018—amidst repeated Congressional hearings in the U.S. House and Senate shining a light on the sexual abuse and exploitation of America's Olympic (and Olympic-hopeful) young athletes.[1] An Amicus Brief signed by over 40 law professors explained that "[t]he heart of [this] case is that the United States Olympic Commission ('USOC') and its national governing body USA Taekwondo ('USAT') have not only turned a blind eye to athlete abuse, but actively facilitated it."[2]  As five taekwondo athletes who competed at the highest levels of the sport, including the Olympics, Plaintiffs were subjected to rampant sexual abuse and exploitation by their Team USA head coach (Jean Lopez) and his brother, Team USA's most decorated taekwondo athlete (Steven Lopez). In a quest for money and medals, this abuse was facilitated by USAT, the exclusive national governing body ("NGB") for the sport, and by USOC, both of which willfully turned a blind eye to the pay-to-play scheme the Lopez brothers demanded of Plaintiffs and others, and both of whom engaged more recently in efforts to delay, thwart, and shield the Lopez brothers from investigation and prosecution for their misconduct. Defendants are the Lopez brothers along with USOC and USAT.

---

[1] When commenting on one of these hearings, the Magistrate Judge pointed out that Olympic sports sexual abuse is not unique to just one sport (*e.g.*, gymnastics) but rather has surfaced broadly across virtually all sports. Doc. 114, at 8-10.

[2] Doc. 130, at 4.

### A.      Congress Calls for Action—and Answers

In the face of USOC's and its NGBs' facilitation and cover-up of pervasive sexual abuse and exploitation of young athletes across sports, Congress intervened in February 2018. It passed bipartisan legislation expanding remedy provisions for victims of sexual assault in sport, and repeatedly haled Olympic executives to Capitol Hill to answer questions about this case under penalty of perjury.[3] As detailed in the Second Amended Complaint ("SAC") and further evidenced in recent investigative reports, press releases, and media publications, USOC's former CEO (Scott Blackmun) repeatedly lied under oath to Congress during these hearings, and engaged in deception, cover up, and destruction of evidence, all to divert Congressional attention away from USOC and its failures and bad acts with respect to sexual abuse in Olympic sports.[4] In fact, and as set forth in Plaintiffs' Conditional Motion for Leave to Amend,[5] Blackmun was referred for criminal indictment by the two Senators (one from each party) who led the hearings: "The subcommittee takes its oversight role seriously, and it appears that Mr. Blackmun has made false claims and misled our subcommittee—harming the investigation and ability to develop policy,' Sens. Moran and Blumenthal said in a statement. 'Just as importantly,

---

[3] Doc. 114, at 8-10 (discussing Congressional hearings and legislative action).

[4] Doc. 139, at 33-36 (citing SAC for facts relating to obstruction or interference with, inter alia, Congressional investigation and law enforcement investigation of misconduct); *see also* Doc. 196, at 5-11 (noting a "pattern" of "ignor[ing] reports," "declin[ing] to take action," and through their CEOs, "engaged in affirmative efforts to protect and preserve their institutional interests" by deleting email, failing to correct "clear misunderstanding[s]," "maintain[ing] secrecy," and "controlling the flow of information."); *see generally* Doc. 196-1, at 5-9, 47, 67-77, 101, 136-37.

[5] Doc. 196, at 9-11; Doc. 196-2.

survivors of abuse have had to wait longer for the truth and longer for systemic changes to help prevent others from similar injury.'"[6] In gymnastics and in taekwondo, USOC followed the same blueprint for its cover-up and obstruction; the sport might change, but USOC's unlawful conduct is the same. As Plaintiffs alleged on the first page of the SAC, during a congressional hearing on sex abuse in Olympic sports, the Chair of the House Committee investigating Olympic sex abuse linked the sex abuse in gymnastics to the sex abuse in taekwondo; USOC's obstruction, interference, and false testimony to Congress applies to both sports, despite USOC's attempts to silo the allegations.[7]

**B. The Second Amended Complaint Lays out Detailed Facts Supporting Solid Causes of Action**

The well-pleaded factual allegations in this case are drawn directly from a tall stack of congressional hearing transcripts, media reports from top journalists, and from the personal experiences of the Plaintiffs in this case. These sources are all included in Appendix of Secondary Sources at the end of the SAC; they catalogue the long-term pattern of criminal misconduct and gross negligence committed by USOC and USAT,

---

[6] Zachary Zagger, *Sens. Refer Ex-USOC Chief to DOJ Over 'False statements,'* Law360, December 14, 2018 (attached as <u>Exhibit 1</u>); *see id.* ("Blackmun took over as the USOC chief executive in 2010 after serving as its general counsel….On Monday, following the release of the Ropes & Gray report, USOC board chair Susanne Lyons issued a statement saying, 'The U.S. Olympic community failed the victims, survivors and their families, and we apologize again to everyone who has been harmed.'").

[7] *See, e.g.*, Doc. 68, at ¶ 2 (observing that "gymnastics is not the only NGB" and that "[r]ecent public reports also include the Lopez brothers in taekwondo"). Magistrate Judge Hegarty reached the same conclusion when denying the motion to stay discovery. *See* Doc. 114, at 9 ("Further, the hearing indicated that the allegations of sexual misconduct are not limited to a specific sport, but essentially span the athletic spectrum.").

which have both chosen to harbor and enable rapists in their ranks so long as those rapists deliver "medals and money" for Team USA.[8] USOC has known since the late 1990s that it is harboring and actively facilitating sex abuse, and it has knowingly obstructed, interfered with, and deliberately delayed efforts—including efforts of Congress and law enforcement—to stop this abuse because doing so would jeopardize its power grab for more "medals and money." Team USA's Olympic hopeful athletes are treated as commodities that can be (and often are) easily replaced.

Grounded on well-pleaded allegations of fact (that are being validated through ongoing discovery and depositions in this case), the claims for relief stand on firm legal footing. Indeed, just last week, the Tenth Circuit reversed an order granting a motion to dismiss and reaffirmed that under Tenth Circuit law the Trafficking Victims Protection Reauthorizations Act ("TVPRA") must be construed broadly.[9] Here, and as recognized by the Magistrate's Recommendation, USOC and USAT are liable because they benefited from a venture with the Lopez brothers: "[o]ne can violate the [forced labor and services statute] either as a primary offender or simply by benefiting financially from participation in a 'venture' with the primary offender."[10] Here, that venture was one in which the Lopez

---

[8] Doc. 68, at ¶¶ 190-93 (Appendix of Secondary Sources).

[9] *Bistline, et al. v. Parker, et al.*, --- F.3d ---, 2019 WL 1187010, at *15 (10th Cir. Mar. 14, 2019) (reversing the Rule 12(b)(6) dismissal and explaining that the Tenth Circuit takes a broad view of "venture" liability under the TVPRA). Plaintiffs also refer to the Act herein and in their briefing as the Trafficking Victims Protection Act ("TVPA"). Both acronyms refer to the same legislation, which is set forth at 22 U.S.C. §§ 7101-14 and given effect through criminal prohibitions and civil remedies in 18 U.S.C. §§ 1581-97.

[10] *Id.*

brothers delivered "medals and money" to USOC and USAT and in exchange were given above-the-law treatment and were shielded from criminal prosecution and congressional inquiry.

Plaintiffs filed the Second Amended Complaint[11] and Defendants each filed motions to dismiss.[12] In response, Plaintiffs agreed to dismissal of some of the claims and defended against dismissal of the others in an omnibus opposition brief,[13] pointing out that the nearly 200-page operative complaint was factually well-supported and legally sound. Over 40 law professors filed an Amicus Brief in support of Plaintiffs' interpretation of the forced labor and services provisions of the Trafficking Victims Protection Act, including the head of the human trafficking clinic at Michigan Law School.[14]

### C. The Magistrate's Recommendations Are Mostly Correct

In judging the motions to dismiss, the Magistrate Judge's Recommendation (the "Recommendation") is largely correct. The Recommendation properly disposes of the challenges to most of the remaining claims under the TVPA and slices through the out-of-Circuit case law and threadbare arguments lobbed by Defendants. In denying an earlier motion to stay discovery, the Magistrate Judge also captured the overwhelming evidence of criminal culpability that has surfaced in recent congressional hearings,[15] and

---

[11] *See* Doc. 68.

[12] *See* Doc. 108 (USOC); Doc. 109 (USAT); and Doc. 106 (the Lopez Defendants).

[13] Doc. 139 (Plaintiffs' Amended Omnibus Response to the Motions to Dismiss Filed by Defendants USOC, USAT, and Lopez Brothers).

[14] Doc. 130 (Amicus Brief in Opposition to Defendants' Motions to Dismiss).

[15] Doc. 114, at 8-10.

as Plaintiffs sought to put forth in a Conditional Motion for Leave to Amend,[16] the evidence of criminal conduct involving the USOC continues to surface.

### D.  Plaintiffs Have Four Objections to the Magistrate's Recommendation

Pursuant to Fed. R. Civ. P. 72(b)(2), Plaintiffs do object to four rulings in the Recommendation. *First*, USAT should not be dismissed from Count 5 because, even if it is not liable as a principal for trafficking in forced labor or services under 18 U.S.C. § 1590(a), it is liable for benefitting from the venture under § 1595(a) and these theories are not mutually exclusive.[17] *Second*, USOC should not dismissed from Count 14 because it engaged in obstruction of several governmental investigations by local and federal law enforcement and by Congress.[18] *Third*, USAT should not be dismissed from the negligence and gross negligence claims in Counts 19 and 20 because, among other duties it owed to Plaintiffs and the class, it voluntarily assumed a duty to investigate Plaintiffs' complaints of sexual abuse.[19] And *fourth*, the class allegations relating to the proposed damages class should not be stricken, but can and should be modified to cure any overbreadth.[20]

---

[16] Doc. 196, at 3-9 & Doc. 196-1 (discussing Ropes & Gray Report on USOC obstruction and criminal acts); *id.* at 9-11 & Doc. 196-2 (discussing Senators Moran and Blumenthal publicly referring USOC head Scott Blackmun for indictment based on false testimony to Congress and obstruction of proceedings).

[17] Doc. 218, at 33-34, 71.

[18] *Id.*, at 42-45, 71.

[19] *Id.*, at 58-64, 72.

[20] *Id.*, at 67-69.

In these four discrete rulings, the Recommendation either fails to consider the arguments actually briefed by the parties, ignores factual allegations in the SAC, or makes a ruling that is contrary to law. The torts in this case occurred in two stages: *first*, the underlying sexual abuse and exploitation, and *second*, the cover-up and obstruction to protect the perpetrators and thwart the criminal investigations (by the FBI and local law enforcement), Congressional investigations, and legislative reform (by Congress).[21] The errors in the Recommendation stem from its sole focus on stage one and failure to acknowledge the legal significance of the cover-up and obstruction that occurred during the second stage. But the cover-up and obstruction expose USOC and USAT to clear liability. By choosing to intervene, launch investigations, pursue the allegations raised by Plaintiffs, and testify to Congress about sex abuse in Olympic sports including taekwondo, both USOC and USAT assumed duties to speak and act truthfully when they chose to speak and act. As repeated sources have confirmed (far beyond what is needed at the motion to dismiss stage), both USAT and USOC engaged in repeated misconduct that makes them liable for both obstruction (Count 14) as well as negligence (Count 19) and gross negligence (Count 20). The Court must set aside the Recommendation to dismiss these claims in the face of the allegations of unlawful conduct and duties assumed by both USOC and USAT.

Intertwined with these issues, the Recommendation fails to address the opportunity for Plaintiffs to replead, despite Plaintiffs filing a Conditional Motion for Leave

---

[21] Doc. 68, at ¶ 15 (setting out the two general time periods at issue).

to Amend Complaint[22] and being assured at the oral argument hearing for the motions to dismiss that the Court would likely permit leave to amend such that the Conditional Motion for Leave could be denied without objection.[23] In short, Plaintiffs were diligent in pressing the need to file an amended pleading at oral argument on the motions to dismiss, before any decision was rendered and before this Court had ruled. On all four issues Plaintiffs challenge here, a quick amendment could cure the basis for the Magistrate's recommended dismissal, if the Court agrees that dismissal is proper. Thus, Plaintiffs respectfully request the opportunity (if needed) to replead to cure any of the four bases for dismissal. Of course, if the Court rejects the dismissals, then Plaintiffs will proceed with the Second Amended Complaint and amend later, if appropriate or necessary, as discovery unfolds.

## II.   <u>ARGUMENT</u>

We begin with the legal standard for this Court's review of the objections to the Magistrate Judge's report and recommendation. This Court has explained that it conducts "an independent, plenary review" of the legal rulings made by a Magistrate Judge.[24] It

---

[22] Doc. 196.

[23] *See* <u>Exhibit 2</u>, Transcript of Oral Argument Held on January 23, 2019, at 130-31 (discussing the Conditional Motion for Leave to Amend and Plaintiffs' desire to comply with Tenth Circuit law requiring a motion for leave to amend in order to avoid dismissal), as reflected in Doc. 203.

[24] *Beltran v. InterExchange, Inc.*, No. 14-CV-03074-CMA-CBS, 2018 WL 1509258, at *2 (D. Colo. Mar. 27, 2018) (Arguello, J.) ("With regard to legal matters, the district court conducts an independent, plenary review of the magistrate judge's order."); *see also* Fed. R. Civ. P. 72(b)(3).

follows that because only legal rulings are involved at the 12(b)(6) motion to dismiss stage, all the objections to the Report should be reviewed *de novo*.[25]

Plaintiffs raise the following objections:

**A.      Count 5: Venture Liability Is Disjunctive and USAT Benefited From the Venture Involving the Lopezes**

In Count 5 (trafficking with respect to forced labor and services), the SAC alleges that USAT is liable under a venture theory of liability (18 U.S.C. § 1595(a)) not solely as a principal.[26] The Recommendation seizes on Plaintiffs' assertion, on page 21 of their Response, that USAT is liable as a principal but on pages 23-31, Plaintiffs then explained how USAT is also liable under a "venture" liability as set forth in 18 U.S.C. § 1595(a).[27] The theories and remedies are not mutually exclusive. In other words, no allegation that USAT transported Gaby is necessary for USAT to be liable as one "who knowingly benefits" from trafficking with respect to forced labor and services under § 1595(a). And, as Plaintiffs explained, USAT didn't even challenge the substance of Count 5 in its motion to dismiss briefing, which makes dismissal even more improper.[28] For these reasons, and even more so in light of the Tenth Circuit's decision last week in *Bistline* cementing the "venture" theory pursued here,[29] Count 5 should proceed against USAT under § 1595(a).

---

[25] *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995).

[26] Doc. 68, at 147, ¶¶ 768-74. (Where the Court's ECF page number differs from the page numbers in the filed document, Plaintiffs refer to the Court's ECF pagination).

[27] Doc. 139, at 23-31.

[28] Doc. 139, at 24 (explaining that USAT only challenged the timeliness of Count 5, not the substance or sufficiency of the allegations).

[29] 2019 WL 1187010 at *15 (reaffirming "venture" liability under TVPRA).

**B.   _Count 14_: USOC Is Liable For Obstructing or Interfering with the Investigations by Congress, the FBI, and Local Law Enforcement**

As to Count 14 (obstruction), the Magistrate Judge recommended that the claim proceed only against USAT, but not USOC.[30] But the Recommendation failed to acknowledge the reasons why USOC is liable for obstructing enforcement of the forced labor and services provisions of the TVPA under § 1590(b). Once all the facts alleged are considered, USOC's repeated efforts to make sure the Lopez brothers stayed on Team USA—by obstructing law enforcement and congressional investigations—fits squarely within the range of conduct prohibited by the broad language used in § 1590(b).

The Recommendation improperly dismissed USOC from Count 14 for several reasons:

First, the plain language of § 1590(b) does not contain the "government" limitation that the Recommendation imposes.[31] In skipping this step and instead weighing the persuasiveness of out-of-Circuit cases, the Recommendation violates the axiomatic principle of statutory construction: the plain text of the statute governs.

Second, if the plain language is ambiguous, which it is not, the proposed "government" limitation is belied by the incredibly broad and expansive language and remedial purpose of the Act itself. The Recommendation failed to address Plaintiff's statutory construction argument that the absence of "official proceeding" in § 1590(b)—in

---

[30] Doc. 218, at 43-45.

[31] Doc. 218, at 43 (concluding that "Obstruction of a private investigation is insufficient to state a claim of either §§1590(b) or 1591(d)").

contrast to other sections of the TVPRA and where this phrase is used—creates an inference against adding this gloss,[32] as does the fact that the Act expressly permits private (not merely governmental) enforcement of these sections.

Third, no Tenth Circuit or other case law supports this reading. The Recommendation latches on to a stray district court case without explaining why it's even persuasive for the private versus government distinction (it is not),[33] and the absence of any apposite case law does not make Plaintiffs' reading wrong, it simply reflects that this issue has not been addressed in the Courts. Either way, liability is broadly defined to include "[w]hoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section ..." 18 U.S.C. § 1590(b). No "limiting principle" is needed (or proper) where Congress has decided not to impose one.

Fourth, even if §1590(b) creates liability only for obstruction of or interference with a government (as opposed to private) investigation, Plaintiffs allege ample government involvement. The Recommendation is simply wrong in concluding that "no governmental actor is present in Plaintiffs' allegations" as to the USOC.[34] To the contrary, and as with USAT, Plaintiffs repeatedly allege the involvement of numerous government entities involved in the pursuit and potential prosecution of the Lopezes, including numerous local

---

[32] Doc. 132, at 32.

[33] In *Jean-Charles v. Perlitz*, the court's 12(b)(6) dismissal of Plaintiffs' obstruction claim did not hinge on the fact that a private entity (Haiti Fund) was investigating sexual abuse in a foreign country, but that the plaintiff alleged that the obstruction of that investigation was for reasons other than to avoid criminal or other liability. 937 F.Supp.2d 276, at 287-88 (D. Conn. 2013). Here, those facts are absent.

[34] Doc. 218, at 45.

(city and county) law enforcement agencies, the FBI, and Congress.[35] These are all "governmental actor[s]" that undermine the reasoning for the 12(b)(6) dismissal.

Sixth, Plaintiffs cited and discussed a series of stories in *USA Today* in which high level sources confirmed USOC's direct involvement in the suspension of Donald Alperstein's investigation and his reports to law enforcement.[36] As detailed in paragraphs 222-54 of the SAC, USOC and USAT worked together to suspend all investigations until the 2016 Olympics in Rio were completed. USAT's investigator, Alperstein, confessed that he was resuming his investigation of the Lopezes only because the Olympics were "over."[37] *USA Today* exposed USOC's coordinated obstruction with USAT. And but for the obstruction committed by USAT and USOC working together, the Lopezes would have been turned over to the FBI and local law enforcement much sooner.   The investigator (Alperstein) hired by USAT admitted that he acted on his own to notify the FBI (a government body) because of the delays caused by USOC and USAT working together to stall him.[38] A reasonable inference to be drawn from the *USA Today* stories

---

[35] Doc. 139, at 33 ("Plaintiffs far surpass the Rule 8 standard because they plausibly allege that all Defendants obstructed, attempted to obstruct, interfered with, or prevented enforcement of the prohibitions on forced labor and trafficking with respect to forced labor. USOC urges the Court to 'disregard' allegations of deceptive testimony to Congress as 'unrelated to enforcement of human trafficking laws' and to dismiss the obstruction claim for failure to allege 'false statements to officers, destroyed evidence, tampered with witnesses or otherwise interfered with enforcement of criminal slavery or sex trafficking laws.' The cases USOC cites in support of this supposed burden, however, do not support the result USOC seeks."); *id.* at 34-36 (including list of bullet points involving obstruction of efforts by local law enforcement and the FBI).

[36] Doc. 68, at ¶ 222-54.

[37] *Id.* at ¶ 235.

[38] *Id.* at ¶ 225-27.

is that USAT sought guidance and approval from USOC when making its decision to stall

Alperstein. But for USOC, it can reasonably be concluded that the Lopez brothers would

have been pursued by Alperstein, turned over to law enforcement sooner, and not

competed in the 2016 Olympics in Rio. This is all alleged in the SAC:

225.   The Lopez brothers were sheltered from suspension and prosecution
because the USOC and USAT wanted them to compete at the 2016 Olympics in Rio.
As *USA Today* reported, the USOC and USAT worked together to secretly interfere
with the investigations and make sure the Lopezes were not prosecuted or suspended:

> Steven and Jean Lopez, brothers in what is often called the "First Family of
> Taekwondo," were allowed to participate in last summer's Rio Games even though
> they were being investigated for sexual misconduct, and the allegations against
> them have since drawn the interest of the FBI.

> USA Taekwondo began investigating the Lopezes more than two years ago after
> receiving complaints that they had allegedly sexually assaulted multiple women.
> No hearings were held and USA Taekwondo, after consulting with the U.S.
> Olympic Committee agreed to put the inquiries on hold before the Rio Games,
> meaning two-time Olympic champion Steven and longtime coach Jean were free
> to represent the United States.[93]

226.   *USA Today* confirmed, with confidential reports from top officials who
acted as sources, the USOC and USAT secretly worked together, behind closed doors,

to make sure that the investigation against the Lopez brothers was delayed and obstructed because of their key roles in the 2016 Olympics:

> The USOC has been criticized for not taking a more proactive role in addressing sexual abuse allegations within the national governing bodies that oversee each sport, with scandals over the past decade involving USA Gymnastics, USA Swimming and US Speedskating.
>
> USA Taekwondo consulted with the USOC on the Lopez investigations before the decision was made to allow them to go to Rio, according to a former federation official who was told by the organization's executive director, Keith Ferguson. The official spoke to USA TODAY Sports on condition of anonymity because of the sensitive nature of the allegations.[94]

227.   Even though the USOC and USAT halted Alperstein's investigation just in time for the Lopez brothers to attend the 2016 Olympics, Alperstein contacted the FBI and told Plaintiffs that he thought the Lopez brothers needed to be removed from the sport:

> In a March 22 letter to one of the women, which was obtained by USA TODAY Sports, Alperstein said he notified the FBI "because so much of the misconduct occurred in multiple jurisdictions." He also said he "felt the Lopez brothers needed to be removed from the sport."[95]

---

To sweep aside all of this explosive criminal activity involving Team USA at the 2016 Olympics as a "private" matter is clear error. Yes, the USOC and USAT are private corporate entities. But the SAC alleges—and Plaintiffs argued in their briefing and at oral argument[39]—that numerous government actors were involved and their investigations

---

[39] See Ex. 2, Hrg. Tr. at 31:21-32:7 ("On the obstruction claim, …[t]here is absolutely FBI and law enforcement involvement. … The Olympics were coming in 2016, in August of 2016. We have Donald Alperstein writing a letter to our clients where he flat out says, [']Now that the Olympics are over, I'm going to resume the investigation.['] We have USA Today writing articles saying a high level anonymous source [told it] that USOC

were thwarted by USOC's obstruction and guidance provided to USAT. Only by discounting the well-pleaded factual allegations—which *Iqbal* forbids—could the Court conclude that USOC was not directly involved in this orchestrated, long-range obstruction of investigations by Congress and law enforcement. Indeed, the Magistrate Judge recommended that the claim against USAT should proceed, and for the same reasons, the claim against USOC should proceed as well, given that USOC was actively involved and consulted with USAT. The Rule 12(b)(6) standard requires that all facts be taken as true and that all inferences flow in favor of Plaintiffs; without any discovery to see the private communications between USOC and USAT, Plaintiffs' reliance on a series of *USA Today* investigative stories exposing the secret deal to let the Lopezes compete for Team USA at the 2016 Olympics is far beyond the "allegations" needed to survive a motion to dismiss.

Seventh, Plaintiffs also plead obstruction in the form of false testimony to Congress by USOC.[40] The Recommendation itself found that that "Congress is a government actor," so USOC's false testimony to Congress should have been considered. Plaintiffs' response brief directed the Magistrate Judge to "the multiple demonstrably false statements made under oath during official proceedings to Congress by USOC",[41] and

---

and USAT worked together to hold that investigation so that the brothers could go to the Olympics, right. And [Alperstein] writes the FBI months later, in October of 2016. That's the very definition of obstructing a law enforcement investigation.")

[40] Doc. 68, at ¶¶ 170-77.

[41] Doc. 139, at 33; *see id.* at 43 ("Plaintiffs point to numerous, specific false statements made under oath to Congress to help keep the Lopez Obstruction Enterprise from being uncovered. These false statements were directly relevant to the ongoing obstruction;

the Magistrate Judge failed to consider the false testimony to Congress made by USOC. This was error.

Finally, as further proof that obstruction can plausibly be alleged, when Congress started asking questions in 2017, USOC's response was to gin up its creation of an independent entity to oversee the investigation of sexual abuse claims within the Olympic Community that would provide plausible deniability to USOC and the NGBs' failure to investigate and report sexual predators in powerful positions, to delete incriminating emails, and to lie to Congress. As noted previously, USOC's former chair has been referred for indictment to the FBI and DOJ for his false testimony to Congress regarding sex abuse in the Olympics. These particular facts are not plead in the SAC (because the public referral for indictment occurred months later, in December 2018), but the SAC does point to USOC's calculated delay in creating SafeSport and the false testimony made to Congress by USOC's former head.[42] And his later referral for indictment was discussed at the motion to dismiss oral argument,[43] was included in Plaintiffs' Conditional Motion for Leave to Amend,[44] and can easily be added in a Third Amended Complaint.

In sum, for all of the above reasons, USOC is a proper defendant with USAT to Count 14 and Plaintiffs object to the recommendation that it should be dismissed.

---

Congress held the hearings to ferret out the Defendants' misconduct, and Defendants lied to hinder Congress from uncovering their ongoing misdeeds, specifically misstating efforts to inform law enforcement about the criminal acts alleged here.").

[42] Doc. 68, at ¶¶ 170-77.

[43] Ex. 2, Jan. 23 Hrg. Tr. at 37:9-38:2.

[44] Doc. 196-2.

C.   **Counts 19-20**: Like USOC, USAT Assumed a Duty By Launching an Investigation and Engaging in Efforts to Address Past Harms and Is Liable for the State Law Claims for the Same Reasons as USOC

In Counts 19 (negligence) and 20 (gross negligence), the Recommendation is to keep USOC as a defendant but dismiss USAT. But this result can be reached only by crafting arguments for USAT that USAT never made in its briefing. In fact, to be clear, USAT's reply brief on the motion to dismiss (Doc. 158) **completely abandoned** its merits arguments on Counts 19-20 (negligence and gross negligence); USAT only argued the timeliness of these claims.[45] Respectfully, for the Magistrate Judge to pursue this defense on USAT's behalf was plainly improper. Worse, the Recommendation veered into fact-finding and factor-weighing (which is categorically improper at the motion to dismiss stage, when there is no factual record yet and the Court is required to resolve all inferences in favor of the non-movant) without either side even briefing the *Taco Bell* factors for whether a duty exists under Colorado law. Indeed, Plaintiffs specifically argued that the duty factors cannot be weighed at the Rule 12(b)(6) stage[46] and that at best, the existence of a legal duty could be resolved following discovery, at summary judgment, once the parties had developed an adequate factual record to weigh.[47] In its original motion to dismiss briefing, USAT devoted barely a page of argument and cited no case

---

[45] Doc. 158 at 3-4 (challenging that the state law claims are not "timely"—and nothing else).

[46] Doc. 139, at 51 (pointing out that "while the existence of a duty is an issue of law, courts make this determination by weighing several factors. Of course, the first four letters of "factors" are f-a-c-t, so these duty factors require discovery and a factual record.").

[47] *Id.*

law—literally, none—for its lack of duty argument.[48] It cited one case for the background proposition that duty is an essential element for a negligence claim (which no one disputes), but it cited no case law in support of its argument, nor did it even hint at the *Taco Bell* factors.

In the Recommendation, USAT's duty argument (which it abandoned) was given new life and bolstered by arguments and citation to "no duty" case law that was never presented.[49] The *Taco Bell* factors require facts and adversarial testing by the parties. That didn't occur here; neither party briefed these factors and there's no discovery to determine what "contemporary standards" apply or how burdensome it would be to impose a duty on USAT. That's likely why USAT abandoned the argument in its reply brief. Simply put, the Recommendation engages in pure speculation regarding the duty factors, making unsupportable conclusions about burdens and costs without evidence or support. Plaintiffs could have refuted these points if USAT had raised them. But it didn't. Instead, USAT abandoned this duty argument in its reply brief, and it was error for the Recommendation to bring it back from the dead.

Aside from this, the Magistrate Judge frames the relevant question as whether USAT/USOC owed a duty to former members of USAT to reasonably investigate their

---

[48] Doc. 109 at 22 (USAT's timeliness argument based on fact that Plaintiffs are former member athletes); Doc. 139, at 48 (noting USAT makes only one substantive argument, unsupported by citation to authority).

[49] Doc. 218, at 59-61.

complaints of sexual abuse.[50] For the following reasons, either the answer is "yes," or the wrong question is being asked.

First, the question as framed hinges on Plaintiffs' dates of membership in USAT, while the facts cited relate to when the Plaintiffs stopped competing.[51] These dates are not synonymous or interchangeable.[52] Thus, the Magistrate Judge is drawing an inference against the non-movant, contrary to the Rule 12(b)(6) standard.[53] On this point, Recommendation failed to consider any Plaintiff's status as a current taekwondo coach, the recency of USAT membership[54] or that Colorado law also imposes a duty owed to "former" members,[55] all of which involve fact questions that cannot and should not be weighed at the 12(b)(6) stage.

---

[50] Doc. 218, at 60.

[51] Doc. 218, at 59-60 (citing SAC for allegations that Plaintiffs stopped competing in taekwondo, at the latest, in approximately 2011); Doc. 196, at 13 (suggesting that two Plaintiffs are still dues-paying members of USAT).

[52] The specific dates of Plaintiffs' membership in USAT do not appear in the SAC. See Doc. 68 at ¶¶ 334-39 (discussing fact that Plaintiffs were dues-paying USAT members).

[53] *Sawyer v. Burke*, 504 F. App'x 671, 673 (10th Cir. 2012) (the district court "must accept the allegations of the complaint as true" and "construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff.").

[54] Plaintiffs need discovery to confirm the dates of their membership in USAT, but the SAC's silence regarding membership dates does not compel dismissal on that basis. And any Plaintiff who is a current taekwondo coach, regardless of her status in USAT, is still "active" in the sport and would likely be a member of USAT but for the negligence and failures of Defendants. *See* Doc. 139, at 40, 41.

[55] Doc. 139 at 48-50 (explaining that a duty is still owed to former members and citing *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015)).

Second, while a duty to reasonably investigate and pursue complaints of sexual abuse by former USAT members is not the only duty that is plead in the SAC,[56] Plaintiffs certainly allege that such a duty existed and/or was voluntarily assumed—by both USAT and USOC.[57] The Recommendation acknowledges that USOC assumed a duty vis à vis Plaintiffs by virtue of intervening with the NGBs, by promulgating sexual abuse policies, by organizing, incorporating, funding, staffing and creating SafeSport itself to exercise jurisdiction over the Lopez investigations.[58] But it ignores the many allegations that USAT undertook the same duty starting in 2014 when it engaged Mr. Alperstein to investigate the complaints of these former athletes against the Lopez brothers (in accord with its own by-laws and policies), to implement recommended Safe Sport policies, and to gather evidence, make reports, and initiate disciplinary or ethics proceedings against the Lopez brothers, who are current members of USAT.[59] Plaintiffs expressly allege that USAT "assumed a duty"[60] owed to Plaintiffs:

---

[56] *See, e.g.*, Doc. 68, at ¶¶ 2, 91, 150, 939-945 (USOC and USAT duties to handle allegations of sexual misconduct described in statute, mandated by organizational documents, and admitted under oath to Congress); *see also* ¶ 125 (duty arising from unique dangers of elite sport, power imbalance); ¶ 126 (duty arising by virtue of fact that Plaintiffs and many class members were and are children); ¶¶137-141, 286-88 (duties arising by virtue of fact that USOC and USAT employ or supervise alleged abusers); ¶¶ 104-107, 285, 334-41 (duty arising from fiduciary relationship between commercial/contracting parties).

[57] See SAC at ¶ 941 (USOC and USAT "have had a duty to exercise reasonable care in investigating and pursuing complaints of criminal conduct, sexual misconduct, and violations of federal law against their member athletes, including Plaintiffs").

[58] Doc. 218, at 63.

[59] Doc. 68, at ¶¶ 217-255; 256-91; 939-45; 951-57.

[60] Doc. 68, at ¶ 247.

> 247.   By engaging Alperstein to conduct an "independent" investigation and by contacting Plaintiffs, USAT assumed a duty to act honestly and in good faith.

The Recommendation improperly disregards allegations that USAT voluntarily assumed a duty to Plaintiffs and the class within the statutory period for this claim. Again, once the facts alleged are considered, it is clear that USAT owed a duty to handle, investigate and pursue complaints of abuse and/or that it assumed such a duty vis-à-vis Plaintiffs by initiating and conducting an investigation, albeit a sham investigation, of the sex abuse of current USAT-member coach and athlete Jean and Steven Lopez.

Finally, the viability of Count 14 (obstruction) against USAT makes the ruling in Counts 19-20 (negligence and gross negligence) even more difficult to grasp. Count 14 (obstruction) is a more severe finding of the same conduct at issue in Count 19 (negligence), and it's odd to hold that the SAC sufficiently alleges USAT obstructed an investigation only to rule pages later that USAT never assumed any duty to investigate in the first place. Instead, USAT's duty is confirmed by its obstruction: the obstruction proves the assumption of—and breach of—the duty. Both counts are viable because both counts allege the same misconduct: USAT engaged in a sham investigation throughout 2014-18, engaged Alperstein, hindered Alperstein's investigation, lied to Congress about Alperstein's free reign and its own reports to law enforcement, all the while continuing to allow the Lopez brothers to prowl around the sport throughout 2014-18, despite knowing that they were serial sexual predators. There is a strong public policy against letting an entity like USAT engage in this long-term, systematic criminal and negligent behavior. If

the obstruction claim is plausible (and it is), then the negligence and gross negligence claims (which focus on the same course of conduct) must be deemed plausible, too.

**D.**   **Class Action Allegations: The Class Definition Can Be Revised to Completely Solve Any Timeliness Concerns**

Finally, on the motion to strike the class action allegations, the Magistrate Judge did not allow Plaintiffs the opportunity to replead to cure the statute of limitations defect he identified, despite pointing out in footnote 6 that the authorities he relied upon allowed an amendment.[61] Respectfully, Plaintiffs should be permitted to reform the class definition because they can easily cure the technical defect on the limitations period by shortening the class period.

This begs a broader question, related to this and all four of the objections raised here, of the proper procedure for a Plaintiff who wishes to defend its allegations but also preserve an opportunity to seek leave to amend under the liberal standard of Rule 15. As evidenced in Plaintiffs Conditional Motion for Leave to Amend, Plaintiffs are well aware of Tenth Circuit's guidance that merely including a request for leave to amend within a brief may not be sufficient to preserve the request.[62] At the oral argument hearing, the Magistrate Judge assured Plaintiffs it was common for D. Colorado judges to allow leave

---

[61] Doc. 218, at 69.

[62] Doc. 196, at 2 & n.1.

to replead.[63] In the Recommendation, however, there is no discussion of Plaintiffs' motion for leave to amend, the evidence offered therein, or whether leave to replead would be proper. Given the significant evolution of the claims plead in the SAC, and the significant factual developments that have occurred since its filing, Plaintiffs respectfully suggest that leave to replead would be proper in the event this Court agrees that these or other claims fail to survive Defendants' motions. In an abundance of caution, and in an effort to preserve an opportunity to amend their Complaint to cure any deficiencies, Plaintiffs raise this failure in the context of their objections to the Recommendation and will file a separate motion requesting a status conference to determine how the Court prefers to proceed.

## III.   <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court sustain their four objections to the Recommendation and grant them all further relief to which they may be entitled.

Respectfully submitted,

*/s/ Larkin Walsh*
Rex A. Sharp
Ryan C. Hudson
Larkin E. Walsh
Sarah T. Bradshaw
REX A. SHARP, P.A.
5301 West 75th Street

---

[63] <u>Ex. 2</u>, Jan. 23 Hrg. Tr. at 130: 7-20 (Magistrate Judge reassuring Plaintiffs that "what typically happens in a case like this is we don't have that kind of motion pending but we issue . . . a ruling, actually a recommendation, where we believe that certain deficiencies could be easily cured. So in the recommendation we recommend dismissal; however, we recommend the district court permit a motion to amend addressing the issues we – we discuss in the recommendation within 30 days. So to the extent that you – that you wanted to notify me that's something you would want to do, you've been – the notification has occurred and I'm just inclined to deny without prejudice [Doc.] 196."; see Doc. 203 (denying Doc. 196 without prejudice).

Prairie Village, KS  66208
rsharp@midwest-law.com
rhudson@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com

Daniel A. Lipman
PARKER LIPMAN LLP
3200 Cherry Creek S. Drive, Ste. 520
Denver, CO 80209
dan@parkerlipman.com
(720) 638-9424

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing document was

filed and served, via the CM/ECF system on March 20, 2019, on all counsel of record.

*(A duly signed original is available at the office of Rex A. Sharp, PA)*

By:     */s/ Larkin E. Walsh*
        Attorney for Plaintiffs