**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN,
KAY POE, and
JANE DOES 6 – 50,

     Plaintiffs,

v.

UNITED STATES OLYMPIC COMMITTEE,
USA TAEKWONDO, INC.,
STEVEN LOPEZ,
JEAN LOPEZ, and
JOHN DOES 1 – 5,

     Defendants.

---

**ORDER AFFIRMING AND ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S MARCH 6, 2019 RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

---

     This matter is before the Court on the March 6, 2019 Recommendation by United States Magistrate Judge Michael E. Hegarty, in which the Magistrate Judge recommends that this Court grant in part and deny in part three motions to dismiss: (1) Defendants Steven Lopez and Jean Lopez's (together, the "Lopez Defendants") Motion to Dismiss (Doc. # 106); (2) Defendant United States Olympic Committee's ("Defendant USOC") Motion to Dismiss and Motion to Strike Class Action Allegations

(Doc. # 108); and (3) Defendant USA Taekwondo, Inc.'s ("Defendant USAT") Motion to Dismiss (Doc. # 109).  (Doc. # 218.)  Plaintiffs and all Defendants object to portions of the Recommendation.  (Doc. ## 224–27.)  For the reasons described below, the Court affirms and adopts in part and rejects in part the Recommendation, and it grants in part and denies in part Defendants' Motions to Dismiss.

## I.   BACKGROUND

The Recommendation thoroughly recites the factual and procedural background of this dispute and is incorporated herein by reference.  (Doc. # 218.)  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  Accordingly, this Order will reiterate only what is necessary to address the parties' Objections to the Recommendation.

## A.   FACTUAL BACKGROUND

Briefly, Plaintiffs are elite female taekwondo athletes who competed on behalf of the United States at international sporting events, including the Olympics.  (Doc. # 68 at 2.)

Defendant USOC is the federally chartered corporation with "exclusive jurisdiction" over "all matters pertaining to United States participation in the Olympic Games, the Paralympic Games, and the Pan-American Games."  36 U.S.C. § 220503(3)(A); 36 U.S.C. § 220502(a); *see also* (Doc. # 68 at 17.)  Congress has empowered Defendant USOC to "organize, finance, and control the representation of the United States in . . . the Olympic Games" and other sanctioned competitions directly or through a sport's national governing body and to "facilitate, through orderly and effective administrative procedures, the resolution of conflicts or disputes that involve

any of its members and any amateur athlete, coach, . . . national governing body, or amateur sports organization and that arise in connection with their eligibility for and participation" in protected international competitions.  36 U.S.C. §§ 220505(c)(3), (5).

Defendant USAT is the national governing body ("NGB") for the sport of taekwondo, recognized and regulated by Defendant USOC pursuant to 36 U.S.C. § 220505(c)(4).  (Doc. # 68 at 17, 21.)  It is a not-for-profit federation that, like the NGBs of scores of other sports, is charged with sponsoring and arranging amateur athletic competitions in the sport.  *See* 36 U.S.C. §§ 220501(b)(3), (8).  It also selects American taekwondo athletes, officials, and coaches to participate in the Olympics and similar elite, international competitions.  (Doc. # 68 at 22.)

Defendant Jean Lopez was the head coach of the American taekwondo teams at the 2004, 2008, 2012, and 2016 Olympic Games, and Defendant Steven Lopez, his brother, is a three-time Olympic taekwondo medalist for the United States.  (*Id.* at 19.) Plaintiffs describe Defendant Steven Lopez as "taekwondo's biggest star" and state that in the 2000s, he and Defendant Jean Lopez, along with their other siblings, were known across the country "as the 'First Family' of taekwondo."  (*Id.* at 9.)

Plaintiffs allege that Defendants inflicted on them and other American female taekwondo athletes "forced labor and services, sex trafficking, and other travesties." (*Id.* at 2.)  They contend that the Lopez Defendants, "the primary perpetrators," "raped numerous female taekwondo athletes" and that Defendant USOC and Defendant USAT (together, the "Institutional Defendants") facilitated the Lopez Defendants' sex crimes

and "protected [the Lopez brothers] from law enforcement and suspension by Team

USA." (*Id.* at 3.)  Plaintiffs' claims arise from two time periods:

> [F]irst, the underlying forced labor and services and sex trafficking of Plaintiffs . . . from 1997 to 2010, and second, the cover-up of this misconduct, . . . which occurred from 2006 to 2008 and then from 2015 to 2018.

(*Id.* at 5.)  They contend that during the second time period, Defendants USOC and

USAT "formed an enterprise (along with the Lopez [Defendants]) to obstruct and

interfere with efforts to prosecute or remove the Lopez brothers from taekwondo" and

that Defendants' obstructionist conduct included making "false and corrupting

statements to Congress."  (*Id.*)

## B.   PROCEDURAL HISTORY

Plaintiffs initiated this litigation against Defendants on April 25, 2018, *see* (Doc.

# 1), and have twice amended their Complaint, *see* (Doc. ## 6, 64, 68).  Plaintiffs'

Second Amended Complaint (the "SAC"), filed August 24, 2018, is the operative

pleading.  (Doc. # 68.)  Plaintiffs assert 21 causes of action against Defendants and the

United States Center for SafeSport ("SafeSport").[1]  (*Id.*)  The Court organizes the claims

into three categories:

**Claims Arising Under the Trafficking Victims Protection Act ("TVPA")**, Pub. L. No. 106-386, 114 Stat. 1466 (2000) (codified as amended in scattered sections 8, 18, and 22 U.S.C.)[2]

---

[1] Plaintiffs list "John Does 1–5" in the case caption but make no mention of any John Does in their Complaint.  *See generally* (Doc. # 68.)  The Court is unaware of the purpose, if any, of listing John Does 1–5 in the case caption.

[2] The Court observes that Plaintiff's TVPA claims mostly arise under sections enacted in the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), Pub. L. No. 108-193, 117 Stat. 2875 (2003) (codified in scattered sections of 8, 18, and 22 U.S.C.).  The Court nevertheless refers to these claims as the TVPA claims.

1. Claim 1: Plaintiff Mandy Meloon's claim of forced labor, in violation of 18 U.S.C. §§ 1589(a), 1595(a), and 2255, against Defendant Steven Lopez;

2. Claim 2: Plaintiff Mandy Meloon's claim of sexual exploitation, transportation, and illegal sexual activity, in violation of 18 U.S.C. §§ 2241(c), 2243, 2421, 2422, 2423(a)–(c), and 2255, against Defendant Jean Lopez;

3. Claim 3: Plaintiff Gaby Joslin's claim of forced labor, in violation of 18 U.S.C. §§ 1589(a) and 1595(a), against Defendant Steven Lopez;

4. Claim 4: Plaintiff Gaby Joslin's claim of forced labor, in violation of 18 U.S.C. §§ 1589(b) and 1595(a), against Defendant USAT;

5. Claim 5: Plaintiff Gaby Joslin's claim of trafficking with respect to forced labor, in violation of 18 U.S.C. §§ 1590(a) and 1595(a), against Defendant Steven Lopez and Defendant USAT;

6. Claim 6: Plaintiff Gaby Joslin's claim of sex trafficking of children, or by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1) and 1595(a), against Defendant Steven Lopez and Defendant USAT;

7. Claim 7: Plaintiff Gaby Joslin's claim of benefitting from a venture that sex traffics children, or by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(2) and 1595(a), against Defendant USAT;

8. Claim 8: Plaintiff Amber Means's claim of forced labor, in violation of 18 U.S.C. §§ 1589(a), 1595(a), and 2255, against Defendant Steven Lopez;[3]

9. Claim 9: Plaintiff Amber Means's claim of forced labor, in violation of 18 U.S.C. §§ 1589(b) and 1595(a), against the Institutional Defendants;

10. Claim 10: Plaintiff Amber Means's claim of trafficking with respect to forced labor, in violation of 18 U.S.C. §§ 1590(a), 1595(a), and 2255, against Defendant Steven Lopez;

11. Claim 11: Plaintiff Amber Means's claim of sex trafficking of children, or by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1), 1595(a), and 2255, against the Lopez Defendants and the Institutional Defendants;

12. Claim 12: Plaintiff Amber Means's claim of benefitting from a venture that sex traffics children, or by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(2), 1595(a) and 2255, against the Institutional Defendants;

13. Claim 13: Plaintiff Amber Means's claim of sexual exploitation, transportation, and illegal sexual activity, in violation of 18 U.S.C. §§ 2242, 2421, 2422, 2423(a)–(c), and 2255, against Defendant Steven Lopez;

---

[3] Plaintiff Means originally asserted Claim 8 against Defendant Jean Lopez too. (Doc. # 68 at 148.) She subsequently clarified that Claim 8 "is asserted only against Steven Lopez" and that Defendant Jean Lopez "was erroneously listed." (Doc. # 139 at 3.)

14. Claim 14: All Plaintiffs' claim of obstruction, attempted obstruction, and interference with enforcement, in violation of 18 U.S.C. §§ 1590(b), 1591(d), 1595(a), and 2255, against the Institutional Defendants and SafeSport;[4]

**Claim Arising Under the Racketeer Influenced and Corrupt Organizations Act ("RICO")**, 18 U.S.C. §§ 1961–68

15. Claim 15: All Plaintiffs' claim of violation of RICO, 18 U.S.C. § 1962(d), against all Defendants;

**Claims Arising Under State Common Law**

16. Claim 16:   All Plaintiffs' claim of negligent supervision against the Institutional Defendants;

17. Claim 17: All Plaintiffs' claim of negligent retention against the Institutional Defendants;

18. Claim 18: All Plaintiffs' claim of defamation against the Lopez Defendants and Defendant USAT;

19. Claim 19: All Plaintiffs' claim of negligence against the Institutional Defendants and SafeSport;

20. Claim 20: All Plaintiffs' claim of gross negligence against the Institutional Defendants and SafeSport; and

21. Claim 21: All Plaintiffs' claim of outrageous conduct against Defendant USOC and SafeSport.

*See* (*id.* at 139–84.)  Plaintiffs bring these claims on their own behalf and on behalf of

two proposed nationwide classes: the "Injunction Class," defined as "[a]ll USOC-

governed female athletes (subject to the USOC's 'commercial terms' page or any other

contract," and the "Damages Class," defined as "[a]ll USOC-governed female athlete[s]

(subject to the USOC's 'commercial terms' page or any other contract[)] . . . who

(1) participated in taekwondo from 2003 to present and (2) traveled or trained with Jean

Lopez, Peter Lopez, or Steven Lopez." (*Id.* at 134.)  Plaintiffs later voluntarily withdrew

Claims 1, 2, 6, 7, 11, 12, and 18 (Doc. # 139 at 3) and dismissed as a defendant

SafeSport (Doc. # 223).

---

[4] Plaintiffs originally asserted Claim 14 against the Lopez Defendants too.  (Doc. # 168 at 156.) Plaintiffs later clarified that Claim 14 "is asserted against only the [I]nstitutional [D]efendants . . . not the Lopez [b]rothers."  (Doc. # 139 at 4.)

On August 24, 2018, Defendants moved to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Lopez Defendants jointly filed a Motion to Dismiss (Doc. # 106); Defendant USOC filed a combined Motion to Dismiss and to Strike Class Action Allegations (Doc. # 108); and Defendant USAT filed a Motion to Dismiss (Doc. # 109).  Plaintiffs responded to all three motions in an omnibus filing on November 1, 2018.  (Doc. # 139.)  Two weeks later, Defendants replied in support of their Motions to Dismiss.  (Doc. ## 155, 157, 158.)  At Defendant USOC's request (Doc. # 175), Magistrate Judge Hegarty heard oral arguments on Defendant USOC's Motion to Dismiss and to Strike on January 23, 2019 (Doc. # 203).[5]

Magistrate Judge Hegarty issued an exhaustive Recommendation on Defendants' Motions to Dismiss on March 6, 2019, suggesting that the Court grant in part and deny in part the Motions to Dismiss.  (Doc. # 218.)  As to Plaintiffs' TVPA claims, Magistrate Judge Hegarty first examined "preliminary matters," including the applicable statute of limitations, the definition of "labor" and "services" in Sections 1589(a) and 1590(a), and the definition of "venture" in Section 1589(b).  (*Id.* at 12–24.)  He then turned to Defendants' arguments regarding the sufficiency of Plaintiffs' TVPA claims and recommended that the Court dismiss Claim 5 as alleged against Defendant USAT and Claim 14 as alleged against Defendant USOC.  (*Id.* at 24–46.)  Magistrate Judge Hegarty recommended that Claim 15, the claim alleging that Defendants violated RICO, be dismissed in its entirety.  (*Id.* at 46–54.)  He next assessed Plaintiffs' state

---

[5] Magistrate Judge Hegarty denied without prejudice Plaintiffs' Conditional Motion for Time to Seek Leave to Amend Complaint (Doc. # 196) at the hearing on January 23, 2019.  (Doc. # 203 at 2.)

common law claims and advised the Court to dismiss Claim 16 in its entirety; Claim 17 in its entirety; Claim 19 as alleged against Defendant USAT; and Claim 20 as alleged against Defendant USAT.  (*Id.* at 54–66.)  Because "Plaintiffs withdrew the majority of their claims against [Defendant] Jean Lopez" and he recommended that the RICO claim be dismissed, Magistrate Judge Hegarty concluded that Defendant Jean Lopez should be dismissed from the case.  (*Id.* at 72.)  Turning to Defendant USOC's request to strike Plaintiffs' class action allegations pursuant to Rule 12(f) (Doc. # 108 at 25), Magistrate Judge Hegarty recommended that the Court strike Plaintiffs' proposed Damages Class as overbroad.  (Doc. # 218 at 69.)

All parties object to various portions of the Recommendation.  Defendant USOC, the Lopez Defendants, and Defendant USAT filed separate Objections on March 20, 2019 (Doc. ## 224–26), and Plaintiffs filed an omnibus Response on April 3, 2019 (Doc. # 233).  Plaintiffs also filed an Objection to the Recommendation on March 20, 2019 (Doc. # 227), to which Defendant USOC and Defendant USAT both responded on April 3, 2019 (Doc. ## 232–33).  Defendants' Motions to Dismiss, Magistrate Judge Hegarty's Recommendation, and the parties' Objections are ripe for the Court's review.

## II.   **APPLICABLE LEGAL PRINCIPLES**

## A.   **REVIEW OF A RECOMMENDATION**

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to."  In conducting its review of proper objections, "[t]he district judge

may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

An objection is properly made if it is both timely and specific.  *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996).  Parties may not raise in their objections any novel arguments that they did not raise before the magistrate judge.  Such arguments are deemed waived. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see, e.g.*, *Stout v. Seitz*, No. 17-cv-01904-CMA-STV, 2018 WL 2948222, *4 (D. Colo. June 13, 2013) (declining to consider arguments regarding dismissal under Rule 12(b)(6) where the plaintiff raised them for the first time in her objections to a recommendation).

Where no party objects to the recommendation of a magistrate judge, "the district court is accorded considerable discretion with respect to the treatment of unchallenged magistrate reports.  In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

## B.     DISMISSAL PURSUANT TO RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of

further factual enhancement." *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### III.   DISCUSSION

The Court addresses the parties' various objections to Magistrate Judge Hegarty's analysis by claim, in chronological order.

### A.   PLAINTIFFS' TVPA CLAIMS

Of their TVPA claims, Plaintiffs have withdrawn Claims 1, 2, 6, 7, 11, and 12. (Doc. # 139 at 3.)

### 1.   Claim 3: Plaintiff Joslin's claim of forced labor, in violation of 18 U.S.C. §§ 1589(a) and 1595(a), against Defendant Steven Lopez

In Claim 3, pursuant to 18 U.S.C. § 1595(a), Plaintiff Joslin alleges that Defendant Steven Lopez violated 18 U.S.C. §§ 1589(a)(2) and (4) by obtaining her "labor and services"—namely, her "forced sexual services"—"by means of serious harm" or threats thereof and "through a scheme, plan, or pattern intended to cause [her] to believe that, if . . . she did not perform such labor or services, she would suffer serious harm or physical restraint."  (Doc. # 68 at 142.)  Plaintiff Joslin asserts that when Defendant Steven Lopez coached her at a tournament in Bonn, Germany in April 2006, he entered her hotel room on the night before her first match, turned on a "graphic pornographic movie," "pinned [her] to the bed, face down, pulled down her pants and mounted her," "penetrated [her], ejaculated inside her, and left the room."  (*Id.* at 124.)  Plaintiff Joslin contends that during that incident, "[i]t was clear . . . that Steven required sex before he would address his responsibilities as her coach."  (*Id.*)  She alleges that

she "continued to allow Steven to have sexual intercourse with her" until 2010 "out of fear of the Lopez brothers." (*Id.* at 125.)

Section 1595 provides a civil cause of action for victims of any crime under Chapter 77, Title 18 of the United States Code.  18 U.S.C. § 1595.  Section 1589 prohibits forced labor or services:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
> shall be punished as provided under subsection (d).

18 U.S.C. § 1589(a).  "One can violate the statute either as a primary offender" under Section 1589(a) "or simply by benefitting financially from participation in a 'venture' with the primary offender" under Section 1589(b). *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019).  In Claim 3, Plaintiffs allege that Defendant Steven Lopez was the primary offender and is liable pursuant to Section 1589(a).

The Lopez Defendants moved to dismiss Claim 3 on the grounds that it is "barred by the statute of limitations, as well as the plain meaning of the statute," and that Plaintiffs "fail to adequately allege that they were forced to provide any labor or services."  (Doc. # 106 at 6–10.)

a.   _Magistrate Judge Hegarty's Recommendation_

Magistrate Judge Hegarty recommended that "the Lopez Defendants' Motion to

Dismiss Claim 3 be denied."  (Doc. # 218 at 29.)  As to the statute of limitations,

Magistrate Judge Hegarty discussed the applicable statute of limitations for all TVPA

claims in his analysis of "preliminary matters."  (_Id._ at 12–16.)  The parties' dispute over

the applicable limitations period is rooted in the legislative history of the TVPA, which

Magistrate Judge Hegarty summarized:

> Congress originally passed the Victims of Trafficking and Violence
> Protection Act in 2000.  This Act created only criminal penalties for conduct
> currently prohibited in 18 U.S.C. §§ 1589 and 1590.  In **2003**, Congress
> amended the Act to add a **private right of action** for victims of violations
> of §§ 1589, 1590, or 1591 at **§ 1595**.  At the time, the statute carried a **four-
> year limitations period for filing civil actions**.  Congress **amended the
> TVPA's limitations period to ten years on December 23, 2008**.

(_Id._ at 12–13) (emphasis added) (internal citations omitted).  Persuaded by the logic of

the Court of Appeals for the Fourth Circuit in _Cruz v. Maypa_, 773 F.3d 138, 145 (4th Cir.

2014), Magistrate Judge Hegarty concluded:

> Any of Plaintiffs' TVPA claims that were unexpired when Congress
> amended the Act [on December 23, 2008] to include a ten-year limitations
> period are timely to the extent they fall within ten years of the filing the First
> Amended Complaint [(May 4, 2018)].

(Doc. # 218 at 13–15.)  As applied to Claim 3, Magistrate Judge Hegarty reasoned that

Plaintiff Joslin's claim is timely "because some of the alleged sexual conduct occurred

after May 4, 2008."  (_Id._ at 27.)

Magistrate Judge Hegarty then found that the SAC "plausibly alleges [Defendant]

Steven Lopez] obtained [Plaintiff Joslin's] services via means prohibited in

[Section] 1589(a)(1)–(4)."  (_Id._ at 27–29.)   He had previously explained in his discussion

of preliminary matters that "labor and services," as used in Sections 1589(a) and 1590(a), covers coerced sexual acts such as the "pay-to-play sexual acts alleged in the SAC." (*Id.* at 16–18) (citing *United States v. Kaufman*, 546 F.3d 1242, 1259–63 (10th Cir. 2008)). As to Claim 3, he determined that only Section 1589(a)(2), which concerns "serious harm or threats of serious harm" to the person providing the labor or services or to another person, "could potentially support [Plaintiff Joslin's] claim." (*Id.* at 27.) After reviewing the statutory definition of "serious harm," relevant case law, and Plaintiffs' allegations, Magistrate Judge Hegarty concluded that because "no Defendant in this case argues that the alleged 'serious harm' is insufficient as a matter of law to support a claim under the TVPA" and because no party had presented him with (nor had he found) "binding law identifying the 'minimum for conduct that is actionable under the TVPA,'" Plaintiff Joslin's allegations in Claim 3 are sufficiently plausible to survive the Lopez Defendants' Motion to Dismiss. (*Id.* at 28–29.)

> ### b.     *Objections to the Recommendation and the Court's Review*

The Lopez Defendants reprise two arguments in their Objection that they previously made in their Motion to Dismiss: that Claim 3 is barred by the statute of limitations "that existed at the time that [the claim] arose" and that Plaintiffs fail to state a claim upon which relief can be granted. (Doc. # 225 at 4–11.)

> ### i.     *Statute of Limitations for TVPA Claims*

The Court concludes that for Claim 3 and Plaintiffs' other TVPA claims, the TVPA's existing ten-year statute of limitations applies—even to claims based on conduct that allegedly occurred when the TVPA had a four-year limitations period

(before December 23, 2008), so long as the claim had not yet been barred by the four-year limitation when the ten-year limitation was passed into law.  It thus affirms Magistrate Judge Hegarty's assessment of the statute of limitations applicable to Plaintiffs' TVPA claims and rejects the Lopez Defendants' argument that Claim 3 is time barred.

Like Magistrate Judge Hegarty, the Court is persuaded by the Fourth Circuit's reasoning in *Cruz*.  The plaintiff in *Cruz* alleged that she was forced to work for the defendants at well-below minimum wages from 2002 until she escaped in January 2008.  773 F.3d at 141.  At the time the alleged conduct took place (2002 until January 2008), the TVPA was governed by a four-year statute of limitations.  *Id.* at 143–44.  On December 23, 2008, Congress amended the TVPA to include a ten-year statute of limitations.  *Id.*  The plaintiff filed the lawsuit on July 16, 2013, alleging violations of Sections 1589 and 1590, among other claims.  *Id.* at 142–43.  The district court dismissed all the claims as time-barred.  *Id.* at 143.  The plaintiff argued on appeal to the Fourth Circuit that her TVPA claims should be subject to the ten-year statute of limitations enacted in 2008.  *Id.*  The defendants asserted that application of the TVPA's ten-year limitation period, enacted after the alleged conduct, would be impermissibly retroactive.  *Id.*

The Fourth Circuit held that "applying the [TVPA's] extended limitations period to claims that were unexpired at the time of its enactment"—December 23, 2008—"does not give rise to an impermissible retroactive effect."  *Id.* at 145.  To reach that conclusion, the Fourth Circuit applied the "framework for determining whether a statute

applies retrospectively to pre-enactment conduct" that is set forth in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).  773 F.3d at 144–45.  At the second step of the *Landgraf* framework, determining whether the statute would operate retroactively, the Fourth Circuit looked to a previous case in which it had applied the *Landgraf* framework to a limitations period extension in the Veterans' Benefit and Improvement Act, enacted after the plaintiff's claims had expired under the old statute of limitations, and found that the new, extended statute of limitations would have an impermissible retroactive effect if applied to the plaintiff's expired claims.  *Id.* (citing *Baldwin v. City of Greensboro*, 714 F.3d 828, 837 (4th Cir. 2013)).  Its holding in that case "suggest[ed] a distinction between expired claims and claims that were alive when the new limitations period was enacted."  *Id.* at 145.  The Fourth Circuit explained this distinction "makes sense for two reasons:" first, because "applying a new limitations period to unexpired claims does not 'attach new legal consequences to events completed before its enactment'" but "rather merely prolongs the time during which legal consequences can occur," and second, because, "in the criminal context, there is a consensus that extending a limitations period before prosecution is time-barred does not run afoul of the Ex Post Facto Clause of the Constitution."  *Id.*

Accordingly, the Fourth Circuit rejected the defendants' argument that applying the TVPA's extended limitations period to claims that were unexpired at the time of its extension was impermissibly retroactive.  *Id.*  Whether the plaintiff's TVPA claims could proceed, it continued, would depend "on whether they were still alive under the old four-year statute of limitations period when Congress enacted the new statute of limitations

on December 23, 2008." *Id.* Because that date was more than four years after the plaintiff began working for the defendants, the Fourth Circuit remanded the case to the district court to determine whether the plaintiff's TVPA claims warranted equitable tolling "until December 23, 2004, four years before" Congress extended the TVPA's limitations period. *Id.* at 146.

Numerous other courts, including one in this jurisdiction, have reached similar conclusions that TVPA's ten-year statute of limitations applies if the plaintiff's claims were alive when Congress amended the TVPA on December 23, 2008, to lengthen the statute of limitations. *See, e.g.*, *Camayo v. John Peroulis & Sons Sheep, Inc.*, Nos. 10-cv-00772, 11-cv-001132, 2013 WL 3927677, *2 (D. Colo. July 20, 2013); *Lama v. Malik*, 192 F. Supp. 3d 313, 322–23 (E.D.N.Y. 2006) (collecting cases). *But see Abarca v. Little*, 54 F. Supp. 3d 1064 (D. Minn. 2014).

The Court adopts the reasoning of the Fourth Circuit and rejects the Lopez Defendants' argument that applying the ten-year limitations period to Claim 3 and Plaintiffs' other TVPA claims is an "improper retroactive application under *Landgraf* because it involves the creation of additional liability for Steven Lopez." (Doc. # 225 at 8.) Claim 3 was not expired on December 23, 2008, when Congress extended the TVPA limitations period to ten years. By applying the ten-year statute of limitations, the Court does not expose Defendant Steven Lopez to any new legal consequences; it "merely prolongs the time during which legal consequences can occur." 773 F.3d at 145; *see also Camayo*, 2013 WL 3927677 at *2 (holding that the amendment of TPVA's statute of limitations "did not . . . change the Defendants' rights or impose any

17

substantive burden on them;" it "merely extended the time in which a plaintiff may assert claims for violations of already-existing rights."). This does not amount to an impermissible retroactive effect. Under TVPA's ten-year limitations period, Claim 3 is timely. The Court affirms Magistrate Judge Hegarty's conclusion on this point.

The Lopez Defendants' Objection does not persuade the Court otherwise.[6] The Lopez Defendants attempt to distinguish *Cruz* from their case by describing the Fourth Circuit as "carv[ing] out a narrow distinction to the rule against retroactivity for claims to which an 'equitable tolling' basis existed, to distinguish the claims as 'unexpired.'" (Doc. # 225 at 7.) In this case, they contend, "Plaintiffs are not entitled to the remedy of equitable tolling" because "the facts that existed in *Cruz* to justify equitable tolling do not exist in the present case." (*Id.*) That completely mischaracterizes the Fourth Circuit's opinion in *Cruz* and Plaintiffs' theory of this case. Notably, the Fourth Circuit did not consider the doctrine of equitable tolling until **after** it had concluded that "applying the [TVPA's] extended limitations period to claims that were unexpired at the time of its enactment does not give rise to an impermissible retroactive effect." Only after so concluding did it address equitable tolling to determine whether the plaintiff's TVPA claims were unexpired under the previous four-year limitations period when Congress

---

[6] The Court also rejects the Lopez Defendants' second contention, that Magistrate Judge Hegarty's "refusal to 'follow'" the case upon which they relied in their Motion to Dismiss, *Abarca v. Little*, 54 F. Supp. 3d 1064 (D. Minn. 2014), "was based on an incorrect distinction" he drew between *Abarca* and *Cruz.* (Doc. # 225 at 8–9.) As Magistrate Judge Hegarty explained, *Abarca* has little persuasive value because, unlike in the case presently before this Court, the plaintiff in *Abarca* asserted his civil claims "under [TVPA] provisions that previously only imposed criminal liability." 54 F. Supp. 3d at 1069.

extended the limitations period to ten years on December 23, 2008.  *Cruz*, 773 F.3d at

145.  In this case, there is no question that Claim 3 was unexpired when Congress

amended TVPA's statute of limitations in late 2008.  The Court agrees with Plaintiffs

that they "do not assert—nor do they need to—that the limitations period for their claims

should be equitably tolled."  (Doc. # 231 at 17.)

For the foregoing reasons, the Court affirms Magistrate Judge Hegarty's

conclusion that Claim 3 is not time-barred.

ii.    *Sufficiency of Factual Allegations*

Seeing no clear error in his analysis, the Court affirms Magistrate Judge

Hegarty's determination that Plaintiffs' Claim 3 plausibly alleges a claim against

Defendant Steven Lopez.  *See* (Doc. # 218 at 29); *Summers*, 927 F.2d at 1167.

In their Objection, the Lopez Defendants state that "Plaintiffs' TVPA claims,"

Claims 3, 5, 8, 10, and 13, "are not sufficiently pled" because the SAC is "long on

conclusory allegations and utterly devoid of the requisite factual specificity."  (Doc.

# 225 at 10.)  The Lopez Defendants did not raise this argument in their Motion to

Dismiss.  Rather, they argued therein that Claim 3 must be dismissed for failure to state

a claim because Plaintiffs did not adequately allege "that they were forced to provide

any labor or services" to the Lopez Defendants.  (Doc. # 106 at 8.)  According to the

Lopez Defendants' Motion to Dismiss, Plaintiffs "voluntarily remained" on the national

taekwondo team and their alleged sexual conduct was "their contributions to

[D]efendants USOC and/or USAT."  (Doc. # 106 at 8.)  Because the Lopez Defendants

did not previously argue that Claim 3 makes only conclusory statements and is devoid of factual allegations, this argument is deemed waived.  *See Marshall*, 75 F.3d at 1426.

Moreover, the Lopez Defendants' objection that Plaintiffs' TVPA claims are not sufficiently pled is improper due to lack of specificity; it fails to even mention Magistrate Judge Hegarty's analysis of the sufficiency of Claim 3.  *See* (Doc. # 225 at 10–11.) Because their objection is not properly made, the Court reviews the part of the Recommendation to which they object under a clear error standard.  *See Summers*, 927 F.2d at 1167.  Finding no clear error, the Court affirms this portion of the Recommendation.

In sum, the Court is satisfied upon its de novo review that Magistrate Judge Hegarty correctly concluded that Claim 3 is timely and is adequately pled.  The Court thus denies the Lopez Defendants' Motion to Dismiss Claim 3.

## 2. Claim 4: Plaintiff Joslin's claim of forced labor, in violation of 18 U.S.C. §§ 1589(b) and 1595(a), against Defendant USAT

Claim 4 alleges that Defendant USAT is liable under Section 1589(b) because it "knowingly benefitted from participation in a venture with [Defendant] Steven Lopez, knowing or in reckless disregard of the fact that the venture was engaging in the . . . obtaining of [Plaintiff Joslin's] labor or services by means of . . . serious harm or threats of serious harm."  (Doc. # 68 at 143.)  Plaintiff Joslin asserts that she "reported Defendant Steven Lopez's abuse" to Defendant USAT.  (*Id.*)  Defendant USAT benefitted from Defendant Steven Lopez's conduct, Plaintiffs continue, "by collecting money through sponsorships, grants, and for medals achieved at competitions, and for

his recruitment and training of other elite taekwondo athletes, despite indications that

[Plaintiff] Joslin was being abused and raped."  (*Id.* at 144.)

As the Court stated above, pursuant to Section 1589(b), one can be liable for

violation of Section 1589's prohibition on forced labor or services "simply by benefitting

financially from participation in a 'venture' with the primary offender."  *Bistline*, 901 F.3d

at 871.  Section 1589(b) provides:

> (b) Whoever knowingly benefits, financially or by receiving anything of
> value, from participation in a venture which has engaged in the providing or
> obtaining of labor or services by any of the means described in subsection
> (a), knowing or in reckless disregard of the fact that the venture has
> engaged in the providing or obtaining of labor or services by any of such
> means, shall be punished as provided in subsection (d).

18 U.S.C. § 1589(b).  The term "venture" "has not be defined in the context of [Section]

1589(b)."  *Bistline*, 901 F.3d at 873.

Because the venture liability provisions in Sections 1595(a), 1589(b), and

1591(d) were not added to the TVPA until December 23, 2008, Defendant USAT moves

to dismiss Claim 4, as well as Claims 5, 6, 7, 9, 11, 12, and 14, on the ground that

Section 1595(a) "cannot be applied retroactively to support a civil cause of action for

misconduct that allegedly occurred prior to December 23, 2008."  (Doc. # 109 at 9–10.)

It argues that Claim 4 must be dismissed because "all of the Lopez [b]rothers' relevant

alleged misconduct directed towards Plaintiffs" and its own alleged conduct took place

before 2006, "prior to authorization of civil claims against . . . those who benefit from

participation in a venture in violation of the chapter."  (*Id.* at 10–11.)  However,

Defendant USAT did not explain its characterization that Plaintiffs' TVPA claims,

including Claim 4, "involve conduct prior to December 23, 2008," but no conduct

thereafter.  *See* (*id.* at 13–9.)

       a.     *Magistrate Judge Hegarty's Recommendation*

      Magistrate Judge Hegarty decided that Plaintiff Joslin "has plausibly stated a

claim against [Defendant] USAT under [Section] 1589(b)" and recommended that

Defendant "USAT's Motion to Dismiss Claim 4 be denied."  (Doc. # 218 at 31.)  By

noting that Claim 4 is only "valid" for alleged conduct that took place between December

23, 2008, and May 4, 2018, he implicitly agreed with Defendant USAT that Sections

1589(b) and 1591(d) cannot support a claim based on conduct that took place before

those subsections were enacted on December 23, 2008.  *See* (*id.* at 29.)

      The bulk of Magistrate Judge Hegarty's discussion of Claim 4 was an application

of the four elements of a Section 1589(b) claim to Plaintiffs' allegations.  *See* (*id.* at 29–

31.)  He concluded that Plaintiffs' SAC satisfies all four elements.  (*Id.*)  First, the

allegations "plausibly establish that the relationship between [Defendant] Steven Lopez

and [Defendant] USAT is a venture."  (*Id.* at 30.)  Second, Defendant USAT does not

dispute that it "knowingly benefitted from its relationship with [Defendant] Steven

Lopez."  (*Id.*)  Magistrate Judge Hegarty cited Defendant Steven Lopez's participation in

the 2016 Olympics and 2017 World Championships as instances "well within the period

that the claim is available" when Defendant USAT "benefitted from th[e] relationship."

(*Id.*)  Third, "the SAC plausibly alleges the venture engaged in obtaining [Plaintiff]

Joslin's labor or services;" but for the venture, Magistrate Judge Hegarty explained,

Defendant Steven Lopez "would not have obtained—nor have been able to obtain—

[Plaintiff] Joslin's sexual services."  (*Id.* at 30–31.)  And fourth, in light of Plaintiffs' allegations that Defendant USAT "began an investigation of the Lopez brothers in 2014" and hired an investigator, Donald Alperstein, in March 2015, *see* (Doc. # 68 at 60–61, 82), Plaintiffs "plausibly allege[] [Defendant] USAT knew or recklessly disregarded that [Defendant] Steven [Lopez] had obtained the services of Plaintiffs."  (Doc. # 218 at 31.)

> b.      *Objections to the Recommendation and the Court's Review*

Defendant USAT's objection to Magistrate Judge Hegarty's recommendation that its Motion to Dismiss be denied as to Claim 4 (and Claim 9) raises an entirely new argument in favor of dismissal.  *See* (Doc. # 226 at 4–6.)  It contends that Plaintiff Joslin does not have standing to assert Claim 4 because "[t]here is no nexus between [its] alleged violation of 18 U.S.C. § 1589(b) and the damages alleged under Plaintiffs' forced labor claims."  (*Id.* at 4.)  To the best of the Court's understanding, Defendant USAT's position is that Plaintiff Joslin is without standing to bring Claim 4 because Section 1595(a) "authorizes the victim of a violation of [Section] 1589 to bring a civil action for damages," but Plaintiff Joslin was "no longer" a "victim[] in the alleged venture" "by the time [Defendant] USAT allegedly learned of [Defendant] Steven Lopez's venture in 2014 or 2015 and by the time [it] allegedly knowingly benefitted from the venture in 2016 and 2017" because she is a "former member[s] of USAT and . . . had stopped competing in taekwondo, at the latest, in approximately 2011."  (*Id.* at 5–6.)  This argument is completely different than the one Defendant USAT raised in its Motion to Dismiss and its Reply in support thereof.  As such, for purposes of this Court's review

of the Recommendation, Defendant USAT waived this argument, *see Marshall*, 75 F.3d at 1426, and the Court declines to consider it.  *See Stout*, 2018 WL 2948222 at *4.

There is no clear error in Magistrate Judge Hegarty's analysis of Claim 4.  *See Summers*, 927 F.2d at 1167.  He appropriately applied the elements of a Section 1589(b) claim to the allegations in the SAC.  The Court therefore overrules Defendant USAT's Objection with respect to Claim 4, and adopts Magistrate Judge Hegarty's recommendation that Defendant USAT's Motion to Dismiss as to Claim 4 be denied.

### 3. Claim 5: Plaintiff Joslin's claim of trafficking with respect to forced labor, in violation of 18 U.S.C. §§ 1590(a) and 1595(a), against Defendant Steven Lopez and Defendant USAT

Bringing Claim 5 pursuant to the civil remedy provision of Section 1595(a), Plaintiff Joslin asserts that Defendant Steven Lopez and Defendant USAT violated 18 U.S.C. § 1590, which imposes liability for human trafficking.  (Doc. # 68 at 144–45.) Specifically, the SAC alleges that Defendant Steven Lopez "knowingly recruited and fraudulently enticed [Plaintiff Joslin] to come to Bonn, Germany, with the intention of forcing her into sexual labor and services for him." (*Id.* at 144.)  It further alleges that Defendant USAT, "through [its] agent, [Defendant] Steven Lopez, knowingly transported [Plaintiff Joslin] to Bonn, Germany, and to various tournaments and training centers between 2006 and 2010." (*Id.* at 145.)

The TVPA imposes liability for trafficking, which is separate and distinct from liability for forced labor or services.  *Baxla v. Chaudhri*, 225 F. Supp. 3d 588, 593 (E.D. Va. 2016).  Section 1590(a) outlines the liability for human trafficking as follows:

> Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1590(a).

Defendant USAT moved to dismiss Claim 5, as well as Plaintiffs' other claims under Section 1595(a) (Claims 3, 6, 7, 9, 11, 12, and 14), "because [Section 1595(a)] cannot be applied retroactively to support a civil cause of action for misconduct that allegedly occurred prior to December 23, 2008," when Section 1595(a) was amended to include liability for one who knowingly benefits from participation in a venture engaged in a TVPA violation.  (Doc. # 109 at 9–13.)  It appears from this argument that Defendant USAT is interpreting Plaintiffs' claims as asserting Defendant USAT is liable as a participant in a venture, rather than liable as a principal.  *See* (*id.*)  However, in their omnibus Response to the Motions to Dismiss, Plaintiffs clarified their theory that Defendant "USAT is guilty as a principal for the trafficking of [Plaintiff Joslin] from late 2008 until 2010, as it provided her to [Defendant] Steven [Lopez] and transported her . . . knowing or in reckless disregard of the fact that he would continue to use her for her sexual services."  (Doc. # 139 at 22.)

The Lopez Defendants moved to dismiss Claim 5 on the basis that the claim is "barred by the statute of limitations, as well as the plain meaning of the statute."  (Doc. # 106 at 6–10.)  They also argued that Plaintiff Joslin "fail[s] to adequately plead trafficking against [the Lopez Defendants] within the meaning" of Section 1590(a).  (*Id.* at 14.)  Contrasting their case with one in which the defendant recruited a housekeeper "to make the defendant's husband happy," the Lopez Defendants asserted that

"Plaintiffs in this case were not recruited to join USAT to provide any labor or services in the form of sexual favors for [Defendant Steven Lopez]."  (*Id.*) (citing *Roe v. Howard*, No. 1:16-cv-562, 2018 WL 284977 (E.D. Va. Jan. 3, 2018)).

### a.   *Magistrate Judge Hegarty's Recommendation*

Magistrate Judge Hegarty began by resolving "[t]he critical dispute among the parties"—"the word 'for' in [Section] 1590(a)."  (Doc. # 218 at 31–31.)  Drawing on the definition of "for" in Black's Law Dictionary, he determined that "Plaintiffs' [Section] 1590(a) claim will proceed if they allege a Defendant recruited, harbored, transported, provided, or obtained [Plaintiff] Joslin 'for the benefit of' her coerced sexual services."  (*Id.* at 32.)

He recommended that the Court grant Defendant USAT's Motion to Dismiss as to Claim 5 because he saw no allegation in the "entirety of the SAC" that Defendant "USAT (as the principal) transported [Plaintiff] Joslin for [Defendant] Steven [Lopez] to obtain sexual services from her."  (Doc. # 218 at 34.)  As Magistrate Judge Hegarty explained, Plaintiffs' assertion that Defendant USAT knew that Defendant Steven Lopez would continue to use Plaintiff Joslin for her sexual services does not meet the TVPA's condition "that liability as a principal requires that [Defendant] USAT 'knowingly' transported [Plaintiff] Joslin 'for' forced labor or services." (*Id.*)

Magistrate Judge Hegarty recommended that the Lopez Defendants' Motion to Dismiss be denied as to Claim 5 because Plaintiffs "plausibly allege" Defendant Steven Lopez transported Plaintiff Joslin for her sexual services between 2006 and 2010.  (*Id.* at 32–33.)  Magistrate Judge Hegarty had already rejected the Lopez Defendants'

statute of limitations argument in his discussion of "preliminary matters," which this Court summarized in Section III(A)(1)(a) above.  *See* (*id.* at 12–16.)

       b.    *Objections to the Recommendation and the Court's Review*

Plaintiffs object to Magistrate Judge Hegarty's recommendation that the Court dismiss Claim 5 as alleged against Defendant USAT, asserting that they allege in the SAC that Defendant USAT is liable on Claim 5 "under a venture theory of liability, . . . not solely as a principal." (Doc. # 227 at 10.)  They fault Magistrate Judge Hegarty for grasping onto the statement in their Response that Defendant "USAT is guilty as a principal for the trafficking" of Plaintiff Joslin, *see* (Doc. # 139 at 22), without considering another section of their Response, in which they argued that Defendant USAT is also liable on Claim 5 under the venture theory, *see* (*id.* at 23–31).  (Doc. # 227 at 10.)  The two theories of liability available under Section 1595(a), they assert, "are not mutually exclusive." (*Id.*)  With respect their venture theory of Defendant USAT's liability, Plaintiffs note that Magistrate Judge Hegarty's recommended dismissal was "even more improper," given that Defendant "USAT didn't even challenge the substance of Count 5 in its [M]otion to [D]ismiss." (*Id.*)

Upon de novo review, the Court rejects Magistrate Judge Hegarty's conclusion that Defendant USAT's Motion to Dismiss should be granted as to Claim 5.  As Plaintiffs made clear in their Response to the motion and reassert in their Objection, Plaintiffs assert Claim 5 against Defendant USAT pursuant to both Section 1595(a)'s principal liability and its venture liability provisions.  *See* (Doc. # 139 at 23–31; Doc. # 227 at 10).  Magistrate Judge Hegarty failed to address the latter.  *See* (Doc. # 218 at 33–34.)

To succeed in avoiding dismissal of Claim 5 against Defendant USAT under Section 1595(a)'s venture liability, Plaintiffs must plausibly allege that Defendant USAT "knowingly benefit[ted], financially or by receiving anything of value, from participation in a venture which [Defendant USAT] knew or should have known has engaged in an act in violation" of Section 1590.  18 U.S.C. § 1595(a).  The Court concludes that Plaintiffs' allegations satisfy this standard.  Their SAC alleges that Defendant USAT "knowingly benefitted from participating in a venture with [Defendant] Steven Lopez," who it knew or should have known was transporting Plaintiff Joslin for her sexual labor or services. (Doc. # 68 at 145.)  The Court also observes that Defendant USAT did not challenge the sufficiency of the allegations underlying Claim 5 in their Motion to Dismiss; it only argued that Claim 5 is timed-barred.  *See* (Doc. # 109 at 9–13).  Accordingly, the Court denies Defendant USAT's Motion to Dismiss as to Claim 5.

In response to Magistrate Judge Hegarty's recommendation that their Motion to Dismiss be denied as to Claim 5, the Lopez Defendants assert the same objections that they raised on Claim 3: that the claim is barred by the statute of limitations "that existed at the time that [the claim] arose" and that Plaintiffs fail to state a claim upon which relief can be granted.  (Doc. # 225 at 4–11.)  For the same reasons the Court rejected these arguments in Section III(A)(1)(b), it also rejects them as to Claim 5.  Accordingly, the Court affirms the Recommendation as to Claim 5 alleged against the Lopez Defendants and denies the Lopez Defendants' Motion to Dismiss Claim 5.

**4.**     **Claim 8: Plaintiff Means's claim of forced labor, in violation of 18
U.S.C. §§ 1589(a), 1595(a), and 2255, against Defendant Steven Lopez**

In Claim 8, Plaintiff Means alleges that Defendant Steven Lopez "knowingly

obtained forced sexual services from [her] by means of serious harm or threats in

violation of 19 U.S.C. § 1589(a)(2)" and by means of "a scheme . . . intended to cause

[her] to believe that, if she did not perform such labor or services, she would suffer

serious harm of physical restraint in violation of 18 U.S.C. § 1589(a)(4)."  (Doc. # 68 at

148–49.)  Plaintiff Means asserts Claim 8 pursuant to TVPA's civil remedy provision,

Section 1595(a), and pursuant to 18 U.S.C. § 2255, which provides a civil remedy to

minor victims who suffer a "personal injury" from various sex crimes, *see Doe v.

Boeland*, 698 F.3d 877, 880 (6th Cir. 2012).  (Doc. # 68 at 148–49.)

The SAC asserts that, in 2007, when Plaintiff Means was 17 years old,

Defendant Steven Lopez "engaged in grooming behaviors" and took her on dates.  (*Id.*

at 129–30.)  On at least two of those dates, Plaintiff Means "performed oral sex" on

Defendant Steven Lopez, and he "had vaginal sex with [her]" in February 2008.  (*Id.* at

130.)  They began having an "open sexual relationship in March 2008, when [Plaintiff

Means] was 17 years old," the SAC continues, and "had sex . . . in several states and

countries" while "attending USOC and USAT sponsored events."  (*Id.* at 130–31.)

Plaintiff Means turned 18 years old on May 7, 2008.  *See* (Doc. # 122 at 2); F.R.E.

201(b)(2).  She alleges that in June 2008, Defendant Steven Lopez invited her to a

party, "put a drug in [her] drink that caused her to pass out so that he could rape her,"

and then proceeded "to rape [] her while she was passed out."  (*Id.* at 131.)  Defendant

Means last competed in taekwondo in April 2011.  (*Id.* at 132.)  She claims that in

February 2013, Defendant Steven Lopez "again drugged [her]" and "pinned her to a wall and tried to kiss her." (*Id.*) She states that she "felt that if she angered the Lopez [b]rothers, she would face retaliation" and that "she had to service the Lopez [b]rothers with her body in order to compete in USA Taekwondo and reach the Olympics." (*Id.* at 133.) She alleges that she has "suffered a variety of mental and physical symptoms as a result of the personal injuries caused by the Lopez [b]rothers, the USOC, and USAT." (*Id.*)

In their Motion to Dismiss, the Lopez Defendants argued that Claim 8 must be dismissed for three reasons. *See* (Doc. # 106.) First, they contended that, to the extent Claim 8 is brought pursuant to Section 2255, it is time barred because when Defendant Steven Lopez allegedly misbehaved in 2007 and 2008, Section 2255 had a statute of limitations of six years, so Plaintiff Means's claim "expired in June 2014." (*Id.* at 3–6.) Second, the Lopez Defendants argued that to the extent Claim 8 is asserted pursuant to Section 1595 (a) of the TVPA, it (and Plaintiffs' other TVPA claims) is time barred because Plaintiff Means does not allege "specific times, dates, or places" after August 24, 2008 (ten years prior to the SAC being filed), regarding Defendant Steven Lopez's conduct. (*Id.* at 6–8.) Third, the Lopez Defendants argued that Claim 8 (as well as Claim 1 and Claim 3) must be dismissed because "Plaintiff fails to adequately allege that they were forced to provide any labor or services for [Defendant Steven Lopez]" under Section 1989(a). (*Id.* at 8–10.)

        *a.*    <u>*Magistrate Judge Hegarty's Recommendation*</u>

Magistrate Judge Hegarty recommended that the Lopez Defendants' Motion to Dismiss be denied with respect to Claim 8.  (Doc. # 218 at 34–37.)  Regarding the portion of the claim asserted pursuant to Section 2255, Magistrate Judge Hegarty traced the history of that provision's statute of limitations and determined that "any conduct that occurred after February 14, 2008, would now still be timely, because the conduct occurred while [Plaintiff Means] was a minor and she had brought her claim within ten years after her eighteenth birthday."  (*Id*. at 37.)  Though he acknowledged "factual disputes . . . as to when the conduct specifically occurred in February 2008, and portions of the claim are time-barred," he concluded that "it is not proper to dismiss the entire claim when it is not plain from the face of the complaint that the claim is expired."  (*Id*.)

As to the portion of Claim 8 brought under Section 1595(a), Magistrate Judge Hegarty stated that "any portion of the claim asserting violative conduct before May 4, 2008," ten years prior to the filing of Plaintiffs' First Amended Complaint, is time-barred, "but the time claim based on conduct after May 4, 2008, will survive."  (*Id*. at 35.)  He then applied the elements of a Section 1589(a)(2) claim to Defendant Steven Lopez's alleged conduct towards Plaintiff Means in June 2008 and concluded that the SAC "at least plausibly alleges that [Defendant] Steven [Lopez] obtained sexual services by threat of 'serious harm' necessary to support a claim under [Section] 1589(a)(2)."  (*Id*.)

        *b.*    <u>*Objections to the Recommendation and the Court's Review*</u>

The Lopez Defendants object to Magistrate Judge Hegarty's assessment of Claim 8 with the same arguments they used in objecting to his conclusions on Claim 3 and Claim 5: first, that Claim 8, like Claims 3 and 5, is barred by the statute of limitations that existed at the time of Defendant Steven Lopez's alleged conduct, and second, that Claim 8 and Plaintiffs' other TVPA claims are not sufficiently pled.  (Doc. # 225 at 5–11.) The Court rejected these objections in its de novo review of Claim 3 in Section III(A)(1)(b) above.  The Court rejects them here for the same reasons and need not restate that analysis.  It affirms and adopts Magistrate Judge Hegarty's recommendation that the Lopez Defendants' Motion to Dismiss be denied with respect to Claim 8.

### 5.      Claim 9: Plaintiff Means's claim of forced labor, in violation of 18 U.S.C. §§ 1589(b) and 1595(a), against the Institutional Defendants

In Claim 9, Plaintiff Means asserts pursuant to Section 1595(a) that the Institutional Defendants are liable under Section 1589(b) because they "knowingly benefitted from participation in a venture with the Lopez brothers, knowing or in reckless disregard of the fact that the venture was engaged in the . . . obtaining of [her] labor or services by means of . . . serious harm or threats of serious harm."  (Doc. # 68 at 149–50.)  She contends that the Institutional Defendants knew or should have known about Defendant Steven Lopez's conduct towards her because they "housed [her] at their facilities, paid her a stipend, [and] observed her performance in competitions" and because she "reported—verbally and in formal written complaints—the Lopez brothers' abuse."  (*Id*. at 150.)  The Institutional Defendants benefitted from Defendant Steven Lopez's venture, Plaintiffs assert, "by collecting money through sponsorships, licensing, grants, publicity, medals achieved at competitions, and for his recruitment and training

of other elite taekwondo athletes." (*Id.*)  Claim 9 is similar to the Plaintiff Joslin's Claim 4 against Defendant USAT.

Defendant USOC moved to dismiss Claim 9, as well as Claims 11 and 12, because "the SAC fails to plausibly allege that [Defendant USOC] violated sex trafficking laws." (Doc. # 108 at 6–10.)  It argued that the SAC "provides no facts to support" its contention that Defendant USOC knew or recklessly disregarded that the venture was engaged in obtaining Plaintiff Means's labor or services by means of force, "fails to allege any specific conduct by [Defendant] USOC furthering the supposed venture," and "does not plausibly tie th[e] purported benefit [to Defendant USOC] to the USOC's alleged knowing participation in forced labor or sex trafficking." (*Id.* at 9–10.) Defendant USOC also asserted that while it "strongly prefer[red] to address the sex trafficking claims on their merits," Claim 9 and Claim 12 are time barred.  (*Id.* at 10.)

Defendant USAT moved to dismiss Claim 9 and Plaintiffs' other claims brought pursuant to Section 1595(a) (Claims 4, 5, 6, 7, 11, 12, and 14) by arguing that Section 1595(a) "cannot be applied retroactively to support a civil cause of action for misconduct that allegedly occurred prior to December 23, 2008." (Doc. # 109 at 9.)

> a.    *Magistrate Judge Hegarty's Recommendation*

Magistrate Judge Hegarty recommended that the Court deny both Institutional Defendants' Motions to Dismiss as to Claim 9 because the SAC plausibly alleges all four elements of a Section 1589(b) claim.  (Doc. # 218 at 38–40.)  He rejected Defendant USOC's Motion to Dismiss as "misunderstand[ing] the prohibited conduct under the TVPA," clarifying that "[n]othing in Section 1595(a) requires the party to

benefit from the [forced] labor or services for liability to attach" and that the party "need not be 'involved' in obtaining forced labor or services to be civilly liable" under the venture theory of liability.  (*Id.* at 39.)  His analysis of these points built on his prior examination of "preliminary matters," including the definition of "venture" as used in Section 1589(b).  *See* (*id.* at 18–24.)

        *b.*    <u>Objections to the Recommendation and the Court's Review</u>

Defendant USOC raises three objections to the Recommendation's treatment of Claim 9.  (Doc. # 224 at 2–8.)  First, as it argued in its Motion to Dismiss, *see* (Doc. # 108 at 9–10), Defendant USOC argues that Section 1589(b) of the TVPA "requires that the **venture** engaged in the prohibited activity—*i.e.*, forced labor or sex trafficking" and that the SAC "does not alleged a forced labor venture between [Defendant] USOC and [Defendant] Steven Lopez."  (Doc. # 224 at 2.)  Second, Defendant USOC posits that Section 1589(b) also requires an overt act to trigger venture liability.  (*Id.* at 5–7.)  It faults Magistrate Judge Hegarty for "misapply[ying] the relevant legal standard" and asserts that his reasoning "improperly 'ensnares conduct that the statute never contemplated.'"  (*Id.* at 7) (quoting *United States v. Afyare*, 631 F. App'x 272, 281 (6th Cir. 2016)).  Third, Defendant USOC asserts that Magistrate Judge Hegarty "erred in finding the SAC alleged [Defendant USOC] knowingly benefitted from the alleged forced labor" because there was a three-year period of time between Defendant Steven Lopez's alleged abuse of Plaintiff Means in 2013 and Defendant USOC's benefitting from Defendant Steven Lopez's participation in the 2016 Olympics.  (*Id.* at 7–8.)

The Court rejects all three of Defendant USOC's objections regarding Claim 9.

First, Defendant USOC is incorrect in stating that Section 1589(b) requires that the

venture itself engaged in obtaining the labor or services by force.  *See* (*id.* at 2.)  In a

recent case also arising under Section 1589(b), the Court of Appeals for the Tenth

Circuit applied a broad definition of venture.  *Bistline*, 901 F.3d at 873–76.  It wrote:

> While the term "venture" has not been defined in the context of § 1589(b),
> the First Circuit recently persuasively applied the definition from another
> TVPRA subsection to the forced labor context.  In § 1591(e)(6), "venture" is
> defined as "any group of two or more individuals associated in fact, whether
> or not a legal entity."

*Bistline*, 918 F.3d at 873 (internal citation omitted) (citing *Ricchio v. McLean*, 853 F.3d

553 (1st Cir. 2017)).  Notably, the Tenth Circuit did **not** adopt a narrower definition of

venture, like the one Defendant USOC proposes; it did **not** state that Section 1589(b)

required that the entire venture at issue be actively engaged in TVPA violations.[7]  *Id.* at

874–76.

In this case, considering the SAC in its entirety, *see id.* at 874 (stating that the

complaint is to be read as whole), the Court is satisfied that Plaintiffs have sufficiently

alleged that Defendant Steven Lopez and the Institutional Defendants are "associated in

fact" and therefore qualify as venture under Section 1589(b).  Moreover, the unreported

Sixth Circuit case upon which Defendant USOC relies, *United States v. Afyare*, is

unpersuasive.  *See* (Doc. # 224 at 2–5.)  The Tenth Circuit did not mention it at all when

---

[7] Though Defendant USOC cited the Tenth Circuit recent decision in *Bistline* in its Objection,
Defendant USOC does not acknowledge the Tenth Circuit's statement that the First Circuit
"persuasively applied" the definition of venture from Section 1591(e)(6) to a Section 1589(b)
claim.  *See* (Doc. # 24 at 3, 5–6); *Bistline*, 918 F.3d at 873.

it recently considered the definition of venture within the context of Section 1589(b).

*See Bistline*, 901 F.3d at 873–76.  As Magistrate Judge Hegarty observed (Doc. # 218 at 19), *Afyare* involved a claim arising under a different provision, Section 1591(a)(2), and the Sixth Circuit concluded that the definition of "venture" provided in Section 1591(e)(5) was merely a "bare meaning" "modif[ied]" by the "placement and purpose" of the word Section 1591(a)(2).  *Afyare*, 632 F. App'x at 284–85.  The Court agrees with Magistrate Judge Hegarty's assessment that "the Sixth Circuit's rationale for its definition of a 'venture' in [Section] 1591 cannot be reasonably applied to the definition in [Section] 1589(b)."  (Doc. # 218 at 21.)

Second, Section 1589(b) does not require a member of a venture to have committed overt acts in furtherance of obtaining forced labor or services in order for that member to be civilly liable to a plaintiff.  Defendant USOC relies heavily on *Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW, 2017 WL 8293174, *3–5 (C.D. Cal. Dec. 21, 2017), to argue that Section 1589(b) "requires plausible allegations of an 'overt act' by [Defendant] USOC in furtherance of the alleged forced labor venture."  *See* (Doc. # 224 at 5–7.)  However, the district court's holding in *Ratha* that "the relevant case law requires more than receipt of a passive benefit to satisfy to [TVPA's] participation in a venture element" was based on a district court ruling that the Tenth Circuit recently reversed and remanded in relevant part in *Bistline*, 901 F.3d at 873.  *Ratha*, 2017 WL 8293174 at *4 (quoting *Bistline v. Jeffs*, No. 2:16-cv-788 TS, 2017 WL 108039 (D. Utah, Jan. 11, 2017), *reversed and remanded in part*, *Bistline*, 901 F.3d at 873).  The Court thus finds Defendant USOC's reliance on *Ratha* to be unavailing.  Although Section

36

1589(b) certainly requires the defendant to participate in a venture with another member who violated Section 1589(a), nothing in it requires that the defendant's participation be an overt act in furtherance of the other member's TVPA violation.

Third, Defendant USOC's objection that the SAC "lacks any plausible allegation that [Defendant] USOC benefitted from its participation" in a venture with Defendant Steven Lopez is simply inaccurate.  (Doc. # 224 at 7–8.)  The SAC plainly alleges that Defendant USOC "benefitted (financially and otherwise) from [Defendant] Steven . . . Lopez's actions, including by collecting money through sponsorships, licensing, grants, publicity, [and] for medals achieved at competitions."  (Doc. # 68 at 150.)  Defendant USOC's objection is narrowly focused on Magistrate Judge Hegarty's statement that "each institution knowingly benefitted from the venture; [Defendant] Steven [Lopez] participated in the 2016 Olympics in taekwondo." (Doc. # 224 at 7) (citing Doc. # 218 at 38). However, the SAC includes many additional allegations as to other ways in which Defendant USOC benefitted from its venture with Defendant Steven Lopez.  For example, Plaintiffs allege that, from 2006 until the Lopez Defendants were suspended from the sport in 2018, the Institutional Defendants benefitted from "the 'money and medals' delivered by the Lopez brothers."  (Doc. # 68 at 34–35.)  When reading the SAC as a whole, as the Tenth Circuit required in *Bistline*, 901 F.3d at 874, the Court is satisfied that Plaintiffs plausibly allege Defendant USOC benefitted from its participation in the venture with Defendant Steven Lopez.

For these reasons, Defendant USOC's three objections concerning Claim 9 are overruled.  The Court affirms and adopts Magistrate Judge Hegarty's recommendation to deny Defendant's USOC Motion to Dismiss Claim 9.

Defendant USAT's objection to the Recommendation as to Claim 9 is the same objection it made to the Claim 4 recommendation, as detailed in Section III(A)(2)(b) above.  (Doc. # 226 at 4–6.)  As the Court previously noted, Defendant USAT has waived any argument regarding Plaintiffs' standing by failing to raise it before Magistrate Judge Hegarty, and the Court will not consider it.  *See Marshall*, 75 F.3d at 1426.  The Court sees no clear error in Magistrate Judge Hegarty's analysis of Claim 9.  It overrules Defendant USAT's Objection and denies its Motion to Dismiss Claim 9.

### 6.      Claim 10: Plaintiff Means's claim of trafficking with respect to forced labor, in violation of 18 U.S.C. §§ 1590(a), 1595(a), and 2255, against Defendant Steven Lopez

Plaintiff Means's Claim 10 against Defendant Steven Lopez, which is brought pursuant to Section 1595(a) and Section 2255, is similar to Plaintiff Joslin's Claim 5.  Plaintiff Means alleges that Defendant Steven Lopez violated Section 1590(a) by knowingly recruiting and fraudulently enticing her to "come from Washington State to Houston, Texas, to Cleveland, Ohio, to Colorado Springs Colorado, to Sugar Land, Texas, to Des Moines, Iowa, to Beijing, China, and to various other cities and countries with the intention of forcing her into sexual labor and services for him."  (Doc. # 68 at 151.)

The Lopez Defendants moved to dismiss Claim 10 for the same reason they argued for dismissal of Plaintiffs' other claims alleged pursuant Section 1595 and Section 2255 (Claims 3, 5, and 8): that the claim is time barred.  (Doc. # 106 at 3–8.)

### a.     *Magistrate Judge Hegarty's Recommendation*

Magistrate Judge Hegarty recommended that the Court deny the Lopez Defendants' Motion to Dismiss Claim 10.  (Doc. # 218 at 40–41.)  With respect to limitations periods, he determined that the portion of the claim arising under Section 1595(a) "would be valid" for conduct that allegedly took place between May 4, 2008, and May 4, 2018, and that the portion of the claim asserted pursuant to Section 2255 is valid for alleged conduct between February 14, 2008, and May 4, 2018.  (*Id.* at 40.)  In light of those limitations periods, Magistrate Judge Hegarty stated that allegations concerning Defendant Steven Lopez's conduct towards Plaintiff Means in 2003, when he allegedly took a special interest in her and convinced her family to move to Texas so that she could train with him, are "outside the window for timely claims under either [Section] 1590 or [Section] 2255." (*Id.*); *see* (Doc. # 68 at 128–29).  However, he determined that Plaintiff Means's allegation that Defendant Steven Lopez raped her in June 2008 is timely.  (Doc. # 218 at 41.)

### b.     *Objections to the Recommendation and the Court's Review*

The Lopez Defendants object to Magistrate Judge Hegarty's assessment of Claim 10 on the same grounds they objected to his assessments of Claims 3, 5, and 8: first, that Claim 10 is barred by the statute of limitations that existed at the time of Defendant Steven Lopez's alleged conduct, and second, that Claim 10 and Plaintiffs'

other TVPA claims are not sufficiently pled.  (Doc. # 225 at 5–12.)  For the same

reasons the Court overruled these objections in its de novo review of Claim 3 in Section

III(A)(1)(b) above, it overrules them as to Claim 10.  The Court affirms and adopts

Magistrate Judge Hegarty's recommendation that the Lopez Defendants' Motion to

Dismiss be denied with respect to Claim 10.

> **7.** **Claim 13: Plaintiff Means's claim of sexual exploitation, transportation, and illegal sexual activity, in violation of 18 U.S.C. §§ 2242, 2421, 2422, 2423(a)–(c), and 2255, against Defendant Steven Lopez**

Claim 13 asserts that Defendant Steven Lopez knowingly transported Plaintiff

Means when she was a minor "with the intent that she engage in sexual activity for

which any person could be charged with a criminal offense" and thus violated 18 U.S.C.

§§ 2421, 2422, and 2423.[8]  (Doc. # 68 at 155.)  She brings Claim 13 pursuant to

---

[8] 18 U.S.C. § 2421(a) provides:

> (a) In general.--Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2421(a).  Section 2422(a) provides:

> (a) Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 2422(a).  And Section 2423 provides, in relevant part:

> (a) Transportation with intent to engage in criminal sexual activity.--A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.
>
> (b) Travel with intent to engage in illicit sexual conduct.--A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in

Section 2255, which provides her with a civil remedy to the extent that she was minor when she was a victim of a violation of several criminal provisions, including 18 U.S.C. §§ 2421, 2422, and 2423.  (*Id.* at 155–56.)

The Lopez Defendants argued that the Court must dismiss Claim 13 and Plaintiffs' other claims asserted pursuant to Section 2255 because the claims are time barred.  (Doc. # 106 at 3–6.)

### a.    *Magistrate Judge Hegarty's Recommendation*

Magistrate Judge Hegarty referred to his previous analysis of the Lopez Defendants' timeliness argument, *see* (Doc. # 218 at 35–37), and repeated his determination that Plaintiff Means "may assert claims based on conduct that occurred from February 14, 2008 until May 7, 2008" under Section 2255.  (*Id.* at 41–42.) Because Plaintiff Means alleges that Defendant Steven Lopez's conduct "occurred from 'late 2007' until at least June 2008," he recommended that the Court deny the Lopez Defendants' Motion to Dismiss with respect to Claim 13.  (*Id.* at 42.)

### b.    *Objections to the Recommendation and the Court's Review*

The Lopez Defendants raise the same two arguments regarding Magistrate Judge Hegarty's treatment of Claim 13 as they did for Claims 3, 5, 8, and, 10: that it is

---

foreign commerce, with a motivating purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

(c) Engaging in illicit sexual conduct in foreign places.--Any United States citizen or alien admitted for permanent residence who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423.

barred by the statute of limitations and that Plaintiff Means fails to state a claim for relief. (Doc. # 225 at 5–12.)  For the same reasons the Court overruled these objections in its de novo review of Claim 3 in Section III(A)(1)(b) above, it overrules the objections with respect to Claim 13.  The Court affirms and adopts Magistrate Judge Hegarty's recommendation that the Lopez Defendants' Motion to Dismiss be denied with respect to Claim 13.

    **8.**    **Claim 14: All Plaintiffs' claim of obstruction, attempted obstruction, and interference with enforcement, in violation of 18 U.S.C. §§ 1590(b), 1591(d), 1595(a), and 2255, against the Institutional Defendants**

Plaintiffs assert in Claim 14 that the Institutional Defendants "obstructed, attempted to obstruct, interfered, or prevented the enforcement" of Section 1590(a) and thereby violated 18 U.S.C. § 1590(b).[9]  (Doc. # 68 at 156–58.)  Plaintiffs allege that the Institutional Defendants impeded the enforcement of the TVPA in numerous ways, such as by ignoring and dismissing verbal and written complaints of sexual abuse and by delaying investigations of reports of sexual abuse.  (*Id.* at 157–58.)  They assert Claim

---

[9] Section 1590(b) provides:
> (b) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a).

18 U.S.C. § 1590(b).  Section 1590 generally concerns trafficking with respect to forced labor.

[10] Though the SAC states in the heading of Claim 14 that it asserts violation of 18 U.S.C. § 1591(d), there is no mention of Section 1591(d) in the text of the claim.  (Doc. # 68 at 156–58.)  Section 1591(d) provides:
> (d) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both.

18 U.S.C. § 1591(d).  Section 1591 generally concerns sex trafficking of children by force, fraud, or coercion.

14 pursuant to Section 1595(a), and Plaintiff Means also asserts it pursuant to Section 2255.  (*Id.* at 156.)

Defendant USOC moved to dismiss Claim 14 on the ground that the claim is "facially deficient."  (Doc. # 108 at 5.)  It argued that the "SAC does not identify any actual **law enforcement** effort that [Defendant] USOC ostensibly obstructed or how it supposedly did so."  (*Id.*)

Defendant USAT similarly argued that Claim 14 must be dismissed because Plaintiffs "fail to plead obstruction with particularity."  (Doc. # 109 at 16.)  According to Defendant USAT (and implicit in Defendant USOC's Motion to Dismiss, *see* (Doc. # 108 at 5)), the language of Sections 1590(b) and 1591(d) "makes it clear that the prohibited obstruction is confined to a government actor or government investigation."  (Doc. # 109 at 16.)  Defendant USAT also challenged what it characterized as Plaintiffs' "attempt to shoehorn interactions between private actors . . . into their obstruction claims by citing to allegedly false testimony given to Congress in May 2018" because "simply calling the testimony false . . . does not suffice to meet Plaintiffs' burden to plead with particularity." (*Id.* at 17.)

> a.    *Magistrate Judge Hegarty's Recommendation*

Magistrate Judge Hegarty began by addressing the "parties' first dispute," whether the enforcement at issues in Sections 1590(b) and 1591(d) "must be performed by a government actor."  (Doc. # 218 at 42.)  Persuaded by another district court's finding that obstruction of a private investigation did not violate Section 1591(d) and citing the lack of case law "finding a violation of the TVPA for obstruction of anything

other than a government investigation," Magistrate Judge Hegarty concluded that

"[o]bstruction of a private investigation is insufficient to state a claim of either [Sections]

1590(b) or 1951(d)." (*Id.* at 43) (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276,

287–88 (D. Conn. 2013)).  Magistrate Judge Hegarty then rejected for want of

supporting authority Defendant USAT's assertion that Claim 14 is "subject to the

heightened requirement in Rule 9(b) that a claim be plead with particularity." (*Id.* at 43–

44.)

Turning to the merits of Claim 14, Magistrate Judge Hegarty determined that the

SAC does not allege that Defendant USOC obstructed a government investigation of a

TVPA violation.  (*Id.* at 44–45.)  "Indeed," he wrote, "no governmental actor is present in

Plaintiffs' allegations" about Defendant USOC, and allegations that Defendant USOC

interfered with Defendant USAT's investigation of the Lopez Defendants "is simply

insufficient to state a claim under the obstruction statutes." (*Id.*)  He therefore

recommended that the Court dismiss Claim 14 as alleged against Defendant USOC.

However, he concluded that the SAC sufficiently alleges that Defendant USAT

obstructed a government investigation of a TVPA violation.  (*Id.* at 45–46.)  Magistrate

Judge Hegarty reviewed Plaintiffs' allegations that the Executive Director of Defendant

USAT falsely testified to the House of Representatives' Oversight and Investigations

Subcommittee that Defendant USAT did not control or limit the budget of Alperstein, the

investigator it hired to pursue allegations of the Lopez Defendants' sexual abuse.  (*Id.*)

(citing Doc. # 68 at 61–62).  Magistrate Judge Hegarty found "that Congress is a

government actor." (*Id.* at 46.)   He recommended that the Court deny Defendant

USAT's Motion to Dismiss as to Claim 14.  (*Id.*)

> b.   <u>Objections to the Recommendation and the Court's Review</u>

Plaintiffs object to Magistrate Judge Hegarty's recommendation to dismiss

Defendant USOC from Claim 14.  (Doc. # 227 at 11–17.)  They first dispute Magistrate

Judge Hegarty's determination that Sections 1590(b) and 1591(d) are concerned only

with obstruction of governmental enforcement of the TPVA.  (*Id.* at 11–12.)  Plaintiffs

argue that "the plain language of Section 1590(b) does not contain the 'government'

limitation that the Recommendation imposes" and that the Magistrate Judge erred by

"skipping this step and instead weighing the persuasiveness of out-of-circuit cases."

(*Id.*)  To the extent the language of Section 1590(b) is ambiguous, Plaintiffs urge that

"the proposed 'government' limitation is belied by the incredibly broad and expensive

language and remedial purpose of the Act itself."  (*Id.* at 11–12.)  Second, Plaintiffs

argue that, even if the TVPA's obstruction provisions are concerned only with

government enforcement actions, they "allege ample government involvement" in their

allegations regarding Defendant USOC.  (*Id.* at 12.)  They cite their allegations that

Defendant USOC was directly involved "in the suspension of . . . Alperstein's

investigation and his reports to law enforcement;" and that, but for this obstructive

conduct, "the Lopezes would have been turned over to the FBI and local law

enforcement much sooner."  (*Id.* at 13) (citing Doc. # 68 at 62–74).  Plaintiffs also cite

their allegations that officials of Defendant USOC falsely testified to Congress.  (*Id.* at 16–17) (citing Doc. # 68 at 50–55.)

At the outset, the Court affirms Magistrate Judge Hegarty's determination that the TVPA's obstruction provisions are concerned only with governmental enforcement of the TVPA.  Obstruction of a private investigation does not give rise to liability under Section 1590(b) or 1591(d).  The cases Magistrate Judge Hegarty cited all support that conclusion.  *See, e.g.*, *Jean-Charles*, 937 F. Supp. 2d at 287–88.  Additional cases this Court reviewed similarly speak only of government enforcement actions.  *See, e.g.*, *United States v. Farah*, 766 F.3d 599, 612 (6th Cir. 2014) (when evaluating a criminal defendant's argument concerning Section 1591(d), discussing the government's "right to enforce the laws and punish those who obstruct its endeavors.")  Plaintiffs do not offer, nor has this Court found, **any** cases that suggest obstruction of a private investigation is actionable under Section 1590(b) or Section 1591(d).

The Court also agrees with Magistrate Judge Hegarty that Plaintiffs' allegations of Defendant USOC's obstruction of the government's enforcement of the TVPA are insufficient.  Plaintiffs' claim that Defendant USOC interfered with Alperstein's investigation and delayed the Lopez brothers being turned over to law enforcement authorities is devoid of specificity.  *See* (Doc. # 68 at 62–74.)  They assert, for example, that Defendant USOC worked in concert with Defendant USAT "to obstruct the investigation of the Lopez brothers," but fail to assert any supporting factual averments regarding **how** Defendant USOC did so.  The Court need not accept these conclusory allegations.  *See S. Disposal, Inc.*, 161 F.3d at 1262.  As to Plaintiffs' allegations that

Defendant USOC's official lied to Congress, the Court notes that Plaintiffs themselves acknowledge the official was testifying before a Senate subcommittee "in the hope of avoiding restructuring of the USOC."  (Doc. # 68 at 50.)  Plaintiffs offer **no** evidence that the Congressional hearing was directly related to the enforcement of the TVPA. Because the SAC is not legally sufficient to state a claim for relief against Defendant USOC under Section 1590(b) or Section 1591(d), the Court overrules Plaintiffs' Objection and grants Defendant USOC's Motion to Dismiss Claim 14.

Defendant USAT objects to Magistrate Judge Hegarty's conclusion that Claim 14 sufficiently states a claim for relief against Defendant USAT on the grounds that the Congressional hearing at which its executive allegedly lied "had nothing to do with enforcement of 18 U.S.C. §§ 1590 or 1591," was not governmental enforcement of the TVPA, and cannot give rise to an obstruction claim under Section 1590(b) or Section 1591(d).  (Doc. # 226 at 7–9.)  Defendant USAT also asserts that dismissal of Claim 14 is necessary because Plaintiffs have not shown the required "nexus between the allegedly obstructive act and the government proceeding" and have not alleged that Defendant USAT and its officials had the "'knowingly' *mens rea* requirement."  (*Id.* at 10–13.)  Defendant USAT did not raise any of these arguments before the Magistrate Judge.  *See* (Doc. # 109 at 16–17.)  The Court thus deems these objections waived and declines to review them.  *See Stout*, 2018 WL 2948222 at *4.  Seeing no clear error in Magistrate Judge Hegarty's analysis of Claim 14 as alleged against Defendant USAT, the Court affirms and adopts his recommendation that Defendant USAT's Motion to Dismiss be denied as to Claim 14.

B.    **PLAINTIFFS' RICO CLAIM**

1.    **Claim 15: All Plaintiffs' claim of violation of RICO, 18 U.S.C.**
      **§ 1962(d), against all Defendants**

Plaintiffs allege in Claim 15 that Defendants violated the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.[11]  (Doc. # 68 at 158–65.)

They bring their claim on behalf of themselves and "the Class" pursuant to 18 U.S.C.

§ 1964(c), which provides for civil remedies for "[a]ny person injured in his business or

property by reason of a violation of [S]ection 1962" of RICO.  (*Id.*)  As Magistrate Judge

Hegarty described, *see* (Doc. # 218 at 46–47), the underpinning of Plaintiffs' RICO

claim is their allegation that "[a]t all relevant times, . . . Defendants operated as an

association-in-fact enterprise, which was formed for the purpose of stopping, hindering,

and delaying all investigations of and enforcement actions against the Lopez brothers"

and for the purpose of "making false and corrupting statements that concealed the true

nature of the sex abuse and exploitation committed by the Lopez brothers and

facilitated by [the Institutional Defendants]."  (Doc. # 68 at 160.)  Plaintiffs allege that

Defendants engaged in a pattern of racketeering activity through predicate acts that

included "violations of 18 U.S.C. § 1590(b), obstructing and interfering with enforcement

---

[11] Claim 15 specifically alleges violations of Section 18 U.S.C. §§ 1962(c) and (d).  Section
1962(c) provides:

> (c) It shall be unlawful for any person employed by or associated with any
> enterprise engaged in, or the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or indirectly, in the conduct of such
> enterprise's affairs through a pattern of racketeering activity or collection of
> unlawful debt.

18 U.S.C. § 1962(c).  Section 1962(d), in turn, declares it "unlawful for any person to conspire to
violate any of the provisions of subsection (a), (b), or (c) of [Section 1962]."  18 U.S.C.
§ 1962(d).

of the TVPA, and 18 U.S.C. § 1592(c), the corruption of an official proceeding, as well as the underlying violations committed by [Defendants] in violation of [Section] 1589 (forced labor and services) and [Section] 1591 (sex trafficking)."  (Doc. # 68 at 162.) Defendants all moved to dismiss Claim 15.  (Doc. # 106 at 17; Doc. # 108 at 10; Doc. # 109 at 18.)

Magistrate Judge Hegarty recommended that the Court dismiss Claim 15 in its entirety because Plaintiffs "do not have standing to bring their civil RICO claim," as they "have not alleged [a specific injury to business or property] here."  (*Id.* at 53–54.)  No party objected to the Magistrate Judge's recommendation to dismiss Claim 15.  *See* (Doc. ## 224–27.)

After reviewing the Recommendation's treatment of Claim 15, in addition to Defendants' Motions to Dismiss and Plaintiffs' Response and the relevant legal authority, the Court is satisfied that the recommended dismissal of Claim 15 is sound and not clearly erroneous or contrary to law.  *See Summers*, 927 F.2d at 1167.  The Court dismisses Claim 15 in its entirety.

## C.   PLAINTIFFS' STATE COMMON LAW CLAIMS

Of the claims they originally asserted under state common law, Plaintiffs have withdrawn Claim 18.  (Doc. # 139 at 3.)

### 1.   Claim 16:  All Plaintiffs' claim of negligent supervision against the Institutional Defendants

Plaintiffs allege in Claim 16 that the Institutional Defendants negligently supervised the Lopez Defendants, who, Plaintiffs assert, were employees of the Institutional Defendants.  (Doc. # 68 at 165–66.)

Colorado law recognizes a direct tort of negligent supervision.  *Settle v. Basinger*, 2013 COA 18, ¶ 28.  To prove negligent supervision, a plaintiff must establish: "(1) the defendant owed the plaintiff a legal duty to supervise others; (2) the defendant breached that duty; and (3) the breach of the duty caused the harm that resulted in damages to the plaintiff."  *Id.* at ¶ 23 (citing *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005)). Negligent supervision, like all claims based on negligence, has a two-year statute of limitations.  *See* Colo. Rev. Stat. § 13-80-102(1)(a).  The claim accrues on the date both the underlying injury and its cause are known or should have been known by the plaintiff by the exercise of reasonable diligence.  *See* Colo. Rev. Stat. § 13-80-108(1); *John Doe 1 v. Archdiocese of Milwaukee*, 734 N.W.2d 827, 846 (Wis. 2007) (claims for negligent supervision are "accrued as a matter of law by the time of the last incident of sexual assault.").

Both Institutional Defendants moved to dismiss Claim 16 on numerous grounds, including that the claim is time barred.  (Doc. # 108 at 16–21; Doc. # 109 at 20–21.)

Magistrate Judge Hegarty concluded that Plaintiffs' negligent supervision claim is time barred because "the last incident of alleged underlying abuse occurred in approximately 2011" and any negligent supervision claims "expired, at the latest, in 2013."  (Doc. # 218 at 56.)  Seeing no rationale for equitably tolling the limitations periods, the Magistrate Judge recommended that Claim 16 be denied as untimely and the Institutional Defendants' Motions to Dismiss be granted as to that count.  (*Id.* at 57.)

No party objected to the Magistrate Judge's recommendation to dismiss Claim 16.  *See* (Doc. ## 224–27.)

The Court has reviewed the relevant filings and governing law, and it is satisfied that Magistrate Judge Hegarty's recommendation to dismiss Claim 16 is sound and not clearly erroneous or contrary to law.  *See Summers*, 927 F.2d at 1167.  The Court dismisses Claim 16 in its entirety.

## 2. Claim 17: All Plaintiffs' claim of negligent retention against the Institutional Defendants

Claim 17 alleges that the Institutional Defendants negligently retained the Lopez Defendants, "despite [the Institutional Defendants'] knowledge of the risks that they posed to Plaintiffs and third parties."  (Doc. # 68 at 168.)

It is not altogether clear that Colorado recognizes a distinct tort of negligent retention.  In the few cases this Court located, Colorado courts have treated claims of negligent supervision and negligent retention as one and the same.  *See, e.g.*, *Ferrer v. Okbamicael*, 2017 CO 14M, ¶ 29 ("An employer's negligent act in hiring, **supervision and retention**, or entrustment is not a wholly independent cause of the plaintiff's injuries, unconnected to the employee's negligence." (emphasis added)); *Van Osdol v. Vogt*, 891 P.2d 402, 408 (Colo. App. 1994), *affirmed and remanded*, 908 P.2d 1122 (Colo. 1996) ("An employer may be subject to liability for negligent **supervision and retention** if the employer knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm." (emphasis added)).

The Institutional Defendants moved to dismiss this claim at the same time and with the same arguments they used for dismissal of Plaintiffs' negligent supervision claim.  (Doc. # 108 at 16–21; Doc. # 109 at 20–21.)

Magistrate Judge Hegarty observed that "Colorado appears to treat the claims" of negligent supervision and negligent retention "as the same."  (Doc. # 218 at 57.)  He reasoned that "[a]accordingly, this claim fails for the same reason as the negligent supervision claim;" "both [are] barred by the statute of limitations."  (*Id.* at 58.)  He recommended that the Court dismiss Claim 17.

No party has objected to the dismissal of Claim 17.  *See* (Doc. ## 224–27.)

Magistrate Judge Hegarty's recommendation to dismiss Claim 17, like his recommendation regarding Claim 16, is sound and not clearly erroneous or contrary to law.  *See Summers*, 927 F.2d at 1167.  The Court dismisses Claim 17.

### 3. Claim 19: All Plaintiffs' claim of negligence against the Institutional Defendants

In Claim 19, Plaintiffs allege that the Institutional Defendants breached their duties to "exercise reasonable care in relation to the safety and welfare of their member athletes, including Plaintiffs," to "exercise reasonable care to avoid creating or maintaining unreasonable risks to the safety and welfare of their member athletes," and to "exercise reasonable care in investigating and pursuing complaints of criminal conduct [and] sexual misconduct . . . against their member athletes."  (Doc. # 68 at 175.)  Plaintiffs assert that the Institutional Defendants breached those duties in numerous ways between 2014 and 2018, such as by "[c]ausing the investigation [by] Alperstein to drag on" and then suspending the investigation "in the middle of it so the Lopez brothers could compete and coach at the 2016 Olympics," by "[u]nreasonably delaying notifying the FBI or other law enforcement of sexual abuse," and by "[f]ailing to properly fund or staff SafeSport."  (*Id.* at 176–77.)  Plaintiffs claim they suffered

"institutional abandonment," "reputational damages," and "severe emotional injuries" as a result of the Institutional Defendants' negligence.  (*Id.* at 178.)

To establish a negligence claim, the plaintiff must show: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff."  *Keller*, 111 P.3d at 447 (citing *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002)).

Both Institutional Defendants moved to dismiss Plaintiffs' negligence claim. Defendant USAT contended that Plaintiffs' negligence and gross negligence claims are time barred "to the extent such claims are based on sexual misconduct by the Lopez brothers" and that Defendant USAT owed no duty to Plaintiffs because they are all "**former** athletes who stopped competing long ago."  (Doc. # 109 at 20–23.)  Defendant USOC argued that Plaintiffs fail to identify an applicable legal duty because it "has no 'member athletes,'" that Plaintiffs rely on "speculative, conclusory, and fantastical claims" of "recent conduct, plainly intended to avoid the statutes of limitations," and that Plaintiffs fail to "plausibly allege that [Defendant USOC's] purportedly negligent actions . . . caused any legally cognizable damages."  (Doc. # 108 at 22–24.)

### a.    *Magistrate Judge Hegarty's Recommendation*

Magistrate Judge Hegarty recommended that Court grant Defendant USAT's Motion to Dismiss Plaintiff's negligence claim but deny Defendant USOC's Motion to Dismiss the claim.  (Doc. # 218 at 64.)

The Magistrate Judge determined that Defendant USAT did not owe Plaintiffs a legal duty and that Plaintiffs' negligence claim against Defendant USAT therefore failed.

(*Id.* at 58–61.)  He was persuaded by Defendant USAT's argument that it owed no duty to Plaintiffs because they were all **former** members of the organization during the statutory period.  (*Id.* at 59–61.)  He then considered "whether [the Institutional Defendants] owed a duty to former members of USAT to reasonably investigate their complaints of sexual abuse" and applied the factors identified in *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987): "(1) the risk involved, (2) the foreseeability and likelihood of injury as weighed against the social utility of the [defendant's] conduct, (3) the magnitude of the burden of guarding against injury or harm, and (4) the consequences of placing the burden upon the [defendant]."  (Doc. # 218 at 59–61.) Magistrate Judge Hegarty concluded that "the *Taco Bell* factors weigh decidedly against finding a duty to investigate allegations of misconduct by former members/athletes for purposes of attaching liability for negligence."  (*Id.* at 61.)  Because Plaintiffs failed to establish that Defendant USAT owed them a legal duty, the Magistrate Judge recommended that the Court dismiss the negligence claim as alleged against Defendant USAT.  (*Id.* at 61, 64.)

Turning to Defendant USOC, Magistrate Judge Hegarty recommended that the Court deny its Motion to Dismiss Claim 19.  (*Id.* at 64.)  With respect to the first element of a negligence claim, the existence of a legal duty to Plaintiffs, he accepted Plaintiffs' contention that Defendant USOC had "assumed a duty by intervening in the affairs of the NGBs and of Plaintiffs, setting up SafeSport, asking Alperstein to turn his investigation over to SafeSport . . . and inducing Plaintiffs' reliance on [Defendant] USOC's help."  (*Id.* at 61–63) (quoting Doc. # 139 at 50–51) (citing *Jefferson Cty. Sch.*

*Dist. R-1 v. Justus By and Through Justus*, 725 P.2d 767 (Colo. 1986)).  As to the third

element, resulting damages to Plaintiffs, Magistrate Judge Hegarty rejected Defendant

USOC's contention that Plaintiffs' negligence claim must fail because they do not allege

physical damages.  (*Id.* at 63–64.)  Plaintiffs, he explained, "allege physical injuries in

addition to emotional distress."  (*Id.* at 64.)  In sum, he found that Plaintiffs allege the

elements required "for stating a negligence claim in Colorado."  (*Id.*)

### b.    Objections to the Recommendation and the Court's Review

Plaintiffs object to the recommendation to dismiss Defendant USAT from the

negligence claim on the grounds that, "like [Defendant] USOC, [Defendant] USAT

assumed a duty by launching an investigating and engaging in efforts to address past

harms and is liable for the state law claims for the same reasons as [Defendant]

USOC."  (Doc. # 227 at 18.)  They also fault Magistrate Judge Hegarty for determining

that Plaintiffs have not sufficiently alleged Defendant USAT owed them a legal duty,

characterizing his "plainly improper" analysis on that point as "pursu[ing] this defense on

[Defendant] USAT's behalf" and "veer[ing] into fact-finding and factor-weighing (which is

categorically improper at the motion to dismiss stage."  (*Id.*)

Plaintiffs waived their objection that Defendant USAT assumed a legal duty

"starting in 2014 when it engaged Mr. Alperstein to investigate the complaints of these

former athletes against the Lopez brothers, . . . to implement recommended SafeSport

policies, and to gather evidence, make reports, and initiate disciplinary or ethics

proceedings against the Lopez brothers."  (*Id.* at 21.)  They did not assert it (nor any

position remotely similar to it) in their Response to Defendant USAT's Motion to Dismiss

(in which Defendant USAT had asserted it did not owe Plaintiffs any legal duty) (Doc. # 109 at 21–23).  (Doc. # 139 at 48–49.)  Rather, Plaintiffs made a policy argument that Defendant "USAT's duty rule would incentivize bad actors . . . to 'expel' victims . . . and then claim no duty is owed to any victim because the victim is now a 'former' athlete." (*Id.*)  Because Plaintiffs waived their contention that Defendant USAT assumed a legal duty to them, *see Marshall*, 75 F.3d at 1426, the Court declines to consider it, *see Stout*, 2018 WL 2948222 at *4.

The Court rejects Plaintiffs' contention that it was improper for Magistrate Judge Hegarty to determine that "the *Taco Bell* factors weigh decidedly against finding a duty to investigate allegations of misconduct by former members/athletes for purposes of attaching liability for negligence" (Doc. # 218 at 61).  (Doc. # 227 at 18–19.)  Plaintiffs offer no support for their bald assertion that "the duty factors cannot be weighed at the Rule 12(b)(6) stage."  (*Id.*)  And this Court has located case law in which Colorado courts have decided at the motion to dismiss stage whether a plaintiff established that the defendant owed the plaintiff a legal duty.  *E.g.*, *N.M. by and through Lopez v. Trujillo*, 2017 CO 79, ¶ 36 (holding as a matter of law that the defendant did not owe the plaintiff a duty of care, on appeal of the district court's finding the same at the motion to dismiss stage).  The Court does not see anything improper in the Magistrate Judge's evaluation that Plaintiffs have not sufficiently alleged that Defendant USAT owed them a duty.  It affirms and adopts Magistrate Judge Hegarty's recommendation to grant Defendant USAT's Motion to Dismiss as to Plaintiffs' negligence claim.

Defendant USOC objects to Magistrate Judge Hegarty's recommendation to deny its Motion to Dismiss the negligence claim for three reasons, corresponding to the three elements of a negligence claim.  (Doc. # 224 at 8–13.)  First, Defendant USOC argues that the Magistrate Judge's finding that it had assumed a duty to Plaintiff was erroneous because the Magistrate Judge did not accurately or completely apply the test developed by Colorado courts for when "this narrow doctrine applies."  (*Id.* at 8–11.) Second, it asserts that the Magistrate Judge "did not consider [its] argument that the SAC fails to allege that [Defendant] USOC breached any purported duty."  (*Id.* at 11.) And third, Defendant USOC contends that Magistrate Judge Hegarty's conclusion that Plaintiffs plausibly allege damages was unfounded.  (*Id.* at 12–13.)

Upon de novo review, the Court agrees with Defendant USOC that Plaintiffs fail to state a claim of negligence against Defendant USOC.  Specifically, Plaintiffs fail to adequately allege the third element of their negligence claim—that Defendant USOC's purportedly negligent conduct caused them legally cognizable damages.  As Magistrate Judge recognized (Doc. # 218 at 63), Colorado courts "have never recognized a cause of action for emotional distress grounded in negligence without proof that the plaintiff sustained physical injury."  *Culpepper v. Pearl Street Bldg.*, 877 P.2d 877, 880 n.3 (Colo. 1994); *see Williams v. Continental Airlines, Inc.*, 943 P.2d 10, 16 (Colo. App. 1996) ("[S]imple negligence cannot provide the basis for the recovery of damages for mental or emotional suffering, unless such negligence has resulted in either physical injury or in the creation of a reasonable risk of bodily harm.").

Here, Plaintiffs have not alleged physical injury during the relevant time period as a result of Defendant USOC's purportedly negligent handling of the investigation of the Lopez Defendants.  The Court does not accept Plaintiffs' conclusory allegation in Claim 19 that they "have suffered . . . physical injuries" because that allegation lacks any supporting factual enhancement.  *See* (Doc. # 68 at 178); *Iqbal*, 556 U.S. at 678. Though the Court does not question Plaintiffs' claims of physical injuries from the Lopez Defendants' alleged abuse, Plaintiffs' last reported contact with the Lopez Defendants was in 2013.  Such physical injuries were not caused by Defendant USOC's investigation (or any lack thereof), and they are well outside of the statute of limitations for this claim.  There is simply no allegation that Defendant USOC's handling of the investigation within the statute of limitations—2016 through 2018—caused Plaintiffs' physical injuries.  The Court disagrees with Magistrate Judge Hegarty's finding otherwise.  *See* (Doc. # 218 at 64.)  The sole example of an alleged physical injury Magistrate Judge Hegarty cited was Plaintiff Mandy Meloon's assertion in the SAC that she was treated in 2015 for PTSD "caused by the sexual trauma she endured at the hands of the Lopez brothers" and the Institutional Defendants.  (*Id.*) (citing Doc. # 68 at 112).  However, Plaintiffs have withdrawn Plaintiff Meloon's individual claims (Claims 1 and 2), and she was treated for PTSD in 2015, outside of the statute of limitations for this claim.  Because the SAC tenders only naked assertions of physical injuries caused by Defendant USOC's allegedly negligent investigation and thus fails to establish the third element of a negligence claim, the Court dismisses Plaintiffs' negligence claim against Defendant USOC.

**4.** **Claim 20: All Plaintiffs' claim of gross negligence against the Institutional Defendants**

In Claim 20, Plaintiffs allege that the Institutional Defendants were grossly negligent in breaching their duties to Plaintiffs by "[e]ngaging in conduct that was wanton and willful, [and] reckless[] and in conscious disregard of the safety of female taekwondo athletes, including Plaintiffs." (Doc. # 68 at 179.)  As an example of such gross negligence, they contend that the Institutional Defendants "suspended an ongoing investigation and related restriction in order for [Defendant] Steven Lopez to compete and [Defendant] Jean Lopez to coach at the 2016 Olympics and 2017 World Championships." (*Id.* at 179–81.)

Colorado courts have recognized a tort of gross negligence or willful and wanton conduct.  *See, e.g.*, *Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 954 (Colo. App. 2011); *Forman v. Brown*, 944 P.2d 559, 564 (Colo. App. 1996).  Gross negligence is "action committed recklessly, with conscious disregard for the safety of others." *Hamill*, 262 P.3d at 954 (citing *Forman*, 944 P.2d at 564).  "Such conduct extends beyond mere unreasonableness." *Forman*, 944 P.2d at 564 (citing *Terror Mining Co. v. Roter*, 866 P.2d 929 (Colo. 1994)).  Whether a defendant's conduct is purposeful or reckless is ordinarily a question of fact; however, 'if the record is devoid of sufficient evidence to raise a factual issue, then the question may be resolved by the court as a matter of law.'" *Hamill*, 262 P.3d at 954 (citing *Forman*, 944 P.2d at 564).

Both Institutional Defendants argued for the dismissal of Plaintiffs' gross negligence claim in their arguments for the dismissal of Plaintiffs' negligence claim.  Neither Institutional Defendant treated the gross negligence claim differently than the

negligence claim, though Defendant USOC briefly highlighted the "higher standard" of gross negligence.  *See* (Doc. # 109 at 20–23; Doc. # 108 at 22–24.)  The Court summarized the Institutional Defendants' arguments regarding the dismissal of Plaintiffs' negligence claims in Section III(C)(3) above.

> a.     *Magistrate Judge Hegarty's Recommendation*

Magistrate Judge Hegarty "reach[ed] the same conclusions for this claim as Claim 19," Plaintiffs' negligence claim.  (Doc. # 218 at 64.)  He therefore recommended that Defendant USAT's Motion to Dismiss be granted and that Defendant USOC's Motion to Dismiss be denied as to Plaintiffs' gross negligence claim.  (*Id.*)

> b.     *Objections to the Recommendation and the Court's Review*

Plaintiffs object to Magistrate Judge Hegarty's recommendation regarding this dismissal of Defendant USAT from their negligence and gross negligence claims; they treat their negligence and gross negligence claims as essentially the same.  *See* (Doc. # 227 at 18–23.)  First, Plaintiffs object to Magistrate Judge Hegarty's recommendation that Defendant USAT be dismissed from their gross negligence claim because they believe that Defendant USAT "assumed a duty by launching an investigation and engaging in efforts to address past harms."  (Doc. # 227 at 18.)  Plaintiffs waived this objection, as the Court described in the context of the previous claim.  Next, Plaintiffs assert that Magistrate Judge Hegarty erred by applying the *Taco Bell* factors and finding that Defendant USAT did not owe Plaintiffs a legal duty.  (Doc. # 227 at 18–19.)  The Court rejects this argument for the reasons it explained in Section III(C)(3)(b) above. The Court affirms and adopts Magistrate Judge Hegarty's recommendation to dismiss

Defendant USAT from Claim 20, the gross negligence claim, because Plaintiffs fail to plausibly allege that Defendant USAT owed them a duty.

Defendant USOC objects to Magistrate Judge Hegarty's recommendation that the Court deny its Motion to Dismiss with respect to Plaintiffs' gross negligence claim; they fault him for "failing to analyze whether the SAC alleges that [Defendant] USOC acted with the culpability to establish **gross** negligence, even though [it] highlighted the stringent standard for that claim."  (Doc. # 224 at 13–14.)  The Court agrees that the Recommendation did not assess whether Plaintiffs' allegations satisfy the standard of gross negligence—"action committed recklessly, with conscious disregard for the safety of others," *Hamill*, 262 P.3d at 954 (citing *Forman*, 944 P.2d at 564).

The Court agrees with Defendant USOC upon de novo review that Plaintiffs do not state a legally sufficient claim of gross negligence against Defendant USOC.  The Court does not even need to reach whether Plaintiffs adequately allege that Defendant USOC acted recklessly, with conscious disregard for their safety, because Plaintiffs fail to establish that they were physically injured by Defendant USOC's conduct between 2016 and 2018.  The Court explained Plaintiffs' failure to allege this element in Section III(C)(3)(b) above.  For the same reason that Plaintiffs' negligence claim against Defendant USOC fails, so too does their gross negligence claim against Defendant USOC.  The Court therefore grants Defendant USOC's Motion to Dismiss as to the gross negligence claim.

**5.**     **Claim 21: All Plaintiffs' claim of outrageous conduct against Defendant USOC**

Finally, Plaintiffs allege in Claim 21 that Defendant USOC "engaged in extreme and outrageous conduct" by, "among other things," "[c]ontinuing to support and clothe [Defendants] Steven and Jean Lopez with the legitimacy and authority of Team USA, despite having actual and constructive knowledge of their decades-long pattern of serial sexual predation."[12]  (Doc. # 68 at 182–83.)  The SAC states that "[a]s a direct and proximate result of the outrageous conduct," especially "the August 2018 reinstatement of [Plaintiffs'] abuser," "Plaintiffs have suffered severe emotional distress." (*Id.* at 184.)

The tort of outrageous conduct exists in Colorado.  *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1349 (Colo. 1988).

> The elements of liability for the tort of extreme and outrageous conduct are that: 1. the defendant engaged in extreme and outrageous conduct; 2. the defendant engaged in the conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and 3. The plaintiff incurred severe emotional distress which was caused by the defendant's conduct.

*Culpepper*, 877 P.2d at 882 (citing CJI-Civ.3d 23:1).  Proof of accompanying physical injury is not required.  *Id.* (citing *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)).  With respect to the first element, the Colorado Supreme Court has explained that the conduct must be:

> [S]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

---

[12] Plaintiffs initially asserted this claim of outrageous conduct against Defendant USOC and SafeSport.  (Doc. # 68 at 182–84.)  Several of the SAC's allegations of outrageous conduct are, to the best of this Court's understanding, focused on SafeSport's conduct.  *See* (*id.* at 183) (concerning SafeSport's April 3, 2018 report about Defendant Jean Lopez and its subsequent appellate proceedings).  As the Court noted above, Plaintiffs voluntarily dismissed SafeSport from this action on March 20, 2018.  (Doc. # 223.)

> intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Churchey*, 759 P.2d at 1350 (quoting *Rugg*, 476 P.2d at 756).  As to the second

element:

> A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result. A person acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person.

*Culpepper*, 877 P.2d at 882–83 (citing CJI-Civ.3d 23:3).  "Although the jury ultimately

determines whether conduct is outrageous," *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d

957, 963 (Colo. App. 2009), "the court should determine in the first instance whether

reasonable people may differ as to whether the conduct of the defendant has been

'sufficiently extreme and outrageous to result in liability,'" *Churchey*, 759 P.2d at 1350.

Defendant USOC moved to dismiss Plaintiffs' outrageous conduct claim on the

grounds that Plaintiffs' claim, which it described as being grounded "in allegations that

[SafeSport] reinstated [Defendant] Jean Lopez in August 2018," fails "to meet the bar for

outrageous conduct."  (Doc. # 108 at 24–25.)  Critically, it argued, "the SAC fails to

allege that [Defendant] USOC played any role in the reinstatement of Jean Lopez."  (*Id.*

at 24.)

### a.    *Magistrate Judge Hegarty's Recommendation*

Magistrate Judge Hegarty recommended that the Court deny Defendant USOC's

Motion to Dismiss as to Plaintiffs' outrageous conduct claim, finding that "there are

sufficient allegations that could lead a jury to conclude that '[Defendant USOC] acted recklessly with the knowledge that there was a substantial probability that [its] conduct would cause severe emotional distress.'" (Doc. # 218 at 66.) He cited the SAC's allegations that Defendant USOC "secretly" worked with Defendant USAT "behind closed doors to make sure that the investigation against the Lopez brothers was delayed and obstructed because of their key roles in the 2016 Olympics," that it and Defendant USAT "wanted" and allowed the Lopez Defendants to participate in the 2016 Olympics, and that it and Defendant USAT paid the Lopez Defendants to participate in other international competitions, such as the 2017 World Championships, "[a]midst the Alperstein investigation from 2015 [to] 2018." (*Id.*) (citing Doc. # 68 at 63–64, 67, 71–72).

   *b.*   <u>Objections to the Recommendation and the Court's Review</u>

  Defendant USOC takes issue with the Recommendation's treatment of Claim 21 on three grounds. (Doc. # 224 at 14–15.) It first argues that "Claim 21, as pled, involves only SafeSport's conduct," and that the Magistrate Judge "did not, nor could he, conclude that [Defendant] USOC participated in or controlled those proceedings." (*Id.* at 14.) Second, it asserts that Magistrate Judge Hegarty "failed to undertake the necessary analysis of outrageousness." (*Id.*) And third, Defendant USOC argues that "the SAC fails to allege the required culpability: that [it] 'intentionally or recklessly caused severe emotional distress.'" (*Id.* at 15) (quoting *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999)).

Defendant USOC is correct that the Magistrate Judge erred by not examining "in the first instance whether reasonable people may differ as to whether the conduct of the defendant has been 'sufficiently extreme and outrageous to result in liability.'"  *See* (*id.* at 14); *Churchey*, 759 P.2d at 1350.  De novo review of Defendant USOC's Motion to Dismiss with respect to Claim 21 is therefore warranted.

The Court begins its de novo review by determining if reasonable persons could differ on whether Defendant USOC's alleged conduct was outrageous.  *See Han Ye Lee*, 222 P.2d at 963.  "In determining whether a plaintiff has alleged behavior that is outrageous as a matter of law, the trial court must analyze the totality of the defendant's conduct."  *Id.* (citing *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006)).  The Court concludes that Plaintiffs' sole allegation in Claim 21 regarding Defendant USOC, that it "support[ed] and clothe[d]" the Lopez defendants "with the legitimacy and authority of Team USA" despite knowing of "their decades-long patter of serial sexual predation," is not sufficiently outrageous as a matter of law.  It is too simple and vague to plausibly allege conduct by Defendant USOC that went "beyond all possible bounds of decency" and that could be regarded as "utterly intolerable in a civilized community."  *See Coors Brewing Co.*, 978 P.2d at 666.  Plaintiffs implicitly concede that their allegations of outrageous conduct by Defendant USOC are scant, stating in their Response to Defendant USOC's Objection that "[d]iscovery will reveal the merits of the claim."  (Doc. # 231 at 30.)  In light of the Court's conclusion that Plaintiffs fail to allege Defendant USOC's outrageousness as a matter of law, the Court dismisses Claim 21 in its entirety.  *See Coors Brewing Co.*, 978 P.2d at 666 (concluding

that the conduct the plaintiff alleged was insufficient to state a claim for intentional infliction of emotional distress by outrageous conduct); *Culpepper*, 877 P.2d at 883 (affirming the trial court's conclusion that no reasonable person could have found that the conduct of the defendants was outrageous).

## D.   PLAINTIFFS' PROPOSED CLASSES

Plaintiffs bring this action individually and on behalf of two proposed nationwide classes, the "Injunction Class" and the "Damages Class," as the Court described in Section I(B) above.  (Doc. # 68 at 134–37.)  Plaintiffs define their Injunction Class, asserted under Rule 23(b)(2), as:

> All USOC-governed female athletes (subject to the USOC's "commercial terms" page or any other contract).

(*Id.* at 134.)  They define the Damages Class, asserted under Rule 23(b)(3) "and/or" Rule 23(c)(4), as:

> All USOC-governed female athlete (subject to the USOC's "commercial terms" page or any other contract and who (1) participated in taekwondo from 2003 to present and (2) traveled or trained with Jean Lopez, Peter Lopez, or Steven Lopez.

(*Id.*)

Defendant USOC, after arguing for the dismissal of all claims pursuant to Rule 12(b)(6), alternatively moved under Rule 12(f) to "strike both putative nationwide classes as facially overbroad."[13]  (Doc. # 108 at 25.)  The Injunction Class, it contended,

---

[13] Federal Rule of Civil Procedure 12(f) provides:
> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> > (1) on its own; or

improperly encompasses all USOC-governed female athletes, "irrespective of their

sport." (*Id.*)  The Damages Class "would sweep in untimely claims against [Defendant]

USOC," it continued, because it includes all females taekwondo athletes governed by

Defendant USOC since 2003.  (*Id.*)  And finally, Defendant USOC asserted that neither

the Injunction Class nor the Damages Class "is limited to athletes who suffered an

alleged injury—i.e., athletes who were allegedly abused by the Lopez brothers."  (*Id.*)  It

encouraged this Court to follow other "Courts in this District" that "have stricken alleged

putative classes that, as here, include class members 'regardless of whether they were

ever injured' by the alleged conduct."  (*Id.*) (quoting *Edwards v. Zenimax Media Inc.*,

2012 WL 4378219, No. 12-cv-00411-WYD-KLM, *5 (D. Colo. Sept. 25, 2012)).

### a.   *Magistrate Judge Hegarty's Recommendation*

Magistrate Judge Hegarty recommended that Defendant USOC's Motion to

Strike be denied as to the Injunction Class.  (Doc. # 218 at 71.)  He rejected Defendant

USOC's argument that the Injunction Class is overbroad because it includes all USOC-

governed female athletes, not just those who compete in taekwondo; "this purported

defect," he wrote, "does not warrant striking the allegations."  (*Id.* at 70.)  Magistrate

Judge Hegarty explained that he relied on the Tenth Circuit's opinion in *DG ex rel.*

*Stricklin v. Devaughn*, 594 F.3d 1188, 1194–98 (10th Cir. 2010), "as guidance."[14]  (Doc.

---

(2) on motion made by a party either before responding to the pleading or, if a
response is not allowed, within 21 days after being served with the pleading.
Fed. R. Civ. P. 12(f).

[14] In *Devaughn*, the plaintiffs:

[S]ought certification of a class of all children who are or will be in the legal custody
of [the Oklahoma Department of Human Services ("OKDHS")] due to a report or
suspicion of abuse or neglect or who are or will be adjudicated deprived due to
abuse or neglect—approximately 10,000 children.   Named Plaintiffs allege[d]

# 218 at 69–70.)  He observed that class members of the Injunction Class "are athletes who sought to compete for Team USA, and they allege [Defendant] USOC subjected them to an unreasonable risk of harm by coaches or athletes within the system." (*Id.* at 70.)  "In accord with *Devaughn*," the Magistrate Judge found that the allegations concerning the Injunction Class "are appropriate." (*Id.* at 70–71.)

However, Magistrate Judge Hegarty recommended that the Court strike Plaintiffs' proposed Damages Class as overly broad because the Damages Class is not limited to athletes who allegedly suffered an injury. (*Id.* at 67–69.)  He was persuaded by *Edwards*, 2012 WL 4378212 at *1–6, in which the Court granted the defendant's motion to strike the plaintiff's proposed class, defined as "all persons or entities residing in the State of Colorado who had purchased any version of the . . . video game," which contained an animation defect. (Doc. # 218 at 67–68.)  The *Edwards* Court agreed with

---

> OKDHS's agency-wide foster care policies and practices expose all class members to an impermissible risk of harm, violating their Fourteenth Amendment right to substantive due process, their Fifth and Fourteenth Amendment rights to procedural due process, and their liberty and privacy interests guaranteed by the First, Ninth and Fourteenth Amendments.

*DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1192–93 (10th Cir. 2010).  The defendants argued that the proposed class definition was "overly broad" because "it include[d] children who are not under an actual or imminent threat of harm, thereby defeating commonality." *Id.* at 1195.  On appeal, the Tenth Circuit affirmed the district court's finding of commonality pursuant to Rule 23(a) because the plaintiffs "presented more than conclusory statements that OKDHS's agency-wide monitoring policies and practices, or lack thereof, create a risk of harm shared by the entire class." *Id.* at 1196.  It explained:

> All class members, by virtue of being in OKDHS's foster care, are subject to the purportedly faulty monitoring policies of OKDHS, regardless of their individual differences; therefore, all members of the class are allegedly exposed to the same unreasonable risk of harm as a result of Defendants' unlawful practices. Though each class member may not have actually suffered abuse, neglect, or the risk of such harm, Defendants' conduct allegedly poses a risk of impermissible harm to all children in OKDHS custody.

*Id.*

the defendant that the proposed class was overbroad because it included members that never experienced the defect and members that sustained no injury, explaining:

> I find that this definition is inadequate because it is overbroad and includes Colorado residents who presumably purchased [the video game] from anyone, anywhere, at any time **regardless of whether he or she was ever injured** by or even experienced the alleged Defect.

2012 WL 4378212 at *5 (emphasis added).  Magistrate Judge Hegarty observed that "[t]his is the precise basis on which [Defendant] USOC relies for its arguments that Plaintiffs' allegations [about the Damages Class] should be stricken here, and other courts have arrived at the same conclusion."  (Doc. # 218 at 68) (citing, *e.g.*, *Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010)).

With respect to Plaintiffs' argument that it was "premature to conclude that members of the alleged [Damages Class] have not experienced any injury" because such an determination "requires factual assessments that can't be made at the 12(b)(6) stage" (Doc. # 139 at 63–64), Magistrate Judge Hegarty noted that Defendant USOC's request to strike the class action allegations was brought pursuant to Rule 12(f), not Rule 12(b)(6) (Doc. # 218 at 69).  *Edwards*, he stated, "demonstrates that it is proper for a court to strike class allegations when the proposed class definition is overbroad."  (*Id.*) For these reasons, he recommended that Defendant USOC's Motion to Strike be granted as to the Damages Class.  (*Id.*)

### b.      Objections to the Recommendation and the Court's Review

No party objects to Magistrate Judge Hegarty's conclusion that the Injunction Class is not overbroad and should not be stricken at this stage.  Seeing no clear error in

this portion of the Recommendation, the Court denies Defendant USOC's request to strike Plaintiffs' proposed Injunction Class.

As to the Damages Class however, Plaintiffs object to the Recommendation. (Doc. # 227 at 23.)  They take issue with it to the extent that Magistrate Judge Hegarty "did not allow [them] the opportunity to replead to cure the statute of limitations defect he identified, despite pointing out in footnote 6 that the authorities he relied upon allowed an amendment."  (*Id.*); *see* (Doc. # 218 at 60 n.6).  Plaintiffs request that they "be permitted to reform the class definition because they can easily cure the technical defect on the limitations period by shortening the class period."  (Doc. # 227 at 23.)

The Court denies Plaintiffs' request and affirms Magistrate Judge Hegarty's analysis of the overbreadth of the proposed Damages Class.  Plaintiffs do not challenge the merits of Magistrate Judge Hegarty's assessment.  *See* (*id.*)  And their request to "reform the class definition," as Defendant USOC states, "disregard[s] the broader problem identified by [Defendant] USOC and acknowledged in the Recommendation: the alleged [D]amages [C]lass includes putative class members who were not damaged, whether within or without the limitations period."  (Doc. # 232 at 8.)  Shortening the class period would not fix that fundamental deficiency in their class allegation.  The Court therefore strikes Plaintiffs' proposed Damages Class pursuant to Rule 12(f).

## IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The March 6, 2019 Recommendation of United States Magistrate Judge Michael E. Hegarty (Doc. # 218) is AFFIRMED AND ADOPTED IN PART and REJECTED IN PART;

2. The Lopez Defendants' Motion to Dismiss (Doc. # 106) is GRANTED IN PART and DENIED IN PART;

3. Defendant USOC's Motion to Dismiss and Motion to Strike Class Action Allegations (Doc. # 108) is GRANTED IN PART and DENIED IN PART;

4. Defendant USAT's Motion to Dismiss (Doc. # 109) is GRANTED IN PART and DENIED IN PART;

5. The following claims are DISMISSED:

   a. Claim 14: All Plaintiffs' claim of obstruction, attempted obstruction, and interference with enforcement, in violation of 18 U.S.C. §§ 1590(b), 1591(d), 1595(a), and 2255, against Defendant USOC;

   b. Claim 15: All Plaintiffs' claim of violation of RICO, 18 U.S.C. § 1962(d), against all Defendants;

   c. Claim 16:  All Plaintiffs' claim of negligent supervision against the Institutional Defendants;

   d. Claim 17: All Plaintiffs' claim of negligent retention against the Institutional Defendants;

   e. Claim 19: All Plaintiffs' claim of negligence against the Institutional Defendants and SafeSport;

    f.   Claim 20: All Plaintiffs' claim of gross negligence against the Institutional Defendants and SafeSport; and

    g.   Claim 21: All Plaintiffs' claim of outrageous conduct against Defendant USOC and SafeSport.

6. Plaintiffs' proposed Damages Class is STRICKEN;

7. Defendant Jean Edwards is DISMISSED WITH PREJUDICE from this action;

8. The following claims survive Defendants' Motions to Dismiss, to the extent that the alleged conduct took place within the applicable statute of limitations, as described above:

    a.   Claim 1: Plaintiff Meloon's claim of forced labor, in violation of 18 U.S.C. §§ 1589(a), 1595(a), and 2255, against Defendant Steven Lopez;

    b.   Claim 4: Plaintiff Joslin's claim of forced labor, in violation of 18 U.S.C. §§ 1589(b) and 1595(a), against Defendant USAT;

    c.   Claim 5: Plaintiff Joslin's claim of trafficking with respect to forced labor, in violation of 18 U.S.C. §§ 1590(a) and 1595(a), against Defendant Steven Lopez and Defendant USAT;

    d.   Claim 8: Plaintiff Means's claim of forced labor, in violation of 18 U.S.C. §§ 1589(a), 1595(a), and 2255, against Defendant Steven Lopez;

    e.   Claim 9: Plaintiff Means's claim of forced labor, in violation of 18 U.S.C. §§ 1589(b) and 1595(a), against the Institutional Defendants;

f.  Claim 10: Plaintiff Means's claim of trafficking with respect to forced labor, in violation of 18 U.S.C. §§ 1590(a), 1595(a), and 2255, against Defendant Steven Lopez;

g.  Claim 13: Plaintiff Means's claim of sexual exploitation, transportation, and illegal sexual activity, in violation of 18 U.S.C. §§ 2242, 2421, 2422, 2423(a)–(c), and 2255, against Defendant Steven Lopez;

h.  Claim 14: All Plaintiffs' claim of obstruction, attempted obstruction, and interference with enforcement, in violation of 18 U.S.C. §§ 1590(b), 1591(d), 1595(a), and 2255, against Defendant USAT.

DATED: September 27, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge