IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00981-CMA-MEH

HEIDI GILBERT, AMBER MEANS, MANDY MELOON, GABRIELA JOSLIN,
JANE DOES 6-50, on behalf of themselves and all others similarly situated

Plaintiffs,

v.

UNITED STATES OLYMPIC COMMITTEE, USA TAEKWONDO, INC.,
STEVEN LOPEZ, JEAN LOPEZ, JOHN DOES 1-5

Defendants.

---

**DEFENDANT USAT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

---

Defendant USA Taekwondo, Inc. ("USAT"), by and through its attorneys, moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Third Amended Complaint [D.E. 293] for failure to state a claim. USAT certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(a), undersigned counsel communicated with counsel for Plaintiffs prior to filing this Motion to Dismiss and that Plaintiffs have indicated they oppose the Motion.

## I.   PROCEDURAL HISTORY

Plaintiff Heidi Gilbert filed this action against a single defendant, Jean Lopez, alleging a single cause of action for negligence, on April 25, 2018. *See generally* Original Complaint [D.E. 1]. A First Amended Complaint adding additional plaintiffs, defendants, and causes of action was filed on May 4, 2018 [D.E. 6]. In the face of motions to dismiss filed by all defendants [D.E. 50, 58, and 59], a Second Amended Complaint ("SAC") [D.E.

1

68] was filed on August 24, 2018. Following USAT's motion to dismiss the SAC [D.E. 109], motions to dismiss filed by other parties, recommendations by Magistrate Judge Michael E. Hegarty [D.E. 218], and competing objections to those recommendations [D.E. 224-27], this Court entered an Order dismissing Plaintiffs' RICO claim against USAT, along with their claims for negligent supervision, negligent retention, negligence, and gross negligence. D.E. 266. The Court also struck Plaintiffs' damages class and dismissed Jean Lopez from the lawsuit. *Id.* With respect to Plaintiffs' negligence claim against USAT, the Court agreed with Magistrate Hegarty's application of the duty factors identified in *Taco Bell, Inc. v. Lannon,* 755 P.2d 43, 46 (Colo. 1987), and his conclusion that USAT did not owe a duty to former athletes. *Id.* at 54, 66. Plaintiffs dismissed USOC on September 30, 2019. (Dkt. 267).

Nearly two years after this action was commenced, Plaintiffs have now filed their Third Amended Complaint ("TAC"). D.E. 293. With respect to their claims against USAT, the TAC maintains Gaby Joslin's claim for Forced Labor in Violation of 18 U.S.C. §§ 1589(b) and 1595(a) (Count 2); Gaby Joslin's claim for Trafficking with Respect to Forced Labor in Violation of §§ 18 U.S.C. 1590(a) and 1595(a) (Count 3); Amber Means' claim for Forced Labor in Violation of 18 U.S.C. §§ 1589(b) and 1595(a) (Count 5); and all Plaintiffs' claim for Obstruction, Interference with Enforcement in Violation of 18 U.S.C. §§ 1590(b), 1591(d), 1595(a), and 2255. *Id.* The TAC also attempts to revive Plaintiffs' previously dismissed claims against USAT for negligence. *Id.* at Counts 9-12.

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *National Ass'n. of Investors Corp. v. Bivio, Inc.*, No. 11–cv–02435–WJM, 2012 WL 1695042, at *1 (D. Colo. May 15, 2012) (quoting *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007)); *see also Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). It also "is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Davis v. TXO Production Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991). *See also Marotta v. Cortez*, 2008 U.S. Dist. LEXIS 94576 at *3 ("A pleading that has been amended supersedes the pleading it modifies. Once an amended pleading is interposed, the original pleading no longer performs any function in the case"). Because the claims of the SAC no longer apply, USAT can challenge all claims in the TAC (though USAT does not repeat arguments which the Court previously has rejected on the merits).

## III.     ARGUMENT

### A.    Plaintiffs' Negligence Claims Against USAT Must Be Dismissed.

Plaintiffs' negligence claims against USAT previously were dismissed because the Court found that USAT did not owe a duty to former athletes.  D.E. 266 at 53-56, 60-61. Plaintiffs attempt to revive their negligence claims in the TAC (Counts 9-12) by alleging that USAT had a "special relationship" with plaintiffs and by emphasizing their previous contention that USAT "assumed a duty" to plaintiffs when it hired Alperstein to investigate the Lopez brothers.  *See, e.g.*, TAC at ¶¶ 653, 662, 712, 720, 773, 778, and 837.  The

3

existence of a duty is an essential element of any negligence claim and is "a question of law to be determined by the court." *N.M. by and through Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017). Plaintiffs' revised theories – asserted against USAT nearly two years after the action was commenced and based on "facts" in their possession for years – should be rejected.

Plaintiffs' "special relationship" theory of duty should not change the Court's previous *Taco Bell* analysis, under which it concluded that USAT does not owe a duty to former athletes. D.E. 266 at 53-56, 60-61. Colorado recognizes "special relationships" in only a few, limited circumstances: "(1) common carrier/passenger, (2) innkeeper/guest, (3) possessor of land/invited entrant, (4) employer/employee, (5) parent/child, and (6) hospital/patient." *Trujillo*, 397 P.3d at 374 (citing *Univ. of Denver v. Whitlock*, 744 P.2d 54, 58 (Colo. 1987), which noted that "[i]n nonfeasance cases the existence of a duty has been recognized only during the last century in situations involving a limited group of special relationships between parties. Such relationships are predicated on a 'definite relation' between the parties that is of such a character that social policy justifies the imposition of a duty to act"). Having already concluded that USAT does not owe a duty to former athletes, the Court should similarly conclude that USAT did not have the sort of special relationship with former athletes (*i.e.*, Plaintiffs) that otherwise would give rise to a duty. The circumstances under which Colorado has recognized a duty arising out of such a relationship are extremely limited and are not present here, where Plaintiffs are adult *former* members of USAT.

Plaintiffs' "assumption of duty" argument should similarly be rejected. First, the allegation that USAT assumed a duty by undertaking an investigation is not entirely new. *See* SAC [D.E. 68 at ¶ 247 (alleging that USAT assumed a duty to act honestly and in good faith by engaging Alperstein to conduct an investigation). Despite the presence of this allegation in the SAC, the Court already concluded that USAT did not owe a duty to former athletes. D.E. 266 at 53-56, 60-61. Second, Plaintiffs have failed to sufficiently allege the elements necessary to establish that USAT assumed a duty for which it can be held liable.

"Under some circumstances, a party may assume duties of care by voluntarily undertaking to render a service, and negligent performance of that assumed duty may impose liability." *E. Meadows Co. v. Greeley Irrigation Co.*, 66 P.3d 214, 218 (Colo. App. 2003). Any argument that a defendant has assumed a duty "must be predicated on two factual findings." *Id.* First, "[a] plaintiff must . . . show that the defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff." *Id.* "Second, a plaintiff must also show either that he relied on the defendant to perform the service or that defendant's undertaking increased plaintiff's risk." *Jefferson Cty. Sch. Dist. R-1 v. Justus ex rel. Justus*, 725 P.2d 767, 771 (Colo. 1986).

Plaintiffs have not plausibly alleged that USAT's investigation was reasonably calculated to prevent the type of harm that allegedly "befell" them, that they relied upon USAT to "perform the service," or that USAT's "undertaking increased" their "risk." As the Colorado Supreme Court's decision in *Jefferson Cty.* makes clear, the harm, the risk, and

5

the service must be related. For example, *Jefferson Cty.* involved a case in which a school allegedly assumed a duty to prevent a first-grade student from leaving the school grounds on a bicycle and the alleged harm occurred when plaintiff was injured while riding his bicycle home. *Jefferson Cty.*, 725 P.2d at 771. There was, in other words, a nexus between the alleged undertaking, harm, risk of harm, and reliance to prevent harm, because the school's alleged assumption of a duty (preventing first-graders from biking home) and its alleged breach of that duty were directly related to the harm/risk at issue (injury to a first-grader while biking home).

Here, Plaintiffs do not plausibly allege that USAT's investigation was calculated to prevent the harm or the risk of the harm they now claim, which is "secondary victimization." *See*, *e.g.*, TAC at ¶¶ 679, 702-705, 737 (describing secondary trauma or re-victimization of sexual assault victims resulting from being asked to describe or re-live their trauma). Nowhere do Plaintiffs allege that USAT's investigation was designed to prevent "secondary victimization." Instead, Plaintiffs allege that they relied on USAT "to investigate and remove the Lopez brothers." *See*, *e.g.*, *id.* at 791. Indeed, the gist of Plaintiffs' allegations is that sexual assault victims are often re-traumatized by investigations into their injuries (*i.e.*, it is an inherent risk of such investigations). It is not plausible – and is not alleged – that USAT undertook its investigation for the very *purpose* of preventing secondary victimization, particularly when Plaintiffs have alleged that they were relying on the investigation to remove the Lopez brothers from USAT. With respect to reliance, it also should be noted that Plaintiffs repeatedly allege they relied on USAT to conduct its investigation in good faith and to behave reasonably and with due care.

*See, e.g.*, TAC at ¶¶ 793, 836, 852. Again, however, this is not the sort of reliance required by Colorado law, as it does not relate to either the purpose of the investigation or the harm alleged. Plaintiffs do not, for example, allege that because they relied on USAT to conduct its investigation, they therefore abandoned other investigatory avenues. Their assumption of duty theory should be rejected for that reason alone.

In addition, and as a matter of policy, Plaintiffs' TAC advances theories that would discourage organizations from looking into alleged past misconduct. Having been told by the Court that USAT owed no investigative duty to former athletes, they now seek to turn that ruling on its head by arguing that USAT is liable because it undertook an investigation into their allegations against the Lopez brothers. The Court should reject this theory, which would discourage USAT and other organization from conducting the type of investigation Plaintiffs desired, because any such investigation would risk a lawsuit claiming secondary victimization. Because Plaintiffs have not adequately alleged USAT owed them a duty, each of their negligence claims must be dismissed. Accepting Plaintiffs' special relationship theory would similarly discourage organizations from taking ameliorative steps to address past alleged sexual abuse because doing so would open those organizations to liability by individuals whose claims otherwise would be barred.

**B.     Plaintiffs' Federal Claims Must Be Dismissed.**

   **1.     The aiding and abetting allegations of Counts 2, 3, and 5 are insufficient to obtain relief under 18 U.S.C. § 1595.**

Plaintiffs allege "aiding and abetting" liability against USAT in Counts 2, 3 and 5, each of which is brought pursuant to 18 U.S.C. § 1595. "[A]iding and abetting liability is not provided for in Section 1595." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y.

2018) (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 183 (1994) (observing that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there *is no general presumption that the plaintiff may also sue aiders and abettors*") (emphasis in original)).

If the Court were to conclude that aiding and abetting liability is available under § 1595, then Plaintiffs must sufficiently plead "(i) a primary violation of the statute by the primary defendant, (ii) knowledge by the secondary defendant of his role in the illegal conduct; and (iii) substantial assistance by the secondary defendant in the primary violation." *Weinstein*, 335 F. Supp. 3d at 525. *See also Leon v. FedEx Ground Package Sys*, 2016 U.S. Dist. LEXIS 30281 at *42 (D.N.M. 2016). Plaintiffs have not met these requirements. As discussed below, Plaintiffs have not sufficiently alleged that USAT knew it was participating in illegal conduct with Steven Lopez at the time the allegedly illegal sexual misconduct by Steven Lopez took place. Nor have Plaintiffs pleaded the substantial assistance requirement. Allegations regarding Steven Lopez's success as a taekwondo athlete and potential commercial gain for USAT based on that success, repeatedly labelling him a rapist, descriptions of Congressional interest in athlete sex abuse, and allegations regarding the vulnerability of young athletes generally do not demonstrate that USAT provided Steven Lopez with substantial assistance in order to sexually abuse Gabriela Joslin or Amber Means. *See e.g.* TAC ¶¶ 17-35, 74-87 [D.E. 293]. As a result, the aiding and abetting allegations of Counts 2, 3, and 5 are insufficient to obtain relief under 18 U.S.C. § 1595.

### 2. Counts 2, 3, and 5 lack allegations of a "knowing benefit" as required by 18 U.S.C. § 1595(a).

Counts 2, 3, and 5 seek to recover under 18 U.S.C. § 1595(a), which creates a federal cause of action against the "perpetrator" or "**whoever knowingly benefits,** financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter" (emphasis added). Counts 2 and 5 also allege primary violations of § 1589(b) and Count 3 advances a "knowing benefit" theory under § 1590(a). Plaintiffs allege USAT "participated in [a] venture by acting as the travel agent and commercial funder for the Lopez brother in the domestic and international sexual exploitation of young female athletes." TAC ¶ 89. Throughout the TAC, they allege that the knowing benefit to USAT was generally "medals and money" obtained by the Lopez family, including Steven Lopez. But Plaintiffs offer no allegations to support the theory that Steven Lopez's alleged sexual abuse of Joslin and Means benefitted USAT, let alone a benefit that USAT knew about. Rather, the TAC alleges benefits that USAT receives as a result of Steven Lopez's athletic success. This requires an assumption that the alleged sexual misconduct Steven Lopez committed against Joslin and Means somehow translates into "medals and money" for USAT. The TVPRA does not contemplate knowing benefits requiring this degree of removal from the defendant.

A survey of TVPRA cases reveals that a knowing benefit from participating in a venture requires a much closer connection between a defendant's knowledge, the alleged abuse and the benefit to the defendant. *See e.g. Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017) (holding that complaint sufficiently stated the knowing benefit requirement

9

against motel operators because allegations contended that (1) defendants received the benefit of payment for the motel room where the alleged acts of trafficking took place; and (2) defendants were alleged to have witnessed exhibitions of brutal and coercive behavior towards the "physically deteriorating [victim] who pleaded for help"); *see also Paguirigan v. Prompt Nursing Empl. Agency LLC*, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017); *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 822 (E.D. La. 2014); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164 (D. Kan. 2018); *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 329 (E.D.N.Y. 2014).

The cases above illustrate two points about knowing benefits under the TVPRA: (1) the benefit to the defendant must be identifiable; and (2) the defendant must know that it is receiving the benefit. The allegations of the TAC plausibly allege that USAT benefitted from Steven Lopez's success as an athlete. But the TAC does not articulate a knowing benefit on the part of USAT on account of his alleged sexual abuse of Joslin and Means. Because Plaintiffs fail to allege a knowing benefit under the TVPRA, Counts 2, 3, and 5 should be dismissed.

### 3. Count 3 must be dismissed because Plaintiffs fail to allege that the transportation was in violation of 18 U.S.C. § 1590(a).

Plaintiffs' theory of § 1590(a) liability under Count 3 is based on "transportation." They allege that "USAT, through their agent, Steven Lopez, *knowingly* transported Gaby to Bonn, Germany, and to various tournaments and training centers between 2006 and 2010." TAC ¶ 599 (emphasis added). The Court previously accepted the Magistrate's recommendation that the applicable time period for this claim is May 4, 2008 through May 4, 2018. D.E. 266.

Liability for transportation under § 1590(a) requires that the objective of the transportation be the illegal act under the TVPRA. *See e.g. Ricchio v.* 853 F.3d at 558 (observing that § 1590's language prohibiting knowing recruitment… transportation…or obtaining by any means, any person for labor or services "is most obviously read as requiring only intent to produce the result described."); *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 454 (E.D. Va. 2015) (sufficient to allege defendants "knowingly recruited plaintiff's services through an employment agency in the Philippines, brought her to Qatar, and arranged to transport her to the United States by fraudulently acquiring a visa *for the purpose of forced labor or involuntary servitude*") (emphasis added); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1165 (D. Kan. 2018) (§ 1590 claim sufficiently stated where Plaintiff alleged that "defendants transported plaintiff around the country against her will so she could supply forced labor").

The TAC alleges one specific, and untimely, occasion of transportation: Joslin's travel to Bonn, Germany in 2006. Even if the trip to Bonn were timely, alleging a first incidence of sexual misconduct occurring after Joslin's arrival by itself does not establish knowing transportation by USAT. *See e.g. Shuvalova v. Cunningham*, 2010 U.S. Dist. LEXIS 135502 at *10 (N.D. Cal. 2010) (§ 1590 liability insufficiently pled because the defendant's alleged promises to take care of plaintiffs did not adequately state a fraudulent inducement theory and remaining allegations directed to defendant's conduct after plaintiff arrived were insufficient to establish a claim for trafficking). Even if the Court accepts that knowledge by USAT can be inferred, Plaintiffs still must allege, at a minimum, timely occurrences of transportation by USAT, including dates and places accompanied

11

by incidences of sexual abuse by Steven Lopez on those occasions. They do not. For these reasons, Count 3 should be dismissed.

### 4. Count 8 must be dismissed because Plaintiffs fail to obstruction of government enforcement of the TVPRA under 18 U.S.C. §§ 1590(b) and 1591(d).

Count 8 alleges Obstruction, Attempted Obstruction, and Interference with Enforcement in violation of 18 U.S.C. §§ 1590(b), 1591(d), 1595(a), and 2255. The Court previously concluded that obstruction of a private investigation or action is not actionable under 18 U.S.C. §§ 1590(b) or 1591(d) and that "the TVPA's obstruction provisions are concerned only with government enforcement of the TVPA." D.E. 266 at 46. The Court also observed, in dismissing the obstruction count against defendant USOC, that "Plaintiffs offer **no** evidence that the Congressional hearing was directly related to the enforcement of the TVPA." *Id.* at 47.

Plaintiffs still do not allege government enforcement of the TVPRA. To the extent they still rely on Steve McNally's testimony to Congress to meet this requirement, Congress cannot enforce the TVPRA. Only the executive and judicial departments of government can enforce the laws of the United States. ALISSA M. DOLAN ET AL., CONG. RESEARCH SERV., CONGRESSIONAL OVERSIGHT MANUAL 25 (2014), citing *Watkins v. United States*, 354 U.S. 178, 187 (1957)("[t]here is no general authority to expose the private affairs of individuals without justification in terms of the functions of the Congress ... *nor is the Congress a law enforcement or trial agency. These are functions of the executive and judicial departments of government*")(emphasis supplied)**.** *See also e.g.* 2 U.S.C. § 190d(a) (articulating the scope of assistance provided to legislative review by standing

committees of the Senate and the House of Representatives as including "analysis, appraisal, and evaluation themselves, or by contract, or may require a Government agency to do so and furnish a report thereon to the Congress"); 28 U.S.C. § 533 (granting the FBI authority to investigate all federal crime not assigned exclusively to another federal agency).

A survey of various TVPRA obstruction cases makes it clear that a government enforcement action contemplates involvement of the executive or judicial branch of government, not the legislative branch. *See e.g. United States v. Brinson*, 772 F.3d 1314, 1327-28 (10th Cir. 2014) (concluding that transcript of telephone call in which the defendant encouraged the witness to ignore a grand jury subpoena was sufficient for a jury to reasonably infer that the defendant was trying to prevent the witness from testifying before the grand jury and constituted sufficient evidence that the defendant had committed the crime of obstruction of justice under 18 U.S.C. § 1591(d)); *United States v. McCray*, 2017 U.S. Dist. LEXIS 115689 at *40 (holding that a superseding indictment charging a violation of obstruction of justice under 18 U.S.C. § 1591(d) was proper where defendant contacted witness in violation of court's no contact order consistent with the element of proving that the defendant knowingly obstructed or attempted to obstruct the enforcement of § 1591); *Martinez v. Calimlim*, 651 F. Supp. 2d 852, 864 (E.D. Wis. 2009) (plaintiff sufficiently stated obstruction claim under § 1590 where she alleged that defendant lied to a federal agent in an attempt to obstruct the agent's effort to find plaintiff). *See also United States v. Clinton*, 2012 U.S. Dist. LEXIS 151080 at *5 (D.S.D.

2012) (observing that § 1591(d) "is expressly directed at conduct that obstructs or interferes with the enforcement of the sex-trafficking statutes").

Accepting *arguendo* that Steve McNally lied Congress, Plaintiffs allegations fail to state a claim under §§ 1590(b) or 1591(d). Moreover, Plaintiffs have not alleged the violation of any statutes that criminalize false statements to Congress such as 18 U.S.C. § 1001 (criminalizing false statements) or 18 U.S.C. § 1621 (prohibiting perjury). Even if they had, Congress still cannot enforce laws.

Plaintiffs allege that USAT fed "false information to investigators…about Mandy Meloon." TAC ¶ 637 (j). USAT does not find further detail about this allegation in the TAC, but it appears to refer to the events that occurred in 2006 and 2007. *Id.* ¶¶ 120-128. Accordingly, it outside of the statute of limitations. Even if it was timely, it is not sufficient, as it provides no other details (*e.g.*, who at USAT made the false statement, to whom or which agency, when the statement was made, and the content of the statement). Nothing else in the TAC even arguably invokes a governmental enforcement of the TVPRA. Accordingly, Count 8 must be dismissed.

### 5. Count 8 must be dismissed to the extent it seeks recovery under § 1595(a) because Plaintiffs fail to allege a "venture."

Plaintiffs assert that they can recover for obstruction pursuant to §§ 1595(a) and/or 18 U.S.C. 2255 (only Amber Means seeks relief under § 2255). Section 1595(a) creates a cause of action against the "perpetrator" or "whoever knowingly benefits…by receiving anything of value **from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter**" (emphasis added). Though Count 8 purportedly is asserted against both USAT and Steven Lopez, Plaintiffs

confirmed in a February 12, 2020, e-mail that they will not pursue Count 8 against Steven Lopez at trial. Indeed, the TAC does not include allegations of obstruction or attempted obstruction or interference with a government investigation by Steven Lopez. Accordingly, USAT apparently is now in a venture by *itself* for purposes of Count 8.

The Tenth Circuit adopted the First Circuit's definition of "venture" under the TVPRA, which defines this term as "any group of two or more individuals associated in fact, whether or not a legal entity." *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019). The *Bistline* court went on to explain that the complaint at issue adequately stated a TVPRA claim because it alleged the defendants set up a scheme "designed *expressly* for the purpose of facilitating these crimes and also ensuring that defendants would personally reap amber benefits therefrom." *Id.* at 875-76 (emphasis in original). The TAC contains no allegations that USAT was in a venture for purposes of Count 8 at all, much less a scheme to obstruct. For these reasons, Plaintiffs fail to articulate the required element of a venture. Therefore, Count 8 must be dismissed to the extent it is based on venture liability under § 1595(a).

## IV. CONCLUSION

For the foregoing reasons, USAT respectfully requests that this Court dismiss all of Plaintiffs' claims against it with prejudice.

Dated this 21st day of February, 2020.

                                               GORDON & REES SCULLY MANSUKHANI

                                               */s/ Thomas B. Quinn*
Thomas B. Quinn, Reg. No. 17955
Nathan A. Huey, Reg. No. 51271
Lillian L. Alves, Reg. No. 37083
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Phone: (303) 534-5160
Fax: (303) 534-5161
tquinn@grsm.com
nhuey@grsm.com
lalves@grsm.com

*Attorneys for Defendant USA Taekwondo, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 21st day of February, 2020, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such to all counsel of record.

*/s/ Fran Aragon Eaves*