IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN and
KAY POE

      Plaintiffs,

v.

USA TAEKWONDO, INC. and
STEVEN LOPEZ

      Defendants.

---

**DEFENDANT USA TAEKWONDO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

---

Defendant USA Taekwondo, Inc. ("USAT"), by and through its attorneys, hereby submits the following reply in support of its motion to dismiss [D.E. 294] Plaintiffs' Third Amended Complaint ("TAC") [D.E. 293] pursuant to Fed. R. Civ. P. 12(b)(6) and CMA Civ. Practice Standards 7.1A and 10.1.

**I.  Plaintiffs Do Not Make the Requisite Showing for Voluntary Assumption of Duty**

Plaintiffs characterize allegations in the re-pleaded negligence counts as "new." USAT disagrees. To that end, USAT provided a summary chart setting forth allegations repeated throughout the various complaints in its opposition to Plaintiffs' motion for leave to amend the Second Amended Complaint. [D.E. 287, p. 8]. Citing to new

discovery, specifically, Donald Alperstein's e-mails, in support of substantially the same allegations does not give rise to a duty on the part of USAT. Accordingly, the Court's past analysis pursuant to *Taco Bell, Inc. v. Lannon*, 755 P.2d 43, 46 (Colo. 1987) concluding that USAT does not owe a duty to former athletes still applies.

To the extent the Court credits Plaintiffs' arguments that the negligence theory has transformed from nonfeasance to misfeasance, the TAC still fails to state a claim on which relief can be granted. By using the term "special relationship" in the TAC, Plaintiffs must also articulate a category of special relationship between them and USAT recognized under Colorado law. They do not. Plaintiffs dispense with any discussion of the Colorado categories of special relationships USAT cited in its Motion to Dismiss and instead point to the "long list of detailed facts" in their revised negligence theory in support of their argument regarding the plausibility of the negligence claims. [D.E. 296, p 4]. Further attempting to dodge Colorado case law applicable to special relationships, Plaintiffs go on to argue that USAT's sole argument against a "special relationship" focuses solely on the Court's earlier *Taco Bell* analysis. [D.E. 296, pp. 5-6]. This is a mischaracterization of USAT's argument. USAT cited to case law analyzing the term "special relationship," explaining why it is inapplicable to this case, and went on to offer additional legal argument discussing assumption of the duty and reliance. [D.E. 294, pp. 4-7].

Where assumption of duty and reliance are concerned, Plaintiffs also dispense with making the required showing pursuant to *E. Meadows Co. v. Greeley Irrigation Co.*, 66 P.3d 214, 218 (Colo. App. 2003). They have not shown: (1) a promise by USAT to

2

render a service (in this case, Alperstein's investigation and representation of USAT in disciplinary proceedings) that was reasonably calculated to prevent the type of harm that befell Plaintiffs, or (2) reliance by Plaintiffs on USAT, via Alperstein, to conduct his tasks or that his undertaking increased Plaintiffs' risk. Plaintiffs cannot make this showing. Instead, they appear to assert that Plaintiffs' status as alleged victims of past sexual abuse results in USAT assuming a duty towards them because Alperstein contacted them in the course of gathering facts for his investigations. These facts do not square with the *E. Meadows* factors. Plaintiffs also advance an implausible and conclusory argument that USAT assumed a duty towards Plaintiffs "for the benefit of Plaintiffs to vindicate Plaintiffs and to ban the Lopezes from the sport." [D.E. 296, p. 7]. As discussed more below, this argument is unavailing.

None of the TAC's allegations, including the purportedly new discovery, supports Plaintiffs' assertion that USAT undertook its investigation in service to Plaintiffs who, by their own admission, had been absent from USAT events and/or the national team for years by the time Alperstein began his investigation. Even Plaintiffs' own articulation of Alperstein's task, "to vindicate" them and "to ban the Lopezes from the sport" does not state a theory by which the alleged service USAT provided was reasonably calculated to prevent the purported harms of PTSD and re-victimization. Moreover, Plaintiffs allege that "USAT hired and retained Donald Alperstein and his staff…*to work for them* [not for Plaintiffs] to investigate the Lopez brothers." [D.E. 293 ¶ 651]. "A negligence claim must fail if based on circumstances for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff." *University of Denver v. Whitlock*, 744 P.2d 54,

3

56 (Colo. 1987). The TAC fails to articulate facts that support the assertion that Donald Alperstein's investigation was for the benefit of Plaintiffs or that it was undertaken in order to keep them from experiencing PTSD and/or re-victimization or to "vindicate" Plaintiffs.

The notion that the purpose of Donald Alperstein's investigation was "to ban the Lopezes from the sport" is similarly flawed and the TAC itself undercuts any claim of reliance. None of the allegations in the TAC advance the notion that Alperstein controlled the ultimate outcome where the Lopez brothers were concerned. On the contrary, as the TAC indicates, the USAT Board of Directors, USAT Ethics panel, and independent arbitrators had decision-making authority in disciplinary decisions following a hearing or hearings prior to SafeSport exercising its exclusive jurisdiction. [D.E. 293 ¶¶ 153, 172, 185-187, 672(t), 687(c), (d) and (e), 687(f) and (m), 730(j), 745(c), (d), (e) and (f), 745(m), 788(j), 803(c), (d), (e), (f) and (m), 847(j), 862(c), (d), (e), (f) and (m)]. Accordingly, as much as Alperstein may have communicated his wish to obtain discipline against Jean and Steven Lopez, as indicated by the e-mails Plaintiffs cite in Counts 9-12, even Plaintiffs themselves implicitly acknowledge that the final disciplinary decision regarding Jean or Steven Lopez was out of his hands.

USAT and Alperstein's lack of control over the ultimate outcome in the discipline of Jean and Steven Lopez undercuts Plaintiffs conclusory assertion that they "relied on [USAT] to perform [a] service." [D.E. ¶ 296, p. 8.] Another obstacle to Plaintiffs' reliance theory stems from their assertion that USAT "abandoned [its independent investigation] to SafeSport." [D.E. 296, p. 8]. Plaintiffs otherwise ignore SafeSport in their opposition

4

to USAT's Motion to Dismiss the TAC. But ignoring SafeSport does not support the negligence claims.

The TAC acknowledges that USAT turned its investigation over to SafeSport in March of 2017. [D.E. 293, ¶¶ 164, 168, 173]. In recommending dismissal of SafeSport from this lawsuit, the Magistrate noted that SafeSport engaged in a "decisional act" where its handling of the Jean Lopez disciplinary proceedings was concerned. [D.E. 217, pp. 13-14]. Federal statues applicable to SafeSport confirm its authority over the USOC and NGBs to safeguard amateur athletes against emotional, physical, and sexual abuse in sports. 36 U.S.C. § 220541(a)(1), (2). Congress also tasks Safe Sport with "establish[ing] mechanisms" for "reporting, investigat[ing], and resolv[ing]" allegations of sexual abuse. *Id.* § 220541(a)(1)(4). Plaintiffs voluntarily dismissed SafeSport a few weeks after the Magistrate recommended its dismissal from this lawsuit. [D.E. 223; D.E. 217]. In other words, the last party with the power to act where the Lopez's discipline is concerned has departed the case. Accordingly, and in an effort to salvage their negligence claims, Plaintiffs attempt to assert that USAT had control over the disciplinary outcome of the Lopez proceedings by providing a screenshot of the language USAT used regarding the suspension of Jean and Steven Lopez. [D.E. 293, ¶ 169]. But the screenshot includes language that the suspensions are temporary pending further proceedings, obviously those of SafeSport, or based on the actions of SafeSport. Under these circumstances, Plaintiffs were not justified in relying on Alperstein and USAT to "ban the Lopezes from the sport." For these reasons, the Court should dismiss Claims 9-12.

## II. The Court Should Dismiss the Federal Claims

Plaintiffs invoke Fed. R. Civ. P. Rule 12(g)(2) and argue that USAT already had the opportunity to challenge the federal claims. By its express terms, Rule 12(g)(2) does not apply to a party's ability to raise the defenses of "failure to state a claim upon which relief can be granted, to join a party required by Rule 19(b) or to state a legal defense to a claim." Fed. R. Civ. P. 12(h)(2); *Albers v. Bd. of County Comm'rs*, 771 F.3d 697, 701 (10th Cir. 2014) (noting that "although Rule 12(g)(2) precludes successive motions under Rule 12, it is expressly subject to Rule 12(h)(2), which allows parties to raise certain defenses, including the failure to state a claim upon which relief may be granted, in any pleading allowed under Rule 7(a), by a motion for judgment on the pleadings under Rule 12(c), or at trial"). USAT has moved to dismiss the federal claims based on failure to state a claim upon which relief can be granted, which is permissible under Rule 12(g)(2). Even assuming a technical Rule 12(g)(2) violation, the Tenth Circuit has favored considering a defendant's arguments when doing so does not "affect the substantive rights of the parties." *Albers*, 771 F.3d at 704 (citing the analysis of *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) observing that 28 U.S.C. § 2111 (the harmless error statute) "seeks to prevent appellate courts from becoming impregnable citadels of technicality.")

USAT is not asking the Court to retread old ground, on the contrary, it has incorporated the Court's past analyses into its motion to dismiss. Nor has it invoked any defenses that could arguably be construed as irrevocably waived. *See e.g. Ramada Franchise Sys. v. Tresprop, Ltd.*, 75 F. Supp. 2d 1205 at 1213-14 (D. Kan. 1999) (citing

*Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108 (2d Cir. 1987) (Observing that "[i]n general, the only defenses that are irrevocably waived by answering an original complaint are those that involve the core issue of a party's willingness to submit a dispute to judicial resolution such as defenses related to personal jurisdiction, venue, process and service.") Plaintiffs' will not suffer injury to their substantive rights by consideration of USAT's Motion to Dismiss the TAC.

Plaintiffs also make an equitable estoppel argument. In support of this position they cite to a Tenth Circuit case analyzing subsequent Rule 60 motions and a state law case discussing claim preclusion, neither of which are applicable here. [D.E. 296, n. 32]. Moreover, Plaintiffs make various arguments similar to those that USAT made against the filing of the TAC, e.g. how long it took Plaintiffs to file the TAC, how much of the TAC retreads the same ground previously considered and rejected by the Court, and the challenges of defending a case where Plaintiffs have constantly moved the ball in terms of the defendants and claims since the filing of the first Complaint. In a case as novel and complex as this one, which has seen several changes to the scope of the claims and parties involved, it is proper and fair for the Court to consider all of USAT's arguments, just as it has permitted Plaintiffs multiple so-called "bites at the apple."

Turning to the merits of the federal claims, Plaintiffs mostly ignore USAT's arguments. Where the obstruction is concerned (Count 8), they offer no argument against USAT's assertion that Plaintiffs have failed to allege government enforcement of the TVPRA, which cannot include Congress. Nor have they disputed USAT's assertion that Section 1595(a) liability fails as to Count 8 because USAT cannot be in a venture

7

by itself. Count 8 must be dismissed. Nor do Plaintiffs dispute USAT's assertion that they fail to allege any timely acts of transportation for purposes of Count 3. Count 3 must also be dismissed. Where the alternate theory of aiding and abetting in Counts 2, 3, and 5 is concerned, Plaintiffs appear to offer a concession that the language "can be excised without altering the theory of liability." [D.E. 296, p. 12]. Accordingly, to the extent Counts 2, 3, or 5 fail on other grounds, the alternate aiding and abetting liability theory does not sustain them and they must be dismissed.

Where USAT's "knowing benefit" argument is concerned regarding Counts 2, 3, and 5, USAT has not argued, as Plaintiffs claim, that an "overt act" is required as the USOC argued in the past. [D.E. 266, pp. 37; D.E. 296, n. 42, p. 13.] To date the Court has not explored what constitutes a "knowing benefit" under the TVPRA. Rather, the focus of the Court's analysis following the last round of motions to dismiss was on the definition of a "venture" in connection with its determination that TVPRA liability can attach "simply by benefitting financially from participation in a venture with the primary offender." [D.E. 266, pp. 21; 35-37] (discussing venture liability).

Plaintiffs set forth an argument now that essentially drops "knowing" from "benefit." [D.E. 296, pp. 12-15]. In so doing, they cling to their assertion that all they have to prove is the standard "knew or should have known" on the part of USAT. [D.E. 296, p. 13.] This language applies elsewhere. The full text, set forth at Section 1589(b), provides for liability for "[w]hoever knowingly benefits…from participation in a venture…knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services [in violation of the TVPRA]." Under

Plaintiffs' theory, the alleged sexual abuse need not have a connection to a knowing benefit on the part of USAT. Case law does not construe a knowing benefit so expansively and supports USAT's position that a closer connection between the alleged abuse and the knowing benefit to USAT must be alleged. *See e.g. Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017) (Benefit was payment for motel room and knowledge included witnessing brutal treatment of the victim who pleaded for help); *Paguirigan v. Prompt Nursing Empl. Agency LLC*, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017) (Benefit was nurse's labor and knowledge included threat of litigation); *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 822 (E.D. La. 2014) (Benefit was money in exchange for entering into joint venture agreements and knowledge included threat against immigration status); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164 (D. Kan. 2018) (Benefit was free work in businesses and homes owned by defendants and knowledge included intimidation tactics leading plaintiff to belief that she would experience serious harm if she did not comply); *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (Benefit was free work in businesses and knowledge included defendants' false imprisonment of plaintiff); *Carter v. Paschall Truck Lines*, Inc., 324 F. Supp. 3d 900, 914 (D. W. Ky. 2018) (Benefit was money to defendants and knowledge included defendants' collective administration of joint agreements that made improper deductions from plaintiffs' pay). Because Plaintiffs fail to allege a knowing benefit on the part of USAT as required by Section 1595(a), Counts 2, 3, and 5 fail and must be dismissed.

## Conclusion

Plaintiffs' negligence theory still fails on a nonfeasance theory because the core allegations are unchanged. Plaintiffs' negligence theory also fails on a voluntary assumption of duty theory because the circumstances of Alperstein's investigation do not impose a duty of care on USAT for Plaintiffs' benefit. For these reasons, the negligence claims should be dismissed. USAT can still challenge the federal claims and Plaintiffs do not dispute USAT's arguments except for the "knowing benefit" element of the TVPRA claims. Claims 3 and 8 should be dismissed as Plaintiffs do not dispute USAT's arguments against the absence of timely transportation allegations and lack of government enforcement of the TVPRA.  Additionally, because Plaintiffs do not articulate facts sufficient to establish a knowing benefit on the part of USAT, Claims 2, 3, and 5 should be dismissed on this basis.

Respectfully submitted this 26th day of March 2020.

    /s/ Thomas B. Quinn
Thomas B. Quinn
Nathan A. Huey
Lillian L. Alves
**GORDON REES SCULLY MANSUKHANI LLP**
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel.:  (303) 534-5160
Fax:  (303) 534-5161
tquinn@grsm.com
nhuey@grsm.com
lalves@grsm.com
*Attorneys for Defendant USA Taekwondo, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 26th day of March 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such to all counsel of record.

                        */s/ Fran Aragon Eaves*
                        For Gordon Rees Scully Mansukhani LLP