IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN, and
KAY POE,

      Plaintiffs,

v.

USA TAEKWONDO, INC., and
STEVEN LOPEZ,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiffs assert twelve claims[1] against the remaining Defendants in this matter, U.S.A. Taekwondo, Inc. ("USAT") and Steven Lopez.  *See* Third Amended Complaint, ECF 293 ("TAC").  Defendant Steven Lopez has filed an Answer to the TAC, ECF 297, but USAT filed the present Motion to Dismiss, ECF 294 ("Motion"), seeking to dismiss all claims against USAT.  As set forth below, I respectfully recommend that USAT's Motion be **granted in part** and **denied in part**.

---

[1] Plaintiffs characterize their claims in the Third Amended Complaint as "counts."  Throughout this Recommendation, I will use the term "claim" instead of "count."  The numbering will remain the same, though, such that "Count 12" in the Third Amended Complaint is the same as "Claim 12" in this Recommendation.

## BACKGROUND

The factual background of this dispute has been thoroughly recited in both my previous Recommendation, ECF 218, and in the Honorable Christine M. Arguello's Order, ECF 266. Those recitations are incorporated herein by reference. As such, only those facts necessary to address the current Motion will be reiterated here.

Plaintiffs in this lawsuit are female taekwondo athletes who sought to compete for Team USA. Plaintiffs allege that during the time they participated and competed in the USAT system, they were sexually abused, assaulted, and raped by the Steven and Jean Lopez. Defendant Steven Lopez is a three-time Olympic taekwondo medalist for the United States. Defendant USAT is the national governing body for the sport of taekwondo, recognized and regulated by the United States Olympic Committee pursuant to 36 U.S.C. § 220505(c)(4).

This lawsuit commenced with the filing of the Complaint on April 25, 2018. Plaintiffs filed their First Amended Complaint, ECF 6, as a matter of course on May 4, 2018. USAT filed a motion to dismiss, ECF 50, on July 31, 2018. By agreement of all the parties at the time, on August 24, 2018, Plaintiffs amended their complaint again with the filing of their Second Amended Complaint, ECF 68 ("SAC"). The SAC asserted twenty-one causes of action which can be broadly categorized into (1) federal Trafficking Victims Protection Reauthorization Act ("TVPRA") claims, (2) a Racketeer Influenced and Corrupt Organizations ("RICO") claim, and (3) claims arising under state common law for negligence. USAT filed a second motion to dismiss, ECF 109, on September 24, 2018, and briefing was completed on November 15, 2018. I issued a Recommendation, ECF 218, on March 6, 2019, which was adopted in part and rejected in part in an Order, ECF 266 ("Order"), by Judge Arguello on September 27, 2019. Judge Arguello dismissed one federal claim (against an entity no longer in this case), the RICO claim, and all of

the claims arising under state common law.  However, the state law claims were dismissed without prejudice so as to allow the Plaintiffs to refile those claims.

With the SAC having been dismissed without prejudice, Plaintiffs proceeded to file the operative TAC, ECF 293.  The TAC contains 874 numbered allegations against both Steven Lopez and USAT.  Of the twelve claims in the TAC, only eight are alleged against USAT.  Of these eight claims, four involve allegations of USAT's violations of 18 U.S.C. Sections 1589(b), 1590(a), 1590(b), 1591(d), 1595(a), and 2255 of the TVPRA (Claims 2, 3, 5, and 8) and four concern state law negligence claims (Claims 9, 10, 11, and 12).   USAT filed the current Motion, ECF 294, in response to the TAC, seeking to have all claims against it dismissed.  Plaintiffs filed a response in opposition to the Motion, ECF 296, and USAT filed a reply in support of its Motion, ECF 298.  It is important to note from the outset that the allegations contained in the TAC with regard to the federal TVPRA claims are substantively unchanged from the SAC.  The substantive changes made from the SAC to the TAC concern the state law negligence claims.

As alleged in the SAC and TAC, the heart of this matter concerns Plaintiffs' allegations that Steven Lopez (and his brother Jean Lopez) perpetrated coerced sexual conduct and sexual assault.  Plaintiffs allege that USAT knew (or should have known) about the Lopez brothers' conduct, and yet continued to support the brothers to the detriment of other taekwondo competitors, like Plaintiffs, who allegedly suffered abuse.  In particular, the TAC alleges that USAT financially benefited from ignoring the Lopez brothers' conduct so that the Lopez brothers could continue to travel and compete, all while committing abuses on other U.S. taekwondo competitors.

A recitation of all of the allegations from the 179-page TAC would not be in the interest of judicial economy and efficiency, especially since they have been recited twice now and the

majority of the allegations remain unchanged.  Where any fact becomes relevant to the resolution

of the Motion, I will discuss it at the appropriate time.  However, in all instances, Plaintiffs' factual

allegations are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).

## LEGAL STANDARD

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency

of the plaintiff's complaint.  *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236

(10th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at

678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context

of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id. Twombly* requires

a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not

entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare

assertions, or merely conclusory.  *Id.* at 680.  Second, the Court must consider the factual

allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the

allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general

that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not

nudged their claims across the line from conceivable to plausible.'"  *Khalik v. United Air Lines*,

671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th

Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will

vary based on context."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir.

2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim.  *Khalik*, 671 F.3d at 1192.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief."  *Id.* (quotation marks and citation omitted).

## ANALYSIS

As mentioned above, Plaintiffs' TAC asserts eight claims against USAT.  These claims fall into two broad categories: (I) federal TVPRA claims and (II) state law negligence claims.  USAT argues each claim should be dismissed.  *See* Motion, ECF 294.  For the reasons set forth herein, I respectfully recommend the federal claims be allowed to proceed, but the state law negligence claims be dismissed for failure to state a claim upon which relief can be granted.

## I.   Federal Claims

Four of Plaintiffs' claims against USAT are alleged violations of federal sex trafficking laws.  When USAT challenged the SAC, it argued that the federal claims failed based on the statute of limitations.  Now, USAT raises additional challenges to the federal claims.  USAT argues that

Plaintiffs' TAC fails for five main reasons:  there is no "aiding and abetting" under Section 1595; Plaintiffs have not adequately pled a "knowing benefit" sufficient to sustain a claim under Section 1595(a); Plaintiffs have failed to allege timely and specific acts of transportation necessary for a Section 1590(a) claim; Plaintiffs have not alleged obstruction of a governmental investigation as required for a claim under Section 1590(b); and because Plaintiffs will not be pursuing a Section 1595(a) claim against Steven Lopez, Plaintiffs have failed to allege a proper "venture" by which to hold USAT liable.  I address each of these arguments below.

    A.    <u>Successive Motions</u>

As an initial matter, Plaintiffs and USAT dispute whether USAT is even able to raise new 12(b)(6) arguments in relation to the federal claims at this juncture.  Plaintiffs argue that Fed. R. Civ. P. 12(g)(2) prohibits successive motions under Rule 12, that USAT should have raised these arguments in its motion to dismiss the SAC which contained nearly identical allegations with regard to the federal claims, and in not doing so, USAT has waived the right to make the arguments now.  USAT contends it has not waived any argument regarding the federal claims because Fed. R. Civ. P. 12(h)(2) permits USAT to raise arguments concerning failure to state a claim for relief in separate motions.

Fed. R. Civ. P. 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Although Rule 12(g)(2) precludes successive motions, by its own terms, it is subject to Rule 12(h)(2), which provides that a defense for failure to state a claim upon which relief can be granted "may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."  The Tenth Circuit has held that the district courts have discretion in considering whether

to permit successive motions under Rule 12(g)(2). *Albers v. Bd. of Cty. Com'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 703–04 (10th Cir. 2014).

In *Albers*, a wage dispute arose between employees and Jefferson County ("County") in which the employees alleged improper calculation of overtime pay. The County moved to dismiss the employees' second amended complaint, but instead of responding to that motion to dismiss, the employees conducted limited discovery and filed a third amended complaint. Other than for certain additional factual allegations, the third amended complaint was identical to the second amended complaint. The district court denied the County's motion to dismiss as moot, which subsequently led to the filing of a second motion to dismiss. However, in addition to the previous arguments raised in the first motion to dismiss, the second motion to dismiss included new arguments regarding allegations of "regular rates" of pay. *Id.* at 699. Even though the district court dismissed the third amended complaint on other grounds, the court still considered these new arguments. Ultimately, the Tenth Circuit declined to decide whether the district court acted in technical compliance with Rule 12 but held that any procedural error would have been harmless. *Id.* at 703–04.

In this case, USAT's Motion is technically in violation of Rule 12(g). The essence of Plaintiffs' federal claims, unlike their state claims, remains unchanged from the SAC to the TAC. USAT raises new arguments for the federal claims in its Motion based on allegations that were already available to USAT regarding the SAC. Thus, USAT has essentially made another motion under Rule 12 "raising a defense or objection that was available to [it] but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). It does not make a difference here that USAT's Motion asserts the Plaintiffs' failure to state a claim for relief (which is not waived pursuant to Rule 12(h)(2))

because USAT's Motion is not a pleading allowed under Rule 7(a), not a Rule 12(c) motion, and not being made at trial.

However, it is clear that USAT could raise its new federal law arguments in a Rule 12(c) motion. That option is contemplated and permitted under Rule 12(h)(2). Therefore, if this Court refused to consider USAT's arguments now, the Court would only cause unneeded delay in a case that has already proceeded for over two years, requiring USAT "to take . . . additional steps [that] would [serve] no practical purpose under the circumstances" other than to add delay. *Albers*, 771 F.3d at 703 (quoting *Walzer v. Muriel Siebert & Co.*, 447 F. App'x 377, 384 (3d Cir. 2011)).

Instead, the more efficient course, and the one I adopt here, is to treat USAT's Motion as if it were a Rule 12(c) motion. The TAC is substantially the same as the SAC with regard to the federal law allegations. Because it is proper for this Court to accept all factual allegations as true for purposes of a motion to dismiss, this Court may proceed "as though [USAT] had filed answers admitting those allegations and then filed [its] motion[] under Rule 12(c) rather than Rule 12(b)(6)." *Id.*; *Lipari v. U.S. Bancorp NA*, 345 F. App'x 315, 317 (10th Cir. 2009) ("[T]he district court permissibly treated the defendants' [successive] Rule 12(b)(6) motion as though it had been styled under Rule 12(c)."). In doing so, I find that I may consider all of USAT's arguments raised in the present Motion.

As a last resort, Plaintiffs argue that even if the Federal Rules allow review of USAT's new arguments now, USAT should be equitably estopped from bringing its Motion. Yet, Plaintiffs cite no case law directly on point for their argument. Plaintiffs cite one case on successive motions for reconsideration, *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000), and one case on claim preclusion, *Argus Real Estate, Inc. v. E-470 Public Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005). First, Plaintiffs' attempt to rely on a case involving successive motions for

reconsideration is unfounded because, as mentioned above, USAT could bring these same arguments in another motion under Rule 12(c) pursuant to Rule 12(h)(2).  The same holds true for any argument for claim preclusion, but I note further that claim preclusion, as the name suggests, applies only to claims.  Claim preclusion "bars a *claim* in a current proceeding" if certain elements are met.  *Foster v. Plock,* 394 P.3d 1119, 1123 (Colo. 2017).  Since Plaintiffs are challenging defenses to claims and not claims themselves, I need not address the elements of claim preclusion (or whether they are met) since the threshold inquiry of trying to bar a claim is not met.  Without further evidence in support of their theory, Plaintiffs' citations fail to convince me that there is any equitable estoppel argument to prevent USAT from raising its defenses to the federal claims, especially considering USAT could do so in a separate Rule 12(c) motion.

### B.    Aiding and Abetting for Claims 2, 3, and 5 under 18 U.S.C. § 1595

As to the substance of the TAC, USAT argues that it improperly alleges "aiding and abetting" liability with respect to 18 U.S.C. § 1595 because the statute does not provide for "aiding and abetting" liability.  Plaintiffs counter that their TAC alleges only "aiding and abetting" liability in the alternative; that is, those "words . . . can be excised from the complaint without altering the theory of liability."  Resp. at 12.

USAT cites *Noble v. Weinstein* for the proposition that "aiding and abetting liability is not provided for in Section 1595."  335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018).  This principle stems from *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, in which the Supreme Court held that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors."  511 U.S. 164, 182 (1994).

I agree with USAT that *Noble*'s application of the reasoning in *Cent. Bank of Denver* as applied to the TVPRA is persuasive. I find that "aiding and abetting liability" is not contemplated in Section 1595(a), so Plaintiffs cannot support a claim under that theory. However, Plaintiffs' claims do not hinge on their "aiding and abetting" allegations. In the three allegations in which Plaintiffs allege USAT "aided and abetted," the allegations are preceded by the phrase "[i]n addition." TAC at ¶¶ 592, 599, 615. I find that Plaintiffs have made clear, as they argue in their Response, that any allegation of "aiding and abetting" is made "in addition" to the other allegations. For example, Plaintiffs allege USAT "also knowingly benefited from participating in a venture with Steven Lopez which they knew or should have known was engaging in violations of the [TVPRA]." TAC at ¶ 599. In that paragraph, and in many others, there is no mention of any "aiding or abetting;" in fact, the liability alleged is placed squarely on USAT's shoulders. The Court finds this allegation, in conjunction with other allegations against USAT related to the Section 1595 claim, is sufficiently pled so as to survive a motion to dismiss.

C.    Knowing Benefit for Claims 2, 3, and 5 under 18 U.S.C. § 1595(a)

USAT contends that Claims 2, 3 and 5 fail by not adequately alleging a knowing benefit as required by Section 1595(a). Mot. at 9. USAT argues that a knowing benefit must be closely connected to the alleged abuse and the defendant's knowledge. Therefore, USAT surmises, a claim is only sufficiently pled when "(1) the benefit to the defendant [is] identifiable; and (2) the defendant [knows] that it is receiving the benefit." Mot. at 10. Plaintiffs respond that USAT improperly adds requirements to the statute, and the TAC is sufficiently pled as alleged.

The TVPRA provides for a private right of action against "the perpetrator (or whoever **knowingly benefits**, financially or by receiving anything of value from participation in a venture

which that person knew or should have known has engaged in an act in violation of this chapter)."

18 U.S.C. § 1595(a) (emphasis added).

In *Bistline v. Parker*, the Tenth Circuit held that "to succeed in avoiding dismissal of their § 1589 claims against defendants, plaintiffs must plausibly allege that they provided labor or services that were procured by a method that is prohibited under the TVPRA, and that defendants knowingly benefited from participating in this venture."  918 F.3d 849, 871 (10th Cir. 2019).  In that case, former church members brought claims under the TVPRA against the church leader, the church's law firm, and one of the firm's partners.  The court held that plaintiffs properly alleged the defendants' knowledge, on a venture theory of liability, against the defendants because "the complaint recount[ed] in great detail how defendants were responsible for creating the intricate scheme that both enabled forced labor and allowed the threats which enforced that labor to be effective."  *Id.* at 874.

In this case, Judge Arguello previously concluded that Plaintiffs' allegations in the SAC were plausibly pled.  Order at 28 ("To succeed in avoiding dismissal of Claim 5 against Defendant USAT under Section 1595(a)'s venture liability, Plaintiffs must plausibly allege that Defendant USAT "knowingly benefit[ed], financially or by receiving anything of value, from participation in a venture which [Defendant USAT] knew or should have known has engaged in an act in violation" of Section 1590. 18 U.S.C. § 1595(a).  The Court concludes that Plaintiffs' allegations satisfy this standard.").  Despite this, USAT urges this Court to reconsider Plaintiffs' allegations in light of USAT's new theory that there must be a close connection between the benefit received, the knowledge of the benefit, and the improper conduct.

To be fair, the cases cited by USAT in its Motion suggest that USAT's view of the law is correct.  *See Paguirigan v. Prompt Nursing Employment Agency LLC*, 286 F. Supp. 3d 430, 439

(E.D.N.Y. 2017) (holding that plaintiff properly stated a claim under Section 1589(b) because plaintiff alleged "that defendants financially benefited by recruiting her from the Philippines to work in the United States and forcing her to work for them by means prohibited in 1589(a)"); *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 822, 832 (E.D. La. 2014) (among other reasons, holding that because "[p]laintiffs have alleged [the perpetrator] induced them into incurring substantial debts and [p]laintiffs were compelled to continue working to repay those debts, [p]laintiffs' complaints contain sufficient facts to state a claim under Section 1589(a)(2)"); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164–65 (D. Kan. 2018) (holding that plaintiff established a Section 1589 claim, in part, because defendants knowingly benefited by receiving something of value and that "[d]efendants' knowledge [was] established by the fact that they trafficked individuals, including plaintiff, who were not paid any wages for the work they performed in businesses and homes owned by defendants"); *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (holding that the plaintiff adequately pled a forced labor claim because the complaint alleged "that [the defendants] forced her to work as a monitor over workers at the Residence/Warehouse, that she was not compensated for this labor and that they benefited from her labor").

However, USAT inaccurately applies the notion that there must be a connection between the alleged conduct and the knowledge of the benefit received to its own situation.  USAT admits the TAC "plausibly allege[s] that USAT benefitted from Steven Lopez's success as an athlete." Mot. at 10.  Plaintiffs do not, though, allege in a vacuum that USAT benefited solely from Steven Lopez's success as an athlete.  As alleged, it was Steven Lopez's success that financially benefited USAT and allowed USAT to engage in a venture with Steven Lopez.  *See, e.g.*, TAC at ¶¶ 121, 185, 592, 599.  For instance, Plaintiffs allege that "USAT benefitted . . . from Steven and Jean

Lopez's actions including by collecting money thorough sponsorships, licensing, grants, publicity, for medals achieved at competitions, and for his recruitment and training of other . . . athletes, despite knowing that [Ms. Means] was being repeatedly sexually abused and raped." *Id.* at ¶ 616.

As in *Bistline* where a claim was properly pled because the complaint provided sufficient facts of the defendants' knowledge of the benefit from participating in a venture, Plaintiffs here have properly pled the knowing benefit element of Section 1595 when considering the TAC as a whole. *See Bistline*, 918 F.3d at 875 (holding that allegations supported TVPRA claims "when read in light of the complaint as a whole"). There are sufficient allegations in the TAC to connect USAT's benefit to the alleged violations of the TVPRA. *See, e.g.*, TAC at ¶¶ 193 ("USAT knew or was willfully blind that the Lopez brothers presented a clear and present danger to young female athletes."); 591 ("USAT knew or recklessly disregarded the fact that Steven Lopez was obtaining [one of the Plaintiffs'] forced labor and sexual services."). Along with *Bistline*, Plaintiffs' TAC conforms with the holdings of the cases cited by USAT. Taken as a whole, I find that the allegations in the TAC properly allege a knowing benefit to USAT, on a venture liability theory, to state a plausible Section 1595(a) claim.

D.   Transportation for Claim 3 under 18 U.S.C. § 1590(a)

USAT and Plaintiffs also disagree as to whether Plaintiffs have properly alleged acts of transportation for a Section 1590(a) claim. USAT argues that the "TAC alleges one specific, and untimely, occasion of transportation" in Ms. Joslin's travel to Bonn, Germany in 2006. Mot. at 11. Plaintiffs respond the whole of the TAC properly alleges a violation of Section 1590 and does not rely on that sole instance. Resp. at 14.

"The TVPRA prohibits recruiting, harboring, transporting, providing, or obtaining by any means any person for labor or services in violations of laws prohibiting slavery or involuntary

servitude." *Francisco v. Susano*, No. 10-cv-00332-CMA-MEH, 2013 WL 4849109, at *3 (D. Colo. Sept. 10, 2013).  Section 1595 provides a civil remedy, pursuant to Section 1590, against "[w]hoever knowingly . . . transports . . . any person for labor or services in violation of this chapter."  18 U.S.C. §§ 1595(a), 1590(a).

In this case, when reviewing the SAC, Judge Arguello found that the allegations in Claim 5 (which are the same as in Claim 3 here) satisfied the plausibility standard for a motion to dismiss. Judge Arguello ruled that because the "SAC alleges that Defendant USAT 'knowingly benefitted from participating in a venture with [Defendant] Steven Lopez,' who it knew or should have known was **transporting** Plaintiff Joslin for her sexual labor or services," the allegations would survive the motion to dismiss.  Order at 28 (emphasis added).  With one exception described below, I see no reason to recommend deviating from that prior ruling.

For Claim 3, Plaintiffs allege that "USAT, through their [sic] agent, Steven Lopez, knowingly transported [Ms. Joslin] to Bonn, Germany, and to various tournaments and training centers between 2006 and 2010."  TAC at ⁋ 599.  The allegations regarding Ms. Joslin's 2006 trip to Bonn, Germany are described in greater detail in the TAC.   ⁋⁋ 461–476.  However, details regarding Ms. Joslin's other alleged transportation are absent from the TAC aside from the broad statement that "USAT . . . knowingly transported [her] . . . to various tournaments and training centers between 2006 and 2010."  TAC at ⁋ 599.

USAT contends it is undisputed that Ms. Joslin's trip to Bonn, Germany was in 2006 and, thus, any claim based on it is untimely.  I agree.  With respect to the SAC, I recommended, and Judge Arguello adopted, a finding that Plaintiffs' claims were not barred by the statute of limitations from May 4, 2008 to May 4, 2018.  Recommendation at 31; Order at 28.  Ms. Joslin's trip to Bonn occurred in 2006, which places it outside the limitations period.  If Plaintiffs relied

solely on this alleged act of transportation, the Motion would necessarily be granted on this claim. However, Plaintiffs allege transportation occurred on various occasions between 2006 and 2010. Any alleged act of transportation between May 4, 2008 and 2010 is a valid claim for purposes of the statute of limitations.   USAT argues that Plaintiffs "must allege, at a minimum, timely occurrences of transportation by USAT, including dates and places accompanied by incidences of sexual abuse by Steven Lopez on those occasions." Mot. at 11–12.   USAT cites no case law, and I have found none, for the proposition that the pleading of transportation must be done with some level of particularity.   Therefore, consistent with Judge Arguello's ruling on the SAC, I find Claim 3 in the TAC to be plausibly pled.

   E.   Obstruction of Government Enforcement for Claim 8 under 18 U.S.C. §§1590(b) and 1591(d)

   In its penultimate argument, USAT contends that Plaintiffs have failed to allege any obstruction of a governmental investigation as required by Sections 1590(b) and 1591(d).   Mot. at 12–14.   Plaintiffs contest USAT's argument by insisting that the TAC, as a whole, contains allegations which sufficiently plead a claim.

   To state a claim under the obstruction provisions, Plaintiffs must allege USAT "obstruct[ed], attempt[ed] to obstruct, or in any way interfere[d] with" the "enforcement" of Sections 1590(b) or 1591(d).   Of course, as Judge Arguello previously found, "the [TVPRA's] obstruction provisions are concerned only with governmental enforcement of the [TVPRA]. Obstruction of a private investigation does not give rise to liability under Section 1590(b) or 1591(d)." Order at 46.   In other words, there must be some level of **government** enforcement with which USAT must be alleged to have obstructed or interfered.

   In Paragraph 637 of the TAC, Plaintiffs allege seventeen actions by USAT which they contend are in violation of 18 U.S.C. §§ 1590(b) and 1595(a).   Of these, thirteen do not allege

USAT obstructed any governmental enforcement.[2]   One allegation is unclear as to whether it involves obstruction of a government investigation.[3]   Three allegations deal directly with USAT's alleged obstruction of some government investigation.[4]   Given that there must be some governmental enforcement mechanism at work for obstruction to apply, Plaintiffs cannot rely on their allegations that do not include governmental enforcement to prove Claim 8.   Thus, the sufficiency of the claim is determined on whether the remaining allegations, which do contain mention of government enforcement, are plausibly pled.

One major disagreement between the parties is whether allegations of misrepresentations to Congress constitute obstruction of government enforcement of the TVPRA.   The TAC contains allegations that Steve McNally, the Executive Director of USAT, lied about or misrepresented certain actions by USAT in investigating allegations of misconduct against the Lopez brothers to the detriment of Plaintiffs.   *See, e.g.*, TAC at ¶¶ 149, 158, 687.   USAT argues that, if Plaintiffs rely on this testimony to Congress as the required obstruction, these allegations do not give rise to the necessary type of enforcement.   USAT contends that only obstruction of "enforcement" is sufficient, and "[o]nly the executive and the judicial departments of government can enforce the

---

[2] TAC at ¶ 637(a)–(i), (k)–(n) (*see, e.g.*, (a) "ignoring verbal and written complaints of sexual abuse, trafficking, and forced labor and services;" (e) "advising athletes to withdraw complaints of sexual abuse, trafficking, and forced labor and services when they knew the complaints were truthful;" (h) making false statements about athletes regarding sexual abuse, trafficking, and forced labor and services.").

[3] TAC at ¶ 637(j) ("feeding false information to investigators and the media about Mandy Meloon").

[4] TAC at ¶ 637(o)–(q) ((o) "[f]ailing to contact law enforcement immediately upon knowing that Jean and Steven Lopez were engaging in forced labor and services and sex trafficking;" (p) "[f]alsely telling Plaintiffs that police reports were being filed when, in fact, no police reports were filed; and" (q) "[f]ailing to provide the FBI with immediate and detailed records and documents regarding the numerous sex crimes, trafficking, and forced labor and services violations by the Lopez brothers.").

laws." Mot. at 12.  Because Congress is neither an executive nor judicial department, USAT argues that obstruction of Congress cannot constitute the type of obstruction contemplated by the TVPRA.

Plaintiffs argue in their Response that USAT "went to great lengths to protect the Lopezes from prosecution, affirmatively acted to delay and suspend reports of abuse to law enforcement and the FBI, . . . and affirmatively misrepresented facts to Congress during a congressional hearing held specifically to ferret out sexual abuse in Olympic sports, including taekwondo."  Resp. at 15. While the question of whether obstruction of congressional action may constitute obstruction for purposes of Sections 1590(b) and 1595(b) is a novel and important one, it is not a question that I need to decide here.  Allegations in the TAC suggest USAT interfered or obstructed with governmental entities beyond Congress.  *See, e.g.*, TAC at ¶¶ 108 ("USAT engaged in corrupt testimony to Congress and obstruction of the enforcement of the [TVPRA] to cover-up and interfere with the investigation of the Lopez brothers by law enforcement, the FBI and Congress."); 637(o)–(q) (dealing with law enforcement).  Considering the TAC as a whole, then, there are sufficient allegations that USAT interfered or obstructed law enforcement investigations (whether local or federal) such that the claim of obstruction is plausibly pled.

      F.     <u>Venture for Claim 8 under 18 U.S.C. § 1595(a)</u>

USAT argues that Claim 8 must be dismissed because Plaintiffs do not plausibly plead a venture for purposes of Section 1595(a).  USAT bases its argument on the fact that Plaintiffs have alerted USAT that, although Claim 8 is currently pled against both Steven Lopez and USAT, Plaintiffs anticipate they will only pursue Claim 8 against USAT at trial.  Plaintiffs do not contest this in their Response.  Assuming, then, that Plaintiffs intend to bring Claim 8 only against USAT and not Steven Lopez, the question becomes whether the claim can survive as pled solely against USAT.

Section 1595(a) provides a private cause of action for "[a]n individual" against "the perpetrator (**or** whoever knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a) (emphasis added). The language of the statute suggests that a plaintiff alleging a claim under Section 1595(a) has some discretion in bringing the claim. That is, a plaintiff may bring a claim against "the perpetrator" or against "whoever knowingly benefits" financially from "participation in a venture." *See Mojsilovic v. Oklahoma ex rel. Bd. of Regents for Univ. of Oklahoma*, 841 F.3d 1129, 1132 (10th Cir. 2016) ("[T]he TVPRA's civil remedy provision establishes a private cause of action against a 'perpetrator' **or** 'whoever' violates the TVPRA.") (emphasis added). Certainly, a plaintiff would need to establish a "venture" to bring a claim against someone who is not a perpetrator. But on the face of the statute, there is no requirement that the plaintiff bring a claim against **both** the perpetrator and whoever knowingly benefits.

The Tenth Circuit found persuasive the First Circuit's application of the definition of "venture" under Section 1591(e)(6) as "any group of two or more individuals associated in fact, whether or not a legal entity" to Section 1589. *Bistline*, 918 F.3d at 873 (citing *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017)). As such, Judge Arguello adopted the broad definition of "venture" when she issued her Order in this case on the SAC. Order at 35. Although the Tenth Circuit defined "venture" under Section 1589(b), the parties have articulated and I find no reason why this same definition should not apply to Section 1595(a).

In the present case, Judge Arguello previously found that the SAC plausibly pled a venture. Order at 35 ("In this case, considering the SAC in its entirety . . . the Court is satisfied that Plaintiffs have sufficiently alleged that Defendant Steven Lopez and [USAT] are 'associated in fact' and therefore qualify as [a] venture under Section 1589(b)."). Because the allegations dealing

18

with Claim 8 (and the federal claims more broadly) are substantially similar between the SAC and the TAC, I see no reason to recommend deviating from the previous ruling that Plaintiffs have plausibly alleged a venture between Steven Lopez and USAT.

The question becomes whether the claim can survive if Plaintiffs do not bring it against both members of the venture.  I find that even if Plaintiffs choose not to pursue Claim 8 against Steven Lopez, Claim 8 survives against USAT because Plaintiffs have plausibly pled a venture. The language of the statute is clear that a Section 1595(a) claim does not need to be raised against both the perpetrator and everyone else who financially benefited.  The claim is properly alleged against the perpetrator or whoever financially benefited or both.  18 U.S.C. § 1595(a).  Moreover, for purposes of Section 1589(b), "one can be liable for violation of Section 1589's prohibition on forced labor or services 'simply by benefiting financially from participation in a 'venture' with the primary offender.'" Order at 21 (quoting *Bistline*, 901 F.3d at 871).  Applying that logic to Section 1595(a) leads to the same result.  USAT can be liable under Section 1595(a) because Plaintiffs have plausibly pled that USAT has benefited financially from participation in a venture with Steven Lopez.  USAT's potential liability is not conditioned upon Plaintiffs bringing claims against both USAT and Steven Lopez; rather, the potential liability is only conditioned upon allegations that USAT financially benefited from a venture with Steven Lopez.

Therefore, based on the above analysis regarding Plaintiffs' TVPRA claims, I respectfully recommend that the Motion be **denied** with respect to Claims 2, 3, 5, and 8.

## II.    State Law Claims

In its Motion, USAT argues three reasons why the TAC fails to plausibly plead the state negligence claims: (A) there exists no special relationship between USAT and Plaintiffs sufficient for a legal duty to exist, (B) there has been no assumption of duty by USAT, and (C) public policy

dictates that this Court should not find a duty exists.  Plaintiffs' Response disputes these arguments, primarily emphasizing that "the duty element of Plaintiffs' negligence claim against USAT is based on USAT's voluntary assumption of a duty."  Resp. at 5.

A.    "Special Relationship"

Plaintiffs' TAC contains allegations of a "special relationship" between USAT and the Plaintiffs.  TAC at ¶¶ 653, 670, 712, 728, 770, 786, 828, 845.  USAT is correct that Colorado law recognizes only a limited number of "special relationship" categories.  A "special relationship" can only create a legal duty between "(1) common carrier/passenger, (2) innkeeper/guest, (3) possessor of land/invited entrant, (4) employer/employee, (5) parent/child, and (6) hospital/patient."  *N.M. v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017) (citing *Univ. of Denver v. Whitlock*, 744 P.2d 54, 58 (Colo. 1987)).   However, Colorado law uses these "special relationships" only to create a duty in instances of nonfeasance.  *Montoya v. Connolly's Towing, Inc.*, 216 P.3d 98, 104–105 (Colo. App. 2008) ("[I]n nonfeasance cases, the plaintiff has the added burden of establishing that a special relationship exists between the parties such that social policy justifies the imposition of a duty to act.").

Plaintiffs adamantly argue that the TAC contains allegations of misfeasance instead of nonfeaseansce.  Resp. at 5 ("The duty arises from USAT's voluntary and affirmative decision to act.").  I agree.  The Plaintiffs allege affirmative actions by USAT that created a risk of or actual harm to Plaintiffs (*i.e.*, USAT's investigation).  *See Montoya*, 216 P.3d at 105 (quoting *Smit v. Anderson*, 72 P.3d 369, 372 (Colo. App. 2002)) ("[A] misfeasant creates a risk of harm . . . while the nonfeasant . . . merely fails to benefit the injured party by interfering in his or her affairs.").  Plaintiffs do not allege, for example, that their harm was caused by USAT's failure to investigate.  Plaintiffs' allegations in the TAC are thus best viewed as allegations of misfeasance.  Because

Plaintiffs allege misfeasance, there is no need to delve into a special relationship analysis since it applies only to nonfeasance cases.

B.  Assumption of Duty

The crux of the dispute over the duty element of Plaintiffs' claims concerns whether USAT assumed a duty.  Plaintiffs contend that the TAC contains sufficient allegations to find that USAT undertook actions which caused it to assume a duty in relation to Plaintiffs.  Resp. at 7–8.  USAT asks this Court to dismiss the TAC with respect to all negligence claims because Plaintiffs cannot establish USAT assumed any lawful duty.

Under Colorado law, "a party may assume duties of care by voluntarily undertaking to render a service, and negligent performance of that assumed duty may impose liability."  *E. Meadows Co. v. Greeley Irrigation Co.*, 66 P.3d 214, 218 (Colo. App. 2003).  "Under the 'assumed duty' or 'good samaritan' doctrine . . . the question of whether [a defendant] assumed duties to the [plaintiff] . . . is obviously not a purely legal question [and] . . . . becomes a mixed question of law and fact."  *Jefferson Cty. Sch. Dist. R-1 v. Justus*, 725 P.2d 767, 771 (Colo. 1986).  Any argument that a defendant has assumed a duty "must be predicated on two factual findings."  *Id.*  First, "[a] plaintiff must . . . show that the defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff."  *Id.*  "Second, a plaintiff must also show either that he relied on the defendant to perform the service or that the defendant's understanding increased plaintiff's risk."  *Id.*

"[T]he scope of any assumed duty . . . must be limited to the performance with due care of that service undertaken, because the [defendants'] liability under a voluntarily assumed duty can obviously be no broader than the undertaking actually assumed."  *P.W. v. Children's Hosp. Colo.*,

364 P.3d 891, 897 (Colo. 2016) (quoting *Justus*, 725 P.2d at 772 n.5).   In *P.W.*, the question presented was whether a hospital assumed an affirmative duty of care to a patient when the hospital admitted the patient to an inpatient psychiatric unit as a result of the patient's suicidal impulses. The type of harm that the hospital tried to prevent was the patient harming himself.   The Colorado Supreme Court held that when a hospital admits someone who the hospital knows is suicidal and admits that person for the purpose of preventing self-harm, "the hospital assumes a duty to use reasonable care in preventing the patient from engaging in such behavior."   *Id.* at 898.   In other words, the hospital assumed a duty to act because it "undertook to render a service . . . reasonably calculated to prevent the type of harm that befell the plaintiff" and the plaintiff relied on the hospital's service.   *Justus*, 725 P.2d at 771.

In this case, USAT argues that Plaintiffs have failed to plausibly plead "that USAT's investigation was reasonably calculated to prevent the type of harm that allegedly 'befell' them." Mot. at 5.   Plaintiffs, in nearly identical paragraphs in the TAC, allege that "[t]hrough USAT's promises to act, and through its representations about its actions, USAT purported to render a service that was reasonably calculated to prevent the very type of harm that [Plaintiffs have] now endured:  physical injury, physical trauma, complex emotional distress, and mental anguish." TAC at ¶¶ 695, 753, 811, 870.   Thus, in each state law claim, Plaintiffs allege that the harms that befell them were physical injury, physical trauma, complex emotional distress, and mental anguish. Therefore, the proper question is whether USAT rendered a service "reasonably calculated to prevent" that type of harm.   The answer is no.

Plaintiffs allege that the affirmative act by USAT to create a legal duty is the investigation conducted by USAT into the alleged sexual abuse by the Lopez brothers.   Through its alleged "sham" investigation, USAT dragged Plaintiffs into interviews and other scenarios where

Plaintiffs were subjected to secondary traumatization from having to relive their alleged abuse.  In fact, as Plaintiffs allege, Plaintiffs were led to believe that "USAT was undertaking a good faith investigation to determine if its current members, Jean and Steven Lopez and other USAT members, posed an unreasonable risk of harm to other current USAT-member athletes, including minor athletes."  TAC at ¶¶ 663, 721, 779, 838.  In other words, USAT's purpose in conducting its investigation was to "investigate allegations of prior abuse by one or more USAT members." TAC at ¶¶ 670, 728, 786, 845.

The purpose of USAT's investigation, then, was not to prevent secondary traumatization to former victims of sexual abuse.  Instead, taking Plaintiffs' allegations as true, the purpose of the investigation was to assess the threat of the Lopez brothers to current USAT members.  Unlike in *P.W.*, the service at issue is not meant to prevent the alleged harm.  In *P.W.*, the patient engaged in self-destructive harm which the hospital sought to prevent through admitting the patient to the hospital's inpatient psychiatric ward.  There, the service rendered (admission to the psychiatric ward) was directly calculated to prevent the type of harm at issue (self-harm).  Here, the service rendered (the investigation) was not directly or reasonably calculated to prevent the type of harm that befell Plaintiffs (secondary traumatization and physical harm).  There are no allegations in the TAC reflecting that the purpose of USAT's investigation was to prevent sexual abuse survivors from suffering secondary traumatization.  In fact, the TAC contains no allegations that the investigation was meant to protect former USAT members at all; rather, the TAC includes allegations that the investigation was meant to assess the risk to **current** USAT members.

Certainly, if taken as true, the allegations of USAT's investigation suggest that the effect of the investigation was harm to Plaintiffs through secondary traumatization.  Yet, that is not the standard for establishing duty for an assumption of duty inquiry under Colorado law.  For this

Court to hold that USAT assumed a duty, Plaintiffs need to show that the service rendered by USAT was reasonably calculated to prevent the type of harm that befell Plaintiffs. Plaintiffs have not done that here. Thus, because the TAC fails the first prong of the *Justus* inquiry, I find that USAT assumed no duty in relation to Plaintiffs.

      C.    <u>Public Policy</u>

The Court recognizes that the parties have also made opposing arguments regarding policy considerations in determining whether USAT assumed a legal duty. Mot. at 7; Resp. at 9. Because I find as a matter of law that USAT assumed no duty under Colorado law, I do not reach the merits of the parties' public policy arguments.

Therefore, I recommend that the Motion with respect to Claims 9, 10, 11, and 12 be **granted** for failure to establish a legal duty.

<u>**CONCLUSION**</u>

I respectfully RECOMMEND that Judge Arguello **GRANT IN PART** and **DENY IN PART** Defendant USAT's Motions to Dismiss [<u>filed February 21, 2020; ECF 294</u>] as follows: dismiss Claim 9; Claim 10; Claim 11; and Claim 12, and permit (in addition to Claims 1, 4, 6, and 7) Claim 2; Claim 3; Claim 5; and Claim 8 to proceed.

Respectfully submitted this 29th day of May, 2020, at Denver, Colorado.

                           BY THE COURT:

                           *Michael E. Hegarty*

                           Michael E. Hegarty
                           United States Magistrate Judge

24