**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN and
KAY POE

       Plaintiffs,

v.

USA TAEKWONDO, INC. and
STEVEN LOPEZ

       Defendants.

---

**DEFENDANT USA TAEKWONDO, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Defendant USAT, Taekwondo, Inc. ("USAT"), by and through its attorneys, hereby moves the Court pursuant to Fed. R. Civ. P. 56(b) for partial summary judgment on Counts 2, 3, 5, and 8 of Plaintiff's Third Amended Complaint.

### I. Background

This case began on April 25, 2018. [D.E. 1]. Now on their fourth complaint, Plaintiffs have pursued a class action, 34 federal causes of action, and six state law causes of action against five named defendants. *See generally* [D.E. 6, 68]. With two named defendants remaining, there are now eight federal causes of action and four re-pleaded negligence counts pending a recommendation for dismissal. *See generally* [D.E. 218, 266, 293, 319].

Plaintiffs' theory of liability continues to draw heavily on, often untimely, allegations of power, control, and malfeasance by dismissed defendants Jean Lopez, the USOC, and SafeSport. *See e.g.* [D.E. 293, ¶¶1-35, 63-107, 111-113, 125-144, 236-241, 352-376, 387-409, 444-452, 482-487, 500-506, 570-574]. Fact discovery closed on August 14, 2020 and dispositive motions are due December 4, 2020. [D.E. 335]. USAT maintains its arguments in its most recent motion to dismiss and objection to the magistrate's recommendation, and directs this Motion for Partial Summary Judgment to the federal claims that would remain against USAT in the event this Court follows the Magistrate's recommendations.[1]

## II.  Statement of Undisputed Material Facts

1. Gaby Joslin's (Joslin) USAT athlete membership expired on December 31, 2006. (USAT's Appx. (UA), p. 8 Gabriela Joslin  Deposition (GJD) 99:20 - 100:2, UA, p. 16 GJD Ex. 121).

2. Joslin competed as an independent athlete (not part of a team) in the German Open in 2006 and last participated in taekwondo as an athlete a few weeks after the German Open in 2006. (UA, p. 2 GJD 15:17 - 16:24; UA, p. 4 GJD 44:21-24). Jean Lopez stopped coaching her the same year. (UA, p. 7 GJD 93:12-18).

3. During 2009, 2010, and 2011, Joslin attempted to develop a business relating to taekwondo with Jean Lopez and his family that never went beyond setting up an LLC. (UA, p. 3 GJD 37:3-23; UA p. 3 GJD 38:12-17; UA, p. 4-5 GJD 44:18 - 45:14).

---

[1] USAT reserves its right to seek leave to file a second motion for summary judgment directed to Plaintiff's state law negligence claims in the event the Court does not follow the Magistrate's recommendation that such claims should be dismissed for a second time. Plaintiffs' federal claims are ripe for summary judgment.

4. Joslin had four to ten sexual encounters with Steven Lopez between 2006 and either 2009 or 2010. (UA, p. 9 GJD 116:2-17, UA, p. 10 GJD 126:16-25, UA, p. 15 Steven Lopez Dep. (SLD) 35:15-36:7).

5. Joslin never disclosed any allegation of misconduct against Steven Lopez until the filing of this lawsuit either to USAT or to law enforcement. (UA, p. 11 GJD 156:7-16, UA, p. 16 Plaintiffs' Interrogatory Responses #22).

6. Amber Means' (Means) USAT membership ended on January 16, 2012. (UA, p. Hangastar, p. 20, UA, p. 35 Plaintiffs' RFA Responses #1).

7. Means trained at Jean Lopez's Taekwondo studio, Elite Taekwondo, from 2004 to 2011. (UA, p. 38 Amber Means Deposition (AMD) 29:2-6).  After her departure from Elite, she stopped participating in Taekwondo. (UA, p. 39 AMD 41:22-25, UA, p. 39 AMD 42:8-12).

8. Means' most recent allegation of misconduct against Steven Lopez, involving an incident at a private residence, is February 2013. (UA, p. 40-41 AMD 102:23-107:2). UA, p. 40-41 AMD 103:11-106:3).

9. Means did not did not report her complaints about Steven Lopez to anyone connected with USAT until she disclosed them in the course of the Donald Alperstein and Leah Wicks investigation on April 26, 2015.  (UA, p. 61 AMD Ex. 137, UA, p. 65 Plaintiffs Response to Interrogatories #21).

10. Mandy Meloon (Meloon) and Steven Lopez, who are approximately two years apart, had some kind of intimate or romantic relationship, from 1999 or 2000 when she was 18

or 19 until 2006 or 2007. (UA, p. 46-47 Meloon Deposition (MMD) 67:2-17; 67:24-68:17; 69:1-21; 71:11-15; 72: 9-12, UA, p. 14 SLD 33:1-23; UA, p. 19, 24 Hangastar, pp. 3, 8).

11. Over the course of Meloon's membership with USAT, she made several complaints and pursued an arbitration against USAT. During this time, Meloon did not include physical or sexual misconduct complaints about Steven Lopez in any of the following: (a) The written complaint made to USAT 2006 or during the subsequent settlement she signed with USAT in 2007. (UA, p. 48-52 MMD. 92:12-107:22,  UA, p. 125-134 MMD Ex. 142, (UA, p. 135 Plaintiffs' RFA Responses #5-6, UA, p. 3 (b) 2007 e-mail communications she had with USAT or her MySpace blog posts; (UA p. 53-54 MMD 109:18-114:7, UA p. 136-138 MMD Ex. 144, UA p. 55-58 MMD 127:1-140:20, UA p. 139-159 MMD Ex. 149, UA p. 160-165 MMD Ex. 150); (c) The arbitration proceeding she brought against USAT; (UA, p. 166-176 Steve McNally Deposition (SMD) Ex. 3, UA, p. 177-184 USAT011954-USAT011960); (d) The report she made about Jean Lopez to the Palm Bay Police Department in April 2007. (UA, p. 185 MMD Ex. 141, UA, p. 44 MMD 11:12-18).

12. Plaintiffs have offered internally inconsistent positions regarding USAT's knowledge of Meloon's allegations against Steven Lopez prior to 2015. They have admitted that a cited document by USAT is the written complaint Mandy Meloon that is the subject of Paragraph 120 of Dkt. 293. (UA, p. 50-52 MMD 92:12 - 107:22, UA, p. 125-134 MMD Ex. 142, UA, p. 135 Plaintiffs' RFA Responses #5-6, UA, p. 128-132 MMD Ex. 142). That document does not contain an allegation of sexual misconduct against Steven Lopez. But recently they have cited to a February 3, *2018* e-mail from Meloon to Steve

McNally in which she states, "I want to make sure that you know I officially reported it and (*sic*) in 2006 to Dave…". (UA, p. 186 Plaintiffs' Interrogatory Responses #11, UA, p. 187 Plaintiffs_003805, UA, p. 193 USAT029750).  The other  documents cited by Plaintiffs that they say establish USAT's knowledge of Meloon's allegations against Steven Lopez prior to 2015 include; (a) a July 17, 2007 e-mail where she calls Steven Lopez her "abuser" along with five other people that include her father (James Meloon) and a woman who "represented" her as a non-attorney in her arbitration against USAT (Denise Coyle) unaccompanied by any description of abuse; (b) A July 30, 2007 Texas Workforce Commission Charge of Discrimination where she says she has been subjected to "sexual abuse, harassment, and unwelcome physical contact" by Steven Lopez and four other people unaccompanied by any description of abuse;  (c) A February 13, 2011 with the subject line, "I need to report US. Olympic medalist and Olympic coach sexually abusing minors in Texas Importance: 1" unaccompanied by any description of abuse or names of abusers. (UA p. 187 Plaintiffs' Interrogatory Responses #11, UA, p. 197 USOC-GIL-00023832).

13. David Askinas, former CEO of USAT from 2006 until spring or summer of 2011, contemporaneously made handwritten notes about Meloon's 2006 complaint, but did not note that Meloon made a complaint of any kind of misconduct against Steven Lopez nor did he recall a complaint against Steven Lopez. (UA, p. 198-199 USAT013992-USAT013993, UA, p. 210 David Askinas Deposition (DAD) 31:19-25 #33, UA, p. 210 DAD 32:1-9, UA, p. 211 DAD 39:6-23, UA, p. 211-212 DAD 41:23-42:6, UA, p. 213-216

DAD 135:16-147:18, UA, p. 200-207 DAD Ex. 162, UA, p. 218-220 USAT011867-USAT011869).

14. No information about misconduct by Steven Lopez is contained within a communication sent by USAT's counsel, John Collins, to an independent attorney who reviewed the Meloon matter on behalf of the USOC. (UA, p. 217 DAD 166:19-168:11, UA, p. 221-224 DAD Ex. 170). Nor does discovery include any subsequent revelation of facts uncovered by the independent attorney relating to misconduct by Steven Lopez.

15. Bruce Harris, former CEO of USAT from March of April 2013 to 2015, could not recall a complaint by Mandy Meloon against Steven Lopez any earlier then "maybe 2014." (UA, p. 226 Bruce Harris Deposition (BHD) 80:8- 81:1, UA, p. 227 85:17-22, UA, p. 215:16 -216:19).

16. The first time specific complaints of sexual misconduct by Steven Lopez were memorialized in writing and received by anyone connected to USAT was via investigator Leah Wicks' reports of interviews with Meloon and Means on April 26, 2015. UA, p. 230 Meloon report: USAT-ESI0007052, p. 2, UA, p. 61 AMD Exhibit 137).

17. Without agreeing that they had an obligation or sufficient information to make a report, USAT acknowledges that former CEO's David Askinas and Bruce Harris did not report either Jean or Steven Lopez to law enforcement. (UA, p. 228 BHD 170:15-171:20, UA., p. 209 DAD 19:8-11).

18. In a matter unrelated to Steven Lopez or Jean Lopez, USAT retained Donald Alperstein as special independent disciplinary counsel on July 18, 2014. (UA, p. 66 Plaintiffs' RFA Responses #10, UA, p. 68-69 Stephen Hess Deposition Vol. II (SHD II)

45:24-48:24, UA, p. 76 SHD II Ex. 251). That agreement remained in place and governed his work following the posting of the Christina Johnson YouTube video on March 28, 2015 (Christina Johnson YouTube video available at https://www.youtube.com/watch?v=oLNHDArj8-8&sns=em) through the transfer of the Jean and Steven Lopez matters to the U.S. Center for SafeSport in March 2017. (UA, p. 78-81 Plaintiffs' RFA Responses #17, 33, 34, 46, UA, p. 91 SMD 88:21-23, UA, p. 121 Donald Alperstein Deposition Vol. I (ALP I) 42:12-16, UA, p. 96-97 SMD, 118:19-119:2, UA, p. 102 124:13-17, UA, p. 121 ALP I 41:12-42:4).

19. Prior to the transfer of the Steven and Jean Lopez matters to the U.S. Center for SafeSport, USAT CEO Keith Ferguson instructed Alperstein to report the matters to various U.S. law enforcement agencies.  (UA, p. 87-88 SMD 31:11-32:7, UA, p. Keith Ferguson Deposition Vol I (KFD I) 16:19-17:15, UA, p. 20:16 -21:14, UA, p. 123 ALP I 79:15-21).

20. Mr. Alperstein made his reports to law enforcement in the fall of 2016 after obtaining the consent of the four Plaintiffs who agreed to talk to him.  (UA, p. 79-80 Plaintiffs' RFA Responses# 31, 33, 34, UA, p. 236 KFD I 22:5 - 24:18, UA, p. 237 Keith Ferguson Deposition Vol. II (KFD II) 115:1-21, UA, p. 242 KFD II Ex. 186, UA, p. 238 KFD II 110:11-111:11, UA, p. 243-246 KFD II Ex. 184, UA, p. 240 KFD II 128:19- 129:24, UA, p. 247-248 Ferguson Dep. Ex. 193, UA, p. 142 KFD II 135:3-137:9, UA, p. 249-252 KFD II Ex. 198,  UA, p. 11 GJD 153:25 - 154:3; 154:22-25, UA, p. 42 AMD 189:9 -190:23, UA, p. 44-45 MMD 10:2-25, UA, p. 45 13:4-21, UA, p. 44 11:1-9, UA, p. 45 14:1-7, UA, p. 60 HGD 21:8- 23:24, UA, p. 825 Stephen Hess Deposition Vol. I (SHD I) 95:2-18, UA,

p. 122 ALP I  67: 4-8, UA, p. 123 ALP I 78:20-79:14, UA, p. 123-127 ALP I 78:20-79:21, 80:24-82:3, 95:24-96:25, UA, p. 495 USAT004582, UA, p. 253-254 USAT-ESI00000922, UA, p. 255-381, LEA Combined Reports).

21. All Plaintiffs were adults for the entirety of the work Alperstein did from the spring of 2015 to February 2017.  (UA, p. 17, 19, 20 and 23 Hangastar. 1, 3, 4, and 7,  UA, p. 383 Kay Poe Deposition (KPD) 11:4-8).  None of them were minors during any of the periods of validity for any federal claim against USAT. (UA, p. 17, 19, 20 and 23 Hangastar pp. 1, 3, 4, 7, UA, p. 383 KPD 11:4-8).

22. Steve McNally joined USAT in August of 2014 as Director of Marketing and Communications.  (UA, p. 83 SMD 11:14-20). He had no role in retaining Alperstein and had no communication with Alperstein until after he became Executive Director on October 1, 2017.   (UA, p. 84-86 SMD 28:5 - 30:12, UA, p. 89-90 36:3-37:25).

23. Congress notified USAT in January 2018 that it was conducting an inquiry of USAT's past handling of sexual abuse complaints, including those dealing with Jean and Steven Lopez. (UA, p. 826 Plaintiffs' RFA Responses# 47, UA p. 384-386 USAT-ESI0032027-32029).

24. The correspondence from Congress advises that the inquiry is being conducted pursuant to Rules X and XI of the United States Representatives, Committee on Energy and Commerce. (UA, p. 384-386 USAT-ESI0032028).

25. McNally prepared his Congressional testimony by reviewing records at USAT and with the assistance of Donald Alperstein and outside general counsel (since 2013) Stephen Hess. (UA, p. 92-101 SMD 114:7-123:21, UA, p. 102-104 125:11-127:15, UA,

p. 104-107 127:20-130:15, UA, p. 108 131:5-13, UA, p.109 132:4-24, UA, p. 110-111

133:5–134:17; UA, p. 112 135:11, UA, p. 119 142:5, UA, p. 387 SMD Ex. 1, UA, p. 412-

464 SMD Ex. 2, UA, p. 465-469 USAT-ESI0016054-USAT-ESI0016058, UA, p. 824

SHD I 17:14-19 UA, p. 70 SHD II 55:25 - 56:22, UA, p. 71-74 SHD II 82:22 - 97:23, UA,

p. 470-194 SHD II Ex. 257, UA, p. 495 UA, p. 72 USAT004582/SHD II 87:6, UA, p. 253,

UA, p. 72 USAT-ESI000922/SHD II 89:25, (#49  UA, p. 74-75 SHD II 100:15 - 103:1).

26. With respect his Congressional testimony about the Meloon allegation from 2006,

Mr. McNally testified that he located documents summarizing what David Askinas had

done, including the decision issued by the AAA Arbitrator. (UA, p. 95 SMD 117:17-20,

UA, p. 119 142:15-24, UA, p. 166-176 SMD Ex. 3). He reviewed the Meloon settlement

agreement referenced in his testimony. (UA, p. 96 SMD 118:2-12).

27. Plaintiffs base their assertions that McNally provided false testimony to Congress on

various documents and information or opinions held by various individuals. (UA, p. 496-

502 Plaintiffs' Interrogatory Responses #5-10,  UA, p. 503-662 Docs accompanying

RFP's 5, 7).  The dispute over the whether these documents establish falsity aside,

there is no evidence that McNally consulted the documents or individuals advanced by

Plaintiffs in preparing his Congressional testimony.

28. There is no evidence to suggest that Congress considered anything relating to the

Trafficking Victims Protection Act in connection with its 2018 inquiry to USAT.

29. The parties agree that there is no evidence that a TVPRA enforcement action exists

in this case. The basis of Plaintiffs' obstruction theory is that various government actors

"could, should, or would" have investigated USAT but for USAT's "lack of notification" to law enforcement agencies."  (UA, p. 663-666 Plaintiffs' Interrogatory Responses, #1-5).

30. To extent any law enforcement investigation does exist, there is no evidence of what statutory violations may have been contemplated by the any law enforcement agency, much less any TVPRA investigation. (UA, p. 663-666 Plaintiffs' Interrogatory Responses, #1-5 including documents cited at #4-5).

### III.  Legal Standard

Summary judgment is proper when the evidence reveals no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Markwest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009). The party moving for summary judgment must demonstrate that there is an absence of evidence in the record to support the nonmoving party's case. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995). A party opposing on the ground that material facts are disputed has the burden to demonstrate a genuine issue for trial on a material matter. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Concrete Works*, 36 F.3d at 1517. A "material" fact is one which might affect the outcome of the dispute under the applicable law. *Ulissey v. Shvartsman,* 61 F.3d 805, 808 (10th Cir. 1995). If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 324; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986).

## IV.  Elements of Plaintiffs' Federal Claims

Plaintiffs bring their federal causes of action (Counts 2, 3, 5, and 8) against USAT

pursuant to 18 U.S.C. 1595(a), which states:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Plaintiffs have the burden of establishing that each element of each claim is timely.[2]

**A.    Forced Labor: 18 U.S.C. §§ 1589(b) 1595(a)**
**Count 2 (Gaby Joslin) and Count 5 (Amber Means)**
**Dates of Validity: December 23, 2008-May 4, 2018[3]**

The elements as previously set forth by the Court[4] are: (1) USAT knowingly

participated in a venture with Steven Lopez; (2) USAT knowingly benefitted from the

venture; (3) The venture has engaged in the providing or obtaining of labor or services

in violation of the TVPRA; and (4) USAT knew or recklessly disregarded the fact that the

venture has engaged in the providing or obtaining of such labor or services.

**B.    Trafficking with Respect to Forced Labor: 18 U.S.C. §§ 1590(a), 1595(a)**
**Count 3 (Gaby Joslin)**
**Dates of Validity: May 4, 2008-May 4, 2018[5]**

Section 1590(a) states in relevant part:

> Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined

---

[2] Because the Magistrate has concurred with USAT that aiding and abetting liability is not contemplated by Section 1595(a), USAT does not further address it here, but maintains its position. [D.E. 319 at 10].
[3] D.E. 218 at 29, 38; D.E. 266 at 14-15.
[4] D.E. 218 at 29, 38; D.E. 266 at 24, 38.
[5] D.E. 218 at 31; D.E. 266 at 14-15, 26-28.

under this title or imprisoned not more than 20 years, or both.

**C.   Obstruction, Attempted Obstruction, Interference with Enforcement: 18
U.S.C. §§ 1590(b), 1591(d), 1595(a), and 2255
Count 8 (All Plaintiffs)
Dates of Validity: April 25, 2008-April 25, 2018[6]**

Section 1590(b), which is the obstruction provision of the TVPRA's unlawful transportation

statute, above, states:

> Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents
> the enforcement of this section, shall be subject to the penalties under subsection
> (a).

Section 1591(d), which is the obstruction provision of the TVPRA statute that prohibits

"sex trafficking of children by fraud, force, or coercion" states:

> Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents
> the enforcement of this section, shall be fined under this title, imprisoned for a
> term not to exceed 25 years, or both.

## V.  Argument

**A.   Counts 2 and 3 are Untimely**

Plaintiff Gaby Joslin's forced labor and trafficking claims against USAT are

untimely. As Magistrate Hegarty noted, Plaintiffs' TVPRA claims are time-barred to the

extent they arise out of conduct prior to May 4, 2008. [D.E. 319 at 14; *see also* D.E. 266

at 28]. In its Motion to Dismiss, USAT argued that Ms. Joslin's claims under Count 3

were subject to dismissal Plaintiffs' allegations related to Joslin's 2006 travel to Bonn,

Germany. [D.E. 294 at 11]. Magistrate Hegarty agreed that any claim based on that

---

[6] D.E. 218 at 42; D.E. 266 at 44. USAT assumes that the intended time period is May
21, 2008 to May 21, 2018 as it meant to include Steve McNally's Congressional
testimony which occurred on May 21, 2018.

allegation would be untimely, but recommended that Count 3 survive dismissal because Plaintiffs alleged that "transportation occurred on various occasions between 2006 and 2010." [D.E. 319 at 14-15]. In reality, Plaintiffs have no evidence to support any allegation that Joslin was subject to forced labor or trafficking by USAT – under any theory of TVPRA liability – after May 4, 2008.

More specifically, Joslin was no longer a USAT athlete by the end of 2006, as her membership expired on December 31, 2006. [Statement of Undisputed Material Facts ("UMF") at ¶ 1]. At the German Open (in Bonn) in 2006, Joslin paid her own way and competed as an independent athlete – not as part of the USAT team. [*Id.* at ¶ 2]. She last participated as a taekwondo athlete a few weeks later. [*Id.* at ¶ 2]. Jean Lopez stopped coaching Joslin in 2006, as well. [*Id.* at ¶ 2]. Though Joslin attempted to develop a business related to taekwondo with Jean Lopez and his family between 2009 and 2011, that effort never went further than establishing an LLC. [*Id.* at ¶ 3]. Though Joslin allegedly had between four and ten sexual encounters with Steven Lopez between 2006 and either 2009 or 2010 [*id.* at ¶ 4], she was not an athlete for any part of the time that is within the statute of limitations. Crucially, Joslin did not disclose any allegation of misconduct by Steven Lopez – to either USAT or to law enforcement – until the filing of the present lawsuit. [*Id.* at ¶ 5].  In other words, Plaintiffs have no evidence that connects USAT to forced labor, trafficking, or sexual contact with Steven Lopez or anyone else on or after May 4, 2008.  Because Plaintiffs cannot raise a genuine issue of material fact as to whether Counts 2 and 3 are timely, USAT is entitled to summary judgment on those claims.

Count 3 would fail even if were timely because the objective of the transportation at issue must be an illegal act under the TVRPA. *See e.g. Ricchio v. McLean*, 853 F.3d 553, 558 (1st Cir. 2017); *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 454 (E.D. Va. 2015); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1165 (D. Kan. 2018). Joslin's trafficking claim rests entirely on her trip to Bonn, Germany for the German Open.  None of the facts indicate illegal transportation for this trip. Accordingly, Count 3 fails.

## B.    Absence of Obstruction Elements of Sections 1590 and 1591 (Count 8).

As noted above, the parties agree that there is no evidence of a TVPRA enforcement action. [UMF ¶ 29]. As the Court has noted, the violation of the TVPRA must arise from obstruction of a government investigation. [D.E. 218 at 43; D.E. 266 at 46; D.E. 319, at 15].

Plaintiffs are proceeding on a theory that failure to report and the minimal references to government actors in discovery suffice to meet their burden for obstruction. [UMF ¶¶ 29-30]. It does not. They cannot carry their burden on Count 8 by suggesting that USAT failed to discharge a reporting obligation pursuant to Colorado's child abuse reporting statute, C.R.S. 19-3-304, which is not alleged anywhere in the Third Amended Complaint. [UMF ¶ 17]. Nor can they carry their burden by generally citing to communications USAT did have with law enforcement agencies absent any indication that USAT offered false or misleading information to investigators or that it deliberately omitted information from a response to a governmental actor. [UMF ¶¶ 29-30]. Moreover, these communications do not confirm the existence of an investigation of any particular statutory violation. [UMF ¶¶ 29-30]. In short, Plaintiffs' theory as to Count

8 that USAT obstructed or attempted obstruction both by reporting and not reporting to law enforcement fails.

Plaintiffs must prove that USAT either benefitted from participating in a venture or itself obstructed, attempted to obstruct, or in any way interfered with or prevented the enforcement of either Section 1590, the unlawful transportation statute, or Section 1591. Either way, proof of the underlying Section 1590(b) or Section 1591(d) obstruction or attempted obstruction is required as noted by Section 1595(a)'s language that the individual bringing a civil suit be a "victim of a *violation* of this chapter" (emphasis supplied). There is simply nothing in the record indicating that any government actor, including Congress, investigated, discussed investigating, or contemplated anything about the TVPRA with respect to USAT, the Lopez brothers, or any other relevant actor, let alone an enforcement of Sections 1590 or 1591 in particular. [UMF ¶¶ 19-20, 28-30]

Even if there was some indication in discovery that an enforcement of Section 1590 or Section 1591 was considered or pending against USAT, proof of the underlying obstruction pursuant to Sections 1590(b) or 1591(d) require proof of a *knowing* violation, which in turn requires awareness of one's actions. *U.S. v. Gamble*, 2020 U.S. Dist. LEXIS 116370 at *8 (D.D.C. July 2, 2020) (discussing that in order to obtain a Section 1591(d) conviction, the government must show that the defendant "knowingly obstructed or attempted to obstruct the enforcement of section 1591" and noting that since "the statute is silent, *knowingly* is the appropriate *mens rea*.") (emphasis supplied) (citation and internal punctuation omitted). *See also U.S. v. Brinson*, 772 F.3d 1314, 1327-28 (10th Cir. 2014) (upholding a Section 1591(d) conviction where the defendant

15

"tried to prevent a subpoenaed witness…from testifying before a federal grand jury").

Section 1590(b), with language that is nearly identical to Section 1591(d), also requires

a "knowing" *mens rea. See U.S. v. Ray*, 704 F.3d 1307, 1312 (10th Cir. 2013)

(remarking that "criminal statutory provisions should not be read to impose strict

liability and should instead be construed as carrying a *mens rea* element when they

are silent" (internal quotation marks omitted)

Accordingly, in order to carry their burden on Count 8, Plaintiffs must identify a

triable issue of fact as to the existence of a knowing Section 1591(d) or a Section

1590(b) violation. To that end, Plaintiffs have cited to various communications that

individuals acting on behalf of USAT had with law enforcement agencies or USAT's

internal communications. [UMF ¶ 29-30]. They have yet to identify the obstruction or

attempted obstruction contained within these communications.

Where Steve McNally's Congressional testimony is concerned, while USAT

maintains that Congress cannot enforce the TVPRA, it also is true that Plaintiffs offer

insufficient evidence in support of their assertions of false testimony. [UMF ¶ 27]. There

is no dispute that Mr. McNally prepared his testimony by looking at documents at USAT

and with the assistance of general counsel Stephen Hess and special disciplinary

counsel Donald Alperstein. [UMF ¶¶ 25-26]. There is also no dispute that Mr. McNally

did not have personal knowledge of the history of Jean and Steven Lopez or Donald

Alperstein's work. [UMF ¶¶ 18-20, 22]. He could only testify about what he learned.

Plaintiffs assert that Mr. McNally's testimony is false but make no effort to connect

proffered evidence with the preparation of Mr. McNally's testimony. [UMF ¶ 27].

Plaintiffs assert that Mr. McNally's Congressional testimony was "corrupt." [D.E. 293 at ¶¶ 15, 108, and 149]. "[T]he term 'corruptly' in criminal laws has a longstanding and well-accepted meaning. It denotes an act done with an intent to give some advantage inconsistent with official duty and the rights of others. It includes bribery but is more comprehensive; because an act may be corruptly done though the advantage to be derived from it be not offered by another." *U.S. v. Aguilar*, 515 U.S. 593, 614 (1995) (Scalia, A.G. dissenting) (internal punctuation and citation omitted). In other words, assuming that the allegedly false Congressional testimony can support a Section 1590(b) or Section 1591(d) obstruction claim, then Plaintiffs have to establish that Mr. McNally lied to Congress. The evidence regarding the preparation of the Congressional testimony falls well short of knowing obstruction and even shorter of corrupt intent.

For all the foregoing reasons, the Court should grant summary judgment in USAT's favor on Count 8.

## C.     Absence of a Venture with Steven Lopez (Counts 2, 3, 5, and 8).

As noted above, Section 1595(a) permits a civil action against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." Accordingly, Plaintiffs have to establish that USAT knew it was in a venture with Steven Lopez. They cannot. The most recent allegation of sexual misconduct against Steven Lopez is by Amber Means in 2013. [UMF ¶ 8]. By that time, she had not been a USAT member over for a year. [UMF ¶ 6]. The evidence in this case does not establish that USAT knew or should have known that there were allegations of

sexual misconduct against Steven Lopez earlier than 2015.  [UMF ¶¶ 5, 9, 11-16].

Accordingly, it cannot have entered into a venture with Steven Lopez.

> As the Magistrate pointed out in his most recent recommendation:

> In *Bistline v. Parker*, the Tenth Circuit found persuasive the First Circuit's application of the definition of "venture" under Section 1591(e)(6) as "any group of two or more individuals associated in fact, whether or not a legal entity" to Section 1589. *Bistline*, 918 F.3d [849, 873 (10th Cir. 2019)] (citing *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017)). As such, Judge Arguello adopted the broad definition of "venture" when she issued her Order in this case on the SAC. Order at 35.

D.E. at 18. While the venture definition above is broad, it is not without limitation. To this end, a closer analysis of *Bistline* court's discussion of continuous conduct is in order.

In addition to the notorious Fundamentalist Latter Day Saints (FLDS) prophet Warren Jeffs, the defendants included a law firm and one of its partners, Rodney Parker. *Bistline*, 918 F.3d at 854. Parker allegedly helped Jeffs reinstate a trust that Jeffs' ailing father controlled as part of his advice to Jeffs on how to accomplish Jeffs' objective of total control over the homes, possessions, and bodies of the FLDS community, including Jeffs' plan to facilitate the rape of minor girls by himself and others. *Id.* at 856-57. Jeffs obtained the control and opportunity to prey on children he desired through a campaign of coercion and control over the FLDS community while Parker and his law firm received payment for their legal work from the trust. *Id.* at 857, 875.

Key to the *Bistline* Court's holding regarding the sufficiency of the joint venture allegations was the notion that the defendants allegedly set up a scheme "designed *expressly* for the purpose of facilitating these crimes and also ensuring that defendants would personally reap amber benefits therefrom." *Id.* at 875-76. Moreover, the *Bistline*

Court remarked "that despite extensive knowledge of the ways Mr. Jeffs was using his power to harm plaintiffs and other similarly-situated individuals, defendants continued to use their legal expertise to uphold this scheme." *Id.* at 875. Moreover, the facts demonstrated awareness of illegal conduct over a period of years and "construct[ion] of a scheme for the purpose of enabling it." *Id.* at 876. Here, there is no evidence, and Plaintiffs have not alleged, that USAT is a perpetrator of TVPRA violations.  Accordingly, Plaintiffs must bring forth some indicia of continuous conduct or a pattern of behavior in order to establish a triable issue of fact regarding the joint venture element under Section 1595(a). *See e.g. M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019) (Observing where there no "actual knowledge of participation in the sex trafficking itself…Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement"). They cannot.

There is no dispute that Plaintiffs Means and Joslin, the only Plaintiffs with forced labor and transportation claims remaining against USAT, did not make their claims against Steven Lopez known to USAT until years after the alleged sexual misconduct occurred. [UMF ¶¶ 5, 9]. The only issue is whether USAT knew or should have known that Steven Lopez was potentially committing TVPRA violations prior to 2015 Meloon's communications. To that end, as discussed above, the record contains at least half a dozen places where Meloon's complaints about Steven Lopez might have appeared, many that she herself authored, but they are absent. [UMF ¶¶ 11-15]. This is even where

she has expressed strong, detailed opinions to USAT CEO David Askinas in 2006 and 2007, and in her graphic blog posts. [UMF ¶ 11].

Plaintiffs offer citations to records in support of USAT's pre-2015 knowledge that either do not set forth a complaint beyond identifying Steven Lopez as one alleged abuser among many or that are not consistent with their admissions in other parts of discovery. [UMF ¶ 12]. This does not suffice in considering the totality of the discovery discussed above.   An additional factor is the timing of the apparent end of her consensual adult relationship with Steven Lopez is at or near the time she brought forward a complaint against Jean Lopez, Steven Lopez's brother. [UMF ¶¶ 10-11]. Under these circumstances, the Court may make the reasonable inference that USAT did not receive reports of sexual misconduct allegations against Steven Lopez until 2015. [UMF ¶ 16]. A TVPRA joint venture contemplates some kind of coordination between the parties to achieve an unlawful objective. That evidence is absent in this case. For the same reasons, there also cannot be evidence of a knowing benefit to USAT under Section 1595(a).[7] For these reasons, USAT is entitled to summary judgment on Counts 2, 3, 5, and 8.

## VI.  Conclusion

For the foregoing reasons, Defendant USAT respectfully requests the Court to enter summary judgment in its favor dismissing Plaintiff's Claims 2, 3, 5, and 8.

---

[7] USAT has not abandoned its position that a closer connection between the benefit to the beneficiary and a TVPRA violation is required under Section 1595(a) than what Plaintiffs either plead or rely on in discovery. *See, e.g., Marriot International, Inc.*, 2020 U.S. Dist. LEXIS 70644 at *35-36 (discussing a knowing benefit "*from the trafficking venture*") (emphasis supplied).

Respectfully submitted this 11th day of September 2020.

/s/ Thomas B. Quinn
Thomas B. Quinn
Nathan A. Huey
Lillian L. Alves
**GORDON REES SCULLY MANSUKHANI LLP**
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel.:  (303) 534-5160
Fax:  (303) 534-5161
tquinn@grsm.com
nhuey@grsm.com
lalves@grsm.com
*Attorneys for Defendant USA Taekwondo, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such to all counsel of record.


/s/ Fran Aragon Eaves
For Gordon Rees Scully Mansukhani LLP