**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-00981-CMA-MEH

HEIDI GILBERT,
AMBER MEANS,
MANDY MELOON,
GABRIELA JOSLIN,
KAY POE, and
JANE DOES 6 – 50,

    Plaintiffs,

v.

USA TAEKWONDO, INC., and
STEVEN LOPEZ,

    Defendants.

---

**ORDER**
_____

This matter is before the Court on Markel Insurance Company's Motion to Intervene and Lift Stay (Doc. # 351). For the following reasons, the Motion is granted in part and denied in part.

## I.     BACKGROUND

This lawsuit involves allegations of sexual assault and sex trafficking. Plaintiffs are elite taekwondo athletes who competed on behalf of the United States at international sporting events, including the Olympics. (Doc. # 293). Defendant Steven Lopez is a three-time Olympic taekwondo medalist for the United States. (Doc. # 293, ¶ 57). Plaintiffs allege that Lopez "raped numerous female taekwondo athletes," (Doc. #

293, ¶ 3), and that USA Taekwondo ("USAT"), the sport's national governing body, "protected [Lopez] from law enforcement and suspension by Team USA." (Doc. # 293, ¶ 9). Plaintiffs are now suing Lopez and USAT, alleging, among other things, violations of federal labor law. (Doc. # 293). USAT's insurance company, Markel Insurance Company ("Markel"), is paying for USAT's defense. (Doc. # 354, p. 6).

After more than a year of litigation, Plaintiffs and USAT agreed to submit this case to arbitration. (Doc. # 369). They signed an arbitration agreement ("Agreement") whereby they agreed to a "binding and non-appealable" arbitration with an agreed-upon arbitrator. (Doc. # 369-1, ¶ 2).

Significantly, however, USAT failed to notify Markel of the Agreement. (Doc. # 351, p. 3). Even more significantly, the Agreement does far more than simply commit the parties to arbitration: it also requires USAT to waive the right to a ruling on its motion to dismiss, to forego any future motions practice, and to assign to Plaintiffs the right to pursue a bad-faith action against Markel. (Doc. # 369-1, ¶¶ 1-6). In exchange for these concessions, Plaintiffs agree to cap USAT's liability at $10,000 and to give USAT 25% of any punitive damages award it obtains against Markel in a future bad-faith lawsuit. (Doc. # 369-1, ¶¶ 4, 9, 10).

Markel now seeks to intervene. It argues that it has a "a right and duty to defend" USAT in this lawsuit, and that the Agreement impairs its ability to defend the case. (Doc. # 351, p. 6). Markel also contends that Plaintiffs and USAT are colluding in an effort "manufacture a bad faith case" against Markel. (Doc. # 356, p. 2). Therefore, Markel argues, intervention is necessary to protect its interests.

2

Plaintiffs counter that intervention is not appropriate. In their view, "Markel fails to meet the prerequisites for intervention because the interests of the policyholder and the insurance company in defending against Plaintiffs' claim are aligned[.]" (Doc. # 354, p. 2). They also argue that "Markel is still providing USAT's defense to the claims, so its interests are not in jeopardy." (Doc. # 354, p. 2).

The Court agrees with Markel.

## II. ANALYSIS

Under F.R.C.P. 24(a), a person must be allowed to intervene if (1) that person "claims an interest relating to the property or transaction that is the subject of that action"; (2) disposing of the action without that person's involvement "may as a practical matter impair or impede the movant's ability to protect its interest," and (3) the existing parties do not adequately represent that interest. F.R.C.P. 24(a)(2). Markel has established each of these elements.

First, there is no dispute that Markel claims an interest in the subject of this action. The parties agree that Markel insures USAT; that Markel has the right and obligation to defend USAT against covered claims; and that Markel may be obligated to pay any judgment against USAT in this lawsuit. (*See* Doc. # 351, pp. 2-3; *see also* Doc. # 354, p. 9). Therefore, Markel has satisfied the "interest" element of Rule 24(a).

Second, Markel has established that excluding it from this action would impair Markel's ability to protect its interests. The parties agree that Markel is charged with defending USAT and paying any adverse judgment. Therefore, Markel has an interest in

3

ensuring that USAT receives a vigorous defense.[1] However, without Markel's knowledge or consent, USAT entered into an arbitration agreement that significantly limits the litigation tools available for its defense. (Doc. # 351, p. 6). For example, the Agreement waives USAT's right to a jury trial; waives the right to an appeal; and eliminates USAT's ability to engage in motions practice. (Doc. #369-1, ¶¶ 1-3). These provisions hinder Markel's ability to defend USAT in this action and increase the likelihood of an adverse judgment. Thus, Markel has demonstrated that excluding it from this action would impair its ability to protect its interests, and it has satisfied the second element of Rule 24(a).

Finally, Markel has demonstrated that USAT does not adequately represent its interests. As discussed above, neither Plaintiffs nor USAT dispute that USAT entered into the Agreement without Markel's knowledge or consent. Further, the Agreement contains a number of provisions that limit Markel's ability to defend USAT while preserving – even expanding – future claims against Markel. These provisions, combined with the fact that Markel had no say in the terms of the Agreement, lend credence to Markel's suspicions of collusion between USAT and Plaintiffs. Therefore, Markel's interests are not adequately represented by the other parties in this litigation, and it has a right to intervene under Rule 24(a).

Plaintiffs argue, however, that "Markel's interest . . . is not being impaired by the parties' agreed change in forum." (Doc. # 354, p. 2). This argument fails. Plaintiffs and USAT did not merely agree to a "change in forum"; as discussed above, USAT agreed

---

[1] It is worth noting that USAT has denied wrongdoing. (Doc. #75, § 3).

4

to several procedural concessions that limit Markel's ability to defend the case. (*See* Doc. # 369-1, ¶¶ 1-6). Furthermore, the Agreement presupposes an adverse judgment against USAT, and it purports to align Plaintiffs and USAT as allies in a future bad-faith action against Markel. (Doc. # 369-1, ¶¶ 2, 4, 9). In fact, the Agreement even goes so far as to create a profit-sharing arrangement between Plaintiffs and USAT in the event Plaintiffs recover punitive damages against Markel. (Doc. # 369-1, ¶ 9). These provisions increase the likelihood of an adverse judgment against USAT, expand Markel's liability, and support Markel's claims of collusion between Plaintiffs and USAT. Thus, Markel has demonstrated that its interest is being impaired by its exclusion from this case.

Plaintiffs also argue, however, that Markel cannot object to the Agreement because "Markel has itself used arbitration" in other cases. (Doc. # 354, p. 2). This argument is inapposite. Markel is not objecting to arbitration generally; it is objecting to the terms of the arbitration agreement in this case. In essence, Markel is arguing that USAT has bargained away Markel's right to fully defend the case without Markel's consent. (Doc. # 351, p. 7). Plaintiffs' attempt to characterize Markel's Motion as arguing "that arbitration is inherently collusive" is both unconvincing and contrary to the plain language of Markel's Motion. (Doc. # 354, p. 7).

Plaintiffs next contend that "Markel's motion to intervene . . . is premature because no determination of liability has occurred in arbitration." (Doc # 354, p. 2). This argument also fails. A "determination of liability" is not a prerequisite to intervention under Rule 24. Rather, the intervenor need only demonstrate that it has an interest in

5

the case, that its interest is not being adequately represented, and that excluding it from the lawsuit would impair its interest. F.R.C.P. 24(a); *see also Elliott Industries, Ltd. Partnership v. BP America Production Co.*, 407 F.3d 1091, 1103 (10th Cir.2005) ("The Tenth Circuit generally follows a liberal view in allowing intervention under Rule 24(a)."). Markel has met this burden. Therefore, its request to intervene will be granted.

The Court is aware that a recent opinion suggests that the Colorado Supreme Court might reach a different conclusion. *See Auto-Owners Ins. Co. v. Bolt Factory Lofts Owners Assoc. Inc.*, 2021 CO 32. In *Auto-Owners*, the Colorado Supreme Court denied a similar request to intervene under C.R.C.P. 24. The court explained that the insurer "was not entitled to intervene under Rule 24(a)(2) because its interest was not impaired" by the contract between the plaintiff and the insured. *Id.*, ¶ 28. Specifically, the court held that under Colorado law, the insurer would not be bound by any judgment against the insured "until it ha[d] an opportunity to challenge the [contract] and advance its defenses before a neutral factfinder." *Id.*, ¶ 32. This Court declines to adopt the Colorado Supreme Court's approach for several reasons.

*Auto-Owners* is not binding on this Court. *Auto-Owners* involved a motion to intervene under Colorado's state-court intervention rules. *Id.*, ¶ 1. This case, by contrast, involves a motion to intervene under the Federal Rules of Civil Procedure. (Doc. # 351). Although the Colorado Supreme Court has authority to decide the meaning of that state's procedural rules, this Court is not bound to follow such decisions when deciding a question of federal-court procedure.

6

Further, *Auto-Owners* is distinguishable from this case in important ways. *Auto-Owners* involved a post-trial appeal of the trial court's decision to preclude intervention. The parties had already had a trial on the issues of liability and damages. *Id.*, ¶ 7. By the time *Auto-Owners* reached the supreme court, the plaintiffs had already filed bad-faith claims and a garnishment action against the insurer. *Id.* at ¶ 7, n. 3; *see also Auto Owners Ins. Co. v. Bolt Factory Lofts Owners Assoc., Inc.*, 823 Fed. Appx. 6896 (10th Cir. 2020). Thus, at the time *Auto-Owners* was decided, there was no efficiency benefit to be had by granting the insurer's request to intervene: liability and damages had already been decided, and the parties were already litigating the insurer's rights and obligations in a separate forum. Here, by contrast, the case has not yet proceeded to trial, the insurer has not yet been precluded from intervening, and allowing Markel to assert declaratory judgment claims in this case may limit the need for additional litigation in the future. Thus, this case involves considerations of judicial efficiency, which favor intervention, that were not at play in *Auto-Owners*. Therefore, the Court sees no reason to adopt the non-binding approach taken by the court in *Auto-Owners*.

Finally, Markel asks that this Court to lift the stay of this action. This request is moot. Though Plaintiffs moved for a stay of proceedings while the arbitration was pending (Doc. # 345), Judge Hegarty denied that Motion on December 2, 2020 (Doc. # 368). Therefore, there is no stay to be lifted.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Markel's Motion to Intervene and Lift Stay (Doc. # 351) is GRANTED IN PART AND DENIED IN PART. Markel's request to intervene is

7

GRANTED, and Markel's Complaint in Intervention (Doc. # 351-1) is ACCEPTED AS FILED as of the date of this Order. Markel's request to lift the stay is DENIED AS MOOT.

DATED: June 25, 2021

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge